STEVEN W. CALL (5260)
JUSTIN M. KUETTEL (16873)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Email: scall@rqn.com

*Attorneys for State Bank of Southern Utah*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALLEN BEAL, an individual,<br><br>　　Debtor. | Bankruptcy No. 19-20276<br>(Chapter 7) |
| STATE BANK OF SOUTHERN UTAH,<br><br>　　State Bank, a Utah banking corporation,<br><br>　　vs.<br><br>ALLEN BEAL,<br><br>　　Defendant, an individual. | Adversary No. _____<br><br><br><br>Hon. R. Kimball Mosier |

**COMPLAINT FOR THE NON-DISCHARGEABILITY OF A DEBT
PURSUANT TO PURSUANT TO 11 U.S.C. § 523(a)(6) AND FOR
THE DENIAL OF DISCHARGE PURSUANT TO § 727(d)(3)**

State Bank of Southern Utah ("**State Bank**" or "**Bank**"), by and through its counsel of

Ray Quinney & Nebeker P.C., complains against Allen Beal, the debtor in the above-entitled

1

Chapter 7 case ("**Defendant**") and for claims for relief alleges that indebtedness owing to State Bank should be determined non-dischargeable pursuant to the 11 U.S.C. § 523(a)(6), that Defendant Beal's discharge should be denied pursuant to 11 U.S.C. § 727(a) and for other related relief.

## THE PARTIES AND RELATED PERSONS

1. State Bank is a Utah banking corporation with its principal place of business in Cedar City, Utah.

2. Defendant Beal is the debtor in the above-captioned chapter 7 case who resides in Ephraim, Utah. Defendant Beal filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on January 15, 2019.

3. ALK Beal Trucking Inc. ( "**Beal Trucking**") is a Utah corporation organized on September 27, 2010. Defendant Beal is the sole shareholder of the corporation. Defendant Beal has been the president of the corporation since its organization. The corporation was dissolved by the State of Utah on December 27, 2018. The last renewal was filed on October 27, 2017.

4. A&L Transport, LLC ("**A&L Transport**") is a dissolved Utah limited liability company organized on September 11, 2013. Defendant Beal is the sole member of the company. Defendant Beal is the sole shareholder of the corporation. Defendant Beal has been the sole manager or managing member of the company since its organization. The Company was dissolved by the State of Utah on December 31, 2018 for failing to file a renewal. The last renewal was filed on October 27, 2017.

5. Elizabeth Beal is Defendant Beal's ex-wife. Defendant Beal and Elizabeth Beal divorced in May 2018.

**JURISDICTION AND VENUE**

6. The United States Bankruptcy Court for the District of Utah has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334(b).

7. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(E)(I),(J) and/or (O), pursuant to 28 U.S.C. § 157(b)(1)

8. Venue is proper in the United States Bankruptcy Court for the District of Utah, pursuant to 28 U.S.C. § 1409(a), because this adversary proceeding "arises in" and/or "arising under" Defendant's bankruptcy case filed in the District of Utah.

**GENERAL ALLEGATIONS**

9. In 2017, between March 9, 2017 and September 27, 2017, Defendant Beal, A&L Transport and Elizabeth Beal (collectively the "**Borrowers**") made applications for three loans with State Bank.

10. The Borrowers sought credit to purchase 100 head of cattle, five semi-trucks and a line of credit. In response to the applications, State Bank made three different loans to the Borrowers.

11. The credits advanced to the Borrowers were documented by a promissory note in the amount of $324,860 dated March 14, 2017 (the "**Promissory Note**").

12. A copy of the Promissory Note is attached as **Sub-Exhibit** A to the state court Verified Complaint that is attached hereto as **Exhibit 1** (the "state court complaint").

13. The state court complaint was filed by State Bank in the Sixth Judicial District Court in and for Sanpete County State of Utah in Case No. 180600092 and the case was assigned

to Judge Wallace A. Lee.

14. In connection with the Promissory Note, the Borrowers granted an agricultural security interest to State Bank in various types of collateral including but not limited the 100 head of cattle together with all off spring and proceeds derived therefrom and five semi-trucks.

15. A copy of the Agricultural Security Agreement is attached as **Sub-Exhibit** B to the state court complaint attached as Exhibit 1.

16. The Borrowers also granted a Commercial Security Interest in various collateral including but not limited to the 100 head of cattle and the five semi-trucks together with all proceeds derived therefrom

17. A copy of the Agricultural Security Agreement is attached as **Sub-Exhibit C** to the state court complaint attached as Exhibit 1.

18. State Bank caused a UCC Financing Statement and a Central Filing System Effective Financing Statement CFS-1 Supplemental Sheet (collectively the "Financing Statement") to be filed in the appropriate office of the State of Utah.

19. Copies of the Financing Statement and related documents are attached as **Sub-Exhibit D** to the state court complaint attached as Exhibit 1.

20. The Borrowers defaulted in performing their obligations under the loan documents and State Bank accelerated the obligations owing to the Bank.

21. In connection with the Borrowers' default, State Bank sought to repossess certain collateral granted to secure the indebtedness owing to the Bank including the 100 head of Cattle, including any offspring therefrom.

22. There were approximate 90 calves born to the 100 head of cattle though some of

the cattle die from age or through nature consequences. (The original 100 head of cattle and the offspring therefrom are referred to collectively as the "Cattle")

23. The Borrowers failed or refused to cooperate with the preservation or surrender of the Cattle so that the Cattle could be duly foreclosed for a fair price in compliance with Utah law and the security agreements.

24. After Borrowers defaulted on their loan obligations to the Bank, Defendant Beal undertook to sell all of the Cattle, which was subject to State Bank's perfected security interest, out of trust in breach of the loan documents.

25. For instance, Defendant Beal caused least two pair of the Cattle to be sold Triple P Brand, LLC on or about May 20, 2018.

26. A true and correct copy of the check and deposit information is attached hereto as **Exhibit 2**.

27. The foregoing sale was made without consent or authorization of State Bank.

28. The proceeds from the sale were deposited in Defendant Beal's bank accounts at Mountain America and then used by him.

29. On or about June 2, 2018, Defendant Beal sold 10 pair of cattle to Royalane Calves LLC and/or Nathan Noyes for $13,000.

30. A true and correct copy of the check and deposit information is attached hereto as **Exhibit 3**.

31. The foregoing sale was made without consent or authorization of State Bank.

32. The proceeds from the sale were deposited in Defendant Beal's individual bank account and used by him.

33. On or about June 1, 2018, Defendant Beal sold 20 head Cattle to Dale T. Smith & Sons.

34. Dale T. Smith & Sons is a butcher business located at 112450 South Pony Express Road, Draper, Utah 84020.

35. Defendant Beal received the sum of $20,000 from the sale.

36. Defendant Beal deposited the sale proceeds into A&L Transport's account with Mountain America having account number xxxxx9135.

37. A copy of the purchase order receipt for the sale of the 20 Cattle is attached as **Exhibit 4**.

38. The foregoing sale was made without consent or authorization of State Bank.

39. The proceeds from the sale were deposited in Defendant Beal's individual Mountain America accounts and thereafter used by him.

40. On or about June 11, 2018. Defendant Beal sold several head of the Cattle to Tod Nuffer for a price $28,550.00.

41. A true and correct copy of the wire transfer is attached hereto as **Exhibit 5**.

42. The foregoing sale was made without consent or authorization of State Bank.

43. The proceeds from the sale were deposited in Defendant Beal's individual Mountain America accounts and thereafter used by him.

44. On or about July 10, 2018, Defendant Beal caused several head of the Cattle to be sold at auction through Producers Livestock Marketing Association ("**Producers**") for a net price of $6,375.70.

45. A true and correct copy of the check and deposit information is attached hereto as

**Exhibit** 6.

46.    The foregoing sale was made without consent or authorization of State Bank.

47.    The proceeds from the sale were deposited in Defendant Beal's Mountain America accounts and thereafter used by him.

48.    Between January 9, 2018 and July 10, 2018, Defendant Beal caused various heads of the Cattle to be sold through Producer's auction house.

49.    A Seller History Report prepared by Producers auction house at Defendant Beal's request reflects total sales in the amount of $105,214.74.

50.    A copy of the Seller History Report at Producers is attached hereto as **Exhibit** 7.

51.    The foregoing sale was made without consent or authorization of State Bank.

52.    The proceeds from the sale were deposited in Defendant Beal's Mountain American's accounts and thereafter used by him.

53.    The total amount of sale proceeds received by Defendant Beal from the sale of State Bank's Cattle collateral was no less than the following amounts:

| | | |
|---|---|---|
| a) | Todd Nuffer | $28, 550.00 |
| b) | Producers | $6,375.70 |
| c) | Dale T. Smith & Sons | $12,627.95 |
| d) | Royalane Calves, LLC | $13,000.00 |
| e) | Producers | $105,214.74 |
| f) | Triple P. Brand, LLC | $2,700.00 |
| | Total | $168,467.69 |

54.    In addition to the foregoing, State Bank alleges that Defendant Beal made other

7

sales of the Collateral.

55. Defendant Beal advertised in KSL classified for the sale of cattle.

56. People would contact Defendant Beal and inquire about the Cattle.

57. Defendant Beal would then invite them go to Bailey's Farms in Ephraim Utah where the Cattle were grazing.

58. Buyers would then select those cattle they wished to purchase from Defendant Beal and then pay Defendant Beal for those specific cattle.

59. Defendant ultimately obtained control over all of the sale proceeds received from the sale of the Cattle.

60. Upon information and belief, Defendant Beal sold the Cattle through various improper means or methods.

61. State Bank alleges that Defendant Beal provided false information to the branding inspector in Richfield County thereby misleading the livestock auction and causing cattle to be sold.

62. State Bank alleges that Defendant Beal also provided false information to Dale T. Smith & Sons in the sale of at least 20 head of Cattle (See Exhibit 4)

63. State Bank further alleges that Defendant sold the Cattle without disclosing that State Bank had a perfected security interest in the Cattle.

64. Defendant Beal deposited all of the sale proceeds from the Cattle into his accounts at Mountain America.

65. Defendant Beal failed to turn over or pay the sale proceeds to State Bank. Rather, Defendant Beal has used the sale proceeds from the Cattle for other purposes.

66. Defendant Beal also caused some the sale proceeds from the Cattle to be transferred to the accounts of ALK Trucking.

67. Because of disposal of the cattle by falsifying information to sell the cattle, and because Defendants have failed to pay State Bank from the proceeds thereof, State Bank accelerated the obligation demanding all amounts owing under the various loans due, and elected to repossess the collateral.

68. A state court action was commenced against the Borrowers on or about October 31, 2018 through the filing of the state court complaint.

69. The state court complaint was verified by Eric Chamberlain who is a duly authorized officer for the Bank.

70. The state court complaint was served on the Borrowers but the Borrowers failed to answer or other respond to the allegations in the state court complaint together with all proceeds derived therefrom.

71. On December 4, 2018, Judge Wallace A. Lee entered a default judgment against the Borrowers in the amount of $237,683.01, together with post judgment interest at 18% per annum and reasonable attorneys' fees pursuant to the loan documents (the "**Default Judgment**").

72. A copy of the Default Judgment is attached as **Exhibit 8** and incorporated herein.

73. On January 15, 2019, Defendant Beal filed his chapter 7 voluntary petition for relief.

74. On April 4, 2019, the Bankruptcy Court entered it *Order Authorizing Rule 2004 Examination of the Debtor,* dated April 5, 2019 [Case Dkt. No. 20] (the "2004 Order"). A copy

9

of the 2004 Order is attached as **Exhibit 9**.

75. Pursuant to the 2004 Order, a Subpoena was duly served upon Defendant Beal.

76. The Subpoena required Defendant Beal to produce various documents relating to the sale of the Cattle as follows:

1. All documents which relate to any of the SBSU collateral including the past and present location of all of the cattle which SBSU was granted a security interest in.

2. All documents relating to the sale or transfer of any of the cattle including but not limited to: sales receipts, invoices, contracts, purchase orders, auction orders, cattle brands, weighing tickets or other similar documents.

3. All documents reflecting communications by the Debtor in any capacity with any other person concerning the sale of the cattle.

4. All documents reflecting the identity of any person who was involved in the sale of the cattle.

5. All documents which reflect or relate to how payment was made for the sale and/or transfer of the cattle, including but not limited to: copies of any checks, copies of any wire transfer documents, copies of any cash receipts, copies of any other document reflecting a form of payment, or any document reflecting the receipt or acknowledgment of payment.

6. All bank statements, deposit slips, or other documents reflecting how, where or when any sale proceeds from the sale of the cattle were deposited into a bank, credit union or other financial institution.

7. All bank statements, checks, wire transfer documents, debit or credit charges documents, withdrawals or any other documents which reflect any debits, credits, charges or other evidence how the proceeds from the sale of the cattle were used or transferred.

8. All documents reflecting the transfer or exchange of any assets of A&L within one year prior to the Debtor's petition for relief and the consideration or value given in exchange therefor.

9. All documents reflecting the transfer or exchange of any assets of ALK within one year prior to the Debtor's petition for relief and the consideration or value given in exchange therefor.

Subpoena on Defendant Beal, pages 4-5. A copy of the subpoena is attached as **Exhibit 10**.

77. In response to the Subpoena, Defendant Beal responded with a one-page purchase order document with Dale T. Smith and Sons (see Exhibit 4), two pages from the bank statement of A&L Transport, a list of stuff paid containing five words and five numbers, a two page Seller's History Report with Producers auction house which is obtained from Producers three business days before his response was due (see Exhibit 7).

78. State Bank, through its counsel, conducted a Rule 2004 examination of the Defendant Beal on April 22, 2019, to which Defendant represented during the examination that these 5 pages represented all the paperwork having to do with his selling the cattle that State Bank had a valid interest in.

79. Defendant Beal represented at his examination that he had no books and records for himself or A&L Transport concerning the transactions involving the sale of the Cattle.

## CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF
(Willful and Malicious Injury by the Debtor to Another Entity
or to the Property of Another Entity pursuant to 11 U.S.C. § 523(a)(6))

80. State Bank realleges and incorporates all of the foregoing paragraphs herein by reference.

81. 11 U.S.C. § 523(a)(6) makes a debt non-dischargeable for willful and malicious injury by the debtor to another entity or to the property of another entity.

82. The Borrowers purchased the Cattle using money they borrowed from State Bank.

83. State Bank held a valid security interest in the Cattle through the security agreement executed with State Bank.

84. State Bank's security interest in the Cattle was perfected through the filing of its Financing Statement with the Utah Department of Commerce.

85. Defendant Beal knew that State Bank had a security interest in the Cattle.

86. Despite knowing of State Bank's security interest, Defendant sold at least two pairs of cattle to Triple P Brand, LLC on or about May 20, 2018. *See* **Exhibit 2**.

87. Despite knowing of State Bank's security interest, Defendant sold 10 pair of cattle to Royalane Calves LLC and or Nathan Noyes on or about June 2, 2018 for $13,000. *See* **Exhibit** 3.

88. Despite knowing of State Bank's security interest, Defendant sold $28,550.00 in Cattle to Tod Nuffer on or about June 11, 2018. *See* **Exhibit 5**.

89. Despite knowing of State Bank's security interest, Defendant sold $6,375.70 in cattle to Producers. *See* **Exhibit 6.**

90. Despite knowing of State Bank's security interest, Defendant sold other cattle through Producers from January 9, 2018–July 10, 2018 in the amount of $105,214.74. *See* **Exhibit** 7.

91. Upon information and belief, Defendant has numerous sales of Cattle for cash prior to filing for bankruptcy.

92. Defendant Beal knew that selling the cattle, which was subject to State Bank's security interest and not paying State Bank the funds would deprive State Bank of the money it was entitled to.

93. Defendant has not turned over the sale proceeds to State Bank and has refused to disclose the detailed and specific disposition or location of the sale proceeds.

94. State Bank has been damaged by Defendant Beal's unlawful actions.

95. Based upon the foregoing, State Bank is entitled to the relief prayed for below.

SECOND CLAIM FOR RELIEF
(Denial of Discharge pursuant to 11 U.S.C. § 727(a))

96. State Bank realleges and incorporates all of the foregoing paragraphs herein by reference.

97. 11 U.S.C. § 727(a)(3) provides that a debtor should be denied a discharge if the debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained."

98. 11 U.S.C. § 727(a)(4) provides that a debtor should be denied a discharge if a debtor "knowingly and fraudulently, in or in connection with the case made a false oath or account."

99. As was readily apparent in Defendant's Rule 2004 examination and the corresponding Subpoena, as heretofore alleged, Defendant Beal has failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Defendant's financial condition or business transactions might be ascertained.

100. State Bank issued a Subpoena for Defendant Beal's books and records and he was unable to produce no books and records of his own but only a handful of documents that he obtained from others or he prepared a few days before his response to the Subpoena was due.

101. Defendant Beal further testified at his 2004 examination that he does not have any books and records reflecting the sale transactions involving the Cattle.

102. Some of the documents which State Bank obtained from Mountain American

show that Defendant made numerous false statements in connection that Defendant Beal knowingly and fraudulently made incorrect statements on his Statement of Financial affairs.

103. For example, on his Official Form 107 "Statement of Financial Affairs for Individuals Filing for Bankruptcy," Defendant Beal incorrectly states on Part 3, question 7 that within one year before he filed for bankruptcy, he did not make a payment on a debt he owned to anyone who was an insider.

104. Defendant admitted that he made payments on trucks that were in the possession of his sister and brother in law, but for which he co-signed.

105. Similarly, Defendant falsely claimed that within one year before filing for bankruptcy, he did not make any payments or transfer any property on account of a debt that benefited an insider.

106. However, the banking records obtained by Subpoena from Mountain America reflects that Defendant Beal made numerous transfers of assets to ALK Trucking and AIL Transport, and that he was making payments on loans for property that he did not own.

107. As a result of the foregoing events, Defendant Beal should be denied a discharge.

108. Based upon the foregoing, State Bank is entitled to the relief prayed for below.

### THIRD CLAIM FOR RELIEF
(Accounting)

109. State Bank realleges and incorporates all of the foregoing paragraphs herein by reference.

110. Because Defendant Beal has improperly converted and sold State Bank's collateral, and because he contends that he has no books and records concerning the various sale transactions of the Cattle or how the proceeds from the sale of the Cattle were used, he should be

required to provide a detailed accounting of sale transactions involving the various sales of the Cattle and a detailed accounting as to where the sale proceeds were deposited or spent.

111. Based upon the foregoing, State Bank is entitled to the relief prayed for below.

## FOURTH CLAIM FOR RELIEF
(Turnover of Sale Proceeds and Property Purchased Therewith)

112. State Bank realleges and incorporates all of the foregoing paragraphs herein by reference.

113. Because Defendant Beal has improperly converted and sold State Bank's collateral, Defendant Beal should be ordered to turnover any of the sale proceeds from the Cattle in his possession or control and/or any property purchased with those proceeds.

114. Based upon the foregoing, State Bank is entitled to the relief prayed for below.

## FIFTH CLAIM FOR RELIEF
(Punitive Damages)

115. State Bank realleges and incorporates all of the foregoing paragraphs herein by reference.

116. The Utah punitive damage statute provides in part:

78B-8-201. Basis for punitive damages awards -- Section inapplicable to DUI cases or providing illegal controlled substances -- Division of award with state.

(1) (a) Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor <u>are the result of willful and malicious or intentionally fraudulent conduct,</u> or <u>conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others</u>.

Id. (emphasis added).

117. The actions taken by Defendant Beal to sell all of State Bank's Cattle collateral out of trust to various persons for discounted rates over a number of months was a result of willful and malicious or intentionally fraudulent conduct by Defendant Beal and/or a result of knowing and reckless indifference toward and disregard of State Bank's rights and property in the Cattle.

118. Based upon the allegations and claims for relief alleged in this complaint, State Bank is entitled to a judgment for punitive damages against Defendant in an amount no less than three times of the amount of damages suffered by State Bank because Defendant's actions were a result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of State Bank.

119. State Bank alleges that such relief is appropriate and that an award of punitive damages are non-dischargeable in bankruptcy pursuant to the United States Supreme Court's decision in *Cohen v. De La Cruz*, 523 U.S. 213 (1998).

120. Based upon the foregoing, State Bank is entitled to the relief prayed for below.

### SIXTH CLAIM FOR RELIEF
(Reasonable Attorney Fees)

121. State Bank realleges and incorporates all of the foregoing paragraphs herein by reference.

122. Defendant Beal's actions in converting State Bank's collateral constituted a breach of the loan documents agreed to between the parties.

123. The loan documents agreed to between the Borrowers and State Bank provide for an award of attorneys' fees in favor of the Bank in enforcing its security interest in the collateral pledged to secure the loans owing to the Bank.

124. In addition, the Default Judgment signed and entered by the state court also provided for an award of reasonable attorneys' fees in favor of State Bank.

125. As a result of the foregoing, Defendant Beal should be awarded its reasonable attorneys' fees.

126. Based upon the foregoing, State Bank is entitled to the relief prayed for below.

## PRAYER FOR RELIEF

WHEREFORE, State Bank of Southern Utah prays for a judgment against Defendant Beal as follows:

1. Pursuant to State Bank's First Claim for Relief, judgment that the Default Judgment made and entered against Defendant Beal by the state court is non-dischargeable pursuant to 11 U.S.C. § 523(a);

2. Pursuant to State Bank's First Claim for Relief, but in the alternative to the foregoing paragraph 1, a non-dischargeable judgment against Defendant Beal for damages incurred by the conversion of State Bank's collateral with the amount of that judgment to be no less than $168,467.69, with the amount of those damages to be determined at trial;

3. In the alternative to paragraphs 1 and 2 and pursuant to State Bank's Second Claim for Relief, an order denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a).

4. Pursuant to State Bank's Third Claim for Relief an order or judgment for (a) an accounting of all sale transactions involving the Cattle; (b) an accounting as to where the sale proceeds were deposited or spent, and (c) an accounting of any property purchased with such sale proceeds;

5. Pursuant to State Bank's Fourth Claim for Relief, an order or judgment that

Defendant Beal surrender and turnover all sale proceeds derived from the sale of the Cattle and all property in his possession or control purchased with those sale proceeds;

6. Pursuant to all of State Bank's Fifth Claim for relief, a judgment for punitive damages in amount not less than two times the compensatory damages suffered by the State Bank.

7. Pursuant to all of State Bank's Sixth Claim for relief, judgment for reasonable attorneys' fees;

8. Pursuant to all of State Bank's Claims for Relief, for such further legal and equitable relief as the Court deems just in the premises.

DATED this 22nd day of April, 2019.

RAY QUINNEY & NEBEKER P.C.

/s/ *Steven W. Call*
Steven W. Call
Justin M. Kuettel
Attorneys for State Bank of Southern Utah

#1488236