# EXHIBIT 1

Justin W. Wayment (7011)
Christian Jones (15873)
WAYMENT & JONES LAW
*Attorneys for Plaintiff*
51 East 400 North #1
P.O. Box 1808
Cedar City, UT 84721-1808
Telephone: (435) 586-3300
Fax: (435) 586-4288
Email: jwayment@waymentandjoneslaw.com
Email: cjones@waymentandjoneslaw.com

IN THE SIXTH JUDICIAL DISTRICT COURT IN AND FOR

SANPETE COUNTY, STATE OF UTAH

| | |
|---|---|
| STATE BANK OF SOUTHERN UTAH, A Utah Banking Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**A&L TRANSPORT, LLC, ALLEN BEAL, ELIZABETH BEAL, and JOHN DOES 1 through 10,**<br><br>Defendant. | **VERIFIED COMPLAINT**<br><br><br><br>Case No.<br><br>Judge: |

Comes Now, Plaintiff, State Bank of Southern Utah, ("SBSU"), alleges and complains

against Defendants as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a Utah Banking Corporation with offices located in the State of Utah, and is

   authorized to do business in the State of Utah as a banking institution.

2. Defendant A&L Transport LLC, a Utah Limited Liability Company, is a customer of Plaintiff

   to which Plaintiff loaned money as set forth hereafter, and Defendant was doing business in

   Sanpete County, State of Utah at the time it entered into the various contracts with Plaintiff.

Page 1 of 15

3. Defendant Allen Beal is an individual residing in Sanpete County, Utah, who is a Member of Defendant A&L Trucking LLC to which Plaintiff loaned money.

4. Defendant Elizabeth Beal, is an individual residing in Sanpete County, Utah, who is or was a Member of Defendant A&L Trucking LLC to which Plaintiff loaned money.

5. The Defendants John Doe 1 through 10 are individuals, partnerships, corporations or other entities, who may claim an interest in and to the personal property described herein. The true names and identities of these parties are not known to the Plaintiff at this time, but Plaintiff reserves the right to name said parties as soon as they become known, and to foreclose and extinguish any junior interests represented thereby.

6. Plaintiff brings this action against Defendants on the grounds of breach of contract, unjust enrichment, and other legal grounds involving the lending of funds to Defendants who reside in Sanpete County, State of Utah, and therefore jurisdiction and venue are proper in accordance with Utah Code Ann. §78A-5-102 and §78B-3-304.

## GENERAL ALLEGATIONS

7. Plaintiff hereby incorporates paragraph 1 through 6 as fully set forth herein.

8. Between the dates of March 9, 2017 and September 27, 2017, Plaintiff made three different loans to Defendant A&L Transport, LLC, for the purchase of five Semi-trucks ("Semi-trucks"), the purchase of certain beef cattle, and for a line of credit.

9. Plaintiff received titles to the Semi-trucks and filed the necessary paperwork to secure their loan and to be identified as a secured creditor through the Utah Division of Motor Vehicles.

10. Plaintiff perfected its security interest in the five Semi-trucks and is currently listed as a lien holder on each of the Semi-trucks.

11. Plaintiff further loaned Defendants funds to purchase 100 head of cattle.

12. Plaintiff secured its interest in the cattle by having Defendants collectively execute an
Agricultural Security Agreement.

13. Plaintiff thereafter perfected its security interest by filing with the UCC/CFS through the
Utah Department of Commerce.

14. Upon information and belief, Plaintiff has been informed that Defendant Allen Beal has sold
all or almost all of the cattle through various improper methods, including:

    a. Providing false information to the branding inspector in Richfield County thereby
    misleading the livestock auction and causing cattle to be sold;

    b. Upon information and belief, by providing false information to the branding inspector in
    Salt Lake County whereby a large amount of cattle have been sold and/or killed at a meat
    packing plant; and

    c. Upon information and belief, selling cattle to private individuals without disclosing
    Plaintiff's secured interest in the cattle.

15. Other unknown individuals, entities or companies may assert an interest in the cattle, which
claims are indeterminable at the present time.

16. Defendants have failed to make any of the loan payments from either the sale or butcher of
the cattle for which Plaintiff has a secured and perfected interest.

17. Upon information and belief, Plaintiff has been informed that Defendants Allen Beal and
Elizabeth Beal are now divorced, and by review of state corporation records, Defendants
have attempted to remove Elizabeth Beal as an owner from A&L Transport, LLC and ALK
Beal Trucking, Inc.

18. Because of disposal of the cattle by falsifying information to sell the cattle, and because Defendants have failed to pay Plaintiff from the proceeds thereof, Plaintiff accelerated the obligation demanding all amounts owing under the various loans due, and elected to repossess the collateral.

19. Plaintiff has repossessed the five Semi-trucks and have credited Defendants for the reasonable disposal of the Semi-trucks resolving two of the loans.

20. Prior to repossession of the five Semi-trucks, some of the parts were removed from the Trucks such as tires and rims, CB radios, etc. which depreciated the value of the Semi-trucks.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract - Loan XXX2403)

21. Plaintiff realleges and incorporates herein each allegation of paragraphs 1 through 20 as set forth above.

22. On or about March 14, 2017, Defendants  Allen Beal and Elizabeth Beal individually and on behalf of A&L Transport, LLC executed a Promissory Note, Agricultural Security Agreement, and Commercial Security Agreement,(Collectively "Loan"), (See Exhibits A-C), purchasing three Semi-trucks, a 2009 Kenworth T2000, VIN #1XKTD49X89J253393, a 2009 Kenworth T2000, VIN# 1XKTD49X09J219898, a 2009 Kenworth Construction, VIN# 1XKTD49X49J240205, and 100 head of cattle.

23. Defendants further cross-collateralized all three loans, including this Loan, and the obligations, debts and liabilities, whether said debts arose prior to or after the Loan, and Defendants agreed to not take any action under any of the loans which would cause Plaintiff to become insecure.

Page 4 of  15

24. The amount of $324,860.00 was financed under the Loan at a variable interest rate which at
    the present time is 6.75%, not including default interest.

25. Pursuant to the terms of the Promissory Note, Defendants agreed to repay the Loan by
    making seven yearly payments in the amount of $56,482.69, with the first payment due
    February 1, 2018, with final payment due on February 1, 2024. There was no prepayment
    penalty.

26. Defendants provided to Plaintiff a Commercial Security Agreement for the Semi-trucks, and
    an Agricultural Security Agreement for the cattle. Security was perfected by registering the
    appropriate filings with the Utah Department of Commerce. (See Exhibit "D")

27. Pursuant to the terms of the contract, Defendants further agreed to pay Plaintiff its reasonable
    attorney fees and collection costs if Defendants defaulted on the same, or if it was turned
    over to an attorney for collection.

28. Pursuant to the terms of the Loan, Defendants gave Plaintiff the right to repossess and sell
    any collateral secured if Defendants defaulted under the terms of the Loan.

29. The Contract is in default because Defendants defaulted on some of their loan payments, and
    have sold off a portion of Plaintiff's collateral without repaying Plaintiff, specifically
    Defendants have sold all or most of the cattle, (hereafter interchangeably "Cattle" or
    "Collateral").

30. Defendants defaults are a material breach of the Loan, causing a material adverse change to
    Defendants' financial condition, and Defendants' ability to repay the indebtedness has been
    substantially impaired.

31. Plaintiff in good faith believes and has deemed itself insecure.

Page 5 of 15

32. Plaintiff attempted to repossess, through a repossession company, and was able to repossess the 2009 Kenworth T2000, VIN #1XKTD49X89J253393, and the 2009 Kenworth T2000, VIN# 1XKTD49X09J219898.

33. When attempting to repossesses the remainder of the Semi-trucks, the company was informed by Defendant Allen Beal and the Sanpete County Sheriff to cease and desist from repossessing the Semi-trucks.

34. However, thereafter Defendants voluntarily surrendered the remainder of the Semi-trucks to Plaintiff but none of the cattle.

35. Some of the Semi-trucks had parts removed prior to surrendering the same.

36. Defendants' are in default under the Loan, and failure to make arrangements with Plaintiff to peaceably turn over the balance of the Collateral which constitutes a breach of the Loan.

37. Plaintiff is informed and believes that the reasonable value of the remainder of the Collateral is far less than the obligation owned on the Loan and that after proper set off, there is a balance owing of not less than Two Hundred Thirty-four Thousand Eight Hundred Twenty-three and 01/100, ($234,823.01.)

38. The Loan is a valid and binding contract and Plaintiff has performed or is excused from performing all of the obligations thereunder based upon Defendants' default of the terms of the Loan.

39. Defendants Allen Beal and Elizabeth Beal both personally guaranteed the Loan, and therefore are personally liable for all amounts due and owing under the Loan which are not paid by Defendant Company.

40. As a result of the breach of the Contract, Plaintiff has been damaged and is entitled to

Judgment in the amount not less than Two Hundred Thirty-four Thousand Eight Hundred

Twenty-three and 01/100, ($234,823.01.) as of October 25th, 2018 until paid in full at the rate

of 6.75 % per annum plus all late penalties, default interest in the amount of 18%, reasonable

attorney fees, collection costs and commercially reasonable costs and expenses incurred by

Defendant if any for repossession, recovery, storage, repair, sale, release or other disposition

of collateral, as subsequently established by Affidavit.

WHEREFORE Plaintiff prays for judgment against Defendants individually and collectively as

provided in the Loan documents as follows:

A.  For judgment against Defendants, jointly and severally, for the full amount of monies

due and owing Plaintiff under the Loan and the obligations underlying the parties'

accord, plus interest, attorneys fees and costs believed to be not less than Two Hundred

Thirty-four Thousand Eight Hundred Twenty-three and 01/100, ($234,823.01.), plus

costs of recovery of the Collateral, all interest and attorney fees and costs.

B.  For such other relief as the Court deems just and proper under the circumstances.

### SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

41. Plaintiff realleges and incorporates herein each allegation of paragraphs 1 through 40 as set

forth above.

42. By lending money to Defendants under the Loan and the obligations underlying the parties'

accord, Plaintiff conveyed a benefit to said Defendants.

43. In exchange for lending said money under the Loan, and the obligations underlying the

parties' accord, Plaintiff had a reasonable expectation of being paid.

44. Defendants were aware of the benefit conferred upon them by Plaintiff.

45. At no time did Defendants advise Plaintiff that said benefits were not desired, authorized, or approved.

46. If Defendants are not required to pay Plaintiff pursuant to the terms of the Loan and the obligations underlying the parties' accord, they would be unjustly enriched, to the detriment of Plaintiff.

47. The reasonable value of the benefit conferred is the amount of money due and owing Plaintiff under the Loan and the obligations underlying the parties' accord, which will be proven at trial and is believed to be in excess of Two Hundred Thirty-four Thousand Eight Hundred Twenty-three and 01/100, ($234,823.01.) as of October 25th, 2018 until paid in full at the rate of 6.75 % per annum plus all late penalties, default interest in the amount of 18%, reasonable attorney fees, collection costs and commercially reasonable costs and expenses incurred by Defendant if any for repossession, recovery, storage, repair, sale, release or other disposition of collateral, as subsequently established by Affidavit.

WHEREFORE Plaintiff prays for judgment against Defendants individually and collectively as provided in the Loan documents as follows:

A. For judgment against Defendants, jointly and severally, for the full amount of monies due and owing Plaintiff under the Loan and the obligations underlying the parties' accord, plus interest, attorneys fees and costs believed to be not less than Two Hundred Thirty-four Thousand Eight Hundred Twenty-three and 01/100, ($234,823.01.).

B. For such other relief as the Court deems just and proper under the circumstances.

## THIRD CLAIM FOR RELIEF
### (Prejudgment Writ of Replevin of Collateral)

48. Plaintiff realleges and incorporates herein each allegation of paragraphs 1 through 47 as set
    forth above.

49. To the extent that Defendants or any third party have possession of any Cattle secured by
    Plaintiff, and given Defendants default and Plaintiff's security interest in the Cattle,
    Defendants' or any third party's continued possession of the Cattle is wrongful and improper.

50. Defendants or any third party who continue to wrongfully detain the Cattle or any portion of
    the Cattle are in violation of the terms of the Loan documents.

51. Plaintiff desires to obtain possession of the Cattle under the Loan so that it may protect its
    rights therein, pursuant to the terms of the under the First and Second Causes of Action and
    applicable law as set forth herein.

52. Plaintiff is informed and believes that the Cattle under the Loan, or any portion thereof, has
    not been taken for a tax, assessment or fine pursuant to state or federal statute, or seized
    pursuant to an execution or attachment against the property of Defendants which is superior
    to Plaintiff as Plaintiff seeks only that Cattle still in Defendants' possession or any third-
    party's possession for which Plaintiff has a security interest be delivered to Plaintiff for safe
    keeping.

53. Plaintiff is informed and believes that the fair market value of all of all Cattle,  under the
    Loan is not more than cumulative debt owing under the Cattle.

54. Because there is no equity, Plaintiff petitions the Court that the bond should be waived or in
    the alternative that Plaintiff may possess in a separate account sufficient money, one and one-

Page 9 of  15

half times the estimated amount to be held by the Plaintiff should the Court deem the same necessary.

55. Plaintiff asserts that any parts which were removed from the Semi-trucks depreciated and impaired the value of the Semi-trucks.

56. Defendants removal of the parts constitutes a breach of the Loan.

57. Based upon the foregoing, Plaintiff is entitled to a prejudgment writ of replevin, pursuant to Rules 64A and 64B of the Utah Rules of Civil Procedure, ordering Defendants or any third party holding the same on behalf of Defendants to immediately surrender possession of the Cattle or Semi-truck parts to Plaintiff and ordering the Sanpete County Sheriff or other County Sheriff to assist Plaintiff in obtaining possession of said Cattle secured and perfected under the Loan, and further order the Defendants to disclose the location of the same if it is not in Defendants' possession at the time the Sheriff locates the Defendants, and to further order the Defendants to not take any action which would damage or hide the Cattle.

58. If any of the Cattle or Semi-truck parts secured under the Loan have been dispensed or sold to a third-party, then Defendants should be ordered to identify the specifics of the transfer and this Court should order the Sheriff to seize and require any third-party surrender the Cattle or the proceeds therefrom.

WHEREFORE Plaintiff prays for a pre-judgment writ of replevin against Defendants and John-Does 1-10 ordering that the Cattle and Semi-Truck parts be seized and requiring any third-party surrender the same or the proceeds therefrom.

## FOURTH CAUSE OF ACTION
### (WRIT OF REPLEVIN)

59. Plaintiff realleges and incorporates herein each allegation of paragraphs 1 through 58 as set forth above.

60. Defendants or any third-parties currently have possession of the Cattle or Semi-truck parts which is more particularly described in the Loan documents and in the allegations of this Complaint.

61. Given Defendants' default and Plaintiff's security interest in the Cattle, Defendants' or a third party's continued possession of the Cattle or Semi-truck parts or any portion thereof, is wrongful and improper.

62. Defendants or any third party who continue to wrongfully detain the Cattle or Semi-truck parts, or any portion thereof, is in violation of the terms of the Loan documents and applicable law.

63. Plaintiff desires to obtain possession of the Cattle Semi-truck parts, or any portion thereof, so that it may protect its rights therein, pursuant to the terms of the Loan and applicable law.

64. In the event Plaintiff is not granted a prejudgment writ of replevin from the Court, it is entitled to a post-judgment writ of replevin, issued pursuant to Rule 64B of the Utah Rules of Civil Procedure, ordering Defendants and any third party to surrender possession of the Cattle or Semi-truck parts to Plaintiff and ordering the Sanpete County Sheriff to assist Plaintiff in obtaining possession of the Cattle.

65. Plaintiff is further entitled, pending judgment, to an order enjoining Defendants or any third party from removing the Cattle or Semi-truck parts from Sanpete County, or from damaging

the same in any way, or from attempting to transfer, sell, dispose, or otherwise encumber the
same until this Court can determine each parties' respective interest in the property.

66. Finally, Plaintiff is entitled to an order requiring Defendants or any third party, as a condition
of retaining possession of the Cattle, to maintain and feed the Cattle during the pendency of
this action, and to permit Plaintiff the right to inspect the Cattle during normal business
hours.

WHEREFORE Plaintiff prays for a post-judgment writ of replevin against Defendants and John-
Does 1-10 ordering that the Cattle be seized and requiring any third-party surrender the Cattle or
the proceeds therefrom.

## FIFTH CAUSE OF ACTION
### (Order Freezing Assets)

67. Plaintiff realleges and incorporates herein each allegation of paragraphs 1 through 66 as set
forth above.

68. Defendants may currently have possession of the various Cattle or Semi-truck parts which it
is withholding from Plaintiff. Given Defendants's default and Plaintiff's security interest as
set forth herein, Defendants's or a third party's continued possession of the sameis wrongful
and improper, if it is being held on behalf of Defendants.

69. Defendants or any third party who continues to wrongfully detain the Cattle or any portion of
the Cattle as well as the Semi-Truck parts are in violation of the terms of the Loan and
applicable law.

70. Defendants and any third parties should be restrained from removing the Cattle or dispensing
with the Cattle or Semi-Truck parts until this Court can determine the rightful owner of the

Cattle, who has a valid security interest, and the first priority to said Cattle.

WHEREFORE Plaintiff prays for an order freezing all Cattle assets and restraining the sale or

disposal of any Cattle or any Semi-Truck parts still in the possession of Defendants or any third-

party John Does 1-10.

## PRAYER FOR RELIEF

A. On its First Claim for Relief, judgment in the amount to be proven at the time of trial

but believed to be in excess of Two Hundred Thirty-four Thousand Eight Hundred Twenty-three

and 01/100, ($234,823.01.) as of October 25th, 2018, plus pre- and post-judgment interest thereon

until paid in full at the agreed upon rate, plus penalty interest, plus all of Plaintiff's reasonable

attorney fees and collection costs and all commercially reasonable costs and expenses incurred by

Plaintiff in any repossession, recovery, storage, repair, sale, release or other disposition of the

collateral, as subsequently established by affidavit;

B. On its Second Claim for Relief, judgment in the amount of Two Hundred Thirty-four

Thousand Eight Hundred Twenty-three and 01/100, ($234,823.01.) as of October 25th, 2018, plus

pre- and post-judgment interest thereon until paid in full at the agreed upon rate, plus penalty

interest, plus all of Plaintiff's reasonable attorney fees and collection costs and all commercially

reasonable costs and expenses incurred by Plaintiff in any repossession, recovery, storage, repair,

sale, release or other disposition of the collateral, as subsequently established by affidavit;

C. On the Third Claim for Relief:

(i) an order requiring Defendants or any third party to immediately surrender possession

of the collateral described herein and to cooperate fully with Plaintiff and the Sanpete

County Sheriff or any other law enforcement agency in finding and gaining access to the

Page 13 of 15

cattle and Semi-truck parts, and

(ii) a prejudgment writ of replevin ordering the Sanpete County Sheriff or any other law enforcement agency to take possession of the collateral described herein and to transfer custody of the same to Plaintiff, and

(iii) an award of all expenses incurred by Plaintiff in obtaining a writ of replevin, including reasonable attorney fees and costs and reimbursement of any costs incurred by Plaintiff to obtain a bond if the Court refuses to waive the same;

D. On the Fourth Claim for Relief:

(i) an order requiring Defendants to immediately surrender possession of the collateral described herein and to cooperate fully with Plaintiff and the Sanpete County Sheriff in finding and gaining access to the cattle and the Semi-truck Parts.

(ii) a writ of replevin ordering the Sanpete County Sheriff or some other authorized law enforcement officer to take possession of the Semi-Truck parts and possession of the Cattle or any portion of the Cattle and to transfer custody of the same to Plaintiff; and

(iii) an award of all expenses incurred by Plaintiff in obtaining a writ of replevin, including reasonable attorney fees and costs and reimbursement of any costs incurred by Plaintiff to obtain a bond.

E. On the Fifth Claim for Relief and Order Freezing the Sale of any Cattle or Semi-Truck Parts

H. For such other relief as to the Court appears proper.

DATED this $\underline{31^{st}}$ day of October, 2018.

WAYMENT & JONES LAW

JUSTIN W. WAYMENT
Attorney for Plaintiff

Eric Chamberlain
Assistant Vice-President

## VERIFICATION

STATE OF UTAH          )
                       )ss:
COUNTY OF IRON         )

   Eric Chamberlain, being first duly sworn and under oath, deposes and says that he is an authorized representative of State Bank of Southern Utah, the Plaintiff in the above-entitled action, that he has read the foregoing Verified Complaint and understands the allegations thereof, and that the allegations contained therein are true and correct to the best of his knowledge, information, and belief.

Eric Chamberlain, Special Assets

SUBSCRIBED and SWORN to before me this $\underline{31^{st}}$ day of October, 2018.

Notary Public

Page 15 of 15

KEITH J. NAYLOR
NOTARY PUBLIC - STATE OF UTAH
My Comm. Exp 06/05/2021
Commission # 695378

# EXHIBIT "A"
# PROMISSARY NOTE

## PROMISSORY NOTE
### (Continued)

Loan No:                                                                                                                                         Page 2

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Utah.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**FSA DEFAULT PROVISION.** "DEFAULT SHALL ALSO EXIST IF ANY LOAN PROCEEDS ARE USED FOR A PURPOSE THAT WILL CONTRIBUTE TO EXCESSIVE EROSION OF HIGHLY ERODIBLE LAND OR TO THE CONVERSION OF WETLAND TO PRODUCE OR TO MAKE POSSIBLE THE PRODUCTION OF AN AGRICULTURAL COMMODITY, AS PROVIDED BY 7 CFR PART 12.".

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: State Bank of Southern Utah Cedar City Main Branch 377 North Main Street Cedar City, UT 84721.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

## PROMISSORY NOTE
### (Continued)

Loan No:                                                                                                      Page 2

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Utah.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**FSA DEFAULT PROVISION.** "DEFAULT SHALL ALSO EXIST IF ANY LOAN PROCEEDS ARE USED FOR A PURPOSE THAT WILL CONTRIBUTE TO EXCESSIVE EROSION OF HIGHLY ERODIBLE LAND OR TO THE CONVERSION OF WETLAND TO PRODUCE OR TO MAKE POSSIBLE THE PRODUCTION OF AN AGRICULTURAL COMMODITY, AS PROVIDED BY 7 CFR PART 12.".

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: State Bank of Southern Utah Cedar City Main Branch 377 North Main Street Cedar City, UT 84721.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

# PROMISSORY NOTE
## (Continued)

Loan No:                                                                                                    Page **3**

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

A & L TRANSPORT LLC

By: | ALLEN BEAL AKA ALLEN W BEAL |
ALLEN BEAL AKA ALLEN W BEAL, Member of A & L Transport LLC

By: | ELIZABETH BEAL |
ELIZABETH BEAL, Member of A & L Transport LLC

X | ALLEN BEAL AKA ALLEN W BEAL |
ALLEN BEAL AKA ALLEN W BEAL, Individually

X | ELIZABETH BEAL |
ELIZABETH BEAL, Individually

LaserPro, Ver. 17.4.0.023  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - MT  O:\LASERPRO\CFI\PL\D20.FC  TR-0066  PR-33

# EXHIBIT "B"
# AGRICULTURAL SECURITY AGREEMENT

*00000000000354240 3L01031420171060*

# AGRICULTURAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $324,860.00 | 03-14-2017 | 02-01-2024 | | LIV | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

Grantor: A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL
271 N 350 E
Ephraim, UT 84627-5001

Lender: State Bank of Southern Utah
Richfield Branch
14 South Main
PO Box 850
Richfield, UT 84701

THIS AGRICULTURAL SECURITY AGREEMENT dated March 14, 2017, is made and executed between A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL ("Grantor") and State Bank of Southern Utah ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement.

All Farm Products

The Collateral includes any and all farm products, including aquatic goods produced in aquacultural operations whether classified as crops or livestock, harvested crops and all processed crops, whether or not produced by Grantor, livestock, poultry, feed, seed, fertilizer, insecticides, herbicides or other agricultural chemicals and supplies. Accounts and proceeds, all accounts receivable, contract rights, cash and non-cash proceeds from the sale, exchange, collection, or disposition of any collateral. All contract rights, chattel paper, documents, accounts, general intangibles, whether now owned or hereafter acquired by Grantor, including, but not limited to, payments in cash or in kind (under any current or future estate or federal government programs), including but not limited to, governmental agricultural diversion programs, governmental agricultural systems programs, and all proceeds of the foregoing and all general intangibles.

The Collateral includes any and all of Grantor's present and future farm products, livestock, including aquatic goods produced in aquacultural operations, poultry, agricultural commodities and other farm products of every type and description, including without limitation all replacements and substitutions therefor and additions thereto, and further including without limitation any and all offspring, unborn livestock, and other products, previously, contemporaneously and/or in the future acquired by Grantor whether by purchase, exchange, accretion or otherwise, and all of Grantor's present and future inventory in any way derived or to be derived therefrom, whether held by Grantor or by others, and all documents of title, warehouse receipts, bills of lading, and other documents of every type covering all or any part of the foregoing, and all of Grantor's equipment in any way related thereto, and any and all additions thereto and substitutions and replacements therefor, and all accessories, attachments, and accessions thereto, whether added now or later, and all other products and proceeds derived or to be derived therefrom, including without limitation all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing or from any insurer, whether due to judgment, settlement or other process, and any and all present and future accounts, contract rights, chattel paper, instruments, documents and notes that may be derived from the sale or other disposition of any of the foregoing, and any rights of Grantor to collect or enforce payment thereof, as well as to enforce any guaranties of the foregoing and security therefor, and all of Grantor's present and future general intangibles in any way related or pertaining to any of the foregoing, including without limitation Grantor's books, records, files, computer disks and software, and all rights that Grantor may have with regard thereto.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL. With respect to the Collateral, Grantor represents and promises to Lender that:

Perfection of Security Interest. Grantor agrees to execute financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

## AGRICULTURAL SECURITY AGREEMENT
(Continued)

Loan No: ·                                                                                           Page 2

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for Inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Sale of Collateral.** The following provisions relate to any sale, consignment, lease, license, exchange, transfer, or other disposition of other farm products included as all or a part of the Collateral:

(1)    To induce Lender to extend the credit or other financial accommodations secured by this Agreement, Grantor represents and warrants to Lender that Grantor will sell, consign, lease, license, exchange, or transfer the Collateral only to those persons whose names and addresses have been set forth on sales schedules delivered to Lender. Each schedule shall be in such form as Lender may require, including identification of each type of Collateral.

(2)    Grantor agrees to provide the Lender a written list or schedule of the buyers, commission merchants, and selling agents to or through an individual including the entity name, contact name and address to whom or through whom the other farm products may be sold, consigned or transferred. All such schedules and notifications shall be in writing and shall be delivered to Lender not less than fourteen (14) days prior to any such sale, consignment or transfer of the other farm products. Also, the Grantor agrees to provide any updates or amendments to these schedules or lists to the Lender.

(3)    All proceeds of any sale, consignment, lease, license, exchange, transfer, or other disposition shall be made immediately available to Lender in a form jointly payable to Grantor and Lender. No provisions in this Agreement shall be interpreted to authorize any sale or disposition of Collateral unless authorized by the Lender in writing. All chattel paper, contracts, warehouse receipts, documents, and other evidences of ownership or obligations relating to the Collateral, whether issued by a co-op, grain elevator, warehouse, marketing entity, or bailee, and all accounts and other proceeds of the Collateral shall be immediately endorsed, assigned and delivered by Grantor to Lender as security for the Indebtedness. At any time before or after the occurrence of an Event of Default, Lender may collect all proceeds of the Collateral without notice to Grantor. All proceeds of the Collateral, when received by Lender, may at Lender's sole discretion be applied to the Indebtedness. Grantor grants Lender a limited power of attorney to sign or endorse Grantor's name on all writings described in this section.

(4)    Grantor acknowledges that if the other farm products are sold, consigned, or transferred to any person not listed on a schedule delivered to Lender as provided above, at least seven (7) days prior to such sale, consignment, or transfer, and if Lender has not received an accounting (including the proceeds) of such sale, consignment or transfer within ten (10) days of the sale, consignment or transfer, then under federal law, Grantor shall be subject to a fine which is the greater of $5,000 or 15% of the value of benefit received from the sale, consignment or transfer to an unlisted buyer, consignee or transferee.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor

## AGRICULTURAL SECURITY AGREEMENT
### (Continued)

Loan No:                                                                  Page 3

shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds 500.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Grantor is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness. Grantor agrees to pursue and conduct diligently Grantor's farming, agricultural and other business operations for as long as this Agreement remains in effect. Grantor further agrees that Lender may from time to time enter upon Grantor's premises for the purpose of ascertaining whether Grantor is properly and prudently conducting Grantor's farming, agricultural and other business operations. Grantor shall promptly pay when due all costs and expenses associated with Grantor's farming operations, including without limitation Farm Products /

## AGRICULTURAL SECURITY AGREEMENT
### (Continued)

Livestock.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or ability to perform Grantor's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor or the dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Utah Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Grantor hereby waives any

## AGRICULTURAL SECURITY AGREEMENT
### (Continued)

requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**FSA DEFAULT PROVISION.** "DEFAULT SHALL ALSO EXIST IF ANY LOAN PROCEEDS ARE USED FOR A PURPOSE THAT WILL CONTRIBUTE TO EXCESSIVE EROSION OF HIGHLY ERODIBLE LAND OR TO THE CONVERSION OF WETLAND TO PRODUCE OR TO MAKE POSSIBLE THE PRODUCTION OF AN AGRICULTURAL COMMODITY, AS PROVIDED BY 7 CFR PART 12.".

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Utah.

**Joint and Several Liability.** All obligations of Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or

# AGRICULTURAL SECURITY AGREEMENT
## (Continued)

Loan No:                                                                                                                Page 6

circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

Successors and Assigns. Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

Agreement. The word "Agreement" means this Agricultural Security Agreement, as this Agricultural Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Agricultural Security Agreement from time to time.

Borrower. The word "Borrower" means A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL and includes all co-makers signing the Note and all their successors and assigns.

Collateral. The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

Default. The word "Default" means the Default set forth in this Agreement in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

Grantor. The word "Grantor" means A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

Lender. The word "Lender" means State Bank of Southern Utah, its successors and assigns.

Note. The word "Note" means the Note dated March 14, 2017 and executed by A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL in the principal amount of $324,860.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGRICULTURAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 14, 2017.

# AGRICULTURAL SECURITY AGREEMENT
## (Continued)

Loan No:                                                                                    Page 7

GRANTOR:

A & L TRANSPORT LLC

By: _____         By: _____
    *signed by eLynx 2017-03-14 17:50:03 CDT*       *signed by eLynx 2017-03-14 18:00:03 CDT*
    ALLEN BEAL AKA ALLEN W BEAL               ELIZABETH BEAL
    ALLEN BEAL AKA ALLEN W BEAL, Member of A &   ELIZABETH BEAL, Member of A & L Transport LLC
    L Transport LLC

X _____             X _____
    *signed by eLynx 2017-03-14 17:50:03 CDT*       *signed by eLynx 2017-03-14 18:00:03 CDT*
    ALLEN BEAL AKA ALLEN W BEAL               ELIZABETH BEAL
    ALLEN BEAL AKA ALLEN W BEAL, Individually   ELIZABETH BEAL, Individually

LENDER:

STATE BANK OF SOUTHERN UTAH

X _____
    *signed by eLynx 2017-03-14 12:14:03 CDT*
    Layne Barney
    Layne Barney, Loan Officer

LaserPro, Ver. 17.1.0.073 Copr. D+H USA Corporation 1997, 2017. All Rights Reserved. - UT C:\HARLEYPRO\CFI\LPL\E30.FC TR-0968 PR-33

# EXHIBIT "C"
# COMMERCIAL SECURITY
# AGREEMENT

*0000000000003542403L01031420170235*

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $324,860.00 | 03-14-2017 | 02-01-2024 | | LIV | *** | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL
271 N 350 E
Ephraim, UT 84627-5001

**Lender:** State Bank of Southern Utah
Richfield Branch
14 South Main
PO Box 850
Richfield, UT 84701

**Grantor:** ALLEN BEAL AKA ALLEN W BEAL
271 N 350 E
EPHRAIM, UT 84627

THIS COMMERCIAL SECURITY AGREEMENT dated March 14, 2017, is made and executed among ALLEN BEAL AKA ALLEN W BEAL ("Grantor"); A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL ("Borrower"); and State Bank of Southern Utah ("Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

2009 KENWORTH T2000 (VIN

2009 KENWORTH T200 (VIN

2009 KENWORTH T200 (VIN

In addition, the word "Collateral" also includes all the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

CROSS-COLLATERALIZATION. In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable. However, this Agreement shall not secure any additional loans or obligations if doing so would cause such additional loan or obligation to be subject to the limitations on consumer credit extended to service members, their spouses, and their dependents as provided in 10 U.S.C. Section 987 and its implementing regulations.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

GRANTOR'S WAIVERS. Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any

## COMMERCIAL SECURITY AGREEMENT
Loan No:                                     (Continued)                                     Page 2

Borrower, without first obtaining the consent of Grantor:  (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security.  No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.**  With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.**  Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral.  Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.  This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.

**Notices to Lender.**  Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any  (1) change in Grantor's name;  (2) change in Grantor's assumed business name(s);  (3) change in the authorized signer(s);  (4) change in Grantor's principal office address;  (5) change in Grantor's principal residence;  (6) conversion of Grantor to a new or different type of business entity; or  (7) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender.  No change in Grantor's name or principal residence will take effect until after Lender has received notice.

**No Violation.**  The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**Enforceability of Collateral.**  To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.  There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.**  Except for vehicles, and except otherwise in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral at Grantor's address shown above or at such other locations as are acceptable to Lender.  If the Collateral is a vehicle, Grantor will keep the Collateral at those addresses except for routine travel.  Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following:  (1) all real property Grantor owns or is purchasing;  (2)  all real property Grantor is renting or leasing;  (3)  all storage facilities Grantor owns, rents, leases, or uses; and  (4)  all other properties where Collateral is or may be located.

**Removal of the Collateral.**  Except in the ordinary course of Grantor's business,  Grantor shall not remove the Collateral from its existing location without Lender's prior written consent.  To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Utah, without Lender's prior written consent.  Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.**  Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral.  Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender.  This includes security interests even if junior in right to the security interests granted under this Agreement.  Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition.  Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.**  Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement.  No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented.  Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.**  Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect.  Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.**  Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.**  Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.  If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral.  In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral.  Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.  Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner.  Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.**  Grantor shall comply promptly with all laws, ordinances, rules and regulations of all

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No: ʼ                                                                                                          Page 3

governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds 500.00, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the

## COMMERCIAL SECURITY AGREEMENT
(Continued)

Loan No:                                                                                                                    Page 4

remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Utah Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Grantor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**FSA DEFAULT PROVISION.** "DEFAULT SHALL ALSO EXIST IF ANY LOAN PROCEEDS ARE USED FOR A PURPOSE THAT WILL CONTRIBUTE TO EXCESSIVE EROSION OF HIGHLY ERODIBLE LAND OR TO THE CONVERSION OF WETLAND TO PRODUCE OR TO MAKE POSSIBLE THE PRODUCTION OF AN AGRICULTURAL COMMODITY, AS PROVIDED BY 7 CFR PART 12.".

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not Lender's salaried employee and whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Utah.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Unless otherwise provided by applicable law, any notice required to be given under this Agreement or required by law shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Agreement, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Loan No:                                                                                                                          Page 6

---

as Borrower's Indebtedness shall be paid in full.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

Agreement. The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

Borrower. The word "Borrower" means A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Collateral. The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement

Default. The word "Default" means the Default set forth in this Agreement in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

Grantor. The word "Grantor" means ALLEN BEAL AKA ALLEN W BEAL.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement

Lender. The word "Lender" means State Bank of Southern Utah, its successors and assigns.

Note. The word "Note" means the Note dated March 14, 2017 and executed by A & L Transport LLC, ALLEN BEAL AKA ALLEN W BEAL and ELIZABETH BEAL in the principal amount of $324,860.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MARCH 14, 2017.

GRANTOR:

X _____
ALLEN BEAL AKA ALLEN W BEAL, Individually

BORROWER:

A & L TRANSPORT LLC

By: _____        By: _____
ALLEN BEAL AKA ALLEN W BEAL, Member of A &       ELIZABETH BEAL, Member of A & L Transport LLC
L Transport LLC

X _____        X _____
ALLEN BEAL AKA ALLEN W BEAL, Individually       ELIZABETH BEAL, Individually

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Loan No:                                                                                                         Page 7

LENDER:

STATE BANK OF SOUTHERN UTAH

X _____
Layne Barney, Loan Officer

LaserPro, Ver. 17.1.0.023  Copr. D+H USA Corporation 1997, 2017.  All Rights Reserved.  - UT  C:\LASERPRO\CFI\LPL\E40.FC  TR-0005  PR-30

# EXHIBIT "D"

# UCC FINANCING STATEMENT

# CENTRAL FILING STATEMENT

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

State Bank of Southern Utah
14 South Main
PO Box 850
Richfield, UT 84701

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| A & L Transport LLC | | | | |
| OR  1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 271 N 350 E | Ephraim | UT | 84627-6001 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| BEAL | ALLEN | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 271 N 350 E | EPHRAIM | UT | 84627 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| State Bank of Southern Utah | | | | |
| OR  3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 14 South Main, PO Box 850 | Richfield | UT | 84701 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All Farm Products; whether any of the foregoing is owned now or acquired later; whether any of the foregoing is now existing or hereafter grown; all accessions, additions, replacements, and substitutions relating to any of the foregoing (including all entitlements, rights to payment, and payments, in whatever form received, including but not limited to, payments under any governmental agricultural diversion programs, governmental agricultural assistance programs, the Farm Services Agency Wheat Feed Grain Program, and any other such program of the United States Department of Agriculture, or any other general intangibles or programs; all records of any kind relating to any of the foregoing.

*EXISTING UCC # 46946320154*

| 5. ☐ Check only if applicable and check only one box. Collateral is | ☐ held in a Trust (see UCC1Ad, item 17 and instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|---|
| 6a. Check only if applicable and check only one box | | 6b. Check only if applicable and check only one box |
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien  ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
| 8. OPTIONAL FILER REFERENCE DATA: | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

D+H
1320 SW Broadway, Suite 100, Portland, OR

**State of Utah**
DEPARTMENT OF COMMERCE
Division of Corporations & Commercial Code

## Central Filing System Effective Financing Statement
## CFS-1 Supplemental Sheet

1. __A & L Transport LLC__
   Debtor Name

   __271 N 350 E, Ephraim, UT 84627-6001__
   Address                          City/State/Zip

2. __BEAL, ELIZABETH__
   Debtor Name

   __271 N 380 E, EPHRAIM, UT 84627__
   Address                          City/State/Zip

   _____
   IRS Tax I.D. No.

3. _____
   Debtor Name

   Address                          City/State/Zip

   _____
   Social Security Number

   _____
   IRS Tax I.D. No.

4. _____
   Debtor Name

   Address                          City/State/Zip

   _____
   Social Security Number

   _____
   IRS Tax I.D. No.

5. Continued Collateral Description (if needed)
   List specific farm product:        County in Utah where product will be produced:        Crop Year

   _____    _____    _____
   _____    _____    _____
   _____    _____    _____
   _____    _____    _____
   _____    _____    _____

6. Debtor Signature(s)

   _____

   _____

   EXISTING CFS

7. Authorized Representative of the Secured Party
   _Elizabeth Beal_
   Signature

   #470797201544

8. Name and address to whom the stamped copy should be returned (lawyer, assignee, etc.)

   State Bank of Southern Utah  Cedar City Main Branch
   Name

   377 North Main Street                          Cedar City,        UT        84721
   Address                                        City              State      Zip

   FREE! You may visit our Web Site to access this document and other information.

   > Mail in:   PO Box 146705
   >            Salt Lake City, Utah 84114-6705
   > Walk In:   160 East 300 South, Main Floor
   > Service Center (801) 530-4849
   > Toll Free Number:  (877) 526-3994 (Utah Residents)
   > Fax: (801) 530-6438
   > Web Site:  http://www.commerce.utah.gov

01/14

UCC Certified Search

Utah.gov Home | Utah.gov Terms of Use | Utah.gov Privacy Policy | Utah.gov Accessibility Policy | Translate Utah.gov
Copyright © 2017 State of Utah - All rights reserved.

UCC Certified Search

Effective Date: 05/13/2015
16:44:00

271 N 350 E
EPHRAIM UT 84627          EPHRAIM , UT                    84627

Certify ALL Filings for this Exact Name: BEAL, ALLEN W ($12 Fee)
Certification is only valid for Exact Debtor Name or UCC Filing Number. Certification does
not include "actual images" of Utah UCC financing statement filings. Certification will only
include the data which has been submitted into the Utah UCC database. Page example
attached. Variation in spelling of the debtor name which may include punctuation, spaces and
data errors must be individually certified.

Jurisdiction: N/A        Organization ID: N/A          Organization Type: NONE
Trust: No                Miscellaneous:

Search BES for "BEAL, ALLEN W" to access Principal Information or purchase a Certificate of
Existence

Debtor:

BEAL, ELIZABETH          ACTIVE                        exact search for "BEAL,
ANN                                                    ELIZABETH ANN"

                         Effective Date: 05/13/2015
                         16:44:00

271 N 350 E
EPHRAIM UT 84627          EPHRAIM , UT                    84627

Certify ALL Filings for this Exact Name: BEAL, ELIZABETH ANN ($12 Fee)
Certification is only valid for Exact Debtor Name or UCC Filing Number. Certification does
not include "actual images" of Utah UCC financing statement filings. Certification will only
include the data which has been submitted into the Utah UCC database. Page example
attached. Variation in spelling of the debtor name which may include punctuation, spaces and
data errors must be individually certified.

Jurisdiction: N/A        Organization ID: N/A          Organization Type: NONE
Trust: No                Miscellaneous:

Search BES for "BEAL, ELIZABETH ANN" to access Principal Information or purchase a
Certificate of Existence

Secured Party:

STATE BANK OF SOUTHERN UTAH          ACTIVE
                                     Effective Date: 05/13/2015 16:44:00

14 S MAIN ST
RICHFIELD UT 84701        RICHFIELD , UT      84701
Search BES for "STATE BANK OF SOUTHERN UTAH"

Collateral Description:

Abbreviated Collateral Description: (view full description)
ALL FARM PRODUCTS; WHETHER ANY OF THE FOREGOING IS OWNED NOW OR
ACQUIRED LATER; WHETHER ANY OF THE FOREGOING IS NOW EXISTING OR
HEREAFTER GROWN; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND
SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING (INCLUDING ALL
ENTITLEMENTS, RIGHTS TO PAYMENT, AND PAYMENTS, I

UCC Certified Search

Page 1 of 1



Filing Number 46946320154d Collateral Detail
ALL FARM PRODUCTS; WHETHER ANY OF THE FOREGOING IS OWNED NOW OR
ACQUIRED LATER; WHETHER ANY OF THE FOREGOING IS NOW EXISTING OR
HEREAFTER GROWN; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND
SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING (INCLUDING ALL
ENTITLEMENTS, RIGHTS TO PAYMENT, AND PAYMENTS, IN WHATEVER FORM
RECEIVED, INCLUDING BUT NOT LIMITED TO, PAYMENTS UNDER ANY GOVERNMENTAL
AGRICULTURAL DIVERSION PROGRAMS, GOVERNMENTAL AGRICULTURAL
ASSISTANCE PROGRAMS, THE FARM SERVICES AGENCY WHEAT FEED GRAIN
PROGRAM, AND ANY OTHER SUCH PROGRAM OF THE UNITED STATES DEPARTMENT OF
AGRICULTURE, OR ANY OTHER GENERAL INTANGIBLES OR PROGRAMS); ALL RECORDS
OF ANY KIND RELATING TO ANY OF THE FOREGOING.

Effective Date: 05/13/2015 16:44:33

Action: NONE

<< BACK

Department of Commerce Home | Division of Corporations Home | Contact Us
Utah.gov Home | Utah.gov Terms of Use | Utah.gov Privacy Policy | Utah.gov Accessibility Policy | Translate Utah.gov
Copyright © 2017 State of Utah - All rights reserved.

UCC Certified Search

Page 2 of 2

Jurisdiction: N/A        Organization ID: N/A        Organization Type: NONE
Trust: No                Miscellaneous:
Search BES for "BEAL, ALLEN W" to access Principal Information or purchase a Certificate of
Existence

Debtor:

BEAL, ANN            ACTIVE                      exact search for "BEAL, ANN
ELIZABETH                                        ELIZABETH"
                     Effective Date: 06/08/2015
                     10:19:11

271 N 350 E
EPHRAIM UT 84627     EPHRAIM , UT               84627


Jurisdiction: N/A        Organization ID: N/A        Organization Type: NONE
Trust: No                Miscellaneous:
Search BES for "BEAL, ANN ELIZABETH" to access Principal Information or purchase a
Certificate of Existence

Secured Party:

STATE BANK OF SOUTHERN UTAH            ACTIVE
                                       Effective Date: 06/08/2015 10:19:11

14 SOUTH MAIN
PO BOX 850              RICHFIELD , UT      84701
RICHFIELD UT 84701
Search BES for "STATE BANK OF SOUTHERN UTAH"

Collateral Description:

Effective Date:06/08/2015 10:19:11
Category:LIVESTOCK
Specific:CATTLE AND CALVES
Description:N/A
Crop Year:N/A
County:SANPETE
Action: ADD
Effective Date:

[ << BACK ]

# EXHIBIT 2



**TRIPLE P BRAND, LLC** 01/13          3755
435-660-1204
432 N 900 E
NEPHI, UT 84648-1364

DATE *May 20, 2018*

PAY TO THE ORDER OF  *Allen Beal*          $ *2,700.00*

*Two Thousand Seven Hundred and XX /100*          DOLLARS

Wells Fargo Bank, N.A.
Utah
wellsfargo.com

FOR  *(M) Pairs 46/39 8/6*

⑆00000⑆          ⑈18341⑈

Mountain America CU
9555<
Branch #: 0117
TELLER: 1752
Transaction #: 6358487
5/21/2018 11:25 AM
0646

MACU000751

```
Mountain America Credit Union
Ephraim Branch
620 N Main
Ephraim UT 84627
Inquiries Call:            435-283-5222

Acct XXXXXX3154          BEAL,ALLEN W
Effect: 05/21/18    Post:   05/21/18
Teller:    1752                11:15am
_____

Deposit to S50 Mystyle Checking
Amount:                       2,700.00
Seq:                          6358487

Acct XXXXXX3154
_____

Check Received                2,700.00
```

MACU000752

# EXHIBIT 3



ROYALANE CALVES LLC
NATHAN NOYES

2293

AMALGA, UT 84335

June 2, 20 18

PAY *Allen Beal*
to the order of
*Thirteen Thousand* _____ DOLLARS

$ 13,000 00/xx

CACHE VALLEY BANK
www.cachevalleybank.com

*Nathan N.*                          MP

for *10 pair*

⑈ 2293

Mountain America CU
9555<
Branch #: 0117
TELLER: 2099
Transaction #: 6834551
6/4/2018 11:40 AM
DIN:                    5768
9555<

MACU000754

```
Mountain America Credit Union
Ephraim Branch
620 N Main
Ephraim UT 84627
Inquiries Call:            435-283-5222

Acct XXXXXX3154           BEAL,ALLEN W
Effect: 06/04/18   Post:   06/04/18
Teller:   2099                11:33am
_____

Deposit to S50 Mystyle Checking
Amount:                    13,000.00
Seq:                        6834551

Acct XXXXXX3154
_____

Check Received            13,000.00
```

MACU000753

# EXHIBIT 4

**D=S**

Dale T. Smith & Sons
Meat Packing Company

## Purchase Order

Dale T Smith & Sons
12450 South Pony Express Road
P.O. Box 479
Draper, Utah 84020
(801) 571-3611

P.O. No: PI-1179-26457

To: Allen Beal

Date of Report: 07/09/2018

| Seq No. | Cow ID | Cow Weight | Price/lb ($) | Price/Cow ($) | Breed | Type | Status |
|---------|--------|-----------|--------------|---------------|-------|------|--------|
| 48 | 341821 | 681 | 1.3500 | 919.3500 | Cow | Angus | Accepted |
| 49 | 341822 | 451 | 1.2000 | 541.2000 | Cow | Angus | Accepted |
| 50 | 341823 | 512 | 1.2500 | 640.0000 | Cow | Herford | Accepted |
| 51 | 341824 | 497 | 1.2000 | 596.4000 | Cow | Angus | Accepted |
| 52 | 341825 | 529 | 1.2500 | 661.2500 | Cow | Herford | Accepted |
| 53 | 341826 | 416 | 1.2000 | 499.2000 | Cow | Angus | Accepted |
| 54 | 341827 | 644 | 1.3500 | 869.4000 | Cow | Herford | Accepted |
| 55 | 341828 | 477 | 1.2000 | 572.4000 | Cow | Herford | Accepted |
| 56 | 341829 | 688 | 1.3500 | 928.8000 | Cow | Angus | Accepted |
| 57 | 341830 | 568 | 1.2500 | 710.0000 | Cow | Angus | Accepted |
| 58 | 341831 | 448 | 1.2000 | 537.6000 | Cow | Angus | Accepted |
| 59 | 341832 | 612 | 1.3500 | 826.2000 | Cow | Herford | Accepted |
| 60 | 341833 | 491 | 1.2000 | 589.2000 | Cow | Angus | Accepted |
| 61 | 341834 | 529 | 1.2500 | 661.2500 | Cow | Angus | Accepted |
| 62 | 341835 | 437 | 1.2000 | 524.4000 | Cow | Angus | Accepted |
| 63 | 341836 | 418 | 1.2000 | 501.6000 | Cow | Angus | Accepted |
| 64 | 341837 | 512 | 1.2500 | 640.0000 | Cow | Herford | Accepted |
| 65 | 341838 | 486 | 1.2000 | 583.2000 | Cow | Angus | Accepted |
| 66 | 341839 | 460 | 1.2000 | 552.0000 | Cow | Angus | Accepted |
| 67 | 341840 | 305 | 0.9000 | 274.5000 | Cow | Angus | Accepted |

Batch ID: 26457

Item Count: 20

Total No. of Cows Paid: 20

Total Price: $12627.95

Total Weight: 10161.00

Total Condemned: 0

Total Additions: 0

Total Deductions: 0

Notes:

of 1

7/9/2018, 9:26 A

# EXHIBIT 5

## FedPayments Manager [SM] -- Funds

| | | | |
|---|---|---|---|
| Delivered to FPM: | 06/11/2018 17:32:35 | Test/Prod: | Prod |
| IMAD: | 20180611 J7B74M1C 000526 06111732 | | |
| OMAD: | 20180611 QMGFNP64 002366 06111732 | | |

BASIC INFORMATION
Sender ABA {3100}:                         307088754 COBANK, ACB
Receiver ABA {3400}:                       324079555 MOUNTAIN AMERICA F
Amount {2000}:                             28,550.00
Type/Subtype Code {1510}:                  1000 - Transfer of Funds
Business Function {3600}:                  CTR - Customer Transfer
Sender Reference {3320}:                   2018061100001088
Reference for Beneficiary {4320}:          NUFFER PMT
ORIGINATOR INFORMATION
Originator {5000}
    ID Code:                               D - DDA Account Number
    Identifier:                            00074644
    Name:                                  IDAHO AGCREDIT ACA
    Address:                               P.O. BOX 985
                                           BLACKFOOT ID 83221-0985

Originator FI {5100}
    ID Code:                               F - Fed Routing Number
    Identifier:                            307088754
    Name:                                  COBANK
    Address:                               6340 S. FIDDLERS GREEN CIRCLE
                                           GREENWOOD VILLAGE CO 80111
Originator to Beneficiary  Information {6000}
    Text:                                  PMT FOR TOD NUFFER CATTLE PURCHASE
BENEFICIARY INFORMATION
Beneficiary {4200}
    ID Code:                               D - DDA Account Number
    Identifier:                            10973154
    Name:                                  ALLEN BEAL
    Address:                               UNK
                                           EPHRAIM          UT 84627   US

Beneficiary FI {4100}
    ID Code:                               F - Fed Routing Number
    Identifier:                            324079555
    Name:                                  MOUNTAIN AMERICA FCU
    Address:
                                           WEST JORDAN        UT        US

06/11/2018 18:49:35                                                  Page 1 of 1

MACU 000765

# EXHIBIT 6



THIS CHECK IS VOID WITHOUT A LINEN PANTA INVISIBLE FLUORESCENT FIBERS · CHEMICAL REACTANTS · TONER GRIP & A WATERMARK · HOLD TO LIGHT TO VIEW

AGENCIES ON ALL
PRINCIPAL MARKETS

MEMBER NATIONAL LIVESTOCK
PRODUCERS ASSOCIATION

**821801**

PRODUCERS LIVESTOCK MARKETING ASSOCIATION
Internet Address • www.producerslivestock.com
207 South 800 West • P.O. Box 105 • Salina, Utah 84654-0105
Phone (435) 529-7487

WELLS FARGO BANK
SALT LAKE CITY, UTAH
31-297/1240

07/10/18

******6,375 DOLLARS and 70/100

******6,375.70

PAY TO
THE
ORDER OF

ALLEN BEAL
409 W 100 S

EPHRAIM UT 84627

*Kara Nielsen*

VOID AFTER 90 DAYS
PRODUCERS LIVESTOCK MARKETING ASSOCIATION
(CUSTODIAL ACCOUNT FOR SHIPPER'S PROCEEDS)

Mountain America CU
9555<
Branch #: 0117
TELLER: 3169
Transaction #: 8296035
7/19/2018 5:31 PM
DIN                    1334

MACU000755

```
Mountain America Credit Union
Ephraim Branch
620 N Main
Ephraim UT 84627
Inquiries Call:          435-283-5222

Acct XXXXXX3154          BEAL,ALLEN W
Effect: 07/19/18   Post:   07/19/18
Teller:   3169              5:24pm
_____

Deposit to S50 Mystyle Checking
Amount:                    6,375.70
Seq:                       8296035

Acct XXXXXX3154
Check hold to be released 07/20/18
200.00
Check hold to be released 07/30/18
4,800.00
Check hold to be released 08/02/18
1,375.70
due to Large Deposit
_____

Check Received           6,375.70
```

MACU000756

# EXHIBIT 7

4/17/2019

## Seller History Report

| Date | CCF | Description | Head | Weight | Amount |
|------|-----|-------------|------|--------|--------|
| 4770 | BEAL, ALLEN | | | 409 W 100 S | |
| | | | | EPHRAIM | UT 84627 |
| 01/09/2018 | -04- | COW | 4 | 5,020 | $3,147.05 |
| 01/09/2018 | -04- | COW | 2 | 2,290 | $1,247.35 |
| 01/09/2018 | -04- | COW | 1 | 1,600 | $948.00 |
| 01/09/2018 | -04- | COW | 2 | 2,230 | $1,330.00 |
| 01/09/2018 | -04- | COW | 2 | 2,085 | $1,192.35 |
| 01/09/2018 | -04- | COW | 4 | 5,020 | $3,147.05 |
| 01/09/2018 | -04- | COW | 2 | 2,290 | $1,247.35 |
| 01/09/2018 | -04- | COW | 1 | 1,600 | $948.00 |
| 01/09/2018 | -04- | COW | 2 | 2,230 | $1,330.00 |
| 01/09/2018 | -04- | COW | 2 | 2,085 | $1,192.35 |
| 02/13/2018 | -01- | STR | 2 | 655 | $1,065.75 |
| 02/13/2018 | -01- | STR | 2 | 710 | $1,195.70 |
| 02/13/2018 | -01- | STR | 4 | 1,165 | $2,281.50 |
| 02/13/2018 | -01- | STR | 1 | 365 | $474.50 |
| 02/13/2018 | -02- | HFR | 6 | 2,750 | $4,214.60 |
| 02/13/2018 | -02- | HFR | 1 | 645 | $844.95 |
| 02/13/2018 | -02- | HFR | 1 | 365 | $611.38 |
| 02/13/2018 | -02- | HFR | 6 | 2,705 | $4,462.35 |
| 02/13/2018 | -04- | COW | 1 | 945 | $588.26 |
| 02/13/2018 | -13- | BULL | 1 | 140 | $325.00 |
| 02/13/2018 | -01- | STR | 2 | 655 | $1,065.75 |
| 02/13/2018 | -01- | STR | 2 | 710 | $1,195.70 |
| 02/13/2018 | -01- | STR | 4 | 1,165 | $2,281.50 |
| 02/13/2018 | -01- | STR | 1 | 365 | $474.50 |
| 02/13/2018 | -02- | HFR | 6 | 2,750 | $4,214.60 |
| 02/13/2018 | -02- | HFR | 1 | 645 | $844.95 |
| 02/13/2018 | -02- | HFR | 1 | 365 | $611.38 |
| 02/13/2018 | -02- | HFR | 6 | 2,705 | $4,462.35 |
| 02/13/2018 | -04- | COW | 1 | 945 | $588.26 |
| 02/13/2018 | -13- | BULL | 1 | 140 | $325.00 |
| 02/27/2018 | -01- | STR | 2 | 795 | $1,253.00 |
| 02/27/2018 | -01- | STR | 1 | 455 | $762.13 |
| 02/27/2018 | -01- | STR | 1 | 250 | $525.00 |
| 02/27/2018 | -01- | STR | 2 | 445 | $1,112.50 |
| 02/27/2018 | -02- | HFR | 4 | 1,670 | $2,780.38 |
| 02/27/2018 | -02- | HFR | 1 | 435 | $728.63 |
| 02/27/2018 | -01- | STR | 2 | 795 | $1,253.00 |
| 02/27/2018 | -01- | STR | 1 | 455 | $762.13 |
| 02/27/2018 | -01- | STR | 1 | 250 | $525.00 |
| 02/27/2018 | -01- | STR | 2 | 445 | $1,112.50 |
| 02/27/2018 | -02- | HFR | 4 | 1,670 | $2,780.38 |
| 02/27/2018 | -02- | HFR | 1 | 435 | $728.63 |
| 03/06/2018 | -02- | HFR | 1 | 860 | $989.00 |
| 03/06/2018 | -04- | COW | 4 | 4,940 | $3,254.09 |
| 03/06/2018 | -04- | COW | 2 | 1,960 | $934.85 |
| 03/06/2018 | -04- | COW | 1 | 995 | $626.85 |
| 03/06/2018 | -04- | COW | 2 | 1,860 | $974.05 |
| 03/06/2018 | -04- | COW | 2 | 2,140 | $1,076.91 |
| 03/06/2018 | -02- | HFR | 1 | 860 | $989.00 |
| 03/06/2018 | -04- | COW | 4 | 4,940 | $3,254.09 |

04/17/2019

## Seller History Report

| Date | CCF | Description | Head | Weight | Amount |
|------|------|-------------|------|--------|--------|
| 03/06/2018 | -04- | COW | 2 | 1,960 | $934.85 |
| 03/06/2018 | -04- | COW | 1 | 995 | $626.85 |
| 03/06/2018 | -04- | COW | 2 | 1,860 | $974.05 |
| 03/06/2018 | -04- | COW | 2 | 2,140 | $1,076.91 |
| 03/20/2018 | -03- | BULL | 1 | 1,560 | $1,212.90 |
| 03/20/2018 | -04- | COW | 2 | 1,500 | $907.51 |
| 03/20/2018 | -04- | COW | 1 | 595 | $119.00 |
| 03/20/2018 | -04- | COW | 1 | 775 | $325.50 |
| 03/20/2018 | -03- | BULL | 1 | 1,560 | $1,212.90 |
| 03/20/2018 | -04- | COW | 2 | 1,500 | $907.51 |
| 03/20/2018 | -04- | COW | 1 | 595 | $119.00 |
| 03/20/2018 | -04- | COW | 1 | 775 | $325.50 |
| 03/27/2018 | -04- | COW | 1 | 1,210 | $719.95 |
| 03/27/2018 | -04- | COW | 1 | 1,210 | $719.95 |
| 04/17/2018 | -03- | BULL | 1 | 1,485 | $1,299.38 |
| 04/17/2018 | -03- | BULL | 1 | 1,485 | $1,299.38 |
| 04/24/2018 | -01- | STR | 1 | 760 | $1,045.00 |
| 04/24/2018 | -01- | STR | 1 | 800 | $680.00 |
| 04/24/2018 | -03- | BULL | 1 | 1,250 | $750.00 |
| 04/24/2018 | -01- | STR | 1 | 760 | $1,045.00 |
| 04/24/2018 | -01- | STR | 1 | 800 | $680.00 |
| 04/24/2018 | -03- | BULL | 1 | 1,250 | $750.00 |
| 07/10/2018 | -03- | BULL | 3 | 3,220 | $2,112.38 |
| 07/10/2018 | -04- | COW | 6 | 7,315 | $4,489.62 |
| 07/10/2018 | -03- | BULL | 3 | 3,220 | $2,112.38 |
| 07/10/2018 | -04- | COW | 6 | 7,315 | $4,489.62 |

$105,214.74

# EXHIBIT 8

The Order of the Court is stated below:
Dated:   December 04, 2018          /s/   WALLACE LEE
                     12:18:00 PM                  District Court Judge

Justin W. Wayment (7011)
Christian Jones (15873)
**WAYMENT & JONES LAW**
*Attorneys for Plaintiff*
51 East 400 North #1
P.O. Box 1808
Cedar City, UT 84721-1808
Telephone: (435) 586-3300
Fax: (435) 586-4288
Email: jwayment@waymentandjoneslaw.com
Email: cjones@waymentandjoneslaw.com

## IN THE SIXTH JUDICIAL DISTRICT COURT IN AND FOR
## SANPETE COUNTY, STATE OF UTAH

| | |
|---|---|
| STATE BANK OF SOUTHERN UTAH, A Utah Banking Corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>A&L TRANSPORT, LLC, ALLEN BEAL, ELIZABETH BEAL, and JOHN DOES 1 through 10,<br><br>                              Defendants. | **DEFAULT JUDGMENT**<br><br>**Case No. 180600092**<br><br>**Judge Wallace A. Lee** |

The Defendants, A&L TRANSPORT, LLC, ALLEN BEAL and ELIZABETH BEAL, have

failed to plead or otherwise defend in this action and default has been entered.

IT IS ORDERED that Plaintiff, STATE BANK OF SOUTHERN UTAH, INC., be awarded
Judgment against said Defendants in the amount as follows:

| | |
|---|---|
| Principal Amount | $234,823.01 |
| Attorney Fees | $2,397.50 |
| Accrued Costs to date of Judgment | $462.50 |
| TOTAL OF JUDGMENT | $237,683.01 |

Plus post-judgment interest at the contract rate of 18% per annum from the date of this Judgment

until paid, plus after-accruing costs.

IT IS HERE BY ORDERED THAT Plaintiff shall have the right to collect the fees in

accordance with Rule 73 of the Utah Rules of Civil Procedure; more specifically that this

Judgment shall be augmented in the amount of reasonable costs and attorney's fees expended in

collecting said Judgment, by execution or otherwise, as shall be established by Affidavit and

Order of the Court.

***END OF DOCUMENT***

***COURTS SIGNATURE APPEARS AT THE TOP OF FIRST PAGE***

2

# EXHIBIT 9

**This order is SIGNED.**



**Dated: April 5, 2019**

_____
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

---

*Prepared and Submitted by:*

STEVEN W. CALL (5260)
JUSTIN M. KUETTEL (16873)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone: (801) 532-1500
Email: scall@rqn.com
Email: jkuettel@rqn.com

*Attorneys for State Bank of Southern Utah*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>**ALLEN BEAL**<br><br>Debtor. | Bankruptcy No. 19-20276<br>Chapter 7<br><br>Honorable R. Kimball Mosier<br><br>(Filed via ECF) |

---

### ORDER AUTHORIZING RULE 2004 EXAMINATION OF THE DEBTOR

---

This matter came before the Court on the Ex Parte Motion of State Bank of Southern Utah for Order Authorizing Rule 2004 Examination of the Debtor (the "**Motion**"), under Fed. R. Bankr. P. 2004 and Local Rule 2004-1.  Based upon the Motion,

IT IS HEREBY ORDERED that State Bank of Southern Utah may conduct the 2004 examination of the Debtor, and it is further

ORDERED that the attendance and production of documents may be compelled pursuant to Fed. R. Bankr. P. 2004(c).

========================= END OF ORDER =========================

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April 2019, I electronically uploaded the foregoing proposed **Order Authorizing Rule 2004 Examination of the Debtor** with the Clerk of the Court using the CM/ECF system, which sent notice to the ECF users registered to receive email notice/service for this case as follows:

- **Philip G. Jones tr:** trustee@theo7.com, pjones@ecf.epiqsystems.com; pgj@trustesolutions.net

- **William P. Morrison:** willmorrison01@gmail.com, G23388@notify.cincompass.com

- **United States Trustee:** USTPRegion19.SK.ECF@usdoj.gov

*/s/ Eliza Tito*_____
Eliza Tito, legal assistant

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing **Order Authorizing Rule 2004 Examination of the Debtor** will

be effected through the Bankruptcy Noticing Center to the following parties:

- **Steven W. Call:** scall@rqn.com, docket@rqn.com; etito@rqn.com

- **Philip G. Jones tr:** trustee@theo7.com, pjones@ecf.epiqsystems.com; pgj@trustesolutions.net

- **William P. Morrison:** willmorrison01@gmail.com, G23388@notify.cincompass.com

- **United States Trustee:** USTPRegion19.SK.ECF@usdoj.gov

# EXHIBIT 10

B2540  (Form 2540 – Subpoena for Rule 2004 Examination (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ District of  UTAH _____

In re  ALLEN BEAL _____
               Debtor.

Case No. 19-20276 RKM _____

Chapter _____ 7 _____

## SUBPOENA FOR RULE 2004 EXAMINATION AND PRODUCTION OF DOCUMENTS

To:  **Allen Beal**
**409 West 100 South, Ephraim, UT 84627**

*(Name of person to whom the subpoena is directed)*

☒ *TESTIMONY:* YOU ARE COMMANDED to appear at the time, date and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| RAY QUINNEY & NEBEKER P.C.<br>36 SOUTH STATE STREET, SUITE 1400<br>SALT LAKE CITY, UTAH 84111 | APRIL 22, 2019 AT 9:30 A.M. |

The examination will be recorded by this method:   Oral examination before a certified court reporter _____

☒ *PRODUCTION:* You must produce by **9:30 a.m. on or before April 22, 2019** at the law offices of Ray Quinney & Nebeker, P.C. at 36 South State Street, Suite 1400, Salt Lake City, Utah 84111, the following documents, electronically stored information or objects, and must permit inspection, copying, testing, or sampling of the material:

### SEE EXHIBITS "A" AND "B" ATTACHED HERETO.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – rule 45 (c), relating to the place of compliance; Rule 45 (d), relating to our protection as a person subject to a subpoena; and Rule 45(e) and 45 (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *Steven Call*<br>STEVEN W. CALL<br>RAY QUINNEY & NEBEKER P.C.<br>36 South State Street, Suite 1400<br>Salt Lake City, UT  84111<br>801-532-1500 | April 5, 2019 |

*Attorneys for State Bank of Southern Utah*

---

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

1486590

### Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...
**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

### Definitions

The following definitions apply to all requests contained herein and in Exhibit "C":

The term "**cattle**" means the cattle which were purchased with the loan proceeds advanced by State Bank of Southern Utah and any offspring therefrom any other cattle in which SBSU was granted a security interest.

The term "**Debtor**" means Allen Beal or Allen W. Beal.

The term "**document**" is used in its customary broad sense and shall include, but not be limited to, every writing and record of every type and description, whether or not in the possession, custody or control of you, your agents, attorney or representatives, including, but not limited to, correspondence, including email correspondence, memoranda, interoffice communications, written notes, telegrams, minutes of directors' or committee meetings, reports, contracts, deeds, options, amendments and addenda to contracts and options, licenses, invoices, ledgers, books of account, journals, vouchers, bank checks, charge slips, account reports, receipts, working papers, charts, graphs, indexes, statistical records, stenographers' notebooks, calendars, appointment books, diaries, timesheets, data sheets, statements, papers, bids, estimates, computer printouts, tapes and records of all types, resumes, microfilms, studies, books, pamphlets, schedules, and any preliminary drafts of any of the aforementioned categories of documents, photographic prints, transparencies, moving pictures, voice recordings and every other device or medium on which or through which information of any type is transmitted, recorded or preserved and things similar to any of the foregoing, regardless of their author of origin, of any kind, however denominated.

The term "**document**" also means a copy, where the original is not in your control, Debtor's, and every copy of a document, if such copy is not an identical duplicate of the original.

The term "**communication**" means the conveyance of information between or among persons by any means.

The term "**including**" means "including but not limited to."

The terms "**or**" and "**and**" each mean "and/or."

The term "**person**" means, in the plural as well as in the singular, any person, agency, firm, partnership, joint venture, association, corporation or any other business entity or other form of legal entity.

The term "**regarding**" means (in addition to its plain dictionary meaning), concerning, relating to, referring to, describing, evidencing, supporting, substantiating, disproving, invalidating, refuting, contradicting, negating, controverting, and/or consulting.

### Instructions

The documents requested are those currently in your possession, custody, or control, actual or constructive, up to and including the date of your production, including those in the possession, custody or control of any other person acting on your behalf, including without limitation your employees, agents, accountants, auditors, attorneys, consultants or other persons.

B2540 (Form... Case 19-20276... Doc 22-2... Filed 04/05/19   Entered 04/05/19 21:15:57   Desc Exhibit
Subpoena in Connection with 2004 Examination   Page 5 of 6

As to each request, you are requested to produce the documents as they are kept in the ordinary course of business, or to produce them organized and labeled to correspond with the categories of documents identified below.

If you are unable to produce any document requested, you must provide written verification, sworn under penalty of perjury, that a diligent search and reasonable inquiry has been made in an effort to comply with the request. You shall also specify in such written verification whether the inability to comply is because the particular item or category never existed, has been destroyed, has been lost, misplaced or stolen, or has never been, or is no longer, in your possession, custody or control. You must also state, for each document or category of documents, the name and address of any person known or believed by you to have possession, custody or control of such document or category of documents.

If you object to producing an item or category of items, or part of an item or category of items, you are requested to (i) identify with particularity any documents which you are withholding based upon such objection, and (ii) set forth clearly the extent of and the specific ground(s) for the objection.

If privilege or work product protection is claimed as a ground for withholding one or more documents, in whole or in part, you are requested to state separately for each document:

    a. The nature of the privilege or other ground on which the document is withheld;

    b. The nature of the document (e.g., letter, memorandum, notes, disk);

    c. The date(s) it bears;

    d. The identity of each person sending it;

    e. The identity of each person to whom it was sent or who received or reviewed a copy (regardless of whether such fact is indicted on the documents);

    f. The identity of each person who prepared, sent, received or reviewed the document;

    g. A statement of the subject matter of the document;

    h. A precise description of the place where the document is kept; and

    i. The specific request to which the document withheld is responsive.

## EXHIBIT B

### Documents to be Produced

1.     All documents which relate to any of the SBSU collateral including the past and present location of all of the cattle which SBSU was granted a security interest in.

2.     All documents relating to the sale or transfer of any of the cattle including but not limited to: sales receipts, invoices, contracts, purchase orders, auction orders, cattle brands, weighing tickets or other similar documents.

3.       All documents reflecting communications by the Debtor in any capacity with any other person concerning the sale of the cattle.

4.       All documents reflecting the identity of any person who was involved in the sale of the cattle.

5.       All documents which reflect or relate to how payment was made for the sale and/or transfer of the cattle, including but not limited to: copies of any checks, copies of any wire transfer documents, copies of any cash receipts, copies of any other document reflecting a form of payment, or any document reflecting the receipt or acknowledgment of payment.

6.       All bank statements, deposit slips, or other documents reflecting how, where or when any sale proceeds from the sale of the cattle were deposited into a bank, credit union or other financial institution.

7.       All bank statements, checks, wire transfer documents, debit or credit charges documents, withdrawals or any other documents which reflect any debits, credits, charges or other evidence how the proceeds from the sale of the cattle were used or transferred.

8.       All documents reflecting the transfer or exchange of any assets of A&L within one year prior to the Debtor's petition for relief and the consideration or value given in exchange therefor.

9.       All documents reflecting the transfer or exchange of any assets of ALK within one year prior to the Debtor's petition for relief and the consideration or value given in exchange therefor.