STEVEN W. CALL (5260)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Email: scall@rqn.com

*Attorneys for State Bank of Southern Utah*

---

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALLEN BEAL, an individual,<br><br>     Debtor. | Bankruptcy No. 19-20276<br>(Chapter 7) |
| STATE BANK OF SOUTHERN UTAH, a Utah banking corporation,<br><br>     Plaintiff,<br><br>     vs.<br><br>ALLEN BEAL, an individual,<br><br>     Defendant. | Adversary No. 19-02043<br><br><br>Hon. R. Kimball Mosier |

---

### NOTICE OF APPEAL

---

Plaintiff and Creditor, State Bank of Southern Utah ("**State Bank**") by and through its

undersigned counsel Ray Quinney & Nebeker P.C. hereby gives notice of appeal under 28

U.S.C. §158(a)(1) and Federal Rule of Bankruptcy Procedure 8002 and 8003 from the *Order and Judgment Denying Motion to Extend Time, Granting Defendant's Motion to Dismiss and Dismissing Adversary Proceeding* [Dkt. 29] (the "*Judgment*") and *Memorandum Decision/Opinion and Order* [Dkt. 28] (the "*Memorandum Decision*") entered by the Honorable Judge R. Kimball Mosier, United States Bankruptcy Judge, on March 31, 2020, in the above-captioned adversary proceeding.   Copies of the *Judgment* and *Memorandum Decision* are attached hereto.  The time for filing this Notice of Appeal was heretofore extended for cause by the Bankruptcy Court.

The names of all parties to the *Judgment* and *Memorandum Decision* appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

**State Bank of Southern Utah (Creditor / Appellant)**

**Counsel for State Bank of Southern Utah**

Steven W. Call
Justin Kuetell
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah  84111
(801) 532-1500
E-Mail:  scall@rqn.com
E-Mail:  jkuetell@ran.com


**Allen Beal – (Debtor / Appellee)**

**Counsel for Allen Beal:**

Will Morrison
MORRISON LAW OFFICE, INC.
5957 South Redwood Road, #1
Salt Lake City, UT 84123
(801)519-9772
e-mail: willmorrison01@gmail.com

A Separate Statement of Election to have this appeal heard and decided by the United

States District Court for the District of Utah has been filed concurrently herewith.

Dated this 5th day of May, 2020.

RAY QUINNEY & NEBEKER P.C.


/s/ Steven W. Call
Steven W. Call
*Attorneys for State Bank of Southern Utah*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2020, I electronically filed the foregoing **Notice of Appeal** with the United States Bankruptcy Court for the District of Utah by using the Court's CM/ECF System. I further certify that the parties of record in this case, as identified below are registered users and will be served through the CM/ECF system:

- Will Morrison, (willmorrison01@gmail.com)
- Discharged chapter 7 trustee, Phillip Jones, (trustee@theo7.com)

I further certified that on the 5th day of May, 2020, I caused to be served a true and correct copy of the foregoing **Notice of Appeal** by first-class mail, postage prepaid, addressed as follows:

    Allen Beal
    409 W. 100 S.
    Sanpete, Utah 84627

                                      */s/Lisa Conterio, Legal Assistant*

1528048

**This order is SIGNED.**

**Dated: March 31, 2020**





**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALLEN BEAL,<br><br>        Debtor. | Bankruptcy Case No. 19-20276<br>Chapter 7 |
| STATE BANK OF SOUTHERN UTAH,<br><br>        Plaintiff,<br><br>v.<br><br>ALLEN BEAL,<br><br>        Defendant. | Hon. R. Kimball Mosier<br><br><br>Adversary Proceeding No. 19-2043 |

**ORDER AND JUDGMENT DENYING PLAINTIFF'S MOTION TO EXTEND TIME,**
**GRANTING DEFENDANT'S MOTION TO DISMISS,**
**AND DISMISSING ADVERSARY PROCEEDING**

Plaintiff State Bank of Southern Utah filed a Verified Motion for Extension of Time for

Filing Adversary Proceeding for Non-Dischargeability and Denial of Discharge Pursuant to 11

U.S.C. §§ 523 and 727 (Motion to Extend Time), seeking relief for commencing this adversary

proceeding after the deadlines established by Fed. R. Bankr. P. 4004(a) and 4007(c). Defendant

Allen Beal opposed the Motion to Extend Time and filed his Motion to Dismiss Adversary

Proceeding on the basis that the Plaintiff's complaint was untimely filed under Fed. R. Bankr. P. 4004(a) and 4007(c).

The Court conducted an evidentiary hearing on both motions. After thoroughly reviewing the evidence and assessing the credibility of witnesses; and having read the motions, memoranda, and briefs; and having heard the arguments of counsel and conducted its own independent research of applicable law, the Court issued its Memorandum Decision of even date. For the reasons set forth in the Memorandum Decision, which the Court incorporates herein by reference, the Court hereby **ORDERS:**

1. The Plaintiff's Motion to Extend Time is DENIED.

2. The Defendant's Motion to Dismiss Adversary Proceeding is GRANTED.

3. The above-captioned adversary proceeding is dismissed.

_____END OF DOCUMENT_____

_____oooOooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **ORDER AND JUDGMENT DENYING PLAINTIFF'S MOTION TO EXTEND TIME, GRANTING DEFENDANT'S MOTION TO DISMISS, AND DISMISSING ADVERSARY PROCEEDING** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Steven W. Call          scall@rqn.com, docket@rqn.com,lconterio@rqn.com
Justin Michael Kuettel   jkuettel@rqn.com, lbonnell@rqn.com
William P. Morrison      willmorrison01@gmail.com, G23388@notify.cincompass.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.

3

**This order is SIGNED.**

**Dated: March 31, 2020**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| ALLEN BEAL, | Bankruptcy Case No. 19-20276 |
| Debtor. | Chapter 7 |
| STATE BANK OF SOUTHERN UTAH, | Hon. R. Kimball Mosier |
| Plaintiff, | |
| v. | |
| ALLEN BEAL, | Adversary Proceeding No. 19-2043 |
| Defendant. | |

### MEMORANDUM DECISION

Twenty minutes before a midnight deadline, counsel for Plaintiff State Bank of Southern

Utah (SBSU) logged in to CM/ECF, the Court's case management and electronic filing system,[1]

to file a complaint against Defendant Allen Beal. Things did not go as smoothly as anticipated,

and by the time he filed the complaint, the clock had already struck twelve. SBSU has laid the

blame for this tardy filing on the electronic filing system, arguing that it was malfunctioning at

---

[1] CM/ECF is an acronym for Case Management/Electronic Case Files.

the time counsel sought to file the complaint. SBSU subsequently filed a Verified Motion for

Extension of Time for Filing Adversary Proceeding for Non-Dischargeability and Denial of

Discharge Pursuant to 11 U.S.C. §§ 523 and 727 (Motion to Extend Time) on that basis.[2] In

response, Beal filed a motion to dismiss this adversary proceeding as untimely filed.[3]

The Court conducted an evidentiary hearing on those motions. After thoroughly

reviewing the evidence and assessing the credibility of witnesses; and having read the motions,

memoranda, and briefs; and having heard the arguments of counsel and conducted its own

independent research of applicable law, the Court issues the following Memorandum Decision

denying SBSU's motion and granting Beal's motion.[4]

# I. JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to

28 U.S.C. § 1334 and § 157(b)(1). SBSU's complaint seeks to except a debt from Beal's

discharge and to deny that discharge entirely, making this a core proceeding within the definition

of 28 U.S.C. § 157(b)(2)(I) and (J), and the Court may enter a final order. Venue is appropriate

under 28 U.S.C. § 1409.

---

[2] SBSU filed duplicate motions in this adversary proceeding and the main case. This decision covers both motions and related filings, but for simplicity's sake only refers to those in the adversary proceeding.

[3] Beal had also filed a motion to strike certain facts from the Motion to Extend Time on the basis that they were hearsay or lacked foundation. Because the Court resolved the Motion to Extend Time through an evidentiary hearing, it is not necessary to consider the motion to strike.

[4] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

## II.  FINDINGS OF FACT

Beal filed his chapter 7 case, out of which this adversary proceeding arises, on January 15, 2019. His meeting of creditors under 11 U.S.C. § 341(a)[5] was scheduled for February 20, 2019, causing the 60-day deadlines to file a complaint objecting to Beal's discharge under Rule 4004(a) and to except debts from his discharge under Rule 4007(c) to fall on April 22, 2019.

Steven Call made his appearance on behalf of SBSU on February 8. After attending Beal's § 341 meeting, he filed a motion on April 5 requesting authorization to conduct a Rule 2004 exam of Beal, which the Court granted that same day. Call then issued a subpoena duces tecum and ad testificandum to Beal, requiring the production of certain documents and scheduling the 2004 exam for April 22 at 9:30 a.m.[6] Although there were some negotiations to start the exam later in the day or even move it to a different date, they were unsuccessful.[7] The parties held the 2004 exam as scheduled and concluded at approximately 3:00 p.m., which left Call with about nine hours to file the complaint.

Prior to taking Beal's 2004 exam, Call and Justin Kuettel, an attorney working with Call on the case, had begun drafting an adversary complaint against Beal. After the conclusion of the 2004 exam Call revised the complaint. Metadata on the complaint show that Call began working on it at 4:21 p.m. and that he concluded his revisions at 11:24 p.m.[8] Call then created PDF files of ten exhibits he intended to attach to the complaint. He finished that task at 11:36 p.m.,[9] and

---

[5] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.
[6] Docket. No. 22.
[7] William Morrison, Beal's counsel, had requested that the exam start at 11:00 a.m. In an email responding to Morrison's request, Call stated: "I cannot grant a later start on April 22nd because, as you know, it is the bar date for the filing of the Bank's complaint. Thus, I would be forced to work late if the examination runs late." Ex. B, at 4. In a prior email to Morrison, Call had indicated that he believed the exam could take "most of the day." Id. at 2.
[8] Ex. 1.
[9] Ex. 2. Of the ten PDF files, one had been created on April 5. Call created the remaining nine between 11:29 p.m. and 11:36 p.m. on April 22. Id.

logged in to CM/ECF at 11:40 p.m.[10] His successful login shows that CM/ECF was functioning

properly at that time.

Once in CM/ECF, Call proceeded through the steps necessary to file a complaint until he

reached a data field that requires the filer to input the amount of damages requested. Next to the

field is the following text: "Demand ($000)," which Call interpreted to require that he put in the

amount of damages with a dollar sign. That interpretation was incorrect; the demand field

requires that the filer enter an integer without a dollar sign, comma, or decimal point. The

"($000)" notation signifies not that a dollar sign should be used, but that the amount of damages

should be entered in thousands of dollars. If a filer inserts a dollar sign, comma, or decimal point

in the demand field, CM/ECF will produce an error message that reads, "You have to enter a

valid integer number." The filer will not be able to proceed to the next screen until the filer

corrects the error by entering a valid integer number.

When Call first attempted to enter the amount of damages, he used a dollar sign and a

comma.[11] He tried to advance to the next screen, but the CM/ECF program prohibited him—as it

was designed to do—and gave him an error message that he recalled as "integer missing."[12] This

demonstrates again that the CM/ECF system was functioning properly at that time. Call then

entered the amount without a comma, but received the same message. He tried entering "random

numbers," but to no avail. Crucially, Call never testified that he had removed the dollar sign

from the demand field during these attempts. The time was then about 11:45 p.m. Call kept

---

[10] Ex. 18.

[11] Hearing Transcript for Oct. 23, 2019, at 16:6-17. On cross-examination Call denied using a comma, but the Court does not find that denial credible. Call's testimony on that point on direct was lucid and carefully considered, suggesting that it was more reliable and deserving of greater weight than his denial, which was simply a terse revision of what he had said earlier. *See id.* at 51:1-9. But if that were not enough, Call plainly testified that he removed a comma before his second attempt, meaning that he had used one on the first try.

[12] *Id.* at 16:12-13.

trying, going through "many, many permutations," some with dollar signs and some without,

some with commas and some without. Each time, Call received the same error message. After

Call employed "different numbers," CM/ECF "eventually advanced" to the next page.[13]

Call successfully uploaded the complaint through CM/ECF,[14] proceeded past at least one

more page,[15] then arrived at a page titled Open Adversary Case.[16] Below that title is a notation

that a $350 fee will be assessed for filing a complaint and, beneath that, are two buttons, one

labeled "Next," the other "Clear."[17] At the time, Call perceived the title of this page as stating

that the fee had to be paid before the Court would open an adversary proceeding. This, too, was a

---

[13] Call testified that he had tried entering no number in the demand field, but CM/ECF would not advance to the next screen. *Id.* at 16:20-21. At least two Court employees testified that CM/ECF will advance to the next screen if the demand field is left blank. At first glance, these pieces of testimony stand in apparent contradiction to each other, and the Court finds it necessary to resolve the conflict.

This much is clear: Call was unfamiliar with the correct procedure for filling in the demand field. He mistakenly believed that he had to use a dollar sign when entering the amount and did so on his first attempt, along with a comma. That he received the "You have to enter a valid integer number" error message when he did so, far from showing a malfunction, instead demonstrates that CM/ECF was working properly at that time—the system was operating as it was designed. Because Call continued to receive the same error message after trying his various permutations, the Court finds that this is conclusive proof that he continued to use a dollar sign, comma, or some other prohibited punctuation mark or symbol. It would be too curious a coincidence if the CM/ECF system, which had been functioning correctly up to that point, suddenly stopped working and, just by chance, mistakenly and repeatedly issued the same error message to Call that he had previously triggered moments before by using dollar signs and commas. The only plausible explanation for the CM/ECF system producing the "You have to enter a valid integer number" error message is that Call, feverishly trying to get past the demand field, continued entering prohibited symbols and punctuation marks.

Therefore, to the extent that Call's testimony can be interpreted as asserting that he left the demand field blank but the CM/ECF system would not advance to the next screen, the Court finds that testimony not credible. Other, far more likely, explanations exist. For example, Call could have entered only a dollar sign—without numbers—in the demand field. That would be consistent with entering "no number" but failing to advance to the next screen. It is also possible that the time Call advanced to the next screen was the time when he left the field blank. But the explanation that finds the least support in the facts or in logic is that Call left the demand field blank and the CM/ECF system did not advance to the next screen. The Court therefore lends no credence to this explanation and finds no conflict between the testimony of Call and that of the Court employees.

[14] *See* Ex. 3, at Bates number HG000018. Exhibit 3 is series of screen shots captured by Call of the pages a filer goes through in CM/ECF to complete the process of filing a complaint.

[15] *See id.*, at Bates number HG000019.

[16] *See id.*, at Bates number HG000020.

[17] The $350 fee is part of the Bankruptcy Court Miscellaneous Fee Schedule, prescribed by the Judicial Conference of the United States pursuant to its authority under 28 U.S.C. § 1930(b).

misinterpretation. The title of the page means no such thing; the Court will not refuse to open an

adversary proceeding for failure to pay the $350 fee.[18] In fact, it is always the case in CM/ECF

that if a fee must be charged for filing a document, it will only be charged after the Notice of

Electronic Filing (NEF) is finished, which indicates that the filing process has been completed.[19]

Importantly, the window to pay the filing fee does not appear until several pages after the Open

Adversary Case page.

Despite that, Call testified that he attempted to pay the fee, using a credit card from his

firm, at this stage of the filing process. But he did not explain clearly how he tried to pay a fee on

a page that is not meant to accept payment. He suggested that clicking the "Next" button should

have brought up a window where he could pay the fee, but when he did so, no window appeared.

Clicking the "Next" button, however, does not create a new window at this stage of the filing

process. Call has also suggested that he tried clicking the "Next" button, but the page would not

advance. He testified that he made multiple attempts to pay the fee, but because the fee cannot be

paid from the Open Adversary Case page, the Court is unsure what he was doing. Critically,

Exhibit 3 does not include any screen shots of the pages that came after the Open Adversary

Case page.[20] Whatever Call was doing, CM/ECF eventually gave him an error message that he

remembered as "Case opening failed. Writing answer record." Gary Gfeller, the Court's Chief

---

[18] Call admitted on cross-examination that he now understands that is the case. The Court also notes that
the prior three pages in Ex. 3 also have the title "Open Adversary Case," including the page that has the
demand field. *See* Ex. 3, at Bates numbers HG000017-19. Due to the relative importance of the page at
Bates number HG000020 in this decision, the Court refers to that page alone as the Open Adversary Case
page to distinguish it from the other pages.
[19] A filer need not pay the fee at that time. CM/ECF will open a window prompting the user to pay the fee
now or defer payment until the end of the day, when the filer can pay for all fees incurred during that day.
If the filer chooses to pay now, CM/ECF will direct the filer to an external website at Pay.gov.
[20] Nor does Ex. 3 purport to be a complete sequence of the screens in the process to file a complaint.
There are admittedly screens missing from the sequence. What's more, the screen shots were not created
contemporaneously with Call's actions on April 22 and 23, but were created some time afterward. *See*
Hearing Transcript for Oct. 23, 2019, at 54:4-12.

Deputy Clerk,[21] testified that he was not familiar with this message but said that it did not make

much sense to him because it appears to be a contradiction in terms. In CM/ECF lingo, "writing

a record" requires an open case. But if an error message said that the case opening had failed, it

would be impossible to write a record.[22] The parties offered no additional evidence to elucidate

the meaning of this cryptic error message.

Pressed for time and concerned that he would not be able to file the complaint without

paying the fee, Call hit the back button on his browser three or four times, eventually returning to

the demand page, where he was again prompted to enter the amount of damages. Call was able to

advance past that page by entering "random numbers" in the demand field. Call then arrived

back at the Open Adversary Case page, where, according to his testimony, he encountered the

same difficulty in getting the fee paid. He telephoned Kuettel; Carrie Hurst, his paralegal; and

Eliza Tito, his secretary, to seek their assistance. None picked up.[23]

At this point it appears that Call conceded that he would not be able to file the complaint

before midnight, so he emailed a copy of it to Morrison. Call testified that he attempted to do so

at about 11:58 p.m., but he ran into problems. He received what he called a "strange message"

regarding whether the message had been sent,[24] but there is no mystery on this point: Call simply

---

[21] Gfeller has worked in the U.S. Courts system for twenty-seven years, primarily in the bankruptcy
courts. He has been a Clerk of Court and, for about fifteen years, an IT Manager with primary
responsibility for the CM/ECF system and its predecessor. The Court found his testimony particularly
credible on issues relating to CM/ECF.

[22] Hearing Transcript for Oct. 24, 2019, at 177:2-9, 179:24-180:6.

[23] Janene Tanner, the Court's CM/ECF Administrator, runs a CM/ECF "Help Desk" that attorneys can
call when they are experiencing filing problems. The Help Desk is quite conspicuous to filers: Five of the
screen shots that make up Exhibit 3, including the page with the demand field and the Open Adversary
Case page, show the Help Desk's phone number and hours of operation at the top of the page. Those
hours are weekdays from 8:00 a.m. to 4:30 p.m., Ex. 3, at Bates numbers HG000014, 17-20, though in
practice that often extends to 5:00 p.m. When Call ran into difficulties on April 22, the Help Desk had
long since closed for the day.
  Tanner commonly recommends that attorneys clear their browser's cache to resolve filing
problems. There is no evidence that Call attempted to clear his browser's cache during the filing process.

[24] Hearing Transcript for Oct. 23, 2019, at 20:19-24.

sent the first email to an incorrect address.[25] The second one had Morrison's correct address but

was not sent until 12:02 a.m.[26] Call then sent the ten exhibits to Morrison in two batches of five

at 12:08 and 12:09 a.m.[27] The email attaching the first batch of exhibits contained a message in

the body informing Morrison that Call had been "trying to file the Bank's complaint for 25

minutes but there were problems with the software."[28]

Call returned to CM/ECF in a renewed attempt to file the complaint. At the demand field

he testified that he tried to enter three numbers: 2000, 200, and 200000, all without a dollar sign.

According to Call, the first two numbers would not work, but CM/ECF accepted the third and

advanced to the next screen.[29] SBSU offered Exhibit 3 to support this testimony. On the page

that includes the demand field[30] there is a box dropping down from that field in which are listed

three numbers: 2000, 200, and 200000. Their presence indicates that Call's web browser had

cached them and subsequently recalled them when Call returned to the field at the time he

created the screen shot. While this would appear to support Call's testimony, it reveals

inconsistencies in the testimony instead. As Gfeller's unrefuted testimony showed, a browser

will only cache a number entered in the demand field if CM/ECF can advance to the next screen,

which means that the number was a valid integer. Therefore, the very existence of the cached

2000 and 200 numbers shows that CM/ECF did advance to the next screen when Call entered

them. In turn, that proves that CM/ECF was functioning correctly at that time. What's more,

Call's assertion that CM/ECF did not accept 2000 or 200 is contradicted by an email he wrote to

Morrison on the evening of April 23. In the course of explaining the problems he encountered in

---

[25] Ex. 4.
[26] Ex. 5.
[27] Exs. 6 & 7.
[28] Ex. 6.
[29] Hearing Transcript for Oct. 23, 2019, at 24:4-9.
[30] Ex. 3, at Bates number HG000017.

filing the complaint, Call made this statement: "After a significant amount of time and numerous attempts I inserted *an inaccurate number of 2000 and then it moved to the next window.*"[31] The Court therefore finds Call's testimony that CM/ECF did not accept the 2000 and 200 figures is not credible.

While Call advanced beyond that screen using all three numbers, the time he did so using the 200000 figure appears to be the one that led to the filing of the complaint, which occurred at 12:16 a.m. on April 23. The docket sheet for this adversary proceeding as of 9:19 a.m. that morning shows that the demand amount was initially $200,000,000,[32] which is consistent with Call entering 200000 into the demand field. Call then encountered the same problems with payment as he had before but was able to file the complaint without paying the $350 fee. He left a message with Hurst to contact the Court first thing in the morning regarding payment of the fee. She did so and paid the fee at 8:59 a.m.[33]

The Court requires that attorneys admitted to its bar register as ECF Filers.[34] In order to become an ECF Filer, an attorney must receive training on the CM/ECF program from Court staff.[35] Call received his training "many years ago" at approximately the time when the Court

---

[31] Ex. 8, at Bates number HG000025 (emphasis added). The Court also notes that this email is consistent with SBSU's Motion to Extend Time, which Call verified under oath as to the factual statements therein. In the relevant portion of the motion, Call stated that he had "inserted the random numbers of 200 or 2000 [into the demand field] and the system accepted the number and then advanced to the next window." Docket No. 6, ¶ 13. All references to "Docket No." are to documents filed in this adversary proceeding unless otherwise indicated.

[32] Ex. 17.

[33] *See* Exs. 14 & 10.

[34] Bankr. D. Ut. LBR 5005-2(b). An ECF Filer is defined as a "person who is required to or has qualified to file papers using the courts [sic] Electronic Case Filing system." Bankr. D. Ut. LBR 1001-1(d).

[35] *See* Bankr. D. Ut. LBR 5005-2(b)(2) ("Once registered and *training is complete*, the ECF Filer will receive notification of a user log-in and password.") (emphasis added). The Court's Electronic Case Filing (ECF) Registration Checklist, which prospective ECF Filers are to complete "along with [the] ECF registration form to report to the Utah Bankruptcy Court's training department when ECF training was provided," similarly states that "ECF Filers in the District of Utah must meet our training requirements prior to obtaining an ECF login and password." United States Bankruptcy Court District of Utah, *Electronic Case Filing (ECF) Registration Checklist,*

began to accept electronic filings.[36] The Court first began to accept electronic filings in 2002.[37]

Call testified that he had received some supplemental training after that, but he could not identify

on what occasions nor his most recent training session. What's more, he could not recall whether

he had been instructed on the use of dollar signs, commas, and decimal points in the demand

field.[38] The lack of specificity about past training and the inability to remember whether he had

been taught certain CM/ECF rules leads the Court to infer that at the time Call attempted to file

the complaint at issue, he had not received a CM/ECF training for a substantial number of

years.[39] Skills learned in training may not erode with time, however, if the attorney uses them

frequently enough. But the evidence showed that Call had not kept his CM/ECF skills sharp by

honing them through regular practice, at least as regards filing adversary complaints. As of April

22, 2019, Call had only attempted to file one complaint in this Court during all of 2018 and

2019, and that complaint was the one commencing this adversary proceeding.[40]

The Court's case administrators review docket entries in, and perform quality control on,

cases and adversary proceedings assigned to them. They are trained to catch certain docket entry

---

https://www.utb.uscourts.gov/sites/default/files/consent_supplement.pdf. The document also asks whether the prospective ECF Filer has "attended an ECF training class." If not, the person is directed to "contact the training department to schedule training." *Id.* While not admitted as an exhibit, the Court takes judicial notice of the checklist. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000). ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *cf. Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of agency rules and regulations." (citing *Roemer v. Board of Pub. Works of Md.*, 426 U.S. 736, 742 n.4 (1976))).

[36] Hearing Transcript for Oct. 23, 2019, at 51:10-13.

[37] *See* United States Bankruptcy Court for the District of Utah, *Administrative Order No. 1: Implementation of Electronic Filing Procedures*, https://www.utb.uscourts.gov/sites/default/files/ecf_adminord1a.pdf. The Court also takes judicial notice of this document for the reasons stated in footnote 36.

[38] The Court trains attorneys to use only numbers when entering an amount in the demand field.

[39] The Court also offers CM/ECF practical exercises for attorneys who cannot attend trainings, and one such exercise involves going through the steps to file an adversary proceeding. Hearing Transcript for Oct. 24, 2019 at 116:6-13. There was no evidence that Call requested or performed any such exercises.

[40] Hearing Transcript for Oct. 23, 2019, at 50:10-23.

errors and, with respect to standard errors, correct them in a consistent way. Common errors include a filer linking the filed document to the wrong document on the docket or the filer using the wrong event code for the filed document. Fixing errors is a common occurrence, and a case administrator may make over twenty corrections per day.

Gloria Igo, a Senior Clerk and Case Administrator who has worked at the Court for twenty-six years, was assigned to this adversary proceeding and reviewed it on the morning of April 23. She examined the complaint and discovered that the damages requested therein, totaling $168,467.69, did not match the $200,000,000 demand amount on the docket.[41] She corrected the demand amount by changing it to $168,000.[42] Igo also found that the complaint alleged a cause of action under § 727, which Call had omitted in the filing process, so she added it.[43] Call had also failed to select Morrison as Beal's attorney of record, and Igo corrected that by adding his name to the adversary proceeding.[44] These were all standard errors and standard corrections, which were reflected on the docket.

SBSU contended, though it produced no evidence to this effect, that Call had filed the complaint three times: twice on April 22 and once on April 23. SBSU believes that the April 22 filings were somehow not captured by CM/ECF or later effaced. Regarding the allegation of effacement, SBSU attempted to suggest that Igo's modifications to the adversary proceeding eliminated any reference to the April 22 filings. This speculation found no support in the evidence. In fact, it was established that case administrators cannot change the text of filed documents nor their filed date. If Call had filed the complaint on April 22, CM/ECF would have said so. Igo's standard corrections of Call's errors did not efface an April 22 filing.

---

[41] *See* Ex. 17 (listing the initial demand amount).
[42] Ex. 16, at entries made on 04/23/2019 09:25:15.
[43] *Id.*
[44] *Id.* at entry made on 04/23/2019 09:30:32.

In further support of its contention that Call had filed the complaint on April 22, SBSU introduced Exhibit 11, a case report generated by CM/ECF.[45] This case report lists the current adversary proceeding and, in the column labeled "Dates," lists two relevant pieces of information: a "filed" date of April 23, 2019, and an "entered" date of April 22, 2019. The distinction between the meaning of filed and entered is best illustrated by non-electronic or "over the counter" filings received by the clerk's office. If a party files a document shortly before the Court closes, the party will receive a stamp indicating that it was filed on that date. But the Court staff may not actually process the document and enter it into the CM/ECF system until the following business day. In this way, such a document would have a filed date one day earlier than its entered date.

Electronically filed documents are different, however. The CM/ECF system is designed so that the filed and entered dates for such documents match.[46] SBSU believes that because Exhibit 11 shows an entered date of April 22 for this adversary proceeding, that unambiguously indicates that the complaint was entered on that date. The Court disagrees because Gfeller's testimony offered a clear explanation for the discrepancy between the entered and filed dates. He noted that the entered date indicates when CM/ECF creates a context file, which captures information at the time a filer starts a transaction in the program. When the filer completes the transaction, the context file distributes that information to relevant places in the database. Gfeller further stated that a filing process commenced before midnight but completed afterward will often generate the anomaly of an entered date preceding the filed date.[47] While this is an error, it is not an error that affected Call's ability to file the complaint. Most importantly, the entered date

---

[45] Case reports list certain cases based on defined search criteria, such as cases filed within a particular date range.
[46] In any event, an entered date should not precede a filed date.
[47] Hearing Transcript for Oct. 24, 2019, at 148:20-151:3.

of April 22 does not mean that Call entered or filed the complaint on that date. He simply began

the filing process before midnight but did not finish until the next morning.

SBSU also introduced Exhibit 14 in support of its contention that Call filed the complaint

on April 22. Exhibit 14 is a transaction log generated by CM/ECF, which catalogues certain

actions that take place in the CM/ECF system. The entry of relevance to this case is the third on

the page, which states: "This is a temporary log entry to handle timing issues with docketing the

same event many times."[48] SBSU argues that this corroborates Call's testimony that he made

multiple attempts to file the complaint. But this is simply unsupported conjecture. SBSU failed to

elicit testimony supporting its belief as to what Ex. 14 proved. The clearest explanation for this

log entry came from Gfeller, who testified that it is caused by a filer reaching the NEF screen at

the end of the filing transaction then hitting the back button a few times.[49] While the NEF

determines when a document is filed with the Court, there is no indication that Call received an

NEF on April 22 or that CM/ECF failed to issue one to Call.

The Court finds that SBSU's contention that Call filed the complaint on April 22 has no

support in the evidence. There was nothing unusual about Igo's modifications, and they did not

relate in any way to the date the adversary proceeding was filed. Moreover, SBSU's arguments

regarding Exhibits 11 and 14 simply reflected their interpretation of the case report and the

transaction log. Crucially, SBSU was unable to elicit testimony regarding those documents that

would show that Call filed the complaint on April 22. SBSU's arguments on the meaning of

those documents was mere speculation.

As a final finding of fact, the Court will address Call's credibility as a general matter

because SBSU relies substantially on Call's testimony that there was a problem with the

---

[48] Ex. 14.
[49] Hearing Transcript for Oct. 24, 2019, at 151:23-153:10.

CM/ECF system to prove its case. SBSU contends that Call was the only person who testified as

to what actions he took on April 22 and 23 and that there is not comparable evidence on that

point. Moreover, SBSU asserts that Call's testimony has not been discredited, so it should be

given particular weight and credibility. SBSU also emphasized that many of the facts Call

testified to, including the times when he finished preparing the exhibits, logged in to CM/ECF,

and emailed Morrison, are clearly corroborated by the evidence. Since he testified truthfully on

those matters, SBSU implies that Call should be believed on the more contentious issues of fact,

where corroborating evidence is lacking or, at best, equivocal.

The Court disagrees. In the first place, there are instances where Call's testimony was

inconsistent with or not supported by the evidence. In addition to the examples noted above, a

prominent example can be found in the email Call wrote to Morrison on the evening of April 23.

Call informed Morrison that he had "discussed the matter with the Court's IP department and

was told that the problems and error messages that [he] received reflect that the software was not

operating correctly."[50] During his testimony, Call asserted that Russell Jones, the Court's UNIX

System Administrator, had made that statement to him, but Jones denied it during his own

testimony.[51] The Court does not mean to suggest that Call fabricated facts outright. But Call had

plainly already blamed CM/ECF for the filing difficulties before he spoke with Jones,[52] and the

most plausible explanation is that Call's confirmation bias changed what Jones said into what

Call wanted to hear.

---

[50] Ex. 8, at Bates number HG000025.

[51] Hearing Transcript for Oct. 24, 2019, at 133:13-17. Jones testified that Call reported that he had had
trouble filing the complaint and had received certain error messages. Jones responded by stating that he
commonly recommends that filers clear their cache or start over when they encounter those types of
problems. *Id.* at 132:9-133:7. He never told Call that the problems were due to malfunctions with the
CM/ECF software.

[52] *See* Ex. 6 (stating in a 12:08 a.m. email to Morrison that "there were problems with the software").

Moreover, Call's testimony was marked by notable contradictions, imprecisions, and elisions in important areas. A minor, though illustrative, example concerns his characterization of the message he received when he first tried to email the complaint to Morrison as "strange." In the context of this dispute, a "strange message" is a loaded term, carrying with it the connotation that something beyond Call's ken had gone wrong with his computer. Rather than indicating that some unknown computer process had malfunctioned, however, this message merely illustrates that Call was rushed and made a mistake.

The most prominent example occurred when he attempted to explain the trouble he had in paying the $350 fee. His initial testimony suggested that he attempted to pay the fee on the Open Adversary Case page but could not. This makes little sense because a filer does not pay a fee at that point in the filing process. Call then testified that CM/ECF would not advance when he hit the "Next" button, but Gfeller's testimony on Exhibit 14 shows that Call did get past that screen at some point, at which time he seems to have hit the back button on his browser multiple times. The lack of screen shots of the pages beyond the Open Adversary Case page substantially hamstrings the Court's ability to discern with detail what happened when Call tried to pay the fee. Call asserted that a CM/ECF malfunction caused the problems he experienced at that point the filing process. But it is simply not possible to draw that conclusion based on the evidence.

15

## III.   CONCLUSIONS OF LAW

*"Courts used to say that a single day's delay can cost a litigant valuable rights. With e-filing, one hour's or even a minute's delay can cost a litigant valuable rights. A prudent litigant or lawyer must allow time for difficulties on the filer's end."*[53]

### A. SBSU's Motion to Extend Time

Although SBSU's Motion to Extend Time initially asked for an extension of the deadlines under Rules 4004(a) and 4007(c), at the evidentiary hearing SBSU pursued a position not taken in that motion—i.e., that it filed the complaint timely on April 22. While the Motion to Extend Time is premised on the argument that a CM/ECF malfunction prohibited SBSU's counsel from timely filing the complaint, the contention that SBSU filed the complaint on April 22 is based on a different type of error, asserting that CM/ECF failed to properly register or document the initial filing of the complaint. The Court assigns SBSU, as the movant, the burden to prove that the CM/ECF system malfunctioned in the way it alleges. SBSU must make that showing by a preponderance of the evidence, the standard commonly applicable in civil actions.[54]

The Court concludes that SBSU failed to carry its burden. It is undisputed that April 22 was the deadline for SBSU to file its complaint against Beal and, since SBSU's counsel is an ECF Filer, SBSU had until midnight Mountain Daylight Time to file it.[55] The evidence plainly shows, however, that SBSU filed its complaint at 12:16 a.m. on April 23. None of SBSU's exhibits, including the case report or the transaction log, show that there was an earlier filing that

---

[53] *Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 665 (7th Cir. 2012) (citation omitted).

[54] *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'" (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–390 (1983))).

[55] *See* Fed. R. Bankr. P. 9006(a)(4)(A) ("[T]he last day ends: for electronic filing, at midnight in the court's time zone.").

16

CM/ECF failed to recognize or record. The Court concludes that SBSU did not file its complaint until April 23.

The Court will now turn to SBSU's arguments why, despite an untimely filing, the deadlines to file its complaint should be extended. SBSU makes four principal contentions. First, under Rule 9006(b)(1), it can show that its failure to timely file the complaint was the result of excusable neglect. Second, the CM/ECF malfunction made the clerk's office inaccessible within the meaning of Rule 9006(a)(3). Third, Local Rule 5005-2(g) permits relief to filers who experience a technical failure of the CM/ECF system. Fourth, the Court should exercise its equitable powers under § 105(a) to grant relief. The Court will address these arguments in turn.

### 1. Excusable Neglect and Fed. R. Bankr. P. 4004 and 4007 [56]

Rules 4004(a) and 4007(c) require that complaints objecting to a debtor's discharge under § 727(a) or to the discharge of particular debts under § 523(a), respectively, be filed within sixty days after the date first set for the § 341 meeting. The Tenth Circuit has "strictly construed" these deadlines,[57] and extending them is available only in limited and well-defined circumstances. While Rule 9006(b)(1) generally permits extension of lapsed deadlines under the Federal Rules of Bankruptcy Procedure "on motion made after the expiration of the specified period . . . where the failure to act was the result of excusable neglect," Rule 9006(b)(3) expressly precludes its application to the deadlines in Rules 4004(a) and 4007(c). Instead, the Court can only extend those deadlines "to the extent and under the conditions stated" in Rules 4004(a) and 4007(c).[58] Neither of those rules allows for extension on the basis of excusable neglect.[59] SBSU's request to

---

[56] SBSU appears to have abandoned this ground for relief in its reply. *See* Docket No. 15. The Court addresses it on the merits for the sake of clarity.

[57] *Themy v. Yu (In re Themy)*, 6 F.3d 688, 689 (10th Cir. 1993).

[58] Fed. R. Bankr. P. 9006(b)(1), (b)(3).

[59] *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Tatum (In re Tatum)*, 60 B.R. 335, 337 (Bankr. D. Colo. 1986) ("[T]he operation of [Rules 4004(a), 4007(c), 9006(b)(1), and 9006(b)(3)] eliminates the

extend the deadline for this reason is therefore unavailing. As a consequence, the Court need not

reach the issue of whether the circumstances surrounding SBSU's failure to act constitute

excusable neglect.

Moreover, SBSU cannot extend the applicable deadlines under the conditions stated in

those rules.[60] Rule 4004(b) provides for extension of the Rule 4004(a) 60-day deadline either by

motion before the expiration of the deadline, or by motion after the expiration and before the

debtor receives a discharge if "(A) the objection is based on facts that, if learned after the

discharge, would provide a basis for revocation under § 727 of the Code, and (B) the movant did

not have knowledge of those facts in time to permit an objection."[61] Here, the Rule 4004(a)

deadline expired on April 22, 2019, and SBSU filed its Motion to Extend Time on May 10, so

SBSU cannot comply with Rule 4004(b)(1). Nor can it satisfy the requirements of Rule

4004(b)(2). Although at the time SBSU filed its motion Beal had not yet received his discharge,

it is plain that SBSU knew the facts that form the basis of its § 727 claim against Beal "in time to

permit an objection" to his discharge. The reason is simple—Call attempted to file the complaint

containing SBSU's § 727 claim prior to the expiration of the Rule 4004(a) deadline. Because

Rule 4004(b) is unavailing to SBSU, the Court will deny its request to extend the Rule 4004(a)

deadline.

---

concept of 'excusable neglect' as a basis for expanding the time to object." (citations omitted)); *see also*
*In re Duncan*, 125 B.R. 247, 253 (Bankr. W.D. Mo. 1991) ("For purposes of obtaining an extension of
time to file a complaint objecting to discharge under § 727 or dischargeability under § 523 after the 60[-
]day period in Rules 4004(a) and 4007[(c)] have run, the standard of excusable neglect no longer
applies.").
[60] Although SBSU did not seek relief under Rules 4004 and 4007 in the Motion to Extend Time, it raised
that legal argument at the evidentiary hearing, so the Court addresses it.
[61] Fed. R. Bankr. P. 4004(b).

In contrast to Rule 4004, Rule 4007(c) only allows for an extension of the 60-day deadline upon motion made prior to the expiration of the time period.[62] The Rule 4007(c) deadline expired on April 22, 2019, and SBSU filed its Motion to Extend Time on May 10. Because it was untimely, the Court will also deny SBSU's request to extend the Rule 4007(c) deadline.

### 2. Fed. R. Bankr. P. 9006(a)(3)

SBSU also seeks relief under Fed. R. Bankr. P. 9006(a)(3), which provides in relevant part: "Unless the court orders otherwise, if the clerk's office is inaccessible . . . then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Traditionally, Rule 9006(a)(3) and its word-for-word analogue, Rule 6(a)(3), were limited "to situations in which the courthouse is physically inaccessible."[63] Inaccessibility referred to "weather or other conditions" that would cause a court to close.[64] For example, when the U.S. Bankruptcy Court in Chicago flooded on April 13, 1992, the court closed and extended the deadlines that fell on that day to the following day.[65]

The definition of inaccessibility broadened with the advent of electronic filing. Rule 9006(a)(3) was amended to recognize that inaccessibility can encompass malfunctions of a court's electronic filing system:

> The text of the rule no longer refers to "weather or other conditions" as the reason for the inaccessibility of the clerk's office. The reference to "weather" was deleted from the text to underscore that inaccessibility can occur for reasons unrelated to weather, such as an outage of the electronic filing system.[66]

---

[62] Fed. R. Bankr. P. 4007(c).

[63] *In re Buckskin Realty Inc.*, 525 B.R. 4, 11 (Bankr. E.D.N.Y. 2015) (collecting cases).

[64] Fed R. Bankr. P. 9006 advisory committee's note to 2009 amendment; *see also Hotel Syracuse, Inc. v. City of Syracuse Indus. Dev. Agency (In re Hotel Syracuse, Inc.)*, 154 B.R. 13, 18 (N.D.N.Y. 1993) ("In cases where the courts have chosen to extend a filing deadline because of inclement weather, they have done so only when weather has caused the clerk's office to close.") (citation omitted).

[65] *Lewis v. Richards (In re Richards)*, 148 B.R. 548, 549-50 (Bankr. N.D. Ill. 1993).

[66] Fed. R. Bankr. P. 9006 advisory committee's note to 2009 amendment.

The advisory committee note recognizes that Rule 9006(a)(3) does not define inaccessibility, leaving it to the courts to develop the concept through case law.[67] The note also acknowledges that "many local provisions address inaccessibility for purposes of electronic filing."[68] This Court has enacted such a provision—Local Rule 5005-2(g)—which deals with technical failures and is "essentially a more specific derivation of Rule 9006(a)(3)."[69] Since Local Rule 5005-2(g) is specifically crafted to address the issue raised by SBSU and since satisfaction of its requirements will necessarily constitute inaccessibility under Rule 9006(a)(3), the Court will address SBSU's argument in the context of the more specific provision.

### 3. Local Rule 5005-2(g)

SBSU contends that it should receive relief under Local Rule 5005-2(g) because its counsel encountered a technical failure when, as he phrased it in closing argument, "he could not get the software to work properly."[70] Local Rule 5005-2(g) provides that "[a]n ECF Filer or other party whose filing is made untimely as the result of a technical failure *by the court* may seek appropriate relief from the court."[71] This rule requires a party seeking relief to establish three elements: (1) the existence of a technical failure, (2) the failure was committed by the Court, and (3) the failure caused the party's untimely filing. "[F]or a party to obtain relief pursuant to [this rule], it must establish that, but for the court-caused technical problem, it would

---

[67] *Id.*
[68] *Id.* (citing D. Kan. LBR 5005.1, Appendix 1-01(XI)).
[69] *Tiffany & O'Shea, LLC v. Schrag (In re Schrag)*, 464 B.R. 909, 917 (D. Or. 2011) (construing a substantially similar provision in the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Oregon). As a specific derivation of Rule 9006(a)(3), Local Rule 5005-2(g) is consistent with, but not duplicative of, Rule 9006(a)(3), thereby complying with Rule 9029(a)(1). Fed. R. Bankr. P. 9029(a)(1).
[70] Hearing Transcript for Oct. 24, 2019, at 196:22.
[71] Bankr. D. Ut. LBR 5005-2(g) (emphasis added).

20

have completed the filing on time."[72] SBSU must show these elements by a preponderance of the

evidence.

SBSU has not carried its burden with respect to any of the elements. First, there is no

evidence of a technical failure.[73] While the Local Rules do not define the term, it can be

described as a malfunction of hardware, software, or similar item of technology.[74] It does not

encompass what could be termed non-technical forms of user error, such as a lack of familiarity

with CM/ECF that causes a filer to make missteps in the filing process or simply to progress

through it more slowly than anticipated.

The evidence showed that CM/ECF was functioning properly, and Call reported no

problems with his computer, browser, or Internet connection. One of the chief problems for

SBSU regarding the allegation of a technical failure is that, even under the version of the facts

most favorable to SBSU, there were interstitial periods when CM/ECF was working properly.

Call logged in normally and reported no problems until he reached the page with the demand

field. When he used a dollar sign and comma on his first attempted to enter the demand amount,

CM/ECF functioned correctly and displayed the "You have to enter a valid integer number" error

message. SBSU's version of events has it that CM/ECF malfunctioned immediately thereafter.

The Court disagrees. The evidence showed that the most likely explanation for Call's inability to

---

[72] *Schrag*, 464 B.R. at 916.

[73] This necessarily means that the second and third elements cannot be satisfied.

[74] By itself, the term technical failure plainly encompasses failures by filers and by the Court. But the
second element of Local Rule 5005-2(g), requiring that the failure be committed by the Court, precludes
relief under that rule where the failure was caused by the filer. This is necessary to make Local Rule
5005-2(g) consistent with Rule 9006(a)(3). Case law interpreting inaccessibility states that "[p]roblems
occurring in counsel's office, such as a poor Internet connection or a hardware problem, will not excuse a
[party's] untimely filing. It is incumbent on [that party] to show that the clerk's office was subject to a
CM/ECF failure." *In re Sands*, 328 B.R. 614, 619 (Bankr. N.D.N.Y. 2005); *see also Golden v. Gibrick (In
re Gibrick)*, 561 B.R. 470, 476 (Bankr. N.D. Ill. 2016) ("[T]he clerk's office is not inaccessible, and the
filing deadline is not extended, if the filer's own computer or connectivity problems are to blame.")
(citations omitted).

21

advance beyond the demand field page was that he was entering dollar signs, commas, or other

prohibited symbols and punctuation marks that would cause CM/ECF to issue an error message.

In other words, CM/ECF worked correctly.

What's more, Call testified that he was able to upload his complaint to CM/ECF and,

though it is not a complete series of screens in the process to file a complaint, Exhibit 3 shows

that he proceeded through at least one more screen before reaching the Open Adversary Case

page. This again evinces that CM/ECF was running as it was supposed to. SBSU introduced no

evidence that a CM/ECF malfunction would manifest itself in such rapid toggling between

periods of functionality and error. It would be an odd coincidence indeed for CM/ECF to run

uneventfully when Call was performing the tasks that he could accomplish with little trouble,

only to malfunction precisely at the time when he had to undertake the filing functions that gave

him difficulties. Rather than concluding that CM/ECF conked out intermittently during just those

times, but resumed normal operation afterwards, the far more likely explanation is that the

supposed technical failures of CM/ECF were in fact user errors committed by Call.

There is no evidence that any of the problems Call faced on April 22 and 23 were

technical failures. For that reason, the Court concludes there is no basis to grant relief under

Local Rule 5005-2(g). As a result, the clerk's office was accessible within the meaning of Rule

9006(a)(3), and the Court will deny relief under that rule as well.

### 4. Section 105(a)

SBSU has also argued that the Court may use its equitable powers under § 105(a) to

extend the deadline where the Court's actions have caused a party's failure to miss a deadline. In

support of that argument, SBSU cites to *Themy*. In that case, the bankruptcy court sent out a

notice advising creditors of the date on which a debtor's continued § 341 meeting would be

conducted. As part of that notice, the Court extended the deadlines under Rules 4004(a) and

4007(c) even though no party had requested such an extension. When a creditor filed a §§ 523

and 727 complaint against the debtor one day before the extended deadline, the debtor moved to

dismiss it as untimely. "The bankruptcy court denied the motion to dismiss, holding that a

creditor is entitled to rely on information sent out by the clerk's office even though it is contrary

to the rules when it leads him to defer action otherwise required."[75] The district court and Tenth

Circuit affirmed. The Tenth Circuit held that "[a] court has the inherent equitable power to

correct its own mistakes," which includes "allow[ing] an out-of-time filing when [a] creditor

relies upon a bankruptcy court notice setting an incorrect deadline."[76]

It goes without saying that the facts of *Themy* are quite different from the ones in this

case. Here, the Court did not "affirmatively mislead[] [a] creditor as to a deadline."[77] Nor did the

Court make a mistake that required correcting. To the extent that SBSU argues that the alleged

CM/ECF malfunction constitutes such a mistake, the Court disagrees. There was no CM/ECF

malfunction in this case. As a general matter, however, it is unnecessary to resort to § 105(a) to

resolve CM/ECF malfunctions when parties have resort to Rule 9006(a)(3) and Local Rule 5005-

2(g). Since SBSU has not prevailed under those rules, the Court will not effectively relax their

standards by granting relief under § 105(a) on the basis of an alleged mistake.

SBSU advances three additional arguments that invoke the Court's equitable powers

under § 105(a): (1) Beal would suffer no prejudice if the filing deadlines were extended, (2)

SBSU's counsel was diligent in attempting to file the complaint, and (3) the CM/ECF program is

difficult to navigate and not user-friendly. As an initial matter, the Court will decline to hear any

---

[75] *Themy*, 6 F.3d at 689.
[76] *Id.* at 689-90.
[77] *Id.* at 690.

of these arguments because they represent a patent end-run around the prohibition against

excusable neglect in this context. Each of these arguments invokes one or more of the factors

used in determining whether excusable neglect exists. Those factors include: "[1] the danger of

prejudice to the opposing party, [2] the length of the delay and its potential impact on judicial

proceedings, [3] the reason for the delay, including whether it was within the reasonable control

of the movant, and [4] whether the movant acted in good faith."[78] In addition, "fault in the delay

remains a very important factor—perhaps the most important single factor—in determining

whether neglect is excusable."[79]

By accepting any of these arguments, the Court necessarily makes, under the guise of

§ 105(a), the very conclusion that Rule 9006(b)(3) precludes it from reaching. The Court will not

contravene the express text of a federal bankruptcy rule. Moreover, the Court does not believe

that any of these arguments are compelling, and it will also address them in turn and deny them

on the merits.

### a. Prejudice to Beal

SBSU's argument that Beal would suffer no prejudice by extending the filing deadlines

focuses on the relatively short length of time by which it missed the deadline. Its reply notes that

a "17[-]minute delay in filing caused no prejudice to [Beal]."[80] The Court disagrees. Beal has

already suffered prejudice as a result of SBSU's delay in filing. His discharge has been delayed,

and he has had to incur attorney's fees in this dispute. But the more substantial prejudice to Beal

would occur if the Court extended the strictly-construed filing deadlines. The discharge of Beal's

---

[78] *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'Ship*, 507 U.S. 380, 395 (1993)).

[79] *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)).

[80] Docket No. 15, at 14.

debt to SBSU, and indeed his entire discharge, would be in jeopardy on the basis of an untimely-filed complaint. The Court concludes that extending the deadlines would greatly prejudice Beal.

### b. Diligence of SBSU's Counsel

SBSU has argued that the diligence of its counsel justifies an extension of the filing deadlines. It notes that Call worked on the complaint during the afternoon and into the evening of April 22, that he had it and the exhibits ready to file, and that he logged in with twenty minutes to accomplish the task. SBSU also notes that when Call ran into filing difficulties, he emailed the complaint and exhibits to Morrison, then contacted the Court when it opened in the morning. The Court has no disagreement with those facts. The Court also recognizes that circumstances occasionally force attorneys up against a looming deadline. But these facts would be insufficient to extend the deadlines under Rules 4004(a) and 4007(c).

### c. The User-Friendliness of the CM/ECF System

SBSU has also argued that it should receive relief essentially because the CM/ECF system is misleading, confusing, and not user-friendly. In particular, SBSU contends that the "normal course of interpretation on Internet use would typically" view the ($000) notation next to the demand field as requiring that a filer insert "$000" within that field. In the first place, SBSU offered no evidence on what the "normal course of interpretation on Internet use" means and whether it is an actual standard. Moreover, even if it had offered such evidence, SBSU has provided no authority on why it should apply to an electronic filing program promulgated by the federal government that has its own rules regarding how filers must use it.

To be clear, this is not an argument that CM/ECF malfunctioned, but rather, even if it worked properly, that SBSU should still receive relief from the deadlines under Rules 4004(a)

and 4007(c) because CM/ECF is perplexing for someone who is not familiar with navigating it.[81]

In particular, SBSU stated that it is "overwhelming" and "an effort to keep up with technology

these days." The Court might be more inclined to entertain such an argument if it did not offer

regular CM/ECF training, a practical exercise on filing a complaint, and a CM/ECF Help Desk

during normal Court hours. Call failed to maintain his CM/ECF skills through training or regular

use, then put those skills to a trial by fire in attempting to file a complaint with twenty minutes to

spare at a time when he had neither the assistance of the Court nor his own staff.

The Court will not grant relief based on this argument. The CM/ECF system may be

confusing in some respects, but that is why courts around the country offer training. The Court

will not accept counsel's unfamiliarity with the CM/ECF system as an excuse to vitiate the

strictly-construed deadlines of Rules 4004(a) and 4007(c).

**B. Beal's Motion to Dismiss**

As the Supreme Court has stated Rules 4004(a) and 4007(c) are claim-processing rules,

and SBSU's failure to meet the deadlines contained in them does not affect the Court's

jurisdiction over its claims.[82] But those rules do provide "an affirmative defense to a complaint

filed outside" their time limits.[83] Here, Beal has asserted that affirmative defense under Rule

12(b)(6) in his motion to dismiss.[84] While affirmative defenses are generally "not argued on a

motion to dismiss, there are exceptions."[85] One commonly cited exception is the defense of

statute of limitations, whose elements—principally relevant dates—may be admitted in a

---

[81] SBSU also bemoaned the lack of a notice in the CM/ECF system alerting users to try clearing their browser's cache if they encounter difficulty filing.

[82] *Kontrick v. Ryan*, 540 U.S. 443, 453-54 (2004) (addressing Rule 4004).

[83] *Id.* at 456.

[84] The Defendant's assertions in that motion that the untimeliness of SBSU's complaint deprives this Court of jurisdiction to consider it are incorrect in light of *Kontrick*.

[85] *Vigil v. Doe*, 405 F. Supp. 3d 1058, 1067 (D.N.M. 2019) (citing Fed. R. Civ. P. 8(c)).

complaint.[86] And the Tenth Circuit has endorsed "Rule 12(b)(6) [as] a proper vehicle for

dismissing a complaint that, on its face, indicates the existence of an affirmative defense."[87]

   In this case, the parties agreed that SBSU's Motion to Extend Time and Beal's motion to

dismiss are opposite sides of the same coin and that the Court could consolidate the motions for

purposes of the evidentiary hearing. Having concluded that SBSU filed its complaint out of time

and that the tardy filing was not the result of a technical failure or anything that could be

described as rendering the clerk's office inaccessible, the only thing left is to grant Beal's motion

to dismiss.


## IV. CONCLUSION

   This is a regrettable state of affairs. At the eleventh hour and harried by an imminent

deadline, SBSU's counsel made a desperate and frantic attempt to file the complaint by

navigating a filing system whose finer points became stumbling blocks, which caused him to

narrowly miss the deadline. In the end, he simply failed to "allow time for difficulties" in

filing.[88]

   While the consequences for missing a filing deadline can be harsh, the Tenth Circuit has

stood by them in analogous contexts.[89] Courts must enforce the language of the applicable rule

---

[86] *E.g.*, *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations [in the complaint] show that relief is
barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a
claim; that does not make the statute of limitations any less an affirmative defense." (citing Fed. R. Civ.
P. 8(c))); *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) ("A statute of
limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the
complaint make clear that the right sued upon has been extinguished." (citation and internal quotation
marks omitted)).
[87] *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n.3 (10th Cir. 1999) (citations omitted),
*overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).
[88] *Justice*, 682 F.3d at 665 (citation omitted).
[89] *See Jones v. Arross*, 9 F.3d 79, 81 (10th Cir. 1993) (holding, despite the "seeming harshness of [the]
result," that Rule 9006(b)(3) denies the "excusable neglect exception" to a creditor who attempted to file
a late proof of claim after the bar date had run).

or statute, despite a harsh result.[90] SBSU's complaint was tardily filed, and the Court finds no

basis to extend the time to file it under any of the theories proposed by SBSU. The Court will

therefore deny SBSU's Motion to Extend and grant Beal's motion to dismiss.

_____END OF DOCUMENT_____

---

[90] *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, ----, 135 S.Ct. 2158, 2169 (2015) ("'Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding,' and that is no less true in bankruptcy than it is elsewhere." (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 538, (2004))).

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Steven W. Call          scall@rqn.com, docket@rqn.com,lconterio@rqn.com
Justin Michael Kuettel   jkuettel@rqn.com, lbonnell@rqn.com
William P. Morrison      willmorrison01@gmail.com, G23388@notify.cincompass.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

• None.

STEVEN W. CALL (5260)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone: (801) 532-1500
Email: scall@rqn.com
          jkuettel@rqn.com

*Attorneys for State Bank of Southern Utah*

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALLEN BEAL, an individual,<br><br>    Debtor. | Bankruptcy No. 19-20276<br>(Chapter 7) |
| STATE BANK OF SOUTHERN UTAH, a Utah banking corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>ALLEN BEAL, an individual,<br><br>    Defendant. | Adversary No. 19-02043<br><br><br>Hon. R. Kimball Mosier |

### STATEMENT OF ELECTION

On  May  5,  2020,  Counter-Plaintiff  State  Bank  of  Southern  Utah,  a  Utah  banking

corporation,  ("**State Bank**")  by  and  through  its  undersigned  counsel,  Ray  Quinney  &  Nebeker

P.C., filed its Notice of Appeal of the Bankruptcy Court's *Order and Judgment Denying Motion to Extend Time, Granting Defendant's Motion to Dismiss and Dismissing Adversary Proceeding* [Dkt. 29] (the "*Judgment*") and *Memorandum Decision/Opinion and Order* [Dkt. 28] (the "*Memorandum Decision*") entered by the Honorable Judge R. Kimball Mosier, United States Bankruptcy Judge, on March 31, 2020, in the above-captioned adversary proceeding.  Copies of the *Judgment* and *Memorandum Decision* were attached to the Notice of Appeal.

Pursuant to 28 U.S.C. § 158(c)(1)(A), Federal Rule of Bankruptcy Procedure 8001(e)(1), and DUCivR 83-7.9, State Bank hereby elects to have its appeal of the *Judgment* and *Memorandum Decision* heard and decided by the United States District Court for the District of Utah.

Dated this 5th day of May 2020

RAY QUINNEY & NEBEKER P.C.


/s/ *Steven W. Call*
Steven W. Call
*Attorneys for State Bank of Southern Utah*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2020, I electronically filed the foregoing

**Statement of Election** with the United States Bankruptcy Court for the District of Utah by using

the Court's CM/ECF System. I further certify that the parties of record in this case, as identified

below are registered users and will be served through the CM/ECF system:

- Will Morrison, (willmorrison01@gmail.com)
- Discharged chapter 7 trustee, Phillip Jones, (trustee@theo7.com)

I further certified that on the 5th day of May, 2020, I caused to be served a true and

correct copy of the foregoing Statement of Election by first-class mail, postage prepaid,

addressed as follows:

> Allen Beal
> 409 W. 100 S.
> Sanpete, Utah 84627

*/s/Lisa Conterio, Legal Assistant*

1528329