# ORIGINAL

IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>ALLEN BEAL,<br><br>     Debtor.<br>--------------------------<br>STATE BANK OF SOUTHERN UTAH, a Utah banking corporation,<br><br>     Plaintiff<br><br>vs.<br><br>ALLEN BEAL,<br><br>     Defendant/Debtor. | ) <br>) <br>) Evidentiary Hearing<br>) on Motion to Extend<br>) Time for Filing<br>) Adversary Proceeding,<br>) and Motion to Strike<br>) <br>) Case No. 19-20276<br>) <br>) Volume 1<br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

October 23, 2019 * 2:03 p.m.

OFFICIAL TRANSCRIPT OF ELECTRONIC RECORDING

Reporter:  Dawn M. Perry, CSR

236 SOUTH 300 EAST
SALT LAKE CITY, UT 84111

WWW.CITICOURT.COM

**CITICOURT**
THE REPORTING GROUP

801-532-3441
FAX: 801-532-3414

INFO@CITICOURT.COM

109

```
1                    A P P E A R A N C E S

2    FOR THE DEFENDANT/DEBTOR:

3             Will Morrison
              Attorney at Law
4             Morrison Law Office
              5957 S. Redwood Road
5             Suite 101
              Salt Lake City, Utah  84123
6             (801) 519-9772
              willmorrison01@gmail.com
7
     FOR THE PLAINTIFF:
8
              Steven W. Call
9             Justin M. Kuettel
              Attorneys at Law
10            Ray, Quinney & Nebeker
              36 S. State Street
11            Suite 1400
              Salt Lake City, Utah  84111
12            (801) 532-1500
              (801) 532-7543 (fax)
13            scall@rqn.com
              jkuettel@rqn.com
14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                     I N D E X

 2                                                 PAGE

 3    STEVEN W. CALL

 4    Direct Examination by Mr. Kuettel              8

 5    Cross-Examination by Mr. Morrison             47

 6    Redirect Examination by Mr. Kuettel           69

 7    GLORIA IGO

 8    Direct Examination by Mr. Call                72

 9    Cross-Examination by Mr. Morrison             97

10

11                      * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                        E X H I B I T S

 2

 3   NO.                  DESCRIPTION              RECEIVED

 4
     B     Series of e-mails                         61
 5
     1     Metadata                                  11
 6
     2     Screenshots of exhibits                   14
 7
     3     Screenshot                                28
 8
     4     E-mail dated Tuesday, April 23, 2019, to  28
 9         Will Morrison

10   5     Second e-mail to Will Morrison            28

11   6     Third e-mail to Will Morrison             28

12   7     E-mail sent to Will Morrison with         28
           exhibits
13
     8     E-mail sent to Will Morrison              39
14
     9     Activities report                         41
15
     10    E-mail sent by Pay.gov                    41
16
     11    Cases report                              47
17
     12    Excerpt from docket in Mr. Beal's         44
18         bankruptcy case

19   13    Excerpt of docket in adversary            44
           proceeding
20
     14    Transaction log                           47
21
     15    Browser information                       45
22
     16    Daily log
23
     17    Demand
24

25                        * * *
```



1                    P R O C E E D I N G S

2

3            THE CLERK:  Court resumes in session.

4     Please be seated.

5            In the matters of State Bank of Southern

6     Utah versus Beal and Allen Beal.

7            THE COURT:  Will counsel please note their

8     appearances?

9            MR. CALL:  Steve Call and Justin Kuettel

10    appearing on behalf of State Bank of Southern Utah.

11           MR. MORRISON:  Will Morrison for the

12    debtor, who is present -- the debtor/defendant.

13           THE COURT:  All right.  We have two

14    matters on the calendar.  We have the evidentiary

15    hearing on Mr. Call's motion to extend time for

16    filing the adversary proceeding.  And we also have

17    the motion to dismiss the adversary proceeding and

18    motion to strike.

19           So the parties agree that the issues are

20    essentially the opposite side of the same coin.

21           MR. CALL:  Yes.

22           THE COURT:  So -- and we'll be having many

23    of the same witnesses, so I'm wondering if it's

24    agreeable that cross-examination would include direct

25    examination.  I mean, so --



1          MR. CALL:  No redirect?

2          THE COURT:  No, you can have redirect.

3   I'm just -- rather than saying, Objection, beyond the

4   scope of examination -- so, in other words,

5   Mr. Morrison may have a witness that he would call as

6   his witness that he would be cross-examining, and

7   it's just easier for him to go ahead and --

8          MR. CALL:  Do it at the same time.

9          THE COURT:  Do his direct examination, if

10  he has any, and then you, of course, can do redirect

11  or cross.

12         MR. CALL:  Agreed.

13         THE COURT:  Okay.

14         MR. MORRISON:  Also agreed.

15         THE COURT:  All right.

16         MR. MORRISON:  Also, I believe we took

17  care of the motion to strike at one of our initial

18  hearings, so we just decided to set this down for an

19  evidentiary hearing.

20         THE COURT:  All right.  So if it's

21  agreeable with the parties, I'll just let Mr. Call

22  proceed and then -- it seems like logically that

23  would be the first one to consider.

24         MR. MORRISON:  I agree.

25         THE COURT:  All right.  So, do you have



1  opening statements or just want to go to evidence?

2          MR. CALL:  I'm good to go to evidence and

3  then just --

4          THE COURT:  We have had several --

5          MR. CALL:  The legal arguments.

6          THE COURT:  Right.  We had that -- several

7  prior hearings and I know what we're going to be --

8          MR. MORRISON:  We know what the issues

9  are.  Let's just go ahead and go with the evidence.

10          THE COURT:  Okay.  Mr. Call, if you want

11  to call your first witness.

12          MR. CALL:  I guess I'm going to testify,

13  your Honor.

14          THE COURT:  All right.  If you would come

15  forward and be sworn.

16          (Witness sworn.)

17          THE CLERK:  Have a seat at the witness

18  stand.  State and spell your last name for the

19  record, please.

20          MR. CALL:  Steven W. Call.  S-t-e-v-e-n,

21  W., C-a-l-l.

22              STEVEN W. CALL,

23      called as a witness, being first sworn,

24        was examined and testified as follows:

25



1        DIRECT EXAMINATION

2  BY MR. KUETTEL:

3        Q.    Mr. Call, are you an attorney for State

4  Bank of Southern Utah in this case?

5        A.    Yes, I am.

6        Q.    Are you lead counsel for State Bank in

7  this case?

8        A.    Yes, I am.

9        Q.    What's the underlying basis for the claims

10  in this case?

11        A.    They arise from a loan transaction made by

12  State Bank of Southern Utah to the debtor,

13  Allen Beal, to the debtor's wife's, Elizabeth Beal,

14  and to a company that they owned called A & L

15  Transport.

16        Q.    Okay.

17        A.    Let me finish answering.

18            And State Bank had loaned that money to

19  that group, including the debtor.  It was a secure

20  transaction.  And there was a significant amount of

21  collateral that was pledged to secure the loan.

22        Q.    Okay.  Was there a lawsuit filed against

23  the debtor?

24        A.    Yes.  There was a lawsuit filed in the

25  Fifth District Court for the State of Utah in Iron



1   County against those three individuals.

2        Q.    Did the state court have --

3        A.    Oh, I'm sorry.  Those two individuals and

4   the one entity.

5        Q.    Did the state court enter a judgment in

6   the state court case?

7        A.    It did.  There was a judgment entered by

8   the state court against all three of them for the

9   indebtedness owning under the credit transaction to

10  State Bank.

11       Q.    What was the amount of that judgment?

12       A.    It was approximately 237,000.

13       Q.    Did the Bank undertake discovery against

14  the debtor?

15       A.    In the bankruptcy case?

16       Q.    Yes.

17       A.    Yes.  The Bank undertook discovery against

18  the debtor.  It filed a motion -- an ex parte motion

19  for a 2004 exam, obtained an order, and then issued a

20  2004 subpoena.

21       Q.    Did the Bank serve a -- oh, did the debtor

22  produce documents in response to that 2004 subpoena?

23       A.    About five documents.

24       Q.    Did you conduct the debtor's 2004 exam on

25  April 22nd, 2019?



1      A.     I did.

2      Q.     What time did that deposition end?

3      A.     The deposition -- if I recall, I think it

4   started around 10:00 -- I may be wrong; it may have

5   been 9:00.  It ended around 3:00.

6      Q.     Before conducting the 2004 examination,

7   did the Bank's counsel begin to prepare an adversary

8   complaint against the debtor?

9      A.     Yes.  A draft of the Complaint was

10  prepared the prior week.

11     Q.     Did anyone else help with the Complaint?

12     A.     Yes, you did.

13     Q.     Was the Complaint based in part on the

14  state court judgment entered against the debtor?

15     A.     It was.  The Complaint sought the

16  nondischargeability of the state court judgment that

17  was entered against the debtor.

18     Q.     Did the Bank serve discovery on anyone

19  else?

20     A.     It did.  The Bank filed, again, another

21  motion for a 2004 examination.  And upon the entry of

22  that order, there was a 2004 subpoena served upon

23  Mountain Credit Union.

24     Q.     Did you receive those documents?

25     A.     From the credit union?



1   Q.   Yes.

2   A.   Yes.  There were a number of documents

3  produced the prior week.

4   Q.   You'll see in front of you there is a

5  binder of the Bank's exhibits.  If you could turn to

6  Exhibit 1 and identify that document for us, please.

7   A.   Yes.  Exhibit 1 is a document that I

8  printed from my computer which shows the metadata on

9  the Complaint that was filed in this adversary

10  proceeding.

11          And the -- what it indicates there is it

12  has my user name on the right-hand side, which -- my

13  user number, which is 287.  And it shows the various

14  revisions that were made to the Complaint from

15  approximately 4:00 p.m., when the document was

16  checked out -- I checked it out at 4:21.  So it shows

17  my number, 287, and then it shows checked out at

18  4:21.  And then it shows revisions up until I checked

19  it in at 11:24.

20   Q.   Thank you.

21          So the Complaint was completed by

22  11:24 p.m.?

23   A.   The Adversary Complaint was completed by

24  11:24.

25          MR. KUETTEL:  We would move the Court to




1   enter Exhibit 1 into evidence.

2            MR. MORRISON:  No objection.

3            THE COURT:  Exhibit 1 is received.

4       Q.    (BY MR. KUETTAL)  When were the exhibits

5   to the Adversary Complaint prepared?

6       A.    Most of it were prepared after the

7   documents were produced by the credit union the prior

8   week.  I'm sorry.  Most of them were prepared the

9   prior -- did you want me to wait?

10           THE COURT:  No.  I mistakenly thought

11  there were additional pages to Exhibit 1, but there

12  are not, so you may proceed.

13           THE WITNESS:  Okay.

14           MR. KUETTEL:  Thank you, your Honor.

15           THE WITNESS:  Most of the exhibits were --

16  to the Adversary Complaint were prepared...

17           MR. KUETTAL:  Sorry.

18           THE WITNESS:  Most of the exhibits that

19  were attached to the Adversary Complaint were

20  prepared after the credit union produced the

21  documents the prior week.

22           However, because the debtor did not

23  provide his documents until the time of his

24  deposition, any exhibit that -- that -- any exhibit

25  that included a document he produced would have been



1    produced after the deposition.

2         Q.     (BY MR. KUETTEL)  So when were the

3    exhibits finalized?

4         A.     Finalized for filing?

5         Q.     Yes.

6         A.     The process that -- that we went through

7    was that we had the exhibits that were going to be

8    attached to the Complaint in the earlier -- in the

9    later afternoon, after the deposition had completed,

10   but prior to 8:00, when you left, and -- and then

11   they were placed upon my desktop in pdf format for

12   filing.

13        Q.     Can you turn to Exhibit 2 in that

14   notebook, please?

15        A.     Yes.

16        Q.     Have you seen these documents before?

17        A.     Yes.  These -- these documents are

18   screenshots of the exhibits that were placed upon my

19   desktop in preparation for filing.

20        Q.     Why were they placed on your desktop?

21        A.     Oh, it's been my experience that it's

22   easiest to attach --

23               UNIDENTIFIED SPEAKER:  Bless you.

24               UNIDENTIFIED SPEAKER:  Thank you.

25               THE WITNESS:  It's been my experience that



1   it's easier -- the easiest way to attach exhibits

2   when filing a document with the ECF system is to have

3   it on your desktop in pdf format.

4           So I had them all in my desktop in pdf

5   format.

6           And the dates of these are in these

7   documents, so if you look -- the first one was

8   earlier, but the rest of them -- it looks like on the

9   second page it was 11:29.  And I think the last one

10  was there at 11:36.  So I had the Complaint ready to

11  file and the exhibits on my desktop ready to go at

12  approximately 11:36.

13          MR. KUETTAL:  Your Honor, we would like to

14  move to enter these documents listed as Exhibit 2

15  into evidence.

16          MR. MORRISON:  No objection.

17          THE COURT:  All right.  So Exhibit 2 is

18  pages marked -- Bates-stamped HG000002 through

19  HG000011, and that exhibit is received.

20          MR. KUETTAL:  Thank you, your Honor.

21      Q.    Mr. Call, are you aware that there is a

22  filing fee required to file an adversary proceeding?

23      A.    Yes, I am.

24      Q.    Do you know how much it is?

25      A.    Yes.  $350.



1    Q.    How did you plan to pay for that?

2    A.    You mean upon filing the Complaint?

3    Q.    Yes.

4    A.    Our firm --

5    Q.    On April 22nd.

6    A.    On April 22nd, yes.

7         Our firm has credit cards issued by Zions

8  Bank in the name of Ray, Quinney & Nebeker, and we

9  have a number of those cards that we use for filing

10  because we have a lot of people filing.  But I

11  obtained a credit card from our firm after the

12  deposition finished, around 5:00, so that I would

13  have that to file -- to use to file.

14    Q.    Okay.  What did you do after you had the

15  exhibits on your desktop?

16    A.    I logged in to do the filing.  I used the

17  password for ECF filing, not the PayServ password.

18  And I have -- I have a sheet with various passwords

19  for bankruptcy court, PayServ, for filing, for

20  district court filing, and for Tenth Circuit filings.

21         So I used the bankruptcy -- my bankruptcy

22  ECF filing that I've had for a very, very long time.

23  Input my password and logged on.

24    Q.    Then what did you do?

25    A.    After I logged on, I proceeded to go



1   through the filing process.  It asked me to identify

2   who the parties were.  So I identified the plaintiff

3   as State Bank of Southern Utah.

4          It asked me to identify who the defendant

5   was.  Oh, no, it asked me to identify who the

6   attorneys were.  I identified Justin Wayment.  I

7   think he's the state court -- he was the state court

8   attorney.  And his name came up.

9          And -- and then my name came up.  And so

10  I -- I designated those parties as the plaintiff and

11  their counsel, and then the defendant -- the debtor

12  as the defendant in the adversary proceeding.

13     Q.    What did you do after that?

14     A.    After I did that I then proceeded -- you

15  go through -- in the software it goes through

16  different screen iterations or advances.  And so I

17  would -- I would work through these advances on the

18  filing system.

19          It took me to the page where I needed to

20  identify the nature of the lawsuit that was -- the

21  Complaint that was being filed -- or the claim for

22  relief that was being filed.

23     Q.    And what did you do when you got to that

24  page?

25     A.    When I got to that page, over to the



1  right-hand side I indicated what the nature of the

2  action was.  And it has a -- if you could maybe turn

3  that around, I could show you.

4          MR. MORRISON:  And I can't see.  Can you

5  identify what we are looking at?

6          THE COURT:  That was Exhibit 3, correct,

7  Mr. Call?

8          THE WITNESS:  It is.  May I -- if I could

9  get to my briefcase.  I have these to hand out.

10          THE COURT:  Certainly.

11          THE WITNESS:  So on this document -- and I

12  believe -- this is just a blowup of what's in

13  Exhibit 3, but I entered there where it says 523

14  dischargeability -- or 523(a)(6), willful and

15  malicious injury.

16      Q.    (BY MR. KUETTEL)  And what did you do

17  after you checked that?

18      A.    I put in the second nature of suit

19  underneath it.

20          THE COURT:  So, Mr. Call, just so we can

21  be clear on the record; this ties into your

22  Exhibit 3 --

23          THE WITNESS:  Yes.

24          THE COURT:  -- and Exhibit 3 has multiple

25  pages.  So for Mr. Morrison's benefit, the part of



1   Exhibit 3 that Mr. Call is looking at and testifying

2   to I believe is page...

3              THE WITNESS:  Thirteen.

4              THE COURT:  0013.

5              THE WITNESS:  Yes.

6              THE COURT:  Is that correct?

7              THE WITNESS:  Yes.  No, no, no.  No, no.

8   That's not right.  That's not right.

9              MR. KUETTEL:  So, your Honor, in my --

10  it's kind of a darker scan.  It's -- the Bates stamp

11  on this one is a little strange.  It's to the left --

12  bottom left.

13             THE COURT:  Okay.  0017.

14             MR. MORRISON:  Thank you, your Honor.  I

15  found it.

16             THE COURT:  You found it.  Okay.  All

17  right.  Go ahead, Mr. Call.

18             THE WITNESS:  Yes.

19             So I insert the -- I put the primary

20  nature of the action.  And then I also inserted the

21  secondary nature of the action, which was an

22  objection to discharge.

23        Q.   (BY MR. KUETTAL)  What did you do after

24  that?

25        A.   After that I then proceeded down to the



1  demand window, just -- which is over there just to

2  the left.

3       Q.    Does a demand window indicate that you

4  must enter a dollar sign?

5       A.    My inter -- the demand window says demand

6  and it has a parenthesis, a dollar sign, three zeros

7  and a parenthesis.

8             My interpretation of that is that you

9  would put the demand with the dollar sign and a whole

10 number within that window.

11      Q.    So what did you do?

12      A.    So I input -- I input the amount of the

13 demand -- I put in the amount of the default judgment

14 that was entered by the state court, which was based

15 upon the first claim for relief, with a dollar sign

16 and a -- I believe I had a comma with it at the time.

17      Q.    What happened when you did that?

18      A.    I then clicked the next button and it

19 would not proceed.  I received a message that said

20 integer missing.  I-n-t-e-g-e-r, integer, t-e-g-e-r.

21      Q.    And what did you do after you received

22 that message?

23      A.    I went back and removed the comma and

24 tried -- tried to see if it would advance to the next

25 window.  It wouldn't.



1          So I went through a host of permutations

2   to try to see if I could advance through that

3   window -- or screen to the next screen.

4          And -- and after I couldn't, I tried to

5   advance without putting any number in there.  It

6   would not allow me to advance.

7          So I would -- I started just entering just

8   random numbers.  I was starting to become a little

9   concerned, you know, that I couldn't advance, and so

10  I started entering just random numbers.

11      Q.   What time was this, around?

12      A.   It was around 11:45.

13      Q.   Okay.  So how did you eventually get off

14  this page?

15      A.   It -- after I sat there and went through

16  just different numbers on my keyboard, just -- it --

17  it eventually advanced to the next screen.

18          MR. KUETTAL:  Okay.  Your Honor, this is

19  within Exhibit 3 as well.  It's a Bates stamp ending

20  with 20, 2-0.

21      Q.   Is this the screen that you were

22  eventually able to reach?

23      A.   Yeah.  I mean, I went through and loaded

24  the -- the document from my desktop.  There's a --

25  there's a screen where you -- you go to the desktop



1    and you hit open -- or you hit enter, and it moves

2    the Complaint -- or your documents that you're filing

3    onto that.  So that process went fine.

4            And so after that I advanced to this

5    window, which said, open adversary case.

6        Q.    What happened when you reached this page?

7        A.    And when I reached the open adversary case

8    it -- it indicated -- well, before this window there

9    was a window that said, Are you a trustee or are you

10   the debtor?  And even if so, you have a right to

11   defer payment.  If not, then you must make payment

12   via the Internet.

13           So wasn't the trustee, wasn't the debtor;

14   didn't have a deferred right.  I was planning to pay.

15   So I clicked the next button that said pay via the

16   Internet.  And it took me to this screen that said

17   open adversary case, fee $350 for a complaint.

18       Q.    And when you attempted to make the

19   payment, did it allow you to pay and open an

20   adversary proceeding?

21       A.    It did not.

22       Q.    Were you able to get the system to allow

23   you to pay by credit card when you were ready and

24   able to pay?

25       A.    No.  So I backed up.  It -- the system



1   would not go forward.  And because it said open

2   adversary proceeding, I was of the view that -- that

3   to get the adversary proceeding opened, because of

4   the way the screen reads, that I needed to make sure

5   that I got the $350 paid.

6            So I backed up.  There's a backup button

7   over on the right.  It doesn't show on that document.

8   But I backed up to try to see if I could free up the

9   system so I could make a filing.  And I backed up

10  three or four screens, which took me back in front of

11  the demand screen again.

12       Q.    Before you hit the backup button, did you

13  receive any sort of error message or anything while

14  you were on this page trying to make the payment?

15       A.    I did.  When I clicked and clicked and

16  clicked, I would -- an error message would come up

17  that would say, case opening canceled, writing --

18  writing answer records.

19       Q.    Okay.  And that's the error message that

20  you got on the -- when you attempted --

21       A.    Yes.

22       Q.    -- payment on this?

23       A.    Well, not -- at first it wouldn't do

24  anything.  It would just not move.  But then as I

25  would click it and click it, eventually that error



1   message would come up.

2          THE COURT:  I'm sorry.  So what was that

3   error message?

4          THE WITNESS:  It was something to the

5   effect that case opening failed.  Case opening

6   failed.  Writing answer record.

7          THE COURT:  Okay.  Writing.  So

8   w-r-i-t-t-i-n-g [sic]?

9          THE WITNESS:  Yes.

10          THE COURT:  Okay.

11      Q.    (BY MR. KUETTAL)  And so after all this,

12   you -- what did you do after that, after you received

13   those error messages?

14      A.    I -- I -- it appeared to me that the

15   system was not -- was not responding properly.

16      Q.    Okay.

17      A.    So I hit the backup button and went back

18   several screens to see if I could kind of start over

19   and go forward and get it to accept the payment.

20      Q.    Okay.  Did you do anything else?

21      A.    Well, yes.  It -- it took me -- because

22   when I went back I was in front of the -- I went back

23   in front of the payment screen.  So I was confronted

24   again with trying to put a dollar amount into the

25   payment screen in order to get past it.



1          But I knew from the prior problem that I

2     had that if I entered some random numbers that it

3     would take that rather than inserting the specific

4     number.  So I started entering some random numbers,

5     and I was able to get past that screen.

6          Q.    Did you ever attempt to call anybody to --

7     to see if you could get help with this?

8          A.    I did.  After -- after I went through that

9     process and I arrived with the same problem, I placed

10    a call to my bankruptcy paralegal, Carrie Hurst.  I

11    placed a call to you and to my secretary,

12    Eliza Tito.

13         Q.    Were you able to reach them?

14         A.    I -- I wasn't.  I was going to ask them if

15    they had encountered that problem before and if they

16    had figured a way to work around it.

17         Q.    Is it your testimony that the system was

18    not working correctly?

19         A.    Yes.

20         Q.    What did you do after you experienced all

21    of these issues?

22         A.    I -- I became concerned.  And so I thought

23    maybe the best alternative was to forward a copy of

24    the Complaint to opposing counsel.

25              So at about 11:58 I forwarded an e-mail --



1    or attempted to forward an e-mail to Will Morrison,

2    who was the opposing lawyer.  I sent it -- when it

3    came up, it said 12:00 and -- but then there was a

4    strange message about whether it was sent.  So I

5    attempted to send it again.

6         Q.    If you can turn to Exhibit 4 in that book

7    in front of you.

8         A.    Exhibit 4?

9         Q.    Yes.

10        A.    Yes.

11        Q.    Is this the e-mail -- does this -- is this

12   the e-mail that you tried to send -- or that you

13   sent?

14        A.    Yes, yes, this -- this is the e-mail.  It

15   says Tuesday, April 23rd, 12:00 a.m., to

16   Will Morrison.  That was his e-mail address.

17             And then it has the attachment, a copy of

18   the Complaint.

19             But it said, Your message is ready to be

20   sent with the following file or link attachment, and

21   then it listed the Complaint.

22             So I became concerned that maybe it didn't

23   go.  I wanted to make sure he got it, so I sent an

24   additional e-mail to him.

25        Q.    Okay.  Can you turn to Exhibit 5 in that



1    notebook, please?

2        A.    Yes.

3        Q.    Is this the additional e-mail that you

4    sent to him?

5        A.    Yes.  You know, it goes through -- you

6    send it, sometimes when -- after it's sent it will

7    come back with the sent time.  So this says that this

8    went at 12:02 and had a copy of the Complaint

9    attached.

10       Q.    Okay.  What did you do after that?

11       A.    After that I sent further e-mails to

12   Mr. Morrison with the exhibits to the Complaint.

13       Q.    Okay.  Can you turn to Exhibit 6 in that

14   exhibit binder, please?

15       A.    Yes.

16       Q.    And also Exhibit 7.  If you can kind of

17   flip back and forth.

18            Are those two -- do you recognize those

19   two --

20       A.    I do.

21       Q.    -- amounts?

22       A.    Yes.  Exhibit 6 is an e-mail I sent to him

23   after I had sent the earlier two e-mails where I

24   indicated to him that I was having -- it says, "I

25   have been trying to get the Bank's Complaint for 25



1   minutes but there were problems with the software.

2   As such, I'm e-mailing to -- e-mailing to --

3   Complaint to you with the exhibits."

4             And so I -- even though I had sent the

5   Complaint, I thought I would send it twice.  I

6   reattached the Complaint with Exhibits 1 through 5.

7        Q.    And what time was that at?

8        A.    That was at 12:08.

9        Q.    Okay.  And if you can flip over to

10   Exhibit 7.

11        A.    Yeah.  On Exhibit 7, I sent this -- this

12   was a trailing e-mail that I sent that included

13   exhibits.  It says Exhibits 5 through 10, but it was

14   actually Exhibits 6 through 10.

15        Q.    Okay.

16        A.    So the subject line is -- is erroneous,

17   but the attachments are correct, 6 through 10.

18        Q.    So is it correct that you attempted to

19   e-mail opposing counsel at or around midnight?

20        A.    I -- well, it was a little bit before.  It

21   was just a minute or two before midnight when I

22   tried to -- first tried to send the first Complaint,

23   which was exhibit -- the first -- what was it?

24        Q.    Exhibit --

25        A.    Exhibit 4.



1      Q.    Exhibit 4, correct.

2      A.    And then to make certain, I re-sent

3  Exhibit 5, and then I followed up with Exhibits 6 and

4  7, with the exhibit -- with the exhibits.

5            MR. KUETTAL:  Your Honor, we would like to

6  move to enter Exhibits 4 through 7 into evidence.

7            MR. MORRISON:  No objection.

8            THE COURT:  Exhibits 4 through 7 are

9  received.

10           MR. KUETTAL:  I apologize.  I would also

11  like to move to enter Exhibit 3 into evidence.

12           MR. MORRISON:  No objection.

13           THE COURT:  Exhibit 3 is received.

14     Q.    (BY MR. KUETTAL)  So after you sent these

15  e-mails to opposing counsel, what did you do?

16     A.    I went back -- I was -- logged onto the

17  system, if I recall correctly, and I went in and

18  tried to refile the Complaint again.

19     Q.    Okay.  What occurred?

20     A.    What occurred was I went through to the

21  same window with the demand, and on the demand window

22  I insert the numbers -- I believe it was 2 -- I

23  didn't use a dollar sign, as it indicated.  I just

24  used a whole number.  And the numbers I used were --

25  I used the numbers 2,000, 200 and 200,000.


CITICOURT
THE REPORTING GROUP

1    Q.    Did you confront the same problems?

2    A.    It took one of those -- it took the last

3  one of those three numbers that I put in.

4    Q.    Were you able to ever pay the $350 filing

5  fee at that time, on that night?

6    A.    No.  No.  So if I could explain.  After I

7  insert -- inserted those numbers, it took me to the

8  next screen, reloaded or did whatever I needed to do

9  to advance to the payment screen.

10          I advanced to the payment screen, and

11  indicated that I wanted to pay over the Internet

12  again, just like I had done before, and it -- it -- I

13  clicked it.  It took me to this screen that's here

14  that says Exhibit 3, open adversary case, pay $350.

15          UNIDENTIFIED SPEAKER:  That's the one that

16  ends in Bates 20.

17          THE WITNESS:  Bates 20.  And tried --

18  tried to see if I could get some way to pay, and it

19  just wouldn't pay.

20          As I would click on the next button, I

21  would receive the message that I indicated before.

22  At first I wouldn't, it was just almost as if it were

23  frozen.  But if I click and click and click, then

24  eventually that message that -- would come up that

25  would say case failed, case -- case fail -- case open



1    fail --

2         Q.     (BY MR. KUETTEL)   But it was the same

3    message?

4         A.     -- writing answer record.   Uh-huh.

5         Q.     Okay.   What happened after that, after you

6    were unable to pay?

7         A.     I -- after that occurred I left a message

8    for my paralegal, Carrie Hurst, to contact the court

9    first thing in the morning when she came in and to

10   inform them of the problems we had in trying to file

11   the Complaint.

12        Q.     Okay.   If you could turn to Exhibit 11 in

13   that notebook.   Do you like -- do you recognize this

14   document?

15        A.     Yes.   I had this document prepared from

16   the bankruptcy system.

17        Q.     What is it?

18        A.     It's entitled Cases Report, and it is --

19   it's an -- Exhibit 11.   And what the system allows

20   you to do is to go in and run a case report.   You

21   insert certain criteria, and it prints out the report

22   for you.

23        Q.     And what does this document reflect?

24        A.     This -- this document reflects in the

25   middle column -- well, first of all, it shows that



1   there were -- within the time span that was -- that

2   I -- that was entered by my office, and with the

3   criteria it shows that there were three -- three

4   adversary proceedings.

5           And the middle col -- the middle row shows

6   the State Bank filing and it shows the case number.

7   It has a -- I think the TP stands for type of

8   proceeding.  And it has the initials AP for adversary

9   proceeding.

10          Then it has the party information, State

11  Bank of Southern Utah, the attorney.  It has your

12  name.  And then it has Mr. Morrison's name as the

13  attorney for the defendant.

14          And then over -- next to that, in the next

15  column it has the name of -- of Judge Mosier.

16          And then next to that it has dates

17  indicating when items were filed and when items were

18  entered.

19     Q.    And are those two dates the same?

20     A.    No, they're not.

21     Q.    Do you know why those dates are different?

22     A.    I believe I do.

23     Q.    Can you turn to Exhibit 14, please?

24     A.    Yes.

25     Q.    Do you recognize this document?



1      A.    I do.

2      Q.    What is it?

3      A.    This is a transaction log document that,

4  again, is prepared from the bankruptcy system.  And

5  what it does is it allows you to identify certain

6  transactions over a period of time.

7           And so this report was 4-22 to 4-24.  And

8  what it was -- what the report was doing was showing

9  certain events that occurred during that period of

10  time.

11          And the middle -- or the third line

12  down -- no.  Let's see.  This -- yeah, the third row

13  down I think explains the matter.  And --

14     Q.    And what is your understanding of that?

15          MR. MORRISON:  Objection.  Objection, your

16  Honor.  Lacks foundation.

17          THE COURT:  I understand Mr. Morrison's

18  objection.  I'm going to sustain the objection

19  because -- Mr. Morrison saying Mr. Call doesn't have

20  personal knowledge of this.  But I'm going to allow

21  Mr. Call to answer, limiting and clarifying that his

22  testimony is simply his understanding, which doesn't

23  go to the document, it's just simply his

24  understanding.

25          MR. KUETTEL:  Fair enough.  Thank you,



1   your Honor.

2          THE WITNESS:  Yes.  My understanding of

3   this transaction log is that -- is what it says,

4   which is -- if I could read it.  It says, quote,

5   "This is a temporary log entry" -- bless you -- "This

6   is a temporary log entry to handle timing issues with

7   docketing the same event many times," close quote.

8          And then it has the identification number.

9          So what my understanding of that is, is

10  that there were various events that occurred and

11  that -- and I believe that these were the various

12  filings that I had made both before I sent my e-mails

13  and then after when I made the last filing.  And that

14  this is stating that there were -- that this entry

15  was a temporary log entered to handle these -- the

16  timing issues with regards to docketing events that

17  occurred multiple times.

18      Q.    (BY MR. KUETTEL)  And so how does that

19  relate to your understanding of Exhibit 11?

20      A.    So that --

21          MR. MORRISON:  Same objection with respect

22  to Exhibit 11.  Lacks personal knowledge.  Lacks

23  foundation.

24          THE COURT:  So I'm going to sustain the

25  objection.  So -- I mean, number one, it's well



1   taken, but as an illustration there's -- I don't see

2   any connection between Exhibit 14 and Exhibit 11.

3   There's nothing on Exhibit 14 that even says

4   April 22nd.  So I -- I don't have personal knowledge

5   of this, but that's exactly Mr. Morrison's objection,

6   is anyone can look at this and they can form their

7   own opinion as to what this says, but that doesn't

8   mean that's what it says.

9               MR. KUETTEL:  Okay.  That's fair, your

10  Honor.  And I appreciate that explanation.

11              We would like to move to enter Exhibits 11

12  and 14 into evidence based on the fact that they are,

13  you know, transaction logs and case reports produced

14  by the court.

15              THE COURT:  So these were produced -- when

16  you say "produced by the court" --

17              MR. KUETTEL:  Through the court software.

18  So I believe Mr. Call's testimony was that -- that he

19  and Ray Quinney, you know, input certain search

20  criteria and things like that, but -- but that these

21  were actually produced from the websites of the --

22  the court.

23              THE COURT:  Any objection, Mr. Morrison?

24              MR. MORRISON:  I still have an objection

25  to Exhibit 11.  I think that has to be introduced



1   through a court staff member so we can actually know

2   what it's referring to.

3            I'm okay with Exhibit 14.

4            THE COURT:  Well -- so I'm going to help

5   just to hurry this along.  I think the question is a

6   foundational question as to how -- how was this

7   document generated.  And I think what the testimony I

8   heard suggested, but didn't clearly state, is

9   Exhibit 11 and Exhibit 14 were reports that were

10  generated by Ray Quinney.  They signed onto the

11  CM/ECF system, they typed in some data, some

12  parameters, and these reports come up.

13           So to the extent that these are reports

14  generated by Ray Quinney from the court's ECF system,

15  is there an objection, Mr. Morrison?

16           MR. MORRISON:  No, I'll just reserve it

17  for weight.

18           THE COURT:  Okay.  So with that

19  clarification as to the foundation and the origin of

20  these documents, that they are simply something that

21  was generated by Ray Quinney Friday from the court's

22  website, I'm going to admit Exhibits 11 and 14.

23           MR. KUETTEL:  Thank you, your Honor.  And

24  I am almost finished.

25       Q.   Mr. Call, did you eventually log off the



1  system?

2       A.    Yes, I did.

3       Q.    Did you do anything else that evening?  As

4  it relates to this case, not...

5       A.    I am trying to remember.  I don't -- I

6  don't believe so.

7       Q.    Okay.  Did you speak with your paralegal

8  about paying the fee?

9       A.    Yes.  I didn't speak with her that

10  evening.  I left a message for her to contact the

11  court first thing in the morning and to --

12       Q.    Do you know if she called the court?

13       A.    She did.  She called the court.

14            And then the next morning, when she got my

15  message, she logged in and she called the court

16  and -- logged in, and the payment window to pay the

17  $350 came up.

18       Q.    Okay.

19       A.    So -- and so that payment was made.

20       Q.    Okay.

21       A.    That's -- and it's reflected in the

22  activities report.

23       Q.    Lastly, can you turn to Exhibit 8, please,

24  in that notebook?  Do you recognize this document?

25       A.    Yes.



1        Q.    Can you identify it for us, please?

2        A.    Yes.  This is an e-mail that I sent to

3    Will Morrison, with a copy to my paralegal,

4    Carrie Hurst, a copy to you and a copy to my

5    secretary, Eliza Tito.

6              May I read it?  May I read --

7        Q.    Yes, please.

8        A.    It says, "Will.  The problem that arose

9    was that the software would not allow me to file the

10   Complaint.  One of the problems" -- oh, I'm sorry.

11   I -- I received -- at the bottom of that exhibit I

12   received an e-mail from Mr. Morrison.  It says, "It

13   looks like you missed the filing deadline.  What

14   software problems were you referring to?  Why did you

15   wait so long to file?"

16             I responded, "Will.  The problem that

17   arose was that the software would not allow me to

18   file the Complaint.  One of the problems was when I

19   inserted the dollar amount into the window for the

20   523 claim, the system would state that an integer was

21   missing.  Despite entering various numbers in various

22   configurations, including with and without dollar

23   signs and commas, the system would not move to a new

24   window.

25             "After a significant amount of time and



1 numerous attempts, I inserted an inaccurate number of

2 2,000, and then it moved to the next window.

3 However, the system would ask whether you want to pay

4 via Internet, waiver or deferral. I could not get

5 the window to open on numerous attempts, thus, the

6 system would still state, pay 350 fee, but without a

7 method to pay.

8         "I backed up and tried numerous times to

9 have the payment window open, but it would not. I

10 also had other similar problems with the software. I

11 discussed the matter" -- and then I said, "I

12 discussed the matter with the court's IT department

13 and was told that the problems and error messages

14 that I received reflect that the software was not

15 operating correctly.

16         "I was told that even though I backed up

17 and tried repeatedly to file, the software would

18 still produce the same errors. I was told that when

19 these problems occur, the best approach is not to use

20 the backup button in the software to start over but

21 to exit out or go back to the first blue bar and

22 start over.

23         "As to timing, I had everything scanned

24 and first attempted to file at 11:35. As filing

25 seemed futile, I sent you an e-mail with a copy of



1   the Complaint.  Shortly thereafter I sent the

2   exhibits.

3           "Finally, after nearly 40 minutes the

4   system apparently filed one of the attempted filings

5   of the Complaint without payment.  When the system

6   was open this morning a payment window came up.

7           "It is my understanding this is not the

8   first time this has occurred.  In any event, I

9   believe the clerk's office will be addressing and

10  disclosing the filing problem that occurred.  Steve."

11      Q.    And is this e-mail an accurate summary of

12  your experience?

13      A.    It is, as I previously testified.

14          MR. KUETTEL:  Your Honor, we'd like to

15  move to enter Exhibit 8 into evidence.

16          MR. MORRISON:  This document was subject

17  to the motion to strike that we had filed.  However,

18  I've also included it as one my own exhibits, so I'll

19  go ahead and allow it.  No objection.

20          THE COURT:  Well, it was an e-mail sent to

21  you from Mr. Call, sir.

22          MR. MORRISON:  Well, it has some

23  references to hearsay from court IT in the second

24  paragraph, but I'm okay allowing it.

25          THE COURT:  Okay.  Exhibit 8 is received.



1          MR. KUETTEL:  Thank you.

2      Q.    Mr. Call, if you could quickly turn to

3  Exhibit 9, please.  Do you recognize this document?

4      A.    I do.

5      Q.    Can you identify it for us, please?

6      A.    This is an activities report that was sent

7  to me from the court's ECF system.

8      Q.    And what does it show?

9      A.    You know, these come out a little after

10  midnight each day.  So this one came out on the 24th.

11  And it shows activities that occurred on the 23rd.

12  So a number of different cases that I'm involved in.

13          At the bottom of the case it shows the

14  filing of the adversary proceeding.  I'm looking at

15  the bottom of the first page.  And it says the nature

16  of the action and so forth.  And then it says it was

17  modified on April 23rd, 2019, by GCI.

18          And -- and then on the next page it shows

19  a similar docket entry at the top, only this time the

20  docket entry is in the adversary proceeding rather

21  than the bankruptcy case.  And it -- again, it just

22  reflects that the Complaint was filed.  And then

23  again it shows modified on 4-23 by GCI.

24          And then if you go down to the

25  second-to-the-bottom activity there it indicates --



1   well, above that it shows that the exhibits were

2   filed, but then it -- it has the $350 payment that --

3   that was made as well.  So it's just -- it's

4   reflecting that payment.  And it looks like the

5   payment was made at 8:59 in the morning.

6        Q.    Great.  And can you turn to Exhibit 10,

7   please?  Do you recognize this document?

8        A.    Yes.  Exhibit 10 is an e-mail that was

9   sent by the court -- or, I'm sorry.  It was sent by

10  Pay.gov at -- at 9:00 on the 23rd, so the morning

11  after the filing.  "Your payment has been submitted

12  to PayGOV and the details are below.  If you have any

13  questions or you wish to cancel this payment, please

14  contact CM/ECF help desk."

15            So it's my understanding this e-mail to me

16  and to my paralegal reflects that the payment was

17  made.  And this came at 9:00 in the morning.  So it

18  correlates with the activity -- the activity report

19  in Exhibit 9.

20            MR. KUETTAL:  Your Honor, we'd like to

21  move to admit Exhibits 9 and 10 into evidence,

22  please.

23            MR. MORRISON:  No objection.

24            THE COURT:  Exhibits 9 and 10 are

25  received.



1        Q.     (BY MR. KUETTAL)  Mr. Call, can you turn

2    to Exhibit 12, please?

3        A.     Yes.

4        Q.     Can you identify this for us?

5        A.     Yes.  This is a excerpt of the docket in

6    Mr. Beal's bankruptcy case.

7        Q.     And what does this reflect?

8        A.     Well, it reflects various docket entries

9    made in the case.  But on its relevant date -- let's

10   see if I can find it.  On the relevant date, which

11   would be docket entry number 27, it reflects the

12   entry of the Complaint, the payment of the fee.  It

13   indicates it's a claim under -- a nondischargeability

14   claim under 523(a)(6), willful and malicious injury,

15   an objection to the revo -- objection/revocation of

16   discharge under 727 and various subsections.  And

17   then it says, "Modified on 4-23, GCI."

18       Q.     Okay.  Can you turn to Exhibit 13, please?

19       A.     Yes.

20       Q.     Can you identify this?

21       A.     Yes.  This -- this is just an excerpt of

22   the docket in the adversary proceeding.

23       Q.     What's the significance of this document?

24       A.     Well, the sig -- the signif --

25   this document also contains a docket entry on 4-23



1   that's the same, essentially, as the docket entry in

2   the bankruptcy case, reflecting a modification

3   that -- that there was some modification -- or it was

4   modified.

5            And then it reflects, up in the top

6   left-hand side of the first page, that a demand of

7   $168,000 was entered, which is not a number that I

8   had ever -- that I had ever entered.

9            So it just -- it reflects that -- that

10  there was a modification to the amount that was

11  demanded and -- but it shows the docket entry.  It

12  was apparently modified.

13           MR. KUETTAL:  Okay.  Your Honor, we would

14  like to move to enter Exhibits 12 and 13 into

15  evidence.

16           MR. MORRISON:  No objection.

17           THE COURT:  All right.  So just so the

18  record is clear, I understand -- I understand what

19  Exhibit 12 is and Exhibit 13 are.  They are basically

20  the court's docket.

21           The only clarification I would make is it

22  appears that it's the court's docket as of July 18th,

23  2019.  Is that correct, Mr. Call?  And I'm looking at

24  the upper left-hand corner, the date that these

25  dockets were --



1              THE WITNESS:  Printed.

2              THE COURT:  -- printed.  Well, July 18,

3      2019.

4              THE WITNESS:  Right.

5              THE COURT:  So they are not -- they are

6      not current.

7              THE WITNESS:  They are not current.

8              THE COURT:  They are not current.  These

9      are the dockets as of July 18, 2019.

10             THE WITNESS:  I believe that's correct.

11             THE COURT:  Okay.  Exhibits 13 and 14 are

12     -- or 12 and 13 are received.

13         Q.    (BY MR. KUETTAL)  Okay.  Mr. Call, can you

14     turn to Exhibit 15?  It's the last exhibit in the

15     book and the last one in --

16         A.    Yes.

17         Q.    What Internet browser were you using when

18     you logged onto the system that night?

19         A.    Google Chrome.  And I was use -- I was

20     using their most updated version, which is -- in our

21     firm we have an IT department.  They handle those

22     types of updating.  And they stay right on top of it.

23     And so our -- our browser versions are updated all

24     the time.

25             But -- so the version that I was using was



1  this version 76-06-3809-100.

2      Q.    And to be clear and from a foundation

3  standpoint, how did this document come to be?

4      A.    I had -- I had the firm print it out.

5      Q.    Okay.

6      A.    Because we -- Mr. Morrison had asked us to

7  disclose what version of the browser that our firm

8  was using at that time.

9      Q.    And it's your testimony that this is the

10  version that you were using?

11      A.    Yes.

12          MR. KUETTAL:  Thank you.  Your Honor, we

13  would like to move to enter Exhibit 15 into evidence.

14          MR. MORRISON:  No objection, with the

15  clarification that it's dated 8-12-19 at the top.

16          THE COURT:  It is dated 8-12-19 at the

17  top, so what's the --

18          MR. MORRISON:  I don't have an objection.

19          THE COURT:  Okay.  Exhibit 15 is received.

20      Q.    (BY MR. KUETTAL)  Okay, Mr. Call, one last

21  question for you.

22          Did you contact the court the next day?

23      A.    I did.

24      Q.    April 23rd?

25      A.    I did.



1    Q.    What was --

2          MR. MORRISON:  Objection, your Honor.  If

3   he's going to testify to what the court told him,

4   that's hearsay.

5          THE COURT:  All right.  Just heads up

6   before you answer, Mr. Call.  I think Mr. Morrison's

7   concerned about hearsay.  So if you're asking

8   Mr. Call to relate statements that the court made to

9   him, I think that's hearsay.  But you can argue when

10  you ask the question why it's not.

11         MR. KUETTAL:  Okay.  Let me think one

12  second.

13    Q.    Mr. Call, what do you recall from that

14  phone call on the morning of April 23rd when you

15  called the court?

16    A.    My -- my recollection was that I needed to

17  speak with someone in the IT department and -- and

18  that I needed to reach out to them.  And so I did --

19  I wasn't able to reach them that day.  I believe I

20  was also informed that -- that Judge Mosier was in

21  Japan on vacation and that the issue couldn't be

22  addressed until he returned.

23         MR. KUETTAL:  Okay.  Thank you.  I don't

24  believe I have any other questions, your Honor.

25         THE COURT:  Well, I wasn't in Japan in



1   April, but I was later.

2          MR. MORRISON:  Just a quick housekeeping

3   question.

4          THE COURT:  That's the issue with hearsay.

5          MR. MORRISON:  Just to be on the same page

6   with everybody, a housekeeping question, your Honor.

7   Did we get all 15 of their exhibits admitted?

8          THE COURT:  I believe we did.

9          MR. MORRISON:  I believe so.  I just

10  wanted to make sure.

11         THE COURT:  We have them.  They are all

12  received.

13         Any cross-examination, Mr. Morrison?

14         MR. MORRISON:  Yes.  Thanks, your Honor.

15             CROSS-EXAMINATION

16  BY MR. MORRISON:

17     Q.    Good afternoon.

18     A.    Good afternoon.

19     Q.    I have a question for you about the state

20  court judgment that was referenced before this

21  bankruptcy case was commenced.

22         It's my understanding the state court

23  judgment that you testified that was entered on

24  behalf of State Bank against Mr. Beal and some other

25  parties -- that was a default judgment, correct?



1          A.    I believe that's correct.  I believe

2    that's the case.  I believe it's attached to the

3    Complaint as exhibit -- it's attached to the

4    Adversary Complaint as Exhibit 8.

5          Q.    Okay.  And it is a default judgment?

6          A.    It says Default Judgment.

7          Q.    Thank you.

8                Your testimony earlier was that you had

9    the Adversary Complaint prepared before April 22nd,

10   2019?

11         A.    No.

12         Q.    Okay.

13         A.    My testimony was we had commenced drafting

14   the Adversary Complaint but knew we wouldn't finish

15   until we con -- I -- I conducted the 2004 examination

16   of the debtor.

17         Q.    Okay.  Thank you for that clarification.

18               You at least had a draft of the

19   Adversary --

20         A.    Yes.

21         Q.    -- Complaint prepared?

22         A.    Yes.

23         Q.    Okay.  And then the documents that we

24   looked at showed that you had received on your desk

25   the exhibits that were supposed to go with the



1    Adversary Complaint by 11:36 p.m. on April 22nd?

2        A.    Yes.

3        Q.    So you would have logged into CM/ECF after

4    receiving those exhibits?

5        A.    They -- those were on my desktop in pdf

6    format before I logged in.

7        Q.    Okay.  Thank you.

8              So you logged in after 11:36 p.m. on

9    April 22nd, 2019?

10       A.    Yes.

11       Q.    And April 22nd, 2019, is the deadline for

12   creditors to file an objection to the debtor's

13   discharge in this case.

14       A.    It --

15       Q.    Midnight on that day, correct?

16       A.    I would -- I probably would agree as to a

17   523(a)(6) claim but not to a 727 claim.  I mean, it's

18   a legal conclusion, but --

19       Q.    Okay.

20       A.    My understanding is the debtor had not

21   received a discharge at that time and that the

22   Complaint included objections to discharge but it was

23   the deadline for filing a claim under 523(a)(6),

24   that's correct.  That part of it is correct.

25       Q.    It's true that you attended the meeting of



1  creditors that was held in the debtor's bankruptcy

2  case, correct?

3      A.   Yes.  Of course I did.

4      Q.   And Exhibit 12 -- your Exhibit 12

5  identifies the 341 meeting of creditors having been

6  conducted on February 20th of this year.  Do you see

7  that at the top of Exhibit 12?

8      A.   Exhibit 12?

9      Q.   Your Exhibit 12 on the right-hand side at

10  the top.

11      A.   February 20th, I believe.  I don't --

12      Q.   You don't have any reason to --

13      A.   I believe that that is approximately

14  correct.  I -- I think it was noticed for an earlier

15  date and that the 341 was continued.  And I think the

16  continued date was -- I think it was about

17  February 20th.

18      Q.   Are you just speculating on a continuance?

19      A.   Well, can't I figure that out from the

20  court's docket?

21      Q.   It's right in the docket, though, right?

22  So I'm asking you, if there's no continuance, you're

23  just speculating on that.

24      A.   No, I'm giving you my best understanding.

25  My personal knowledge was that the initial notice had



1    it at an earlier date and that it was rescheduled, I

2    think, until February -- around February the 20th.

3    And the 341 was conducted in Provo, at the library, I

4    believe.

5         Q.    If there's no record of a continuance of

6    the 341 date in this case, you're mistaken.  Yes?

7         A.    You know, whatever the doc -- whatever the

8    doc -- I'm just giving you -- it was my understanding

9    that there was a continuance.  If there wasn't, then

10   there wasn't.  I wasn't heavily involved at that

11   time, but I did attend the 341 meeting.

12        Q.    Okay.  I mean, you can take a look at

13   Exhibit 12, if you'd like.  It has the docket in this

14   case and there is no indication of any continuance.

15        A.    Do you want me to take the time and look

16   at that?

17        Q.    No, I --

18             THE COURT:  I think the -- I mean, I'm not

19   sure what you are trying to establish, Mr. Morrison,

20   but the 341 meeting was scheduled for February 20th,

21   2019.

22             MR. MORRISON:  Thank you.

23             THE COURT:  And you testified, Mr. Call,

24   that you attended the 341 meeting.

25             THE WITNESS:  I did.



1              THE COURT:  Is there any --

2              MR. MORRISON:  Just a follow-up question

3    on that.

4              THE COURT:  Just like his --

5              MR. MORRISON:  Where I'm -- well --

6              THE COURT:  When did you attend it?

7              MR. MORRISON:  Sure.

8         Q.    You were there at the scheduled 341

9    meeting?

10        A.    I was.

11        Q.    Okay.  And you were there representing

12   State Bank?

13        A.    I was.

14        Q.    You posed questions of the debtor at the

15   341 meeting?

16        A.    You are asking me if I did?

17        Q.    Yes.

18        A.    Yes, I did.

19        Q.    Okay.

20        A.    He did not answer most of them.  You

21   instructed him not to answer, and so I was not able

22   to get much, if any, information.

23        Q.    That wasn't the question that I asked you,

24   was it?

25        A.    Well, that was my answer.



1          MR. MORRISON:  Move to strike, your Honor.

2     It's not responsive.

3          THE COURT:  The answer is stricken.

4          Q.    (BY MR. MORRISON)  You knew when you went

5     to the 341 meeting of creditors that you had

6     approximately 60 days to file an objection to the

7     debtor's bankruptcy discharge.

8          A.    I knew when the -- I knew when the -- I

9     don't know if exactly on that day I knew, but I knew

10    in advance that -- that April 22nd was the deadline.

11         Q.    And you waited until April 22nd of this

12    year to conduct the debtor's 2004 exam.

13         A.    The debtor's -- we sought permission from

14    the court, I think it was the first part of April, to

15    conduct the exam and -- and the -- in order to give

16    the adequate period of notice, that date was the 4 --

17    became the 22nd day of April.  I had agreed to extend

18    it to accommodate you and the debtor, and actually

19    had prepared a motion to extend the date if --

20         MR. MORRISON:  Again, your Honor, this is

21    nonresponsive.  Move to strike.

22         THE COURT:  Sustained.

23         Q.    (BY MR. MORRISON)  I just need you to

24    answer the question that I'm asking.  Is that okay?

25         A.    Sure.



1        Q.    All right.  Thank you.

2              All right.  Let's go ahead and ask -- or

3    talk about that.  At the time of the 2004 exam you

4    testified earlier that you thought it had started at

5    10:00 in the morning but you might -- might allow for

6    a 9:00 time.

7              Let me have you open my exhibit binder, if

8    you would.  And I'll have you look at Exhibit B.

9        A.    Okay.

10       Q.    Can you identify what Exhibit B is?

11       A.    It's a series of e-mails -- a string of

12   e-mails.

13       Q.    Between you and I?

14       A.    Between you and I, copied to a number of

15   people.

16       Q.    Okay.  And on the very first page, second

17   sentence, it -- it indicates that the 2004 exam was

18   set for Monday, April 22nd, at 9:30 a.m.

19       A.    Okay.

20       Q.    You don't have any reason to dispute that

21   starting time, do you?

22       A.    (No audible response).

23       Q.    Okay.  This e-mail correspondence goes on

24   to indicate that my office had requested a little bit

25   later starting time that day, at 11:00, to



1    accommodate my -- my client who was traveling from

2    Ephraim.

3              You see that request on page 3, correct?

4         A.    Which -- on page 3 of 5?  Which line?

5         Q.    Page 3.  Exhibit -- Exhibit B, page 3 of

6    5, the first two e-mails on that -- on that page.

7         A.    Exhibit [sic] 3 of 5.  I'm on that page.

8    Which exhibit are you looking at?

9         Q.    Okay.  There is an e-mail dated April 15

10   at 3:22 p.m.

11             Do you see that e-mail?

12        A.    3:22, I do.

13        Q.    And do you see in that a reference to

14   requesting that we start the 2004 exam at 11:00 a.m.?

15   Second-to-last sentence.

16        A.    Yeah, let me -- let me read it.

17             I do.  I see that communication from you

18   to me.

19        Q.    And then your response on April 17th at

20   3:58 p.m., the first sentence reads -- reads what?

21        A.    My response to your communication is -- so

22   you're trying to get -- you requested it start at

23   11:00, and my response says, "That is not going to

24   work.  However" --

25        Q.    Okay.  I'm just asking you about the first



1    sentence.

2         A.    You want me to read the e-mail?

3         Q.    I was just asking you about the first

4    sentence.

5         A.    Okay.

6         Q.    Your response was that was not going to

7    work.

8               And then we -- we kept it at April 22nd at

9    9:30.

10              If you go to the next page, which is

11   page 4 of 5...

12        A.    Okay.

13        Q.    You sent me an e-mail on April 17th at

14   6:31 p.m.  And the second paragraph says, and I

15   quote, "I cannot grant a later start on April 22nd

16   because, as you know, it is the bar date for the

17   filing of the Bank's Complaint.  Thus, I would be

18   forced to work late if the examination runs late."

19              That's what your e-mail says, correct?

20        A.    No.  It's the first -- that's the first

21   sentence of the e-mail.

22        Q.    It's the first sentence --

23        A.    But then --

24        Q.    -- of the second paragraph.

25        A.    But then it goes on and says, "In light of



1    the foregoing, if your client is willing to extend

2    the bar date by even a few days, then we can start at

3    11:00.

4         Q.    Okay.

5         A.    I -- I -- I guess I just take offense at

6    your trying to somehow nitpick out sentences and take

7    these items out of context to suggest I wasn't

8    accommodating when, in fact, I was accommodating, and

9    I prepared a motion and a stipulation at your request

10   and sent it to you, and you wouldn't respond.

11              MR. MORRISON:   Argumentative, your Honor,

12   and nonresponsive to my question.   Move to strike.

13              THE WITNESS:   I disagree.   I think it is

14   responsive.

15              THE COURT:   Well --

16              MR. MORRISON:   He'll have a chance --

17              THE COURT:   Your attorney should be the

18   one making the objection.   But I don't -- I'm going

19   to sustain the objection.   But doesn't the -- don't

20   the e-mails speak for themselves, Mr. Morrison?   I

21   mean, they say what -- I understand Mr. Call's issue

22   perhaps saying, you stopped, you didn't read the

23   whole thing.

24              MR. MORRISON:   Sure.

25              THE COURT:   But the whole thing is in



1    there.  All the e-mail chain is there.

2              MR. MORRISON:  Sure.  I was just focusing

3    on the fact that he said that he didn't want to work

4    late.

5              THE COURT:  I -- I've read the e-mail

6    chain.

7              MR. MORRISON:  Okay.  Good enough.

8              THE COURT:  I know what it says.

9              MR. MORRISON:  Yeah.

10             THE COURT:  I know that Mr. Call [sic]

11   said, Hey, let's extend the time.

12             And you said, No way.  Can we start at

13   11:00?

14             And he said, That's not going to work; I'm

15   going to have to work late if we do.  So you started

16   before 11:00, I know.

17        Q.    (BY MR. MORRISON)  And you were working

18   late on April 22nd, 2019, when you filed the

19   Adversary Complaint -- or at least attempted to file

20   it?

21        A.    On April 22nd, that's correct.

22        Q.    Okay.  I had an opportunity in this case

23   to send you some written questions by e-mail.  And

24   one of the questions I had asked you was how many

25   adversary complaints you had filed this year.



1    A.    Yes.

2    Q.    What was your response to me?

3    A.    One.

4    Q.    And that one case was this case?

5    A.    That's correct.

6    Q.    And I also asked you how many adversary

7    complaints you had filed last year.

8    A.    Yes.

9    Q.    And your answer was?

10   A.    None.

11   Q.    I want to go back through the sequence of

12   your attempted effort to file the Adversary Complaint

13   in this case.  I note when you were testifying you

14   indicated that your first attempt to insert a dollar

15   amount included a comma.

16         Do you remember testifying to that?

17   A.    I don't believe so.  I believe I said that

18   it included a dollar sign.

19   Q.    The testimony is what it is.  It's on the

20   record.

21   A.    I disagree.  That wasn't my testimony.

22   Q.    Okay.

23   A.    I said that it -- I included a dollar

24   sign, and it may or may not have included a comma.

25   Q.    Okay.  When were you trained to do filing



1   via CM/ECF?

2        A.     I was trained, gosh, many years ago.  When

3   the system went over to the ECF system we came to the

4   court.  We went through some extensive training.

5        Q.     Did you have any other subsequent training

6   after that?

7        A.     You mean here at the court?  So just

8   anywhere?

9        Q.     Well, we can start here with the court,

10  sure.

11       A.     I think we did come back and had some

12  follow-up training, yes.

13       Q.     Were you trained to put a dollar sign in

14  when you were asked for the entry of an amount?

15       A.     I don't recall.  You mean back when I was

16  trained?

17       Q.     Sure.

18       A.     I don't recall that.

19       Q.     Okay.  Were you trained to put a comma in

20  that window when you were asked for a demand amount?

21       A.     Back when I was trained?

22       Q.     At any time when you were trained, were

23  you ever trained to put a comma?

24       A.     I have no recollection of that.

25       Q.     Do you have any recollection of ever being



1  trained to put a decimal point in as a -- as a demand
2  amount?

3      A.    I -- I don't recall being trained.  I
4  don't have a recollection of my training on that
5  specific issue.

6      Q.    Let's have you turn to your Exhibit 3,
7  page 17.

8      A.    Okay.

9          MR. MORRISON:  And before we get there,
10 Honor, may we receive our Exhibit B into evidence?

11         THE COURT:  Any objection, Mr. Call?  Oh,
12 I'm sorry.

13         MR. KUETTEL:  No objection, your Honor.

14         THE COURT:  Exhibit B received.

15         MR. MORRISON:  All right.  Very good.

16         MR. KUETTEL:  No offense.

17         THE COURT:  I -- I almost forgot you
18 weren't the attorney on this, Mr. Kuettel.

19         MR. MORRISON:  All right.

20     Q.    So, Mr. Call, we're having you look at
21 your Exhibit 3, and specifically your page --

22     A.    You mean the -- the Bates Exhibit 3?

23     Q.    Yes.

24     A.    I -- I follow you.

25     Q.    Okay.  Thank you.  Your exhibit binder



1    three and page 17.

2        A.    Yes.

3        Q.    Which has the window for the demand amount

4    with the parentheses, the dollar sign and three

5    zeros.

6              Do you see that?

7        A.    Yes.

8        Q.    And then below that there's some different

9    numbers --

10       A.    Yes.

11       Q.    -- indicating 2,000, 200 and 200,000?

12       A.    Yes.

13       Q.    During your attempts to file the Adversary

14   Complaint you did testify, though, that you had

15   attempted to insert a number there with a comma at

16   some point.

17       A.    I went through so many permutations, with

18   dollar signs, without dollar signs, with commas,

19   without commas, I -- I went through many, many

20   permutations.

21             This document here is -- is a sample of

22   that page.  And those numbers came up -- when I went

23   in, Google brought those up.  It remembered those

24   numbers.  So this document actually showed when I

25   went into that.  Google brought up those three



1   numbers.  So we printed out this as a screenshot to

2   show what -- what reflected.  But those numbers were

3   numbers that I had entered.

4        Q.    When was the screenshot prepared or done?

5        A.    This was done before -- before the

6   exhibits.  I -- I'm not suggesting -- well, these

7   exhibits in Exhibit 3 are not pictures of the actual

8   filing.

9        Q.    Okay.  That's what I'm asking.  These were

10  not contemporaneously created, correct?

11       A.    Yes.

12       Q.    These were created after the fact?

13       A.    They were.

14       Q.    And we don't see any input here with

15  dollar signs or commas or decimals, do we?

16       A.    No, this is just a print screen.  When the

17  print screen -- when we went to print the print

18  screen, Google brought up those last three numbers.

19       Q.    All right.  The only error message that

20  you've testified about receiving in court today was

21  an error message that you claim that you received

22  indicating that -- case opening canceled, writing

23  answer or writing record.

24       A.    Well, that's inaccurate.

25       Q.    Okay.  Tell me about the error message.



1  Tell me what it said.

2       A.    In the demand wind -- box -- in the demand

3  box, as I would go through the various permutations

4  with different numbers, it would respond each time

5  with an error message that said integer missing.

6       Q.    Okay.

7       A.    The error message about adversary --

8  there's a case open failed.  Writing answer record

9  came up as an error to the payment screen when I

10 tried to make the payment.  So there were two

11 different error messages.  They came up at different

12 times.  It was always the same error message under

13 the demand window, and it was always the -- when it

14 would come up -- it didn't always come up on the

15 payment window, but when it -- if I clicked it a

16 number of times, it would come up.  But that was on

17 the paid $350 window.

18      Q.    Okay.  So tell me about the error message

19 when you attempted to -- when you accessed the

20 payment window.  Tell me exactly what that error

21 message was.  Case opening canceled writing...

22      A.    The payment window?

23      Q.    Yes.  What was the error message for that?

24      A.    Case -- it was either case open -- or case

25 opening failed, writing answer record.



1      Q.     Okay.  Now, in your Exhibit 8 --

2      A.     The Bank's Exhibit 8?

3      Q.     Yes.  Thank you.  Bank's Exhibit 8.  You

4  spent a little bit of time reading through in court

5  today the problems that you encountered, but there's

6  no mention at all whatsoever to this second error

7  message that you're claiming you encountered as far

8  as case opening failure or case opening failed,

9  writing answer record.  That's not indicated in this

10  e-mail, is it?

11      A.     I don't see it in this e-mail.

12      Q.     The second paragraph of this same exhibit,

13  the first sentence, where it says, "I discussed the

14  matter with the court's IT department and was told

15  that the problems and the error messages that I

16  received reflect that the software was not operating

17  correctly" -- who told you that?

18      A.     I believe it was Russell Jones.

19      Q.     Okay.  You remember that we had a meeting

20  with the bankruptcy court staff in August in a

21  training room here, correct?

22      A.     Yes.  Yes.

23      Q.     And you remember I asked -- well, first of

24  all, Russell Jones was in attendance at that meeting?

25      A.     Yes, he was.



1      Q.    And who else was in attendance?

2      A.    Gary Gfeller, Gloria and Janene.

3      Q.    Okay.  And I asked them specifically which

4  one of them told you that -- which one of them told

5  you this statement, and none of them said that they

6  had told you that.

7      A.    I disagree.

8      Q.    Okay.  Well, we'll be able to hear from

9  them today.

10     A.    I hope.

11     Q.    Is it your understanding that an adversary

12  complaint is only accepted for filing when you remit

13  the payment -- the filing fee?

14     A.    You know, that's -- that's a good

15  question.  It -- because that last window -- it's

16  been turned around, but because it says open

17  adversary paid 350, I was uncertain whether the 350

18  had to be paid to open the adversary.  But because

19  the message came that said case -- case open failed,

20  writing answer record, I was uncertain -- I -- it's

21  my understanding now that the payment isn't needed,

22  but at the time I was uncertain.

23     Q.    Okay.

24     A.    I thought the payment needed to be made at

25  that time, but I wasn't sure where in that timeline



 1    the adversary actually opened.

 2              MR. MORRISON:  I'm almost done, your

 3    Honor.  Just a few more questions.

 4         Q.    On your e-mail to me, which is the State

 5    Bank's Exhibit Number 4...

 6         A.    Okay.

 7         Q.    There's no indication on that e-mail that

 8    it was attempted at 11:58.  It says 12:00 a.m. on the

 9    document.

10         A.    Yeah.

11         Q.    Does it say 11.58 p.m. on the document?

12         A.    The document doesn't say that.

13              THE COURT:  Which exhibit are we looking

14    at?

15              MR. MORRISON:  We're looking at Exhibit 4.

16              THE COURT:  Okay.

17              MR. MORRISON:  Bank's Exhibit 4.

18              THE WITNESS:  I thought I had testified

19    that I started to go through the process of sending

20    that e-mail and that I -- before 12:00, and then I

21    sent it, and at the time it was sent it was 12:00.

22    But I didn't start to send it at 12:00 because it may

23    take a minute or two to get it and go through -- you

24    know, bring up the -- the browser and send the

25    e-mail.  So it was probably 11:58 or 11:59, and I



1   attempted to send it at midnight.

2        Q.    But the document --

3        A.    But I sent it at that time.

4        Q.    My question for you is, the document

5   doesn't say 11:58 or 11:59.

6        A.    No, it says --

7        Q.    It says 12:00 a.m.

8        A.    It does.

9        Q.    And sending me an e-mail is not the same

10   thing as filing a pleading with the court, is it?

11       A.    It -- of course not.

12       Q.    Okay.

13       A.    But I thought it was the proper thing to

14   do when -- because the filing system wouldn't work.

15       Q.    The e-mail address on -- for me -- for my

16   office on Exhibit 4 is different than the e-mail

17   address on Exhibit 5, is not -- is it not?

18       A.    It appears to be.

19       Q.    Okay.

20       A.    Is that not your e-mail?

21       Q.    Those are different e-mail addresses,

22   aren't they?

23       A.    Are they yours?

24       Q.    No.  The first one is not.

25       A.    Oh.



1        Q.    The second one is.

2              You've seen the -- the case law that we've

3   cited in our pleadings in this case that indicates

4   that the filing of an objection to discharge and the

5   filing of an objection to dischargeability, the

6   deadline for those filings is a hard and fast

7   deadline.  You're familiar with that case law?

8        A.    I've -- I'm familiar with case law that's

9   been briefed.

10       Q.    Okay.  And yet you waited until almost the

11  very last minute to attempt to file your adversary

12  case in this -- in this particular case.

13       A.    No, that's not accurate.

14             MR. MORRISON:  Okay.  Nothing further,

15  your Honor.

16             THE COURT:  All right.  Mr. Kuettel, is

17  there any redirect?

18             MR. KUETTAL:  Yes, just a few questions,

19  your Honor.

20                  REDIRECT EXAMINATION

21  BY MR. KUETTEL:

22       Q.    Mr. Call, were the exhibits placed on your

23  desk or your desktop at 11:36 p.m.?

24       A.    What I meant to say, that they were on my

25  computer desktop, not on my desk, but on my screen,



1    ready to be filed.

2         Q.   Thank you.

3              And if you can turn to Exhibit 8 and read

4    the first sentence of that second paragraph again.

5    You can just read it to yourself.

6              Is it your understanding that that

7    references multiple error messages?

8         A.   Yeah, it -- I -- it does.  I indicated

9    that -- that -- it's sacri -- I discussed with the

10   court's IT department, was told that the problems and

11   the errors messages that I received reflect the

12   software was not operating correctly.  Messages.

13              MR. KUETTEL:  Thank you.

14              No more questions, your Honor.

15              THE COURT:  All right.

16              MR. MORRISON:  Nothing more.

17              THE COURT:  One -- I have one question,

18   Mr. Call, that wasn't clear from the testimony.

19              Do you know when the Complaint was filed?

20              THE WITNESS:  Yes.  I -- I believe it was

21   filed three times.  I believe it was filed twice on

22   the 22nd and then once on the 23rd, shortly --

23              THE COURT:  What do you base that on?

24   Maybe I'll re -- restate my question.

25              Do you know when the court reflects --



1   when the court's docket reflects that the Complaint

2   was filed?

3          THE WITNESS:  My understanding is the

4   Court's docket that -- that were introduced shows

5   that they were modified, but my understand -- I don't

6   know what they reflected before they were modified.

7   But given that the payment wasn't needed to make the

8   filing -- again, I believe that I filed the Complaint

9   twice on the 22nd.  Then I sent my e-mails.  Then I

10  went back and filed the third time.

11         THE COURT:  All right.  So maybe you don't

12  know.  All right.  I'm going to take a brief recess.

13  We've been at this an hour and a half.

14         THE CLERK:  All arise.

15         (Recess taken.)

16         THE CLERK:  Court resumes in session.

17  Please be seated.

18         THE COURT:  All right.  So we're done with

19  Mr. Call, correct, Mr. Morrison?

20         MR. MORRISON:  Yes.  Thank you, your

21  Honor.

22         THE COURT:  Your next witness, Mr. Call?

23         MR. CALL:  Yes.  We would like to speak

24  with Gloria Igo.

25         THE COURT:  All right.  I guess we'll have



1    to see if Gloria is here.  I'll take a quick recess.

2            THE CLERK:  All arise.

3            (Recess taken.)

4            THE CLERK:  Court resumes in session.

5    Please be seated.

6            THE COURT:  All right.  Ms. Igo, would you

7    please come forward and be sworn?

8            THE CLERK:  Step forward right here and

9    raise your right hand.

10           (Witness sworn.)

11           THE CLERK:  Have a seat at the witness

12   stand.  State and spell your name for the record,

13   please.

14           THE WITNESS:  My name is Gloria D. Igo.

15           MR. CALL:  May I proceed, your Honor?

16           THE COURT:  Yes.

17                GLORIA D. IGO,

18      called as a witness, being first sworn,

19        was examined and testified as follows:

20                DIRECT EXAMINATION

21   BY MR. CALL:

22      Q.    Ms. Igo?

23      A.    Igo.

24      Q.    Igo?

25      A.    Uh-huh.



1      Q.     Ms. Igo, you work as a staff member here

2   in the clerk's office, correct?

3      A.     Yes.

4      Q.     And how many years have you been here?

5      A.     Twenty-six years.

6      Q.     Okay.  A long time.  And are your initials

7   GCI?

8      A.     Uh-huh.

9      Q.     And --

10      A.     Yes.

11      Q.     And what are your duties currently?

12      A.     I currently am a senior clerk.  If my

13   supervisor is not here, I step in.  There's two of

14   us.

15          Also I'm a case administrator.  So I have

16   my own digits.  And I look over what the cases -- the

17   digits that I have.  And we check the new cases too.

18   Those get divided in the morning either by me or the

19   other senior clerk.  We get those out to whoever is

20   here.

21      Q.     And who is the other senior clerk?

22      A.     Her name is Mara.

23      Q.     Mara?

24          And were you doing -- were you performing

25   those same duties on April 23rd of this year?



1     A.     Yes.

2     Q.     Okay.  And do you have a recollection --

3 do you occasionally go in and make corrections to

4 docket entries that are entered by filers?

5     A.     We do that all the time, yes.

6     Q.     And how frequently do you amend a docket

7 entry?

8     A.     Every day, if there is a problem with it.

9     Q.     So normally you would be amending a docket

10 entry at least daily?

11     A.     Yes.

12     Q.     Would you be the primary person to amend

13 those dockets -- docket entries, or is there someone

14 else?

15     A.     There is about 10 of us, 12 of us.

16     Q.     That will amend docket entries?

17     A.     Yes.  It depends on the digits.  The range

18 of digits that you have, we will look at those cases.

19     Q.     And when you say "the range of digits,"

20 are you talking about the case number?

21     A.     It is the last two -- yeah, the -- the --

22 yes, you're right, the case number.

23     Q.     So you're assigned a certain range of case

24 numbers to oversee?

25     A.     It is the last digits of a case number.



1        Q.     Okay.  And what are your -- what are your

2    digits?

3        A.     Right now it's 36 to 44.

4        Q.     From 36 to 244?

5        A.     Forty-four.

6        Q.     Forty-four.  Okay.

7        A.     But that changes, too.  If somebody is not

8    here, then we need to cover for those digits too.

9    And I believe that day that adversary proceeding was

10   someone else's case, so I -- I QC'd that case.

11       Q.     I'm sorry, I didn't understand you.  You

12   think that that case --

13            THE COURT:  Excuse me.

14            So, Ms. Igo, you referenced "that day,"

15   and I know that you know that we're talking about

16   April 23rd, but it hasn't been stated in the

17   questioning to you yet.

18            THE WITNESS:  Okay.

19            THE COURT:  So -- I'm just trying to help

20   here.

21            MR. CALL:  Yeah.

22            THE COURT:  What you do all the time is

23   something that you assume people understand.

24            THE WITNESS:  True.

25            THE COURT:  So just -- we'll let



1    Mr. Call -- try and follow Mr. Call, because he's --

2    I think he has what he wants to ask and -- but we do

3    need to make the record clear, because eventually he

4    is going to get around to the adversary proceeding

5    that is at issue here.

6              THE WITNESS:  Okay.

7              THE COURT:  And I think he's just trying

8    to get to that through the questioning.

9              THE WITNESS:  Okay.

10             MR. CALL:  I am.

11        Q.    So in a given single day, can you tell me

12   how many -- just approximate how many amendments you

13   would make to a docket entry.

14        A.    I couldn't say that, really.

15        Q.    Would it be more than five?

16        A.    You mean to one case?

17        Q.    No, no, all the cases in a single day.

18        A.    Yeah.

19        Q.    More than 10?

20        A.    Yes.

21        Q.    More than 20?

22        A.    Yeah.

23        Q.    Okay.  And do you coordinate with anyone

24   else about -- in making these amendments, you make

25   some corrections, do you not?



1        A.    Yes.

2        Q.    And do you coordinate with any other

3    person regarding the types of errors or corrections

4    that you are making?

5        A.    Some of them, yes.

6        Q.    Okay.  And who would that be?

7        A.    Our supervisor.  Sometimes, if there is a

8    hearing, then we will do the -- I cannot speak -- the

9    scheduling clerk, sometimes the judges.

10       Q.    Okay.  So do you know -- are there

11   occasions when you go through and you see your -- you

12   see corrections that need to be made and you see them

13   repeatedly, you make a note of that?

14       A.    Well, yeah, we make a note of it.

15       Q.    And you report that to your senior

16   supervisor?

17       A.    We don't need to do a report every time,

18   no.

19       Q.    You don't.  Okay.  So do you make a

20   recommendation, I'm making a lot of corrections to

21   these entries -- is there some reason for that?

22       A.    Sometimes, yes, because they have them --

23   went to the wrong -- wrong thing, or maybe they've

24   used the wrong event.  Sometimes they have used a --

25   capture a wrong image.



1       THE COURT:  So, Mr. Call, what is it you

2   are trying to establish?

3       MR. CALL:  So -- I mean, I'd like to go

4   back and ask her about amendments made to the docket

5   entries.

6       THE COURT:  Right, because some of the

7   questions you are asking her are perhaps beyond the

8   scope of her knowledge or her decision.  I mean, I've

9   been here ten years; I know what the court does.

10  Now, I don't know on a daily basis, but I know that

11  we have what are called case administrators, and they

12  are quality control.  And what they do is they look

13  at what has been filed, and they see if there are

14  certain errors.

15      And if there are standard errors, they are

16  trained to treat the standard errors in a consistent

17  way.

18      And then there might be some that are not

19  the standard errors.  And as Ms. Igo has testified,

20  if she has a question about something that is not a

21  standard error, she would ask a supervisor, and

22  sometimes it might even come up to chambers.  It

23  might come to me.

24      MR. CALL:  Thank you.

25      THE COURT:  Hey, we have this issue.



1   So -- I mean, that's the background of what Ms. Igo

2   does, and I can almost take judicial notice --

3               MR. CALL:  Notice of that.

4               THE COURT:  -- notice of that.  I mean,

5   that's what the court does.

6               MR. CALL:  Will you take judicial notice

7   of that?

8               THE COURT:  Yes.  I guess you're all done.

9               MR. CALL:  Okay.  So...

10              THE COURT:  Now that didn't tell you that

11  much about what Mr. Jones does.

12              MR. CALL:  Right.

13              THE COURT:  I -- I can't help you out,

14  Mr. Jones.

15              MR. CALL:  Okay.

16       Q.    Well, let me ask you if you would look to

17  what's been marked as the Bank's exhibit.  There is

18  an exhibit book right here.  This first book.

19       A.    Okay.

20       Q.    Yeah.

21              Could I have you look at Exhibit 12?  Or

22  turn to Exhibit 12.  And then down on the bottom of

23  the first page, on docket entry number 27 -- if you

24  could focus on that.  I'm sorry, it's the second

25  page.  So Exhibit -- Exhibit 12, page 2.



1        A.     Page 2 from the bottom or from the top?

2        Q.     Page 2, the bottom entry right here.  It

3    says 27.

4               THE COURT:  It's on the very bottom

5    right-hand corner, Ms. Igo.  There's --

6               THE WITNESS:  Okay.

7               THE COURT:  -- two small numbers.

8               THE WITNESS:  Oh, okay.

9               THE COURT:  2/6, so that's 2 of 6.

10              THE WITNESS:  Okay.

11              THE COURT:  So that's the page.  Correct,

12   Mr. Call?

13              MR. CALL:  Yes.

14       Q.     So, unfortunately, it -- it covers over to

15   the next page, but if you'll turn to the next page

16   there --

17              THE COURT:  So docket entry number 27.

18              MR. CALL:  Yeah.

19       Q.     Will you look at that docket entry and

20   tell me if you made changes to that docket entry?

21       A.     Yes.

22       Q.     And how do you know that you did?

23       A.     Because this has my initials and it says

24   modified by me on 4-23.

25       Q.     And when you make docket entries, do you



1    have a journal that you keep in handwriting or on the

2    computer as to the docket entries that are changed?

3         A.    No, there is a log on our computers.

4         Q.    You have a log?

5         A.    It's on the computers.  It's -- it's

6    automatically entered.

7         Q.    The docket -- I'm -- what does the log

8    reflect?

9         A.    It has every entry you done on that day.

10        Q.    Okay.  So do you have a copy of that log?

11        A.    Yeah.  If I print one, yes.

12        Q.    Okay.  I thought when we asked -- when we

13   met and I asked if you had copies of the docket

14   entries before they were modified -- I thought you

15   told me that you did not.

16        A.    Yeah, I did.  I did say --

17        Q.    Can you provide those to me -- to the

18   court?

19        A.    Probably I could bring them, yes.

20        Q.    Could you?  Okay.  So am I to understand,

21   then, that before you made this -- the docket entries

22   to this docket number 27, that -- that you had the

23   original docket entries before they were modified?

24        A.    Yeah.  I have a docket printed.  That's

25   where I have the docket.  Just the same as this I



1   will have.  And then I will have a copy of the one --

2   adversary proceeding.

3         Q.    Okay.

4         A.    Just -- not -- not the pleading itself,

5   but just the docket of the adversary proceeding.

6         Q.    So if there were -- if the docket had a

7   certain demand amount or a certain description in it,

8   you -- you believe that you have a copy of that?

9         A.    I believe I do, yeah.

10        Q.    Have you looked to see that you would have

11   copies of those documents on April -- that occurred

12   on April 22nd of 2019?

13        A.    I did when we met the first time.  I keep

14   my -- my logs in a file.  I could go back and see if

15   I still have them, because I usually keep them a

16   year.

17        Q.    It was -- again, it was my understanding

18   when we spoke that you didn't believe you still

19   had --

20        A.    No, I did say that I have them.

21        Q.    You do have them?

22        A.    Uh-huh.

23        Q.    Okay.

24        A.    At that time.

25        Q.    Okay.  Could you check and see if you



1    still have those?

2         A.    Yes.

3         Q.    Okay.  So will you turn to --

4              THE COURT:  Well, I guess I'm going to

5    have to take a recess to let her do that.

6              MR. CALL:  Could I have her go get them?

7              MR. MORRISON:  Is that something she could

8    get right now or is that -- I mean, what kind of

9    delay are we going to be looking at?

10             THE COURT:  Yeah, I think if she's got

11   them, she can get them in 10 --

12             THE WITNESS:  Yeah.

13             THE COURT:  -- or 15 minutes.

14             THE WITNESS:  Uh-huh.

15             THE COURT:  I'm assuming that what we have

16   in the court is we have an electronic trail, just

17   like Mr. Call's Exhibit Number 1 -- not exactly like

18   that, but a metadata.  But it's even -- it's less --

19   it's simpler than metadata.  But we have a tracking

20   of what changes are made to the docket.  So I'll take

21   a brief recess.

22             THE CLERK:  All arise.

23             (Recess taken.)

24             THE CLERK:  Court resumes in session.

25   Please be seated.



1          THE COURT:  All right.  Before we

2   continue, maybe we should talk about the time we're

3   going to have.  I don't think we're going to finish

4   today.  I'm not going to go past 5:00.  I -- my staff

5   has lives to live.

6          UNIDENTIFIED SPEAKER:  Right.

7          THE COURT:  So I understand parties have

8   time tomorrow afternoon at 1:00.  Is that correct?

9          MR. CALL:  Yes.

10          MR. MORRISON:  Yes, your Honor.

11          THE COURT:  And -- so I don't know that

12   Mr. Beal needs to be here.  He's welcome to be here,

13   but I -- I understand he's come from Ephraim, and if

14   you find it entertaining, you can come, Mr. Beal.  If

15   you don't, I don't -- you don't intend to call

16   Mr. Beal on this issue, correct?

17          MR. MORRISON:  No.

18          THE COURT:  So what I'm thinking is let's

19   finish up with Ms. Igo and then we'll call it a day

20   and start tomorrow at 1:00.

21          MR. MORRISON:  Okay.

22          MR. CALL:  Okay.

23          THE COURT:  Ms. Igo, if you would please

24   retake the stand.

25          And have you been provided the exhibits?



1    Have you seen them at all?

2              MR. CALL:  No.

3              THE COURT:  Oh.  All right.  Well, maybe I

4    should take -- I thought you had seen them.  Maybe

5    I'll take --

6              MR. CALL:  Oh, it's just this one page.  I

7    haven't seen this log.

8              THE COURT:  Okay.

9              MR. CALL:  Could we have it --

10             THE COURT:  Yes, I'll take a brief recess

11   so you can see what it is and form your questions.

12             Court's in recess.

13             THE CLERK:  All arise.

14             (Recess taken.)

15             THE CLERK:  Please be seated.

16             THE COURT:  All right, Mr. Call.

17             MR. CALL:  Okay.

18        Q.   So in the -- just in the break, just for

19   the record, we've added two exhibits, Exhibit 16 and

20   Exhibit 17.  And do you have those exhibits in front

21   of you?

22        A.   Yes, I do.

23        Q.   Okay.  Could I ask you to look first at --

24   at what's been marked as Exhibit 16 --

25        A.   Uh-huh.  Yes.



1        Q.      -- the Bank's exhibit?

2                Can you describe what this document is?

3        A.      This is the log of all the things that I

4    do every day.  It shows any changes that I made to

5    any case.

6        Q.      Okay.  And so this would be an excerpt of

7    what you did on April 23rd?

8        A.      What was that again?

9        Q.      This would be a part of the -- of what you

10   did on April 23rd?

11       A.      Yes.

12       Q.      Okay.  But it wouldn't include everything

13   you did on the 23rd, would it?

14       A.      No.

15       Q.      Okay.  So there -- there are other cases

16   that you logged on that date, but this is the page

17   that deals with State Bank; is that correct?

18       A.      Yes.

19       Q.      Okay.  And then could I ask you to -- to

20   look on that exhibit and go down to the adversary

21   that's four rows down that is 19-02043?

22       A.      Yes.

23       Q.      Okay.  That's the Adversary Complaint

24   number, correct?

25       A.      Correct.



CITICOURT
THE REPORTING GROUP

1       Q.    And could you indicate -- those entries to

2   the right that say edit case and/or statistical data,

3   demand changed from 200,000 to 6 -- to 168, is that

4   what you type in -- did you type that into the log?

5       A.    No.

6       Q.    Okay.  Who -- who typed that into the log?

7       A.    The computer does that itself.  I just

8   changed the -- the demand amount, and I entered the

9   727.  I was looking at your pleading and that there

10  was two, the 523 and the 727.  So I determined

11  something was missing, so I added that.  But it's in

12  a different form, and the computer does all of this

13  by itself.  I don't know how it's done.

14      Q.    So do you enter that into the computer,

15  and then it generates the log?  I'm just trying to

16  understand --

17      A.    Yes.

18      Q.    -- what you do to -- that results in this

19  log.

20      A.    Yeah.

21      Q.    You write it -- hand write it or do you

22  enter it?

23      A.    I enter in the computer, and then

24  something in the background does this.

25      Q.    Okay.  So this isn't your language that



1    we're looking at?

2         A.    No.

3         Q.    Do you have the language that you used --

4    that you input into the computer system?

5         A.    No.  It just go to --

6         THE COURT:  I think she testified the

7    language that she put in.

8         THE WITNESS:  Yes.

9         THE COURT:  She put in 168 and she put in

10   727 CDE.

11        MR. CALL:  Okay.

12        Q.    And then the computer generated those

13   changes?

14        A.    Yes.

15        Q.    But you put it in in -- in a different

16   form, and then the computer printed this log?

17        A.    Yes.

18        Q.    Okay.  And so is it accurate -- where it

19   says edit case and statistical data, is that

20   something that you -- you put in initially or not?

21        A.    I only changed the demand amount.

22        Q.    Okay.  So you changed the demand amount --

23   so it's accurate that -- that the demand amount was

24   changed from 200,000 to 168?

25        A.    Uh-huh.



1      Q.    Okay.  And then the second -- the second

2   nature of the suit was changed from blank to

3   objection, revocation of discharge?

4      A.    I added.

5      Q.    You added that?

6      A.    Yeah.

7      Q.    So you reviewed the Complaint when you

8   made these changes?

9      A.    Yes.

10     Q.    Okay.  And so is that why that on the

11  Bank's Exhibit 13 it shows, at the top of the docket,

12  that the demand is 168,000?

13     A.    Yes.

14     Q.    Okay.  That came about because of your

15  change, correct?

16     A.    Correct.

17     Q.    The docket -- the docket didn't ever

18  reflect the 200,000, did it?

19     A.    The docket --

20     Q.    The top -- I'm sorry.  Not the docket,

21  but -- well, the docket sheet, Exhibit 13, in the top

22  left-hand corner, there's not an earlier version of

23  that document that looks like it is the 200,000, is

24  there?

25     A.    The only one I have is the one that I



1  provided to you.  This is the only thing I have.

2       Q.    Okay.  So when you make the change, it

3  just automatically updates the docket.  You didn't

4  have to go into the docket and change the demand on

5  the docket itself, did you?

6       A.    Well, I don't go into the docket, I go to

7  something else.

8       Q.    Okay.  And it carries over to the docket?

9       A.    Yes.

10       Q.    So you're not certain whether the $200,000

11  demand was on that docket --

12       A.    No.

13       Q.    -- before you made the change or not?

14       A.    I have what it was here.

15       Q.    Okay.

16       A.    This is what I saw on the --

17       Q.    Are you referring to the Bank's

18  Exhibit 17?

19       A.    Correct, and it had, like, 2 million?  Is

20  that what it is?

21       Q.    Yeah.  Can you turn -- can you look at

22  Exhibit 17 and -- yeah.  Okay.  I see what you are

23  saying.  Okay.

24       A.    On...

25       Q.    The demand at the top there, I see what



1   you've got, 20 million.  Okay.

2              Okay.  And then --

3              THE COURT:  I guess that's the answer to

4   your last question.

5              MR. CALL:  Yeah.

6     Q.    So the -- and then the -- where it says

7   flags on the next row, is it my understanding that

8   those are flags that you put into the system because

9   there was a claim for objection to discharge --

10    A.    That's right.

11    Q.    -- or revocation -- objection/revocation

12   to discharge?

13    A.    Yeah.  Every case I have the same place --

14   it has to have a flag or have a flag at some point,

15   some --

16    Q.    And did you enter -- so you entered that?

17    A.    Yes.

18    Q.    Okay.  Thank you.

19              And then the next row there it says,

20   Update record.  Can you explain that row?

21    A.    Update record.  Probably that is when I

22   typed in the number one entry at the

23   (indistinguishable) and update the suit -- the --

24   4 -- 727.

25    Q.    Okay.



1      A.    Do you have a copy of that?

2      Q.    Let me ask you here, just in closing -- I

3  have just a couple more questions for you.

4           Could I get you to look -- I have these

5  exhibit -- or these exhibits here on these big boards

6  in front of you.  Can you see those?

7      A.    Uh-huh.

8      Q.    Okay.  I'd like to ask you if you would

9  look at the -- this one that says Exhibit 14 that's

10 highlighted in yellow.

11     A.    Uh-huh.

12     Q.    Can you see that?

13     A.    Yeah.

14     Q.    Can you see it there?

15          Do you see over to the right side there in

16 yellow in the -- in the far column?

17     A.    Yes.

18     Q.    It says -- can you read it for me?

19     A.    This is a temporary log entry to handle

20 timing issues with docketing the same prevent many

21 times, and it gives a number, 22196349.

22     Q.    Okay.  What -- what is -- have you seen

23 that entry before?

24     A.    No.

25     Q.    You -- and in your years of being here,



1   you've not seen that kind of entry?

2        A.    No.  I think that's IT or somebody else.

3   I don't know.

4        Q.    So you're not able to tell us what the

5   earlier docketing events were?

6        A.    No.  I -- I don't know any of that.

7        Q.    You don't have any of that.

8              You're familiar with the transaction log,

9   however, aren't you, that report?

10        A.    Yes.

11        Q.    And that's a report that's generated by

12   this -- the ECF system, correct?

13        A.    Yeah.  My part, though.

14        Q.    Okay.

15        A.    I don't know that part.

16        Q.    Okay.  And then could I get you to look at

17   Exhibit 11?

18        A.    Uh-huh.

19        Q.    Do you see there the -- the part that's

20   highlighted in yellow?

21        A.    Yes.

22        Q.    And let's just go across that column.  Do

23   you see how -- it lists the lead bankruptcy case,

24   correct?

25        A.    Yes.



1    Q.    And then is the AP -- does that stand for
2  adversary proceeding?

3    A.    Uh-huh.

4    Q.    And then it just lists the parties and the
5  attorneys, correct?

6    A.    (No audible response.)

7    Q.    And then it indicates it's before the
8  Honorable Judge Mosier.

9          And then the next column there, it has a
10 file date and an entered date.  Could you explain for
11 me and for the Court what those dates are reflecting?

12   A.    I don't know what it means by enter -- I
13 don't do any of that, really, so -- I -- I don't
14 know.

15   Q.    You don't know.

16   A.    No.

17   Q.    Have you ever seen that before, where the
18 file date is different than the enter date?

19   A.    No, I never really looked, really.

20   Q.    Okay.

21   A.    This is not really my part.

22   Q.    It's not within your -- your duty?

23   A.    Yeah.

24   Q.    And so you don't work regularly with
25 these -- with the case report?



1        A.    Not with that -- not looking at that, no.

2        Q.    When you say "that," are you pointing to

3    this exhibit --

4        A.    The entry in the file, that report, I

5    don't know.

6              THE COURT:  Your Exhibit 11.

7              MR. CALL:  The Bank's Exhibit 11.

8        Q.    You -- so you don't have any understanding

9    as to what those dates would mean?

10       A.    I don't know why they are different.  I

11   don't understand.

12       Q.    Okay.  Are there any other documents that

13   you have that would relate to this -- the filing of

14   the adversary proceeding?

15       A.    No.

16       Q.    Would there be any documents in your

17   possession or control that would explain these

18   earlier docketing events that --

19       A.    No.

20       Q.    -- were repeated?

21       A.    No, I -- the only thing that I will have

22   is when I am ready to do -- to check the case that I

23   always file a credit and it will give you a time --

24   the time that I run that report, which it was 9:19 is

25   when I run the report.



1          Q.     Okay.   And when you -- when you made these
2     edits, the -- the $350 payment amount had been made,
3     had it not?
4          A.     I guess.   Otherwise, I would have sent a
5     fees due (indistinguishable).
6          Q.     Well, will you look at the Exhibit 17?
7          A.     Yeah.
8          Q.     Will you look at the -- the top row there?
9     It -- my understanding is that's a receipt for the
10    $350 payment.   Correct?
11         A.     Yes.
12         Q.     Okay.   So the court received the payment;
13    is that correct?
14         A.     Yeah.
15         Q.     And then do you generate the notice
16    regarding the filing of the Complaint?
17         A.     No.
18         Q.     Who -- who -- who -- does that trigger
19    automatically through the court system?
20         A.     It's automatically, yeah.
21         Q.     Okay.   And that's the notice that goes out
22    indicating that there's been an objection to the
23    file, correct?
24         A.     Yeah, I think that's what it says on it.
25         Q.     Well, do you understand what that notice



1    is?

2          A.    Yes.

3          Q.    Okay.  And that went out because of the

4    flag that you had put onto the system, correct?

5          A.    I don't know.  I think that went before.

6    I think it goes with -- that will be Gary.  He knows

7    that.  I don't know that part.

8          Q.    Okay.  And then the summons issues

9    automatically, correct?

10         A.    Yes.

11         Q.    And so then the court issued the summons?

12         A.    It's -- it's issued automatically.

13         Q.    Okay.  And it did issue, correct?

14         A.    It looked like it was there, yes.

15               MR. CALL:  Okay.  Just one minute.

16               I believe that's all I have for her, your

17   Honor.

18               THE COURT:  All right.

19               Any questions, Mr. Morrison?

20               MR. MORRISON:  Yes.  I don't have a lot.

21   It should be fairly quick.

22               THE COURT:  All right.

23                    CROSS-EXAMINATION

24   BY MR. MORRISON:

25         Q.    Good afternoon.



1      A.    Hi.

2      Q.    You testified that it's part of your

3  regular duties as an employee of the bankruptcy court

4  to make changes to the docket entries?

5      A.    Yes.

6      Q.    And just to be clear, you would not change

7  the filing date of the case; is that correct?

8      A.    I cannot -- I cannot change that.

9      Q.    That's something you would never change?

10     A.    We cannot change.

11           THE COURT:  She's testified she can't.

12           MR. MORRISON:  Okay.  Thank you.

13     Q.    Were you contacted by Mr. Call or anyone

14  from his office to look into potential problems that

15  he was -- reported with respect to the timing of the

16  filing of the Adversary Complaint in this case?

17     A.    No, not until we got together in that

18  meeting.

19     Q.    Okay.  Thank you.

20           There is an e-mail that we have as an

21  exhibit from the Bank which is Exhibit 8.  Can you

22  turn to that for just a moment?

23           THE COURT:  So what are you going to ask

24  her about this, Mr. Morrison?

25           MR. MORRISON:  I just want to make sure



1    that she wasn't the one that --

2              THE COURT:  She wasn't.  She already said

3    she never talked to Mr. Call until she met with him a

4    couple of weeks ago.

5              MR. MORRISON:  Okay.  I just wanted that

6    on the record.

7              THE COURT:  All right.

8              MR. MORRISON:  Okay.  And that's actually

9    all I have, your Honor.

10             THE COURT:  All right.  So just to make

11   one clarification, Ms. Igo.

12             Your changes were only to the texts in the

13   docket, not any of the documents that were filed or

14   any of the timing of the documents being --

15             THE WITNESS:  Correct.

16             THE COURT:  Okay.  All right.  Any further

17   questions?

18             MR. CALL:  When you say "the texts,"

19   you're saying that she didn't make any changes to the

20   pleading?  Is that what you are asking?

21             THE COURT:  Right.  So all we are talking

22   about is the docket.

23             MR. CALL:  The court docket.

24             THE COURT:  The court docket and entries

25   in the docket, which are not the pleadings that are



1   filed.  Not when the pleadings are filed, it's just

2   more informational.

3          MR. CALL:  Right.  My understanding is she

4   doesn't have knowledge about that.

5          THE COURT:  Right.  All right.  You may be

6   excused.

7          All right.  Let's resume tomorrow, then,

8   at 1:00 p.m.

9          Court is in recess.

10          THE CLERK:  All arise.

11          (Court adjourned at 4:44 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1

REPORTER'S CERTIFICATE

2

3    STATE OF UTAH              )
                               )   ss.
4    COUNTY OF SALT LAKE        )

5

6            I, Dawn M. Perry, Certified Shorthand
     Reporter, do hereby certify:

7            That on May 21st, 2020, I transcribed an
     electronic recording at the request of Steven W.
8    Call;

9            That the testimony of all speakers was
     reported by me in stenotype and thereafter
10   transcribed, and that a full, true, and correct
     transcription of said testimony is set forth in the
11   preceding pages, according to my ability to hear and
     understand the audio recording provided;

12
             I further certify that I am not kin or
13   otherwise associated with any of the parties to said
     cause of action, and that I am not interested in the
14   outcome thereof.

15
             WITNESS MY HAND AND OFFICIAL SEAL this
16   26th day of May, 2020.

17

18

19

20   

21   ------------------------------

22   Dawn M. Perry, CSR

23

24

25

CITICOURT
THE REPORTING GROUP

**$**

$168,000 43:7
$200,000 90:10
$350 14:25 21:17 22:5 29:4,
  14 36:17 41:2 64:17 96:2,10

**0**

0013 18:4
0017 18:13

**1**

1 11:6,7 12:1,3,11 27:6
  83:17
10 27:13,14,17 41:6,8,21,24
  74:15 76:19 83:11
10:00 10:4 54:5
11 30:12,19 33:19,22 34:2,
  11,25 35:9,22 93:17 95:6,7
11.58 67:11
11:00 54:25 55:14,23 57:3
  58:13,16
11:24 11:19,22,24
11:29 14:9
11:35 38:24
11:36 14:10,12 49:1,8 69:23
11:45 20:12
11:58 24:25 67:8,25 68:5
11:59 67:25 68:5
12 42:2 43:14,19 44:12 50:4,
  7,8,9 51:13 74:15 79:21,22,
  25
12:00 25:3,15 67:8,20,21,22
  68:7
12:02 26:8
12:08 27:8
13 42:18 43:14,19 44:11,12
  89:11,21
14 31:23 34:2,3,12 35:3,9,22
  44:11 92:9
15 44:14 45:13,19 47:7 55:9
  83:13
16 85:19,24
168 87:3 88:9,24
168,000 89:12
17 61:7 62:1 85:20 90:18,22
  96:6
17th 55:19 56:13
18 44:2,9
18th 43:22
19-02043 86:21

**2**

1:00 84:8,20 100:8

**2**

2 13:13 14:14,17 28:22
  79:25 80:1,2,9 90:19
2,000 28:25 38:2 62:11
2-0 20:20
2/6 80:9
20 20:20 29:16,17 76:21
  91:1
200 28:25 62:11
200,000 28:25 62:11 87:3
  88:24 89:18,23
2004 9:19,20,22,24 10:6,21,
  22 48:15 53:12 54:3,17
  55:14
2019 9:25 40:17 43:23 44:3,
  9 48:10 49:9,11 51:21 58:18
  82:12
20th 50:6,11,17 51:2,20
22196349 92:21
22nd 9:25 15:5,6 34:4 48:9
  49:1,9,11 53:10,11,17 54:18
  56:8,15 58:18,21 70:22 71:9
  82:12
237,000 9:12
23rd 25:15 40:11,17 41:10
  45:24 46:14 70:22 73:25
  75:16 86:7,10,13
244 75:4
24th 40:10
25 26:25
27 42:11 79:23 80:3,17
  81:22
287 11:13,17

**3**

3 17:6,13,22,24 18:1 20:19
  28:11,13 29:14 55:3,4,5,7
  61:6,21,22 63:7
341 50:5,15 51:3,6,11,20,24
  52:8,15 53:5
350 38:6 66:17
36 75:3,4
3:00 10:5
3:22 55:10,12
3:58 55:20

**4**

4 25:6,8 27:25 28:1,6,8
  53:16 56:11 67:5,15,17
  68:16 91:24
4-22 32:7

**4-23** 40:23 42:17,25 80:24
4-24 32:7
40 39:3
44 75:3
4:00 11:15
4:21 11:16,18
4:44 100:11

**5**

5 25:25 27:6,13 28:3 55:4,6,
  7 56:11 68:17
523 17:13 37:20 87:10
523(a)(6) 17:14 42:14
  49:17,23
5:00 15:12 84:4

**6**

6 26:13,22 27:14,17 28:3
  80:9 87:3
60 53:6
6:31 56:14

**7**

7 26:16 27:10,11 28:4,6,8
727 42:16 49:17 87:9,10
  88:10 91:24
76-06-3809-100 45:1

**8**

8 36:23 39:15,25 48:4 65:1,
  2,3 70:3 98:21
8-12-19 45:15,16
8:00 13:10
8:59 41:5

**9**

9 40:3 41:19,21,24
9:00 10:11,17 54:6
9:19 95:24
9:30 54:18 56:9

**A**

a.m. 25:15 54:18 55:14 67:8
  68:7
accept 23:19
accepted 66:12
accessed 64:19
accommodate 53:18 55:1

accommodating 57:8
accurate 39:11 69:13
  88:18,23
action 17:2 18:20,21 40:16
activities 36:22 40:6,11
activity 40:25 41:18
actual 63:7
added 85:19 87:11 89:4,5
additional 12:11 25:24
  26:3
address 25:16 68:15,17
addressed 46:22
addresses 68:21
addressing 39:9
adequate 53:16
adjourned 100:11
administrator 73:15
administrators 78:11
admit 35:22 41:21
admitted 47:7
advance 19:24 20:2,5,6,9
  29:9 53:10
advanced 20:17 21:4 29:10
advances 16:16,17
adversary 5:16,17 10:7
  11:9,23 12:5,16,19 14:22
  16:12 21:5,7,17,20 22:2,3
  29:14 31:4,8 40:14,20 42:22
  48:4,9,14,19 49:1 58:19,25
  59:6,12 62:13 64:7 66:11,
  17,18 67:1 69:11 75:9 76:4
  82:2,5 86:20,23 94:2 95:14
  98:16
afternoon 13:9 47:17,18
  84:8 97:25
agree 5:19 6:24 49:16
agreeable 5:24 6:21
agreed 6:12,14 53:17
ahead 6:7 7:9 18:17 39:19
  54:2
Allen 5:6 8:13
allowing 39:24
alternative 24:23
amend 74:6,12,16
amending 74:9
amendments 76:12,24
  78:4
amount 8:20 9:11 19:12,13
  23:24 37:19,25 43:10 59:15
  60:14,20 61:2 62:3 82:7
  87:8 88:21,22,23 96:2
amounts 26:21
and/or 87:2
answering 8:17
AP 31:8 94:1



CITICOURT
THE REPORTING GROUP

apologize 28:10
apparently 39:4 43:12
appearances 5:8
appeared 23:14
appearing 5:10
appears 43:22 68:18
approach 38:19
approximate 76:12
approximately 9:12 11:15
14:12 50:13 53:6
April 9:25 15:5,6 25:15 34:4
40:17 45:24 46:14 47:1 48:9
49:1,9,11 53:10,11,14,17
54:18 55:9,19 56:8,13,15
58:18,21 73:25 75:16 82:11,
12 86:7,10
argue 46:9
Argumentative 57:11
arguments 7:5
arise 8:11 71:14 72:2 83:22
85:13 100:10
arose 37:8,17
arrived 24:9
assigned 74:23
assume 75:23
assuming 83:15
attach 13:22 14:1
attached 12:19 13:8 26:9
48:2,3
attachment 25:17,20
attachments 27:17
attempt 24:6 59:14 69:11
attempted 21:18 22:20
25:1,5 27:18 38:24 39:4
58:19 59:12 62:15 64:19
67:8 68:1
attempts 38:1,5 62:13
attend 51:11 52:6
attendance 65:24 66:1
attended 49:25 51:24
attorney 8:3 16:8 31:11,13
57:17 61:18
attorneys 16:6 94:5
audible 54:22 94:6
August 65:20
automatically 81:6 90:3
96:19,20 97:9,12
aware 14:21

B

back 19:23 22:10 23:17,22
26:7,17 28:16 38:21 59:11
60:11,15,21 71:10 78:4
82:14

backed 21:25 22:6,8,9 38:8,
16
background 79:1 87:24
backup 22:6,12 23:17
38:20
Bank 5:5,10 8:4,6,12,18
9:10,13,17,21 10:18,20 15:8
16:3 31:6,11 47:24 52:12
86:17 98:21
Bank's 10:7 11:5 26:25
56:17 65:2,3 67:5,17 79:17
86:1 89:11 90:17 95:7
bankruptcy 9:15 15:19,21
24:10 30:16 40:4 40:21 42:6
43:2 47:21 50:1 53:7 65:20
93:23 98:3
bar 38:21 56:16 57:2
base 70:23
based 10:13 19:14 34:12
basically 43:19
basis 8:9 78:10
Bates 18:10 20:19 29:16,17
61:22
Bates-stamped 14:18
Beal 5:6 8:13 47:24 84:12,
14,16
Beal's 42:6
begin 10:7
behalf 5:10 47:24
benefit 17:25
big 92:5
binder 11:5 26:14 54:7
61:25
bit 27:20 54:24 65:4
blank 89:2
bless 13:23 33:5
blowup 17:12
blue 38:21
boards 92:5
book 25:6 44:15 79:18
bottom 18:12 37:11 40:13,
15 79:22 80:1,2,4
box 64:2,3
break 85:18
briefcase 17:9
briefed 69:9
bring 67:24 81:19
brought 62:23,25 63:18
browser 44:17,23 45:7
67:24
button 19:18 21:15 22:6,12
23:17 29:20 38:20

C

C-A-L-L 7:21
calendar 5:14
call 5:9,21 6:1,5,8,12,21 7:2,
5,10,11,12,20,22 8:3 14:21
17:7,20 18:1,17 24:6,10,11
32:19,21 35:25 39:21 40:2
42:1 43:23 44:13 45:20
46:6,8,13,14 51:23 58:10
61:11,20 69:22 70:18 71:19,
22,23 72:15,21 75:21 76:1,
10 78:1,3,24 79:3,6,9,12,15
80:12,13,18 83:6 84:9,15,
19,22 85:2,6,9,16,17 88:11
91:5 95:7 97:15 98:13 99:3,
18,23 100:3
Call's 5:15 34:18 57:21
83:17
called 7:23 8:14 36:12,13,
15 46:15 72:18 78:11
cancel 41:13
canceled 22:17 63:22
64:21
capture 77:25
card 15:11 21:23
cards 15:7,9
care 6:17
Carrie 24:10 30:8 37:4
carries 90:8
case 8:4,7,10 9:6,15 21:5,7,
17 22:17 23:5 29:14,25
30:20 31:6 34:13 36:4
40:13,21 42:6,9 43:2 47:21
48:2 49:13 50:2 51:6,14
58:22 59:4,13 63:22 64:8,
21,24 65:8 66:19 69:2,3,7,8,
12 73:15 74:20,22,23,25
75:10,12 76:16 78:11 86:5
87:2 88:19 91:13 93:23
94:25 95:22 98:7,16
cases 30:18 40:12 73:16,17
74:18 76:17 86:15
CDE 88:10
chain 58:1,6
chambers 78:22
chance 57:16
change 89:15 90:2,4,13
98:6,8,9,10
changed 81:2 87:3,8 88:21,
22,24 89:2
check 73:17 82:25 95:22
checked 11:16,17,18 17:17
Chrome 44:19
Circuit 15:20
cited 69:3
claim 16:21 19:15 37:20
42:13,14 49:17,23 63:21

91:9
claiming 65:7
claims 8:9
clarification 35:19 43:21
45:15 48:17 99:11
clarifying 32:21
clear 17:21 43:18 45:2
70:18 76:3 98:6
clerk 5:3 7:17 71:14,16
72:2,4,8,11 73:12,19,21
77:9 83:22,24 85:13,15
100:10
clerk's 39:9 73:2
click 22:25 29:20,23
clicked 19:18 21:15 22:15,
16 29:13 64:15
client 55:1 57:1
close 33:7
closing 92:2
CM/ECF 35:11 41:14 49:3
60:1
coin 5:20
col 31:5
collateral 8:21
column 30:25 31:15 92:16
93:22 94:9
comma 19:16,23 59:15,24
60:19,23 62:15
commas 37:23 62:18,19
63:15
commenced 47:21 48:13
communication 55:17,21
company 8:14
complaint 10:8,9,11,13,15
11:9,14,21,23 12:5,16,19
13:8 14:10 15:2 16:21 21:2,
17 24:24 25:18,21 26:8,12,
25 27:3,5,6,22 28:18 30:11
37:10,18 39:1,5 40:22 42:12
48:3,4,9,14,21 49:1,22
56:17 58:19 59:12 62:14
66:12 70:19 71:1,8 86:23
89:7 96:16 98:16
complaints 58:25 59:7
completed 11:21,23 13:9
computer 11:8 69:25 81:2
87:7,12,14,23 88:4,12,16
computers 81:3,5
con 48:15
concerned 20:9 24:22
25:22 46:7
conclusion 49:18
conduct 9:24 53:12,15
conducted 48:15 50:6 51:3
conducting 10:6
configurations 37:22



CITICOURT
THE REPORTING GROUP

confront 29:1
confronted 23:23
connection 34:2
consistent 78:16
contact 30:8 36:10 41:14
45:22
contacted 98:13
contemporaneously
63:10
context 57:7
continuance 50:18,22
51:5,9,14
continue 84:2
continued 50:15,16
control 78:12 95:17
coordinate 76:23 77:2
copied 54:14
copies 81:13 82:11
copy 24:23 25:17 26:8 37:3,
4 38:25 81:10 82:1,8 92:1
corner 43:24 80:5 89:22
correct 17:6 18:6 27:17,18
28:1 43:23 44:10 47:25 48:1
49:15,24 50:2,14 55:3 56:19
58:21 59:5 63:10 65:21
71:19 73:2 80:11 84:8,16
86:17,24,25 89:15,16 90:19
93:12,24 94:5 96:10,13,23
97:4,9,13 98:7 99:15
corrections 74:3 76:25
77:3,12,20
correctly 24:18 28:17
38:15 65:17 70:12
correlates 41:18
correspondence 54:23
counsel 5:7 8:6 10:7 16:11
24:24 27:19 28:15
County 9:1
couple 92:3 99:4
court 5:3,7,13,22 6:2,9,13,
15,20,25 7:4,6,10,14 8:25
9:2,5,6,8 10:14,16 11:25
12:3,10 14:17 15:19,20 16:7
17:6,10,20,24 18:4,6,13,16
19:14 23:2,7,10 28:8,13
30:8 32:17 33:24 34:14,15,
16,17,22,23 35:1,4,18
36:11,12,13,15 39:20,23,25
41:9,24 43:17 44:2,5,8,11
45:16,19,22 46:3,5,8,15,25
47:4,8,11,20,22 51:18,23
52:1,4,6 53:3,14,22 57:15,
17,25 58:5,8,10 60:4,7,9
61:11,14,17 63:20 65:4,20
67:13,16 68:10 69:16 70:15,
17,23,25 71:11,16,18,22,25
72:4,6,16 75:13,19,22,25
76:7 78:1,6,9,25 79:4,5,8,
10,13 80:4,7,9,11,17 81:18
83:4,10,13,15,16,24 84:1,7,

11,18,23 85:3,8,10,16 88:6,
9 91:3 94:11 95:6 96:12,19
97:11,18,22 98:3,11,23
99:2,7,10,16,21,23,24
100:5,9,11
court's 35:14,21 38:12 40:7
43:20,22 50:20 65:14 70:10
71:1,4 85:12
cover 75:8
covers 80:14
created 63:10,12
credit 9:9 10:23,25 12:7,20
15:7,11 21:23 95:23
creditors 49:12 50:1,5 53:5
criteria 30:21 31:3 34:20
cross 6:11
cross-examination 5:24
47:13,15 97:23
cross-examining 6:6
current 44:6,7,8

D

daily 74:10 78:10
darker 18:10
data 35:11 87:2 88:19
date 42:9,10 43:24 50:15,16
51:1,6 53:16,19 56:16 57:2
86:16 94:10,18 98:7
dated 54:15,16 55:9
dates 14:6 31:16,19,21
94:11 95:9
day 40:10 45:22 46:19
49:15 53:9,17 54:25 74:8
75:9,14 76:11,17 81:9 84:19
86:4
days 53:6 57:2
deadline 37:13 49:11,23
53:10 69:6,7
deals 86:17
debtor 5:12 8:12,19,23
9:14,18,21 10:8,14,17 12:22
16:11 21:10,13 48:16 49:20
52:14 53:18
debtor's 8:13 9:24 49:12
50:1 53:7,12,13
debtor/defendant 5:12
decided 6:18
decimal 61:1
decimals 63:15
decision 78:8
default 19:13 47:25 48:5,6
defendant 16:4,11,12
31:13
defer 21:11
deferral 38:4

deferred 21:14
delay 83:9
demand 19:1,3,5,9,13
22:11 28:21 43:6 60:20 61:1
62:3 64:2,13 82:7 87:3,8
88:21,22,23 89:12 90:4,11,
25
demanded 43:11
department 38:12 44:21
46:17 65:14 70:10
depends 74:17
deposition 10:2,3 12:24
13:1,9 15:12
describe 86:2
description 82:7
designated 16:10
desk 41:14 48:24 69:23,25
desktop 13:11,19,20 14:3,
4,11 15:15 20:24,25 49:5
69:23,25
details 41:12
determined 87:10
digits 73:16,17 74:17,18,19,
25 75:2,8
direct 5:24 6:9 8:1 72:20
disagree 57:13 59:21 66:7
discharge 18:22 42:16
49:13,21,22 53:7 69:4 89:3
91:9,12
dischargeability 17:14
69:5
disclose 45:7
disclosing 39:10
discovery 9:13,17 10:18
discussed 38:11,12 65:13
70:9
dismiss 5:17
dispute 54:20
district 8:25 15:20
divided 73:18
doc 51:7,8
docket 40:19,20 42:5,8,11,
22,25 43:1,11,20,22 50:20,
21 51:13 71:1,4 74:4,6,9,13,
16 76:13 78:4 79:23 80:17,
19,20,25 81:2,7,13,21,22,
23,24,25 82:5,6 83:20
89:11,17,19,20,21 90:3,4,5,
6,8,11 98:4 99:13,22,23,24,
25
docketing 33:7,16 92:20
93:5 95:18
dockets 43:25 44:9 74:13
document 11:6,7,15 12:25
14:2 17:11 20:24 22:7
30:14,15,23,24 31:18 32:3,
23 35:7 36:24 39:16 40:3
41:7 42:23,25 45:3 62:21,24

67:9,11,12 68:2,4 86:2
89:23
documents 9:22,23 10:24
11:2 12:7,21,23 13:16,17
14:7,14 21:2 35:20 48:23
82:11 95:12,16 99:13,14
dollar 19:4,6,9,15 23:24
28:23 37:19,22 59:14,18,23
60:13 62:4,18 63:15
draft 10:9 48:18
drafting 48:13
due 96:5
duties 73:11,25 98:3
duty 94:22

E

e-mail 24:25 25:1,11,12,14,
16,24 26:3,22 27:12,19
37:2,12 38:25 39:11,20
41:8,15 54:23 55:9,11 56:2,
13,19,21 58:1,5,23 65:10,11
67:4,7,20,25 68:9,15,16,20,
21 98:20
e-mailing 27:2
e-mails 26:11,23 28:15
33:12 54:11,12 55:6 57:20
71:9
earlier 13:8 14:8 26:23 48:8
50:14 51:1 54:4 89:22 93:5
95:18
easier 6:7 14:1
easiest 13:22 14:1
ECF 14:2 15:17,22 35:14
40:7 60:3 93:12
edit 87:2 88:19
edits 96:2
effect 23:5
effort 59:12
electronic 83:16
Eliza 24:12 37:5
Elizabeth 8:13
else's 75:10
employee 98:3
encountered 24:15 65:5,7
end 10:2
ended 10:5
ending 20:19
ends 29:16
enter 9:5 12:1 14:14 19:4
21:1 28:6,11 34:11 39:15
43:14 45:13 87:14,22,23
91:16 94:12,18
entered 9:7 10:14,17 17:13
19:14 24:2 31:2,18 33:15
43:7,8 47:23 63:3 74:4 81:6
87:8 91:16 94:10



**entering** 20:7,10 24:4 37:21
**entertaining** 84:14
**entitled** 30:18
**entity** 9:4
**entries** 42:8 74:4,13,16
77:21 78:5 80:25 81:2,14,
21,23 87:1 98:4 99:24
**entry** 10:21 33:5,6,14 40:19,
20 42:11,12,25 43:1,11
60:14 74:7,10 76:13 79:23
80:2,17,19,20 81:9 91:22
92:19,23 93:1 95:4
**Ephraim** 55:2 84:13
**erroneous** 27:16
**error** 22:13,16,19,25 23:3,
13 38:13 63:19,21,25 64:5,
7,9,11,12,18,20,23 65:6,15
70:7 78:21
**errors** 38:18 70:11 77:3
78:14,15,16,19
**essentially** 5:20 43:1
**establish** 51:19 78:2
**evening** 36:3,10
**event** 33:7 39:8 77:24
**events** 32:9 33:10,16 93:5
95:18
**eventually** 20:13,17,22
22:25 29:24 35:25 76:3
**evidence** 7:1,2,9 12:1
14:15 28:6,11 34:12 39:15
41:21 43:15 45:13 61:10
**evidentiary** 5:14 6:19
**exam** 9:19,24 53:12,15
54:3,17 55:14
**examination** 5:25 6:4,9 8:1
10:6,21 48:15 56:18 69:20
72:20
**examined** 7:24 72:19
**excerpt** 42:5,21 86:6
**Excuse** 75:13
**excused** 100:6
**exhibit** 11:6,7 12:1,3,11,24
13:13 14:14,17,19 17:6,13,
22,24 18:1 20:19 25:6,8,25
26:13,14,16,22 27:10,11,23,
24,25 28:1,3,4,11,13 29:14
30:12,19 31:23 33:19,22
34:2,3,25 35:3,9 36:23
37:11 39:15,25 40:3 41:6,8,
19 42:2,18 43:19 44:14
45:13,19 48:3,4 50:4,7,8,9
51:13 54:7,8,10 55:5,7,8
61:6,10,14,21,22,25 63:7
65:1,2,3,12 67:5,13,15,17
68:16,17 70:3 79:17,18,21,
22,25 83:17 85:19,20,24
86:1,20 89:11,21 90:18,22
92:5,9 93:17 95:3,6,7 96:6
98:21

**exhibits** 11:5 12:4,15,18
13:3,7,18 14:1,11 15:15
26:12 27:3,6,13,14 28:3,4,6,
8 34:11 35:22 39:2,18 41:1,
21,24 43:14 44:11 47:7
48:25 49:4 63:6,7 69:22
84:25 85:19,20 92:5
**exit** 38:21
**experience** 13:21,25 39:12
**experienced** 24:20
**explain** 29:6 91:20 94:10
95:17
**explains** 32:13
**explanation** 34:10
**extend** 5:15 53:17,19 57:1
58:11
**extensive** 60:4
**extent** 35:13

---

**F**

**fact** 34:12 57:8 58:3 63:12
**fail** 29:25 30:1
**failed** 23:5,6 29:25 64:8,25
65:8 66:19
**failure** 65:8
**fair** 32:25 34:9
**fairly** 97:21
**familiar** 69:7,8 93:8
**fast** 69:6
**February** 50:6,11,17 51:2,
20
**fee** 14:22 21:17 29:5 36:8
38:6 42:12 66:13
**fees** 96:5
**figure** 50:19
**figured** 24:16
**file** 14:11,22 15:13 25:20
30:10 37:9,15,18 38:17,24
49:12 53:6 58:19 59:12
62:13 69:11 82:14 94:10,18
95:4,23 96:23
**filed** 8:22,24 9:18 10:20
11:9 16:21,22 31:17 39:4,17
40:22 41:2 58:18,25 59:7
70:1,19,21 71:2,8,10 78:13
99:13 100:1
**filers** 74:4
**filing** 5:16 13:4,12,19 14:2,
22 15:2,9,10,16,17,19,20,22
16:1,18 21:2 22:9 29:4 31:6
33:13 37:13 38:24 39:10
40:14 41:11 49:23 56:17
59:25 63:8 66:12,13 68:10,
14 69:4,5 71:8 95:13 96:16
98:7,16
**filings** 15:20 33:12 39:4
69:6

**finalized** 13:3,4
**Finally** 39:3
**find** 42:10 84:14
**fine** 21:3
**finish** 8:17 48:14 84:3,19
**finished** 15:12 35:24
**firm** 15:4,7,11 44:21 45:4,7
**flag** 91:14 97:4
**flags** 91:7,8
**flip** 26:17 27:9
**focus** 79:24
**focusing** 58:2
**follow** 61:24 76:1
**follow-up** 52:2 60:12
**forced** 56:18
**foregoing** 57:1
**forgot** 61:17
**form** 34:6 85:11 87:12
88:16
**format** 13:11 14:3,5 49:6
**Forty-four** 75:5,6
**forward** 7:15 22:1 23:19
24:23 25:1 72:7,8
**forwarded** 24:25
**found** 18:15,16
**foundation** 32:16 33:23
35:19 45:2
**foundational** 35:6
**free** 22:8
**frequently** 74:6
**Friday** 35:21
**front** 11:4 22:10 23:22,23
25:7 85:20 92:6
**frozen** 29:23
**futile** 38:25

---

**G**

**Gary** 66:2 97:6
**GCI** 40:17,23 42:17 73:7
**generate** 96:15
**generated** 35:7,10,14,21
88:12 93:11
**generates** 87:15
**get all** 47:7
**Gfeller** 66:2
**give** 53:15 95:23
**giving** 50:24 51:8
**Gloria** 66:2 71:24 72:1,14,
17
**good** 7:2 47:17,18 58:7
61:15 66:14 97:25

**Google** 44:19 62:23,25
63:18
**gosh** 60:2
**grant** 56:15
**Great** 41:6
**group** 8:19
**guess** 7:12 57:5 71:25 79:8
83:4 91:3 96:4

---

**H**

**half** 71:13
**hand** 17:9 72:9 87:21
**handle** 33:6,15 44:21 92:19
**handwriting** 81:1
**happened** 19:17 21:6 30:5
**hard** 69:6
**He'll** 57:16
**heads** 46:5
**hear** 66:8
**heard** 35:8
**hearing** 5:15 6:19 77:8
**hearings** 6:18 7:7
**hearsay** 39:23 46:4,7,9
47:4
**heavily** 51:10
**held** 50:1
**Hey** 58:11 78:25
**HG000002** 14:18
**HG000011** 14:19
**highlighted** 92:10 93:20
**hit** 21:1 22:12 23:17
**Honor** 7:13 12:14 14:13,20
18:9,14 20:18 28:5 32:16
33:1 34:10 35:23 39:14
41:20 43:13 45:12 46:2,24
47:6,14 53:1,20 57:11
61:10,13 67:3 69:15,19
70:14 71:21 72:15 84:10
97:17 99:9
**Honorable** 94:8
**hope** 66:10
**host** 20:1
**hour** 71:13
**housekeeping** 47:2,6
**hurry** 35:5
**Hurst** 24:10 30:8 37:4

---

**I**

**I-N-T-E-G-E-R** 19:20
**identification** 33:8
**identified** 16:2,6



identifies 50:5
identify 11:6 16:1,4,5,20
  17:5 32:5 37:1 40:5 42:4,20
  54:10
lgo 71:24 72:6,14,17,22,23,
  24 73:1 75:14 78:19 79:1
  80:5 84:19,23 99:11
illustration 34:1
image 77:25
inaccurate 38:1 63:24
include 5:24 86:12
included 12:25 27:12 39:18
  49:22 59:15,18,23,24
including 8:19 37:22
indebtedness 9:9
indicating 31:17 62:11
  63:22 96:22
indication 51:14 67:7
indistinguishable 91:23
  96:5
individuals 9:1,3
inform 30:10
information 31:10 52:22
informational 100:2
informed 46:20
initial 6:17 50:25
initially 88:20
initials 31:8 73:6 80:23
injury 17:15 42:14
input 15:23 19:12 34:19
  63:14 88:4
insert 18:19 28:22 29:7
  30:21 59:14 62:15
inserted 18:20 29:7 37:19
  38:1
inserting 24:3
instructed 52:21
integer 19:20 37:20 64:5
intend 84:15
inter 19:5
Internet 21:12,16 29:11
  38:4 44:17
interpretation 19:8
introduced 34:25 71:4
involved 40:12 51:10
iron 8:25
issue 46:21 47:4 57:21 61:5
  76:5 78:25 84:16 97:13
issued 9:19 15:7 97:11,12
issues 5:19 7:8 24:21 33:6,
  16 92:20 97:8
items 31:17 57:7
iterations 16:16

**J**

Janene 66:2
Japan 46:21,25
Jones 65:18,24 79:11,14
journal 81:1
Judge 31:15 46:20 94:8
judges 77:9
judgment 9:5,7,11 10:14,16
  19:13 47:20,23,25 48:5,6
judicial 79:2,6
July 43:22 44:2,9
Justin 5:9 16:6

**K**

keyboard 20:16
kind 18:10 23:18 26:16 83:8
  93:1
knew 24:1 48:14 53:4,8,9
knowledge 32:20 33:22
  34:4 50:25 78:8 100:4
KUETTAL 12:4,17 14:13,20
  18:23 20:18 23:11 28:5,10,
  14 41:20 42:1 43:13 44:13
  45:12,20 46:11,23 69:18
Kuettel 5:9 8:2 11:25 12:14
  13:2 17:16 18:9 30:2 32:25
  33:18 34:9,17 35:23 39:14
  40:1 61:13,16,18 69:16,21
  70:13

**L**

Lacks 32:16 33:22
language 87:25 88:3,7
Lastly 36:23
late 56:18 58:4,15,18
law 69:2,7,8
lawsuit 8:22,24 16:20
lawyer 25:2
lead 8:6 93:23
left 13:10 18:11,12 19:2
  30:7 36:10
left-hand 43:6,24 89:22
legal 7:5 49:18
library 51:3
light 56:25
limiting 32:21
link 25:20
listed 14:14 15:21
lists 93:23 94:4
live 84:5

lives 84:5
loaded 20:23
loan 8:11,21
loaned 8:18
log 32:3 33:3,5,6,15 35:25
  81:3,4,7,10 85:7 86:3 87:4,
  6,15,19 88:16 92:19 93:8
logged 15:16,23,25 28:16
  36:15,16 44:18 49:3,6,8
  86:16
logically 6:22
logs 34:13 82:14
long 15:22 37:15 73:6
looked 48:24 82:10 94:19
  97:14
lot 15:10 77:20 97:20

**M**

made 8:11 11:14 33:12,13
  36:19 41:3,5,17 42:9 46:8
  66:24 77:12 78:4 80:20
  81:21 83:20 86:4 89:9 90:13
  96:1,2
make 21:11,18 22:4,9,14
  25:23 28:2 43:21 47:10
  64:10 71:7 74:3 76:3,13,24
  77:13,14,19 80:25 90:2
  98:4,25 99:10,19
making 57:18 76:24 77:4,
  20
malicious 17:15 42:14
Mara 73:22,23
marked 14:18 79:17 85:24
matter 32:13 38:11,12
  65:14
matters 5:5,14
means 94:12
meant 69:24
meeting 49:25 50:5 51:11,
  20,24 52:9,15 53:5 65:19,24
  98:18
member 35:1 73:1
mention 65:6
message 19:19,22 22:13,
  16,19 23:1,3 25:4,19 29:21,
  24 30:3,7 36:10,15 63:19,
  21,25 64:5,7,12,18,21,23
  65:7 66:19
messages 23:13 38:13
  64:11 65:15 70:7,11,12
met 81:13 82:13 99:3
metadata 11:8 83:18,19
method 38:7
middle 30:25 31:5 32:11
midnight 27:19,21 40:10
  49:15 68:1

million 90:19 91:1
minute 27:21 67:23 69:11
  97:15
minutes 27:1 39:3 83:13
missed 37:13
missing 19:20 37:21 64:5
  87:11
mistaken 51:6
mistakenly 12:10
modification 43:2,3,10
modified 40:17,23 42:17
  43:4,12 71:5,6 80:24 81:14,
  23
moment 98:22
Monday 54:18
money 8:18
morning 30:9 36:11,14
  39:6 41:5,10,17 46:14 54:5
  73:18
Morrison 5:11 6:5,14,16,24
  7:8 12:2 14:16 17:4 18:14
  25:1,16 26:12 28:7,12
  32:15,19 33:23 34:23,24
  35:15,16 37:3,12 39:16,22
  41:23 43:16 45:6,14,18 46:2
  47:2,5,9,13,14,16 51:19,22
  52:2,5,7 53:1,4,20,23 57:11,
  16,20,24 58:2,7,9,17 61:9,
  15,19 67:2,15,17 69:14
  70:16 71:19,20 83:7 84:10,
  17,21 97:19,20,24 98:12,24,
  25 99:5,8
Morrison's 17:25 31:12
  32:17 34:5 46:6
Mosier 31:15 46:20 94:8
motion 5:15,17,18 6:17
  9:18 10:21 39:17 53:19 57:9
Mountain 10:23
move 11:25 14:14 22:24
  28:6,11 34:11 37:23 39:15
  41:21 43:14 45:13 53:1,21
  57:12
moved 38:2
moves 21:1
multiple 17:24 33:17 70:7

**N**

nature 16:20 17:1,18 18:20,
  21 40:15 89:2
Nebeker 15:8
needed 16:19 22:4 29:8
  46:16,18 66:21,24 71:7
night 29:5 44:18
nitpick 57:6
nondischargeability
  10:16 42:13



nonresponsive 53:21
  57:12
note 5:7 59:13 77:13,14
notebook 13:14 26:1 30:13
  36:24
notice 50:25 53:16 79:2,3,4,
  6 96:15,21,25
noticed 50:14
number 11:2,13,17 15:9
  19:10 20:5 24:4 28:24 31:6
  33:8,25 38:1 40:12 42:11
  43:7 54:14 62:15 64:16 67:5
  74:20,22,25 79:23 80:17
  81:22 83:17 86:24 91:22
  92:21
numbers 20:8,10,16 24:2,4
  28:22,24,25 29:3,7 37:21
  62:9,22,24 63:1,2,3,18 64:4
  74:24 80:7
numerous 38:1,5,8

O

objection 6:3 12:2 14:16
  18:22 28:7,12 32:15,18
  33:21,25 34:5,23,24 35:15
  39:19 41:23 42:15 43:16
  45:14,18 46:2 49:12 53:6
  57:18,19 61:11,13 69:4,5
  89:3 91:9 96:22
objection/revocation
  42:15 91:11
objections 49:22
obtained 9:19 15:11
occasionally 74:3
occasions 77:11
occur 38:19
occurred 28:19,20 30:7
  32:9 33:10,17 39:8,10 40:11
  82:11
offense 57:5 61:16
office 31:2 39:9 54:24
  68:16 73:2 98:14
open 21:1,5,7,17,19 22:1
  29:14,25 38:5,9 39:6 54:7
  64:8,24 66:16,18,19
opened 22:3 67:1
opening 7:1 22:17 23:5
  63:22 64:21,25 65:8
operating 38:15 65:16
  70:12
opinion 34:7
opportunity 58:22
opposing 24:24 25:2 27:19
  28:15
opposite 5:20
order 9:19 10:22 23:25
  53:15

origin 35:19
original 81:23
oversee 74:24
owned 8:14
owning 9:9

P

p.m. 11:15,22 49:1,8 55:10,
  20 56:14 67:11 69:23 100:8,
  11
pages 12:11 14:18 17:25
paid 22:5 64:17 66:17,18
paragraph 39:24 56:14,24
  65:12 70:4
paralegal 24:10 30:8 36:7
  37:3 41:16
parameters 35:12
parentheses 62:4
parenthesis 19:6,7
part 10:13 17:25 49:24
  53:14 86:9 93:13,15,19
  94:21 97:7 98:2
parte 9:18
parties 5:19 6:21 16:2,10
  47:25 84:7 94:4
party 31:10
password 15:17,23
passwords 15:18
past 23:25 24:5 84:4
pay 15:1 21:14,15,19,23,24
  29:4,11,14,18,19 30:6 36:16
  38:3,6,7
Pay.gov 41:10
Paygov 41:12
paying 36:8
payment 21:11,19 22:14,22
  23:19,23,25 29:9,10 36:16,
  19 38:9 39:5,6 41:2,4,5,11,
  13,16 42:12 64:9,10,15,20,
  22 66:13,21,24 71:7 96:2,
  10,12
Payserv 15:17,19
pdf 13:11 14:3,4 49:5
people 15:10 54:15 75:23
performing 73:24
period 32:6,9 53:16
permission 53:13
permutations 20:1 62:17,
  20 64:3
person 74:12 77:3
personal 32:20 33:22 34:4
  50:25
phone 46:14
pictures 63:7

place 91:13
plaintiff 16:2,10
plan 15:1
planning 21:14
pleading 68:10 82:4 87:9
  99:20
pleadings 69:3 99:25 100:1
pledged 8:21
point 61:1 62:16 91:14
pointing 95:2
posed 52:14
possession 95:17
potential 98:14
preparation 13:19
prepare 10:7
prepared 10:10 12:5,6,8,
  16,20 30:15 32:4 48:9,21
  53:19 57:9 63:4
present 5:12
prevent 92:20
previously 39:13
primary 18:19 74:12
print 45:4 63:16,17 81:11
printed 11:8 44:1,2 63:1
  81:24 88:16
prints 30:21
prior 7:7 10:10 11:3 12:7,9,
  21 13:10 24:1
problem 24:1,9,15 37:8,16
  39:10 74:8
problems 27:1 29:1 30:10
  37:10,14,18 38:10,13,19
  65:5,15 70:10 98:14
proceed 6:22 12:12 19:19
  72:15
proceeded 15:25 16:14
  18:25
proceeding 5:16,17 11:10
  14:22 16:12 21:20 22:2,3
  31:8,9 40:14,20 42:22 75:9
  76:4 82:2,5 94:2 95:14
proceedings 31:4
process 13:6 16:1 21:3
  24:9 67:19
produce 9:22 38:18
produced 11:3 12:7,20,25
  13:1 34:13,15,16,21
proper 68:13
properly 23:15
provide 12:23 81:17
provided 84:25 90:1
Provo 51:3
put 17:18 18:19 19:9,13
  23:24 29:3 60:13,19,23 61:1
  88:7,9,15,20 91:8 97:4

putting 20:5

Q

QC'D 75:10
quality 78:12
question 35:5,6 45:21
  46:10 47:3,6,19 52:2,23
  53:24 57:12 66:15 68:4
  70:17,24 78:20 91:4
questioning 75:17 76:8
questions 41:13 46:24
  52:14 58:23,24 67:3 69:18
  70:14 78:7 85:11 92:3 97:19
  99:17
quick 47:2 72:1 97:21
quickly 40:2
Quinney 15:8 34:19 35:10,
  14,21
quote 33:4,7 56:15

R

raise 72:9
random 20:8,10 24:2,4
range 74:17,19,23
Ray 15:8 34:19 35:10,14,21
re-sent 28:2
reach 20:22 24:13 46:18,19
reached 21:6,7
read 33:4 37:6 55:16 56:2
  57:22 58:5 70:3,5 92:18
reading 65:4
reads 22:4 55:20
ready 14:10,11 21:23 25:19
  70:1 95:22
reason 50:12 54:20 77:21
reattached 27:6
recall 10:3 28:17 46:13
  60:15,18 61:3
receipt 96:9
receive 10:24 22:13 29:21
  61:10
received 12:3 14:19 19:19,
  21 23:12 28:9,13 37:11,12
  38:14 39:25 41:25 44:12
  45:19 47:12 48:24 49:21
  61:14 63:21 65:16 70:11
  96:12
receiving 49:4 63:20
recess 71:12,15 72:1,3
  83:5,21,23 85:10,12,14
  100:9
recognize 26:18 30:13
  31:25 36:24 40:3 41:7
recollection 46:16 60:24,
  25 61:4 74:2

recommendation 77:20
record 7:19 17:21 23:6 30:4
43:18 51:5 59:20 63:23
64:8,25 65:9 66:20 72:12
76:3 85:19 91:20,21 99:6
records 22:18
redirect 6:1,2,10 69:17,20
reference 55:13
referenced 47:20 75:14
references 39:23 70:7
referring 35:2 37:14 90:17
refile 28:18
reflect 30:23 38:14 42:7
65:16 70:11 81:8 89:18
reflected 36:21 63:2 71:6
reflecting 41:4 43:2 94:11
reflects 30:24 40:22 41:16
42:8,11 43:5,9 70:25 71:1
regular 98:3
regularly 94:24
relate 33:19 46:8 95:13
relates 36:4
relevant 42:9,10
relief 16:22 19:15
reloaded 29:8
remember 36:5 59:16
65:19,23
remembered 62:23
remit 66:12
removed 19:23
repeated 95:20
repeatedly 38:17 77:13
report 30:18,20,21 32:7,8
36:22 40:6 41:18 77:15,17
93:9,11 94:25 95:4,24,25
reported 98:15
reports 34:13 35:9,12,13
representing 52:11
request 55:3 57:9
requested 54:24 55:22
requesting 55:14
required 14:22
rescheduled 51:1
reserve 35:16
respect 33:21 98:15
respond 57:10 64:4
responded 37:16
responding 23:15
response 9:22 54:22 55:19,
21,23 56:6 59:2 94:6
responsive 53:2 57:14
rest 14:8

restate 70:24
results 87:18
resume 100:7
resumes 5:3 71:16 72:4
83:24
retake 84:24
returned 46:22
reviewed 89:7
revisions 11:14,18
revo 42:15
revocation 89:3 91:11
right-hand 11:12 17:1 50:9
80:5
room 65:21
row 31:5 32:12 91:7,19,20
96:8
rows 86:21
run 30:20 95:24,25
runs 56:18
Russell 65:18,24

S

S-T-E-V-E-N 7:20
sacri 70:9
sample 62:21
sat 20:15
scan 18:10
scanned 38:23
scheduled 51:20 52:8
scheduling 77:9
scope 6:4 78:8
screen 16:16 20:3,17,21,25
21:16 22:4,11 23:23,25 24:5
29:8,9,10,13 63:16,17,18
64:9 69:25
screens 22:10 23:18
screenshot 63:1,4
screenshots 13:18
search 34:19
seat 7:17 72:11
seated 5:4 71:17 72:5
83:25 85:15
Second-to-last 55:15
second-to-the-bottom
40:25
secondary 18:21
secretary 24:11 37:5
secure 8:19,21
send 25:5,12 26:6 27:5,22
58:23 67:22,24 68:1
sending 67:19 68:9
senior 73:12,19,21 77:15

sentence 54:17 55:15,20
56:1,4,21,22 65:13 70:4
sentences 57:6
sequence 59:11
series 54:11
serve 9:21 10:18
served 10:22
session 5:3 71:16 72:4
83:24
set 6:18 54:18
sheet 15:18 89:21
shortly 39:1 70:22
show 17:3 22:7 40:8 63:2
showed 48:24 62:24
showing 32:8
shows 11:8,13,16,17,18
30:25 31:3,5,6 40:11,13,18,
23 41:1 43:11 71:4 86:4
89:11
sic 23:8 55:7 58:10
side 5:20 11:12 17:1 43:6
50:9 92:15
sig 42:24
sign 19:4,6,9,15 28:23
59:18,24 60:13 62:4
signed 35:10
signif 42:24
significance 42:23
significant 8:20 37:25
signs 37:23 62:18 63:15
similar 38:10 40:19
simpler 83:19
simply 32:22,23 35:20
single 76:11,17
sir 39:21
small 80:7
software 16:15 27:1 34:17
37:9,14,17 38:10,14,17,20
65:16 70:12
sort 22:13
sought 10:15 53:13
Southern 5:5,10 8:4,12
16:3 31:11
span 31:1
speak 36:7,9 46:17 57:20
71:23 77:8
SPEAKER 13:23,24 29:15
84:6
specific 24:3 61:5
specifically 61:21 66:3
speculating 50:18,23
spell 7:18 72:12
spent 65:4

spoke 82:18
staff 35:1 65:20 73:1 84:4
stamp 18:10 20:19
stand 7:18 72:12 84:24
94:1
standard 78:15,16,19,21
standpoint 45:3
stands 31:7
start 23:18 38:20,22 55:14,
22 56:15 57:2 58:12 60:9
67:22 84:20
started 10:4 20:7,10 24:4
54:4 58:15 67:19
starting 20:8 54:21,25
state 5:5,10 7:18 8:3,6,12,
18,25 9:2,5,6,8,10 14:16
16:3,7 19:14 31:6,10 35:8
37:20 38:6 47:19,22,24
52:12 67:4 72:12 86:17
stated 75:16
statement 66:5
statements 7:1 46:8
stating 33:14
statistical 87:2 88:19
stay 44:22
step 72:8 73:13
Steve 5:9 39:10
Steven 7:20,22
stipulation 57:9
stopped 57:22
strange 18:11 25:4
stricken 53:3
strike 5:18 6:17 39:17 53:1,
21 57:12
string 54:11
subject 27:16 39:16
submitted 41:11
subpoena 9:20,22 10:22
subsections 42:16
subsequent 60:5
suggest 57:7
suggested 35:8
suggesting 63:6
suit 17:18 89:2 91:23
summary 39:11
summons 97:8,11
supervisor 73:13 77:7,16
78:21
supposed 48:25
sustain 32:18 33:24 57:19
Sustained 53:22
sworn 7:15,16,23 72:7,10,
18


CitiCourt
THE REPORTING GROUP

system 14:2 16:18 21:22,25
  22:9 23:15 24:17 28:17
  30:16,19 32:4 35:11,14 36:1
  37:20,23 38:3,6 39:4,5 40:7
  44:18 60:3 68:14 88:4 91:8
  93:12 96:19 97:4

**T**

t-e-g-e-r 19:20
talk 54:3 84:2
talked 99:3
talking 74:20 75:15 99:21
temporary 33:5,6,15 92:19
ten 78:9
Tenth 15:20
testified 7:24 39:13 47:23
  51:23 54:4 63:20 67:18
  72:19 78:19 88:6 98:2,11
testify 7:12 46:3 62:14
testifying 18:1 59:13,16
testimony 24:17 32:22
  34:18 35:7 45:9 48:8,13
  59:19,21 70:18
texts 99:12,18
thing 30:9 36:11 57:23,25
  68:10,13 77:23 90:1 95:21
things 34:20 86:3
thinking 84:18
Thirteen 18:3
thought 12:10 24:22 27:5
  54:4 66:24 67:18 68:13
  81:12,14 85:4
ties 17:21
time 5:15 6:8 10:2 12:23
  15:22 19:16 20:11 26:7 27:7
  29:5 31:1 32:6,10 37:25
  39:8 40:19 44:24 45:8 49:21
  51:11,15 54:3,6,21,25 58:11
  60:22 64:4 65:4 66:22,25
  67:21 68:3 71:10 73:6 74:5
  75:22 77:17 82:13,24 84:2,8
  95:23,24
timeline 66:25
times 33:7,17 38:8 64:12,16
  70:21 92:21
timing 33:6,16 38:23 92:20
  98:15 99:14
Tito 24:12 37:5
today 63:20 65:5 66:9 84:4
told 38:13,16,18 46:3 65:14,
  17 66:4,6 70:10 81:15
tomorrow 84:8,20 100:7
top 40:19 43:5 44:22 45:15,
  17 50:7,10 80:1 89:11,20,21
  90:25 96:8
TP 31:7

tracking 83:19
trail 83:16
trailing 27:12
trained 59:25 60:2,13,16,
  19,21,22,23 61:1,3 78:16
training 60:4,5,12 61:4
  65:21
transaction 8:11,20 9:9
  32:3 33:3 34:13 93:8
transactions 32:6
Transport 8:15
traveling 55:1
treat 78:16
trigger 96:18
true 49:25 75:24
trustee 21:9,13
Tuesday 25:15
turn 11:5 13:13 17:2 25:6,
  25 26:13 30:12 31:23 36:23
  40:2 41:6 42:1,18 44:14
  61:6 70:3 79:22 80:15 83:3
  90:21 98:22
turned 66:16
Twenty-six 73:5
type 31:7 87:4
typed 35:11 87:6 91:22
types 44:22 77:3

**U**

Uh-huh 30:4 72:25 73:8
  82:22 83:14 85:25 88:25
  92:7,11 93:18 94:3
unable 30:6
uncertain 66:17,20,22
underlying 8:9
underneath 17:19
understand 32:17 43:18
  57:21 71:5 75:11,23 81:20
  84:7,13 87:16 95:11 96:25
understanding 32:14,22,
  24 33:2,9,19 39:7 41:15
  47:22 49:20 50:24 51:8
  66:11,21 70:6 71:3 82:17
  91:7 95:8 96:9 100:3
undertake 9:13
undertook 9:17
UNIDENTIFIED 13:23,24
  29:15 84:6
union 10:23,25 12:7,20
update 91:20,21,23
updated 44:20,23
updates 90:3
updating 44:22
upper 43:24

user 11:12,13
Utah 5:6,10 8:4,12,25 16:3
  31:11

**V**

vacation 46:21
version 44:20,25 45:1,7,10
  89:22
versions 44:23
versus 5:6
view 22:2

**W**

w-r-i-t-t-i-n-g 23:8
wait 12:9 37:15
waited 53:11 69:10
waiver 38:4
wanted 25:23 29:11 47:10
  99:5
Wayment 16:6
website 35:22
websites 34:21
week 10:10 11:3 12:8,21
weeks 99:4
weight 35:17
whatsoever 65:6
wife's 8:13
willful 17:14 42:14
wind 64:2
window 19:1,3,5,10,25 20:3
  21:5,8,9 28:21 36:16 37:19,
  24 38:2,5,9 39:6 60:20 62:3
  64:13,15,17,20,22 66:15
witnesses 5:23
wondering 5:23
words 6:4
work 16:17 24:16 55:24
  56:7,18 58:3,14,15 68:14
  73:1 94:24
working 24:18 58:17
write 87:21
writing 22:17,18 23:6,7
  30:4 63:22,23 64:8,21,25
  65:9 66:20
written 58:23
wrong 10:4 77:23,24,25

**Y**

year 50:6 53:12 58:25 59:7
  73:25 82:16
years 60:2 73:4,5 78:9
  92:25

yellow 92:10,16 93:20

**Z**

zeros 19:6 62:5
Zions 15:7

