STEVEN W. CALL (5260)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone: (801) 532-1500
Email: scall@rqn.com

*Attorneys for State Bank of Southern Utah*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STATE BANK OF SOUTHERN UTAH,<br><br>    Appellant,<br><br>v.<br><br>ALLEN BEAL,<br><br>    Appellee. | **NOTICE OF APPEAL**<br><br>Case No. 2:20-cv-00298-DBB<br><br><br>Judge David Barlow |

NOTICE IS HEREBY GIVEN that State Bank of Southern Utah, the Appellant in the above-captioned case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the District Court's *Memorandum Decision and Order Affirming Bankruptcy Court's Decision Granting Motion to Dismiss* that was entered on September 16, 2021, a copy of which is attached as **Exhibit A**; and from the *Order and Judgment Denying Motion to Extend Time, Granting Defendant's Motion to Dismiss and Dismissing Adversary Proceeding* entered by the Bankruptcy Court on March 31, 2020, a

copy of which is attached as **Exhibit B**, and from the corresponding *Memorandum Decision* entered by the Bankruptcy Court on March 31, 2020, a copy of which is attached as **Exhibit C**.

 DATED this 15th day of October, 2021.

RAY QUINNEY & NEBEKER P.C.


/s/ *Steven W. Call*
Steven W. Call
*Attorneys for State Bank of Southern Utah*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of October, 2021 I electronically filed

**NOTICE OF APPEAL** with the Clerk of the Court using the CM/ECF system, which

served notice of electronic filing to the ECF users registered to receive email

notice/service for this case.

*/s/ Lisa Conterio, Legal Assistant*

1582044

3

Exhibit A

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| STATE BANK OF SOUTHERN UTAH,<br><br>               Appellant,<br><br>v.<br><br>ALLEN BEAL,<br><br>               Appellee. | **MEMORANDUM DECISION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION GRANTING MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00298-DBB<br><br>District Judge David Barlow |

Allen Beal filed for Chapter 7 bankruptcy and State Bank of Southern Utah ("SBSU") planned to contest the discharge of certain debts in an adversary proceeding.[1] Counsel for SBSU did not successfully file a complaint before the 60-day deadline, and the Bankruptcy Court denied a motion to extend and dismissed the Bank's complaint.[2] Because the Bankruptcy Court did not err in finding that the complaint was filed late due to user error and in denying relief, the judgment below is AFFIRMED.

## BACKGROUND

On January 15, 2019, Allen Beal filed a chapter 7 bankruptcy case; his meeting of creditors was scheduled for February 20, 2019.[3] Under Federal Rules of Bankruptcy Procedure 4004(a) and 4007(c), the 60-day deadline for filing a complaint objecting to Beal's discharge and

---

[1] R. at 770.
[2] R. at 795.
[3] R. at 770.

to except debts from his discharge fell on April 22, 2019.[4] Counsel for SBSU attended the meeting of creditors and scheduled a Rule 2004 examination of Beal for April 22 at 9:30 AM.[5] The exam concluded around 3:00 PM, leaving counsel until the midnight deadline to file the complaint.[6]

SBSU's counsel completed drafting the complaint (on which he had begun work prior to the Rule 2004 examination) at 11:24 PM, according to metadata on the document.[7] He finished creating PDF files of exhibits at 11:36 PM and logged into the court's Electronic Case Filing System ("CM/ECF") at 11:40 PM, 20 minutes before the filing deadline.[8]

Once logged in to CM/ECF, SBSU's counsel experienced significant difficulties filing his complaint. He reached a page that requested the user to input a monetary demand in a field that read "Demand ($000) ___."[9] The "($000)" notation signifies that the demand should be entered in thousands of dollars, but counsel interpreted it to mean that he should include a dollar sign when entering a demand.[10] If a filer inputs a symbol other than an integer, such as a dollar sign or comma, the CM/ECF system will return an error that reads, "You have to enter a valid integer number."[11] Counsel used a dollar sign when entering the monetary demand and testified that the form returned an error that he recalls as "integer missing."[12] He attempted to remedy the

---

[4] *Id.*; Fed. R. Bank. P. 4004(a) ("a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors. . . ."); Fed. R. Bank. P. 4007(c) ("a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors. . . .").
[5] R. at 770.
[6] *Id.*
[7] *Id.*
[8] R. at 770–71.
[9] R. at 771.
[10] *Id.*
[11] *Id.*
[12] *Id.*

error and testified that he went through "many, many permutations" with or without dollar signs or commas until CM/ECF eventually advanced to the next page.[13]

After proceeding through another page, counsel arrived at a page titled "Open Adversary Case."[14] The Open Adversary Case page notes that there is a $350 fee for filing the complaint, but the CM/ECF system does not allow the user to pay the fee until the filing process is complete.[15] Counsel for SBSU claims that the screen contained a button labelled "Pay Next $350" but the system would not advance when the button was clicked.[16] Counsel testified that the CM/ECF system returned an error that he recalled as "Case opening failed. Writing answer record."[17] Gary Gfeller, the Bankruptcy Court's Chief Deputy Clerk, testified that he was unfamiliar with this message and that the message would not make any sense, because for the system to write a record, there has to be an open case.[18] During this process, counsel for SBSU contends that he attempted to use the browser's "back" button multiple times to return to previous steps, but he does not contend he ever closed his browser or restarted his computer to attempt a hard reset to the filing process.[19]

Counsel surmised that he would not be able to file his complaint before midnight, and instead emailed a copy to Beal's counsel.[20] After attempting to send the complaint to the

---

[13] R. at 772.

[14] *Id.*

[15] R. at 772–73.

[16] Am. Appellant Br., ECF No. 21, at 13. SBSU's amended brief is not properly paginated; thus, any citations to the amended brief will include pincites that refer to the CM/ECF pagination of the PDF. The Bankruptcy Court found that, although counsel claims he attempted to pay the fee at this stage in the filing process, the page at this point in the process is not meant to accept payment. R. at 773. Furthermore, although counsel suggested that clicking the "Next" button should have opened a new window, court employees testified that no new window should appear at this point in the process. R. at 608, 773.

[17] R. at 773.

[18] R. at 704.

[19] *See* R. at 774; ECF No. 21, at 22–23.

[20] ECF No. 21, at 23.

incorrect email address, counsel delivered a second email to the correct address at 12:02 AM on April 23.[21] The email stated that counsel had been "trying to file the Bank's complaint for 25 minutes but there were problems with the software."[22]

After returning to the CM/ECF system, counsel finally successfully filed his complaint at 12:16 AM on April 23.[23] At 8:59 AM staff from counsel's office paid the $350 filing fee.[24]

Because the complaint was filed 16 minutes after the 60-day deadline, SBSU filed a motion for extension of time for filing the complaint.[25] Beal objected to the extension and moved to dismiss the complaint.[26] The Bankruptcy Court held a two-day evidentiary hearing[27] and issued a decision denying SBSU's motion for extension of time and granting Beal's motion to dismiss on the basis that the untimely filing was caused by user error on the part of SBSU's counsel.[28] SBSU timely appealed.

## STANDARD OF REVIEW

A district court "review[s] the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard."[29] "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the district court is] left with the definite and firm conviction that a mistake has been made."[30] If certain factual findings are based on "determinations regarding the credibility of the witnesses, Rule

---

[21] R. at 774–75; ECF No. 21, at 23.
[22] ECF No. 21, at 23.
[23] R. at 776.
[24] *Id.*
[25] ECF No. 21, at 26.
[26] *Id.*
[27] *Id.*
[28] R. at 769.
[29] *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002) (internal quotations omitted); *Strong v. Prince, Yeates & Geldzahler*, 416 F. Supp. 3d 1300, 1308 (D. Utah 2019).
[30] *Id.*

52(a) [of the Federal Rules of Civil Procedure] demands even greater deference to the trial court's findings."[31] In resolving a mixed question of law and fact, the district court conducts a *de novo* review if the question primarily involves a question of legal principles and applies the clearly erroneous standard if the question is primarily a factual inquiry.[32] The review of a bankruptcy court's use of equitable power is for abuse of discretion.[33]

To survive a Rule 12(b) motion to dismiss, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face."[34] It is appropriate to resolve questions of timeliness on a 12(b) motion.[35]

## DISCUSSION

SBSU argues that the Bankruptcy Court erred in dismissing its complaint because its complaint was plausible on its face, and because the court below erred in finding that there was no malfunction in the CM/ECF system. SBSU makes twelve numbered arguments as to why the Bankruptcy Court erred.[36] The court initially addresses SBSU's first five arguments that the Bankruptcy Court erred because the complaint was facially plausible. Then, the court turns to

---

[31] *In re Vaughn.* 765 F.3d 1174, 1180 (10th Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)).

[32] *In re Wes Dor, Inc.*, 996 F.2d 237, 241 (10th Cir. 1993); *U.S. Bank Nat'l Ass'n* ex rel *CWCapital Asset Mgmt. LLC v. Vill. At Lakeridge, LLC*, ___ U.S. ___, 138 S. Ct. 960, 967 (2018) ("[S]ome [mixed questions] require courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard. When that is so—when applying the law involves developing auxiliary legal principles of use in other cases—appellate courts should typically review a decision de novo . . . . [O]ther mixed questions immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address what we have (emphatically if a tad redundantly) called 'multifarious, fleeting, special, narrow facts that utterly resist generalization.' And when that is so, appellate courts should usually review a decision with deference." (internal citations omitted)).

[33] *In re Maughan*, 340 F.3d 337, 344 (6th Cir. 2003); *In re Myrvang*, 232 F.3d 1116, 1121 (9th Cir. 2000).

[34] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quotations omitted).

[35] *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016); *Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) (noting that statute of limitations questions may be resolved on a 12(b) motion).

[36] *See* ECF No. 21 at 2–4.

examine SBSU's remaining seven arguments that the Bankruptcy Court erred in its factual

determinations and in denying relief.

### I. SBSU's Arguments I through V that the Bankruptcy Court erred in dismissing its claims based on the plausibility of the allegations are irrelevant because the Bankruptcy Court dismissed SBSU's claims based on timeliness.

SBSU makes an extensive argument that the Bankruptcy Court erred in dismissing parts

of its complaint because, even if Beal's discharge was granted, it would not bar enforcement of

the Bank's perfected security interests in collateral.[37] SBSU argues that its complaint included a

short and plain statement of the claim showing that the pleader is entitled to relief and a demand

for judgment, and thus "the claims satisfy the plausibility standard under *Twombly* and *Iqbal*."[38]

Therefore, the Bank argues, the Bankruptcy Court's judgment dismissing the Bank's claims

"must be reversed as a matter of law."[39] But the Bankruptcy Court's decision dismissing SBSU's

claims was not based on federal pleading requirements. Rather, its decision was entirely

predicated on the fact that SBSU failed to file its complaint in a timely manner.[40] The *Twombly*

and *Iqbal* pleading requirements have no bearing on this appeal, as the only issue that the

Bankruptcy Court addressed was whether to dismiss SBSU's complaint based on timeliness.

Beal also argues that SBSU waived the foregoing argument because it did not raise it

before the Bankruptcy Court. In the Tenth Circuit, a district court that sits in appellate review of

a bankruptcy court's decision may consider an issue not raised below if it concludes that the

---

[37] *See* Am. Appellant Br., ECF No. 21, at 32–39.
[38] *Id.* at 39.
[39] *Id.*
[40] R. at 795 ("SBSU's complaint was tardily filed, and the Court finds no basis to extend the time to file it under any of the theories proposed by SBSU. The Court will therefore deny SBSU's Motion to Extend and grant Beal's motion to dismiss.").

issue is dispositive and resolution of the issue does not require finding any additional facts.[41] Thus, Beal is correct that SBSU did not raise these issues in the Bankruptcy Court, but incorrect that this court is absolutely barred from considering them because they were not properly preserved for appeal.[42] Still, a prerequisite for this court to consider issues not raised below is that the issues in question are dispositive.[43] And the plausibility of SBSU's claims has no effect on the Bankruptcy Court's decision. The Bankruptcy Court granted the motion to dismiss entirely based on the timeliness of the complaint.[44] Even if SBSU's claims are plausible, it would not affect the outcome of the decision below because the complaint was dismissed based on the fact it was filed after the 60-day deadline.

Additionally, an appellate court generally should "refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question."[45] Even if a district court has slightly more latitude to address newly raised issues in appeals from bankruptcy courts, there is no reason for this court to consider new issues that, given the Bankruptcy Court's ruling, have no bearing on the outcome of this matter. Furthermore, this court would not have the benefit of a fully developed record on these issues as they were not argued at the Bankruptcy Court. Given that they neither were argued below nor are dispositive, SBSU's Arguments I through V are not appropriate for resolution here and thus will not be considered on appeal.

---

[41] *In re Hart*, 923 F.2d 1410, 1413–14, 1416 (10th Cir. 1991) (per curiam) ("The district court did not consider this issue, on the grounds that 'the issue is not before this Court on appeal.' However, the district court could have addressed the issue had it concluded that it was dispositive. (citations omitted)), *overruled on other grounds by In re Wicks*, 5 F.3d 1372, 1373 (10th Cir. 1993) (overruling *Hart* only to the extent it conflicts with *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993)).

[42] *See* Appellee Br., ECF No. 22, at 2–4.

[43] *Hart*, 923 F.2d at 1413-14.

[44] R. at 795.

[45] *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) (quoting *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992).

## II. The Bankruptcy Court did not err in granting Beal's motion to dismiss because SBSU did not timely file a complaint.

If a bankruptcy court is inaccessible, then the deadline for filing shifts to the next day.[46]
To address potential malfunctions with the CM/ECF system, the Bankruptcy Court for the
District of Utah enacted Local Rule 5005-2(g), which provides that "[a]n ECF Filer or other
party whose filing is made untimely as the result of a technical failure by the court may seek
appropriate relief from the court."[47] Certainly, this rule provides an avenue for the bankruptcy
court to fashion an equitable remedy for a late filing not caused by the fault of the user. But here,
the Bankruptcy Court determined that the complaint was not timely filed;[48] that the Complaint
was filed late due to user error, not system malfunction;[49] and that no other equitable relief was
warranted.[50] This court reviews the Bankruptcy Court's factual determinations under the clearly
erroneous standard and its ultimate legal determination *de novo*.[51]

### A. The Bankruptcy Court did not clearly err in determining that the complaint was not timely filed.

The Bankruptcy Court first addressed SBSU's contention that it had filed its complaint in
a timely fashion, but the CM/ECF system was malfunctioning and did not record the filing
properly.[52] The lower court found that SBSU filed its complaint at 12:16 AM on April 23 and
failed to find any evidence that indicated that SBSU's complaint was filed earlier but not

---

[46] Fed. R. Bank. P. 9006(a)(3).
[47] Bank. D. Ut. LBR 5005-2(g).
[48] R. at 783.
[49] R. at 789.
[50] R. at 791.
[51] *In re Vaughn.* 765 F.3d 1174, 1180 (10th Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)).
[52] R. at 783.

8

recorded by CM/ECF.[53] Thus, the court concluded as a finding of fact that SBSU filed its complaint on April 23, after the deadline.[54]

The lower court's determination that SBSU's complaint was filed on April 23 was not clearly erroneous. The best indication of when the complaint was filed is, of course, the CM/ECF system's own time stamp. That evidence alone is enough to support the Bankruptcy Court's finding that the complaint was filed on April 23. The lack of evidence of any earlier filing further supports the Bankruptcy Court's factual finding.[55] The Bankruptcy Court's finding has extensive support in the record, and this court is under no impression that a definite mistake was made in the lower court's assessment of the facts. The Bankruptcy Court's finding that SBSU's complaint was filed on April 23 was not clearly erroneous. Thus, the court proceeds to analyze whether the Bankruptcy Court erred in finding that user error caused the late filing and refusing to permit SBSU to remedy its late filing.

> **B. The Bankruptcy Court did not clearly err in determining that user error, not system malfunction, caused the late filing.**

The Bankruptcy Court made the factual finding that "there [was] no evidence of a technical failure" with the CM/ECF system when counsel for SBSU attempted to file the complaint.[56] Instead, the court concluded that any supposed technical failures were the result of

---

[53] R. at 783–84.

[54] R. at 784.

[55] In Argument VI.G of its appellate brief, SBSU argues that the Bankruptcy Court's finding that the complaint was filed on April 23 was clearly erroneous because of a discrepancy in the "filing date" of April 23 and "entered date" of April 22 on the CM/ECF case report. ECF No. 21 at 47. The Bankruptcy Court made the factual finding that this discrepancy is easily explained by the fact that counsel began the filing process before midnight but did not finish until the next morning. R. at 779–80. This finding of fact was not clearly erroneous because it was firmly supported by testimony from court employees. *Id.* at 779. In short, what matters is the filing date, not the entered date.

In Argument VI.F, SBSU also alleges that "numerous filing attempts were made prior to 12:16 AM." ECF No. 21 at 46. This is irrelevant. It has no bearing on the outcome of the case if counsel *attempted* to file before the deadline, only whether he *completed* filing before the deadline.

[56] R. at 788.

9

user errors.[57] To support this conclusion, the Bankruptcy Court noted that the evidence demonstrated that the CM/ECF system was functioning correctly—SBSU's counsel experienced no technical difficulties until he reached the CM/ECF page with the demand field;[58] the CM/ECF system correctly returned a "You have to enter a valid integer number" when counsel entered a dollar sign or commas in the demand field;[59] and counsel for SBSU ultimately succeeded in uploading and filing his complaint.[60] Thus, the Bankruptcy Court found that, at the very least, the CM/ECF system was functional for some of the time that SBSU's counsel was attempting to upload the complaint and that it was very unlikely for the system to be rapidly toggling between short periods of functionality and error.[61] The court ultimately found that the most likely explanation for counsel's difficulties in filing the complaint was not that the CM/ECF system was malfunctioning intermittently but that "the supposed technical failures of CM/ECF were in fact user errors committed by [SBSU's counsel]."[62]

This court sees no basis for overturning these factual findings by the Bankruptcy Court. SBSU points to no evidence that would suggest that it was more likely that CM/ECF was periodically malfunctioning than that SBSU's counsel was making mistakes in the electronic

---

[57] R. at 789.

[58] R. at 788.

[59] *Id.*

[60] R. at 789. In Argument VI.H, SBSU contends that the CM/ECF system was malfunctioning because it was abnormal that the Pay.Gov window did not open after the filing and instead opened the next morning. ECF No. 21 at 48. Regardless of this, the Bankruptcy Court's factual finding that the system was functioning properly is amply supported by evidence. The contention that a post-filing event occurred belatedly does not make the Bankruptcy Court's finding clearly erroneous.

SBSU also argues in Argument VI.E that court employee Gloria Igo reviewed the complaint in the morning and corrected the demand amount that counsel had entered so that it matched the complaint. *Id.* at 45–46. The fact that, after filing, a court employee made changes to the CM/ECF docket is immaterial to whether the CM/ECF system was malfunctioning at the time that counsel attempted filing.

[61] R. at 789.

[62] *Id.*

filing process. The Bankruptcy Court was in the best position to weigh the credibility of evidence and testimony below.[63] Indeed, the court found that SBSU's counsel's testimony was sometimes not credible and "marked by notable contradictions, imprecisions, and elisions in important areas."[64] Specifically, the Bankruptcy Court pointed to multiple instances in which SBSU's counsel's testimony was directly contradicted by testimony from court employees about the CM/ECF filing process or the functionality of the CM/ECF system.[65] The Bankruptcy Court's evaluation of the credibility of witnesses is supported by evidence and is not clearly erroneous. And ultimately, there is no reason to question the court's factual determination that the complaint was filed late due to user error. Thus, this court will accept the Bankruptcy Court's factual determinations.

SBSU nonetheless contends that the Bankruptcy Court erred by not finding that the CM/ECF system malfunctioned in several distinct ways. First, SBSU argues that the filing direction in the demand field contained an instruction to include a dollar sign and was thus inaccurate.[66] The demand-entry page contains an input field that contains the following instruction: "Demand ($000) _____."[67] SBSU's argues that this instruction "clearly implies that the amount to be inserted should include a dollar sign and that the bankruptcy court's conclusion to the contrary is in error."[68] But counsel's misinterpretation of the allegedly ambiguous "($000)" does not constitute a CM/ECF malfunction. The Bankruptcy Court found that counsel

---

[63] *United States v. Jackson*, 579 F.2d 553, 558 (10th Cir. 1978) ("The evaluation of the credibility of a witness is a matter for the trial court or the jury and is not a function of an appellate court.").
[64] R. at 15.
[65] R. at 14–15.
[66] ECF No. 21 at 40.
[67] *Id.*
[68] *Id.*

"interpreted [the instruction] to require that he put in the amount of damages with a dollar sign," but "[t]hat interpretation was incorrect."[69] The Bankruptcy Court further found that "there is not evidence that any of the problems [counsel] faced on April 22 and 23 were technical failures."[70] The fact that counsel misinterpreted this instruction does mean that a technical error existed in the CM/ECF system.[71]

Next, SBSU argues that the Bankruptcy Court's finding that SBSU's counsel did not enter a demand without a dollar sign are clearly erroneous.[72] But SBSU misrepresents the Bankruptcy Court's findings. The Bankruptcy Court found that counsel "never testified that he had removed the dollar sign from the demand field during *these attempts*," referring to attempts made before 11:45 PM.[73] The Bankruptcy Court immediately then adds: "The time was then about 11:45 p.m. [Counsel] kept trying, going through 'many, many permutations,' some with dollar signs and some without, some with commas and some without."[74] SBSU's claim that the Bankruptcy Court found that counsel never attempted to enter the demand amount without a

---

[69] R. at 771.

[70] *Id.* at 789. It may be the case that counsel's misinterpretation of the demand field cost him a few minutes in filing, but there is insufficient record evidence that could cause this court to conclude that it caused him to file late. The Bankruptcy Court found that counsel logged on to CM/ECF at 11:40 PM and that he did not attempt to remove the dollar sign from the input until at least 11:45 PM. *Id.* at 771. Had counsel interpreted the demand field correctly it might have saved him a few minutes, but the complaint was filed 16 minutes late.

[71] In Argument IX of the appellate brief, SBSU disputes the Bankruptcy Court's conclusion that SBSU's counsel was unfamiliar with the Bankruptcy filing system and requests that this court take judicial notice of five bankruptcy proceedings in which counsel was involved. ECF No. 21 at 54. Resolution of this factual dispute is unnecessary. But the court notes that the inference SBSU seeks—that its counsel was familiar with the filing system—makes its argument about filing instruction ambiguities more difficult, not less.

In Argument VI.D, SBSU also argues that "the evidence was conclusive that there is not a current manual for the [CM/ECF] System. *Id.* at 45. Whether or not there was a current manual for the system is wholly irrelevant to the question of whether the CM/ECF system was malfunctioning.

[72] *Id.* at 42.

[73] R. at 771 (emphasis added).

[74] R. at 771–72.

dollar sign is entirely incorrect.[75] Furthermore, the Bankruptcy Court's determination that counsel did not attempt to use a dollar sign before 11:45 PM and then tried entering many permutations after 11:45 PM was not clearly erroneous—there is no evidence that counsel attempted to remove the dollar sign before 11:45 PM.

Next, SBSU contends that there was a technical error in the system because the browser's "back" button did not function properly.[76] Clicking the "back" button while in the filing process does not clear the metadata in the CM/ECF system and prevents the user from properly filing.[77] Only if the user logs out of CM/ECF or returns to the initial screen does the browser's cache clear and allow the user to begin the filing process anew without error.[78] SBSU contends that this amounts to a defect in the CM/ECF system.[79] The Bankruptcy Court found that a court administrator recommended that counsel "clear [his] cache and start over if [he] encounter[ed] those types of problems" and that he "never told [counsel] that the problems were due to malfunctions with the CM/ECF software."[80] This supports the Bankruptcy Court's factual determination that there was no malfunction with the CM/ECF system.

---

[75] The court finds counsel's mischaracterization of the Bankruptcy Court's finding disturbing. As noted above, SBSU's counsel cited one sentence from the Bankruptcy Court's opinion on this issue and left out the two sentences that immediately follow. The two sentences he excluded undercut his position. When this was pointed out by Beal's counsel in his brief (ECF No. 22 at 19–20), SBSU's counsel continued to ignore the sentences in the opinion which rendered the argument baseless, instead doubling down on the meritless claim that the "bankruptcy court found the Bank's Counsel never later attempted to enter the demand amount without a $ sign." (ECF No. 25 at 18–19). Counsel must be much more careful in the future to make accurate and complete representations about the record.
[76] ECF No. 21 at 43.
[77] *Id.* at 15.
[78] *Id.*
[79] *Id.* at 43.
[80] R. at 781 n. 51. Even if this statement conflicts with that of SBSU's counsel, the Bankruptcy Court weighed the credibility of the testimony below and found that counsel's testimony was "marked by notable contradictions, imprecisions, and elisions in important areas." *Id.* at 782. This determination is best made by the trial court and this court will accept it on appellate review.

13

Finally, SBSU contends that the fact that the CM/ECF system would not advance when the "Pay Next $350" button was clicked indicates that the system was malfunctioning.[81] It argues that if a filer cannot get past the Next Pay button then a filing cannot be completed.[82] The Bankruptcy Court held that SBSU's counsel's testimony was not credible with regards to what occurred when counsel attempted to pay the filing fee.[83] The court noted that no visual evidence was presented as to what difficulties counsel might have encountered in this stage of the filing process and that testimony from court employees indicates that at some point counsel did advance beyond the Next Pay screen.[84] The Bankruptcy Court's factual finding that there was no malfunction with the Next Pay button was supported by evidence, based on its determination of the credibility of the witnesses, and not in clear error. Thus, this court finds no reason to overturn the factual finding. Furthermore, whether or not counsel was able to pay the $350 filing fee or whether or not the Pay.Gov window opened has no effect on the timeliness of the complaint, as the filing fee can only be paid after filing is completed.[85] The Bankruptcy Court's factual finding that there was no CM/ECF system malfunction was not clearly erroneous.

### C. The Bankruptcy Court did not err in refusing to grant SBSU an extension of time to file the complaint.

The court now turns to the Bankruptcy Court's ultimate legal determination not to grant an extension to file the complaint and to instead grant Beal's motion to dismiss. The court

---

[81] ECF No. 21 at 48.
[82] *Id.* at 49.
[83] R. at 782.
[84] *Id.*
[85] R. at 773 ("it is always the case in CM/ECF that if a fee must be charged for filing a document, it will only be charged after the Notice of Electronic Filing (NEF) is finished, which indicates that the filing process has been completed."). The court notes that "CM/ECF will open a window prompting the user to pay the fee now or defer payment until the end of the day, when the filer can pay for all fees incurred during the day. If the filer chooses to pay now, CM/ECF will direct the filer to an external website at Pay.gov." *Id.* at 773 n. 19. This further supports the factual determination that whether counsel could pay the filing fee had no effect on the timeliness of the complaint.

14

reviews these determinations *de novo*. There are two legal avenues through which SBSU seeks to admit the untimely filed complaint. First, in Arguments VI, VII, and XII, SBSU contends that the lower court erred in refusing to apply Bankruptcy Rule 9006(a)(3) through Local Rule 5005-2(g) to grant an extension because of a technical failure of the CM/ECF system.[86] Second, in Argument VIII, SBSU argues that the lower court erred by refusing to use its equitable power under 11 U.S.C. § 105(a) to fashion a remedy when the court's actions caused a party to miss a deadline.[87] The court addresses these arguments in turn.

Federal Rule of Bankruptcy Procedure 9006(a)(3) extends the filing deadlines in cases where the court is inaccessible.[88] The advisory committee comments to the 2009 amendment to the rules note that "the concept of [inaccessibility] will continue to develop through caselaw" and that "many local provisions address inaccessibility for purposes of electronic filing."[89] The District of Utah Bankruptcy Court's local rule addressing inaccessibility for the purposes of electronic filing states that "[a]n ECF Filer or other party whose filing is made untimely as the result of a technical failure by the court may seek appropriate relief from the court."[90] The Bankruptcy Court found that application of this rule was inappropriate because there was no technical failure and the late filing was caused by user error.[91] Nonetheless, SBSU contends that there were multiple defects in the CM/ECF filing process. As explained above, this court affirms

---

[86] ECF No. 21, at 49. *See also* Fed. R. Bank. P. 9006(a)(3) (Unless the court orders otherwise, if the clerk's office is inaccessible . . . on the last day for filing under Rule 9006(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday. . . ."); Bank. D. Ut. LBR 5005-2(g) ("An ECF Filer or other party whose filing is made untimely as the result of a technical failure by the court may seek appropriate relief from the court.").
[87] ECF No. 21, at 51. Section 105 provides that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11 of the U.S.C.]." 11 U.S.C. § 105(a).
[88] Fed. R. Bank. P. 9006(a)(3).
[89] Advisory Committee Notes to 2009 Amendments, Rule 9006, Subdivision (a)(3).
[90] Bank. D. Ut. LBR 5005-2(g).
[91] R. at 788.

the Bankruptcy Court's factual findings that it was user error, not system malfunction, that

caused the late filing.

Given that the late finding was the result of user error, this court will not reverse the

Bankruptcy Court's finding that relief under Local Rule 5005-2(g) would be inappropriate here.

Certainly, Rule 5005-2(g) or analogous local rules provide an avenue for relief when late filing

was caused by a technical failure outside of the filer's control.[92] But when the late filing is due to

the fault, neglect, or oversight of the filing party, the court is not obligated to extend the

deadline.[93] Counsel, running out of time to file a complaint, made errors during the CM/ECF

filing process that prevented him from meeting the deadline. The Bankruptcy Court did not err in

concluding that the difficulties that SBSU's counsel faced were not caused by technical failures

of the CM/ECF system, and thus relief is unavailable under Local Rule 5005-2(g).[94]

Furthermore, the courthouse is not rendered "inaccessible" if user error, not technical failure,

causes an untimely filing.[95] For that reason, relief under Bankruptcy Rule 9006(a)(3) is also

---

[92] See In re Schrag, 464 B.R. 909, 918 (D. Or. 2011) (holding that relief under an analogous local rule was appropriate when there was an undisclosed technical error with the CM/ECF system that caused incompatibility with certain browsers). Cf. In re Gibrick, 561 B.R. 470, 476 (Bank. N.D. Ill. 2016) (holding that motion to dismiss was not warranted where it was conceivable that late filing was the result of a CM/ECF failure but noting that "the filing deadline is not extended, if the filer's own computer or connectivity problems are to blame.").

[93] See, e.g., In re Sands, 328 B.R.614, 619 (Bank. N.D.N.Y. 2005) (holding that dismissal was warranted when counsel logged into the CM/ECF system 11 minutes before a deadline and a slow internet connection prevented them from timely filing); In re Sizemore, 341, B.R. 658, 660 (Bank. N.D. Ind. 2006) (holding that dismissal was warranted when counsel experienced computer problems while the CM/ECF system was functioning properly); In re Wright, No. CC-09-1388-DuMkJa, 2010 WL 6259968, at *2, 5 (B.A.P. 9th Cir. 2010) (holding that dismissal was warranted when counsel logged in 10 minutes before deadline and attempted to file complaint in PACER rather than CM/ECF); In re Schwartz, No. 5:09-cv-05831-EJD, 2012 WL 4344544, at *5–6 (N.D. Cal. 2012) (holding that dismissal was warranted where late filing was the result of counsel mistakenly relying on instructions on the district court's website instead of that of the bankruptcy court); Nelroy Drugs, Inc. v. Rochester Drug Coop., Inc., No. 20-cv-06946-FPG, 2021 WL 1534730, at *4 (W.D.N.Y. 2021) (holding that dismissal of a motion to reconsider was warranted where the bankruptcy court sent out multiple notices of an upcoming CM/ECF system outage and appellants neither planned to file before the outage nor proactively sought an extension).

[94] R. at 789.

[95] E.g., Sizemore, 341 B.R. at 660.

unavailable. The Bankruptcy Court did not err in denying the motion for an extension under these two rules.

In Argument XI, SBSU contends that the District of Oregon case *In re Schrag* is similar to this case and supports reversal.[96] In *Schrag*, the district court extended relief under a local rule where there was an undisclosed technical error in the e-filing system that caused incompatibility with certain browsers.[97] *Schrag* is not applicable here. In *Schrag* the court explicitly held that the "filing was made untimely by a court-caused technical problem,"[98] whereas in this case the late filing was due to user error, not the court or the filing system. And, of course, *Schrag* is from another district and was applying another district's local rule.

SBSU's Argument VII is that the Bankruptcy Court erred in refusing to exercise its equitable powers under 11 U.S.C. § 105(a) to extend the filing deadline.[99] The statute gives the court authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title,"[100] which includers the power to correct the court's own mistakes and "allow an out-of-time filing when the creditor relies upon a bankruptcy court notice setting an incorrect deadline."[101] SBSU relies on *Themy* to argue that an analogous factual situation arises here—that "attorneys are without power to file a document if the System is not functioning properly" and that "the Bank's Counsel attempted numerous times to file the complaint timely but the System did not function properly.[102] SBSU's argument for equitable relief, however, is

---

[96] ECF No. 21, at 55.
[97] *In re Schrag*, 464 B.R. 909, 918 (D. Or. 2011).
[98] *Id.* at 918.
[99] ECF No. 21, at 51.
[100] 11 U.S.C. § 105(a).
[101] *In re Themy*, 6 F.3d 688, 690 (10th Cir. 1993).
[102] ECF No. 21, at 52.

entirely predicated on the fact that it would be unfair not to extend the filing deadline because the CM/ECF system was malfunctioning. As discussed earlier, the Bankruptcy Court did not err in finding that user error caused the complaint to be untimely filed. Therefore, *Themy* is not applicable here because the late filing was not the result of an error by the court—there is no mistake by the court that needs correcting. Thus, SBSU's argument for equitable relief under 11 U.S.C. § 105(a) fails.[103]

The court is sympathetic to the challenges counsel for SBSU experienced in attempting to file. Attempting to file so close to the deadline left little margin for error. And given that SBSU's successful filing occurred very shortly after the deadline, the result seems harsh. But for the foregoing reasons, the Bankruptcy Court did not err in holding that user error, not system malfunction, caused the late filing and thus did not err in denying relief under Local Rule 5005-2(g) or 11 U.S.C. § 105(a).

## ORDER

In conclusion, SBSU did not timely file its complaint. The Bankruptcy Court did not err in denying the Bank's motion to extend the deadline and granting Beal's motion to dismiss. The Bankruptcy Court's decision is AFFIRMED.

Signed September 16, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[103] SBSU also contends, in Argument X, that the Bankruptcy Court was mistaken in finding that the 16-minute filing delay caused Beal great prejudice. *Id.* at 55. Prejudice is irrelevant because, as explained above, SBSU is not entitled to equitable relief regardless of what prejudice Beal did or did not suffer.

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| STATE BANK OF SOUTHERN UTAH,<br><br>Appellant,<br><br>v.<br><br>ALLEN BEAL,<br><br>Appellee. | **MEMORANDUM DECISION AND ORDER AFFIRMING BANKRUPTCY COURT'S DECISION GRANTING MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00298-DBB<br><br>District Judge David Barlow |

Allen Beal filed for Chapter 7 bankruptcy and State Bank of Southern Utah ("SBSU") planned to contest the discharge of certain debts in an adversary proceeding.[1] Counsel for SBSU did not successfully file a complaint before the 60-day deadline, and the Bankruptcy Court denied a motion to extend and dismissed the Bank's complaint.[2] Because the Bankruptcy Court did not err in finding that the complaint was filed late due to user error and in denying relief, the judgment below is AFFIRMED.

### BACKGROUND

On January 15, 2019, Allen Beal filed a chapter 7 bankruptcy case; his meeting of creditors was scheduled for February 20, 2019.[3] Under Federal Rules of Bankruptcy Procedure 4004(a) and 4007(c), the 60-day deadline for filing a complaint objecting to Beal's discharge and

---

[1] R. at 770.
[2] R. at 795.
[3] R. at 770.

to except debts from his discharge fell on April 22, 2019.[4] Counsel for SBSU attended the meeting of creditors and scheduled a Rule 2004 examination of Beal for April 22 at 9:30 AM.[5] The exam concluded around 3:00 PM, leaving counsel until the midnight deadline to file the complaint.[6]

SBSU's counsel completed drafting the complaint (on which he had begun work prior to the Rule 2004 examination) at 11:24 PM, according to metadata on the document.[7] He finished creating PDF files of exhibits at 11:36 PM and logged into the court's Electronic Case Filing System ("CM/ECF") at 11:40 PM, 20 minutes before the filing deadline.[8]

Once logged in to CM/ECF, SBSU's counsel experienced significant difficulties filing his complaint. He reached a page that requested the user to input a monetary demand in a field that read "Demand ($000) ___."[9] The "($000)" notation signifies that the demand should be entered in thousands of dollars, but counsel interpreted it to mean that he should include a dollar sign when entering a demand.[10] If a filer inputs a symbol other than an integer, such as a dollar sign or comma, the CM/ECF system will return an error that reads, "You have to enter a valid integer number."[11] Counsel used a dollar sign when entering the monetary demand and testified that the form returned an error that he recalls as "integer missing."[12] He attempted to remedy the

---

[4] *Id.*; Fed. R. Bank. P. 4004(a) ("a complaint . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors. . . ."); Fed. R. Bank. P. 4007(c) ("a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors. . . .").

[5] R. at 770.

[6] *Id.*

[7] *Id.*

[8] R. at 770–71.

[9] R. at 771.

[10] *Id.*

[11] *Id.*

[12] *Id.*

Case 2:09-cv-00298-DBB Doc 845 Filed 10/18/21 Entered 10/18/21 07:30:07 Desc Main
Case 2:20-cv-00298-DBB Document 28 Page 25 of 74
Case 2:20-cv-00298-DBB Document 28 Filed 09/16/21 PageID.2097 Page 3 of 18

error and testified that he went through "many, many permutations" with or without dollar signs or commas until CM/ECF eventually advanced to the next page.[13]

After proceeding through another page, counsel arrived at a page titled "Open Adversary Case."[14] The Open Adversary Case page notes that there is a $350 fee for filing the complaint, but the CM/ECF system does not allow the user to pay the fee until the filing process is complete.[15] Counsel for SBSU claims that the screen contained a button labelled "Pay Next $350" but the system would not advance when the button was clicked.[16] Counsel testified that the CM/ECF system returned an error that he recalled as "Case opening failed. Writing answer record."[17] Gary Gfeller, the Bankruptcy Court's Chief Deputy Clerk, testified that he was unfamiliar with this message and that the message would not make any sense, because for the system to write a record, there has to be an open case.[18] During this process, counsel for SBSU contends that he attempted to use the browser's "back" button multiple times to return to previous steps, but he does not contend he ever closed his browser or restarted his computer to attempt a hard reset to the filing process.[19]

Counsel surmised that he would not be able to file his complaint before midnight, and instead emailed a copy to Beal's counsel.[20] After attempting to send the complaint to the

---

[13] R. at 772.
[14] *Id.*
[15] R. at 772–73.
[16] Am. Appellant Br., ECF No. 21, at 13. SBSU's amended brief is not properly paginated; thus, any citations to the amended brief will include pincites that refer to the CM/ECF pagination of the PDF. The Bankruptcy Court found that, although counsel claims he attempted to pay the fee at this stage in the filing process, the page at this point in the process is not meant to accept payment. R. at 773. Furthermore, although counsel suggested that clicking the "Next" button should have opened a new window, court employees testified that no new window should appear at this point in the process. R. at 608, 773.
[17] R. at 773.
[18] R. at 704.
[19] *See* R. at 774; ECF No. 21, at 22–23.
[20] ECF No. 21, at 23.

incorrect email address, counsel delivered a second email to the correct address at 12:02 AM on April 23.[21] The email stated that counsel had been "trying to file the Bank's complaint for 25 minutes but there were problems with the software."[22]

After returning to the CM/ECF system, counsel finally successfully filed his complaint at 12:16 AM on April 23.[23] At 8:59 AM staff from counsel's office paid the $350 filing fee.[24]

Because the complaint was filed 16 minutes after the 60-day deadline, SBSU filed a motion for extension of time for filing the complaint.[25] Beal objected to the extension and moved to dismiss the complaint.[26] The Bankruptcy Court held a two-day evidentiary hearing[27] and issued a decision denying SBSU's motion for extension of time and granting Beal's motion to dismiss on the basis that the untimely filing was caused by user error on the part of SBSU's counsel.[28] SBSU timely appealed.

### STANDARD OF REVIEW

A district court "review[s] the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard."[29] "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the district court is] left with the definite and firm conviction that a mistake has been made."[30] If certain factual findings are based on "determinations regarding the credibility of the witnesses, Rule

---

[21] R. at 774–75; ECF No. 21, at 23.
[22] ECF No. 21, at 23.
[23] R. at 776.
[24] *Id.*
[25] ECF No. 21, at 26.
[26] *Id.*
[27] *Id.*
[28] R. at 769.
[29] *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002) (internal quotations omitted); *Strong v. Prince, Yeates & Geldzahler*, 416 F. Supp. 3d 1300, 1308 (D. Utah 2019).
[30] *Id.*

Case 2:19-cv-02298-DBB Document 45 Filed 10/18/21 Entered 10/18/21 07:30:08 Desc Main
Case 2:20-cv-00298-DBB Document 28 Page 27 of 74
Case 2:20-cv-00298-DBB Document 28 Filed 09/16/21 PageID.2099 Page 5 of 18

52(a) [of the Federal Rules of Civil Procedure] demands even greater deference to the trial

court's findings."[31] In resolving a mixed question of law and fact, the district court conducts a *de*

*novo* review if the question primarily involves a question of legal principles and applies the

clearly erroneous standard if the question is primarily a factual inquiry.[32] The review of a

bankruptcy court's use of equitable power is for abuse of discretion.[33]

To survive a Rule 12(b) motion to dismiss, "a complaint must contain enough allegations

of fact, taken as true, to state a claim to relief that is plausible on its face."[34] It is appropriate to

resolve questions of timeliness on a 12(b) motion.[35]

## DISCUSSION

SBSU argues that the Bankruptcy Court erred in dismissing its complaint because its

complaint was plausible on its face, and because the court below erred in finding that there was

no malfunction in the CM/ECF system. SBSU makes twelve numbered arguments as to why the

Bankruptcy Court erred.[36] The court initially addresses SBSU's first five arguments that the

Bankruptcy Court erred because the complaint was facially plausible. Then, the court turns to

---

[31] *In re Vaughn.* 765 F.3d 1174, 1180 (10th Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)).

[32] *In re Wes Dor, Inc.*, 996 F.2d 237, 241 (10th Cir. 1993); *U.S. Bank Nat'l Ass'n* ex rel *CWCapital Asset Mgmt. LLC v. Vill. At Lakeridge, LLC*, ___ U.S. ___, 138 S. Ct. 960, 967 (2018) ("[S]ome [mixed questions] require courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard. When that is so—when applying the law involves developing auxiliary legal principles of use in other cases—appellate courts should typically review a decision de novo . . . . [O]ther mixed questions immerse courts in case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address what we have (emphatically if a tad redundantly) called 'multifarious, fleeting, special, narrow facts that utterly resist generalization.' And when that is so, appellate courts should usually review a decision with deference." (internal citations omitted)).

[33] *In re Maughan*, 340 F.3d 337, 344 (6th Cir. 2003); *In re Myrvang*, 232 F.3d 1116, 1121 (9th Cir. 2000).

[34] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quotations omitted).

[35] *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016); *Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) (noting that statute of limitations questions may be resolved on a 12(b) motion).

[36] *See* ECF No. 21 at 2–4.

examine SBSU's remaining seven arguments that the Bankruptcy Court erred in its factual determinations and in denying relief.

### I. SBSU's Arguments I through V that the Bankruptcy Court erred in dismissing its claims based on the plausibility of the allegations are irrelevant because the Bankruptcy Court dismissed SBSU's claims based on timeliness.

SBSU makes an extensive argument that the Bankruptcy Court erred in dismissing parts of its complaint because, even if Beal's discharge was granted, it would not bar enforcement of the Bank's perfected security interests in collateral.[37] SBSU argues that its complaint included a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment, and thus "the claims satisfy the plausibility standard under *Twombly* and *Iqbal*."[38] Therefore, the Bank argues, the Bankruptcy Court's judgment dismissing the Bank's claims "must be reversed as a matter of law."[39] But the Bankruptcy Court's decision dismissing SBSU's claims was not based on federal pleading requirements. Rather, its decision was entirely predicated on the fact that SBSU failed to file its complaint in a timely manner.[40] The *Twombly* and *Iqbal* pleading requirements have no bearing on this appeal, as the only issue that the Bankruptcy Court addressed was whether to dismiss SBSU's complaint based on timeliness.

Beal also argues that SBSU waived the foregoing argument because it did not raise it before the Bankruptcy Court. In the Tenth Circuit, a district court that sits in appellate review of a bankruptcy court's decision may consider an issue not raised below if it concludes that the

---

[37] *See* Am. Appellant Br., ECF No. 21, at 32–39.
[38] *Id.* at 39.
[39] *Id.*
[40] R. at 795 ("SBSU's complaint was tardily filed, and the Court finds no basis to extend the time to file it under any of the theories proposed by SBSU. The Court will therefore deny SBSU's Motion to Extend and grant Beal's motion to dismiss.").

issue is dispositive and resolution of the issue does not require finding any additional facts.[41] Thus, Beal is correct that SBSU did not raise these issues in the Bankruptcy Court, but incorrect that this court is absolutely barred from considering them because they were not properly preserved for appeal.[42] Still, a prerequisite for this court to consider issues not raised below is that the issues in question are dispositive.[43] And the plausibility of SBSU's claims has no effect on the Bankruptcy Court's decision. The Bankruptcy Court granted the motion to dismiss entirely based on the timeliness of the complaint.[44] Even if SBSU's claims are plausible, it would not affect the outcome of the decision below because the complaint was dismissed based on the fact it was filed after the 60-day deadline.

Additionally, an appellate court generally should "refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question."[45] Even if a district court has slightly more latitude to address newly raised issues in appeals from bankruptcy courts, there is no reason for this court to consider new issues that, given the Bankruptcy Court's ruling, have no bearing on the outcome of this matter. Furthermore, this court would not have the benefit of a fully developed record on these issues as they were not argued at the Bankruptcy Court. Given that they neither were argued below nor are dispositive, SBSU's Arguments I through V are not appropriate for resolution here and thus will not be considered on appeal.

---

[41] *In re Hart*, 923 F.2d 1410, 1413–14, 1416 (10th Cir. 1991) (per curiam) ("The district court did not consider this issue, on the ground that 'the issue is not before this Court on appeal.' However, the district court could have addressed the issue had it concluded that it was dispositive. (citations omitted)), *overruled on other grounds by In re Wicks*, 5 F.3d 1372, 1373 (10th Cir. 1993) (overruling *Hart* only to the extent it conflicts with *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993)).
[42] *See* Appellee Br., ECF No. 22, at 2–4.
[43] *Hart*, 923 F.2d at 1413-14.
[44] R. at 795.
[45] *Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) (quoting *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992).

7

## II. The Bankruptcy Court did not err in granting Beal's motion to dismiss because SBSU did not timely file a complaint.

If a bankruptcy court is inaccessible, then the deadline for filing shifts to the next day.[46]

To address potential malfunctions with the CM/ECF system, the Bankruptcy Court for the

District of Utah enacted Local Rule 5005-2(g), which provides that "[a]n ECF Filer or other

party whose filing is made untimely as the result of a technical failure by the court may seek

appropriate relief from the court."[47] Certainly, this rule provides an avenue for the bankruptcy

court to fashion an equitable remedy for a late filing not caused by the fault of the user. But here,

the Bankruptcy Court determined that the complaint was not timely filed;[48] that the Complaint

was filed late due to user error, not system malfunction;[49] and that no other equitable relief was

warranted.[50] This court reviews the Bankruptcy Court's factual determinations under the clearly

erroneous standard and its ultimate legal determination *de novo*.[51]

### A. The Bankruptcy Court did not clearly err in determining that the complaint was not timely filed.

The Bankruptcy Court first addressed SBSU's contention that it had filed its complaint in

a timely fashion, but the CM/ECF system was malfunctioning and did not record the filing

properly.[52] The lower court found that SBSU filed its complaint at 12:16 AM on April 23 and

failed to find any evidence that indicated that SBSU's complaint was filed earlier but not

---

[46] Fed. R. Bank. P. 9006(a)(3).
[47] Bank. D. Ut. LBR 5005-2(g).
[48] R. at 783.
[49] R. at 789.
[50] R. at 791.
[51] *In re Vaughn*. 765 F.3d 1174, 1180 (10th Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)).
[52] R. at 783.

recorded by CM/ECF.[53] Thus, the court concluded as a finding of fact that SBSU filed its complaint on April 23, after the deadline.[54]

The lower court's determination that SBSU's complaint was filed on April 23 was not clearly erroneous. The best indication of when the complaint was filed is, of course, the CM/ECF system's own time stamp. That evidence alone is enough to support the Bankruptcy Court's finding that the complaint was filed on April 23. The lack of evidence of any earlier filing further supports the Bankruptcy Court's factual finding.[55] The Bankruptcy Court's finding has extensive support in the record, and this court is under no impression that a definite mistake was made in the lower court's assessment of the facts. The Bankruptcy Court's finding that SBSU's complaint was filed on April 23 was not clearly erroneous. Thus, the court proceeds to analyze whether the Bankruptcy Court erred in finding that user error caused the late filing and refusing to permit SBSU to remedy its late filing.

### B. The Bankruptcy Court did not clearly err in determining that user error, not system malfunction, caused the late filing.

The Bankruptcy Court made the factual finding that "there [was] no evidence of a technical failure" with the CM/ECF system when counsel for SBSU attempted to file the complaint.[56] Instead, the court concluded that any supposed technical failures were the result of

---

[53] R. at 783–84.

[54] R. at 784.

[55] In Argument VI.G of its appellate brief, SBSU argues that the Bankruptcy Court's finding that the complaint was filed on April 23 was clearly erroneous because of a discrepancy in the "filing date" of April 23 and "entered date" of April 22 on the CM/ECF case report. ECF No. 21 at 47. The Bankruptcy Court made the factual finding that this discrepancy is easily explained by the fact that counsel began the filing process before midnight but did not finish until the next morning. R. at 779–80. This finding of fact was not clearly erroneous because it was firmly supported by testimony from court employees. *Id.* at 779. In short, what matters is the filing date, not the entered date.

In Argument VI.F, SBSU also alleges that "numerous filing attempts were made prior to 12:16 AM." ECF No. 21 at 46. This is irrelevant. It has no bearing on the outcome of the case if counsel *attempted* to file before the deadline, only whether he *completed* filing before the deadline.

[56] R. at 788.

user errors.[57] To support this conclusion, the Bankruptcy Court noted that the evidence

demonstrated that the CM/ECF system was functioning correctly—SBSU's counsel experienced

no technical difficulties until he reached the CM/ECF page with the demand field;[58] the CM/ECF

system correctly returned a "You have to enter a valid integer number" when counsel entered a

dollar sign or commas in the demand field;[59] and counsel for SBSU ultimately succeeded in

uploading and filing his complaint.[60] Thus, the Bankruptcy Court found that, at the very least, the

CM/ECF system was functional for some of the time that SBSU's counsel was attempting to

upload the complaint and that it was very unlikely for the system to be rapidly toggling between

short periods of functionality and error.[61] The court ultimately found that the most likely

explanation for counsel's difficulties in filing the complaint was not that the CM/ECF system

was malfunctioning intermittently but that "the supposed technical failures of CM/ECF were in

fact user errors committed by [SBSU's counsel]."[62]

This court sees no basis for overturning these factual findings by the Bankruptcy Court.

SBSU points to no evidence that would suggest that it was more likely that CM/ECF was

periodically malfunctioning than that SBSU's counsel was making mistakes in the electronic

---

[57] R. at 789.

[58] R. at 788.

[59] *Id.*

[60] R. at 789. In Argument VI.H, SBSU contends that the CM/ECF system was malfunctioning because it was abnormal that the Pay.Gov window did not open after the filing and instead opened the next morning. ECF No. 21 at 48. Regardless of this, the Bankruptcy Court's factual finding that the system was functioning properly is amply supported by evidence. The contention that a post-filing event occurred belatedly does not make the Bankruptcy Court's finding clearly erroneous.

    SBSU also argues in Argument VI.E that court employee Gloria Igo reviewed the complaint in the morning and corrected the demand amount that counsel had entered so that it matched the complaint. *Id.* at 45–46. The fact that, after filing, a court employee made changes to the CM/ECF docket is immaterial to whether the CM/ECF system was malfunctioning at the time that counsel attempted filing.

[61] R. at 789.

[62] *Id.*

filing process. The Bankruptcy Court was in the best position to weigh the credibility of evidence and testimony below.[63] Indeed, the court found that SBSU's counsel's testimony was sometimes not credible and "marked by notable contradictions, imprecisions, and elisions in important areas."[64] Specifically, the Bankruptcy Court pointed to multiple instances in which SBSU's counsel's testimony was directly contradicted by testimony from court employees about the CM/ECF filing process or the functionality of the CM/ECF system.[65] The Bankruptcy Court's evaluation of the credibility of witnesses is supported by evidence and is not clearly erroneous. And ultimately, there is no reason to question the court's factual determination that the complaint was filed late due to user error. Thus, this court will accept the Bankruptcy Court's factual determinations.

SBSU nonetheless contends that the Bankruptcy Court erred by not finding that the CM/ECF system malfunctioned in several distinct ways. First, SBSU argues that the filing direction in the demand field contained an instruction to include a dollar sign and was thus inaccurate.[66] The demand-entry page contains an input field that contains the following instruction: "Demand ($000) _____."[67] SBSU's argues that this instruction "clearly implies that the amount to be inserted should include a dollar sign and that the bankruptcy court's conclusion to the contrary is in error."[68] But counsel's misinterpretation of the allegedly ambiguous "($000)" does not constitute a CM/ECF malfunction. The Bankruptcy Court found that counsel

---

[63] *United States v. Jackson*, 579 F.2d 553, 558 (10th Cir. 1978) ("The evaluation of the credibility of a witness is a matter for the trial court or the jury and is not a function of an appellate court.").
[64] R. at 15.
[65] R. at 14–15.
[66] ECF No. 21 at 40.
[67] *Id.*
[68] *Id.*

"interpreted [the instruction] to require that he put in the amount of damages with a dollar sign," but "[t]hat interpretation was incorrect."[69] The Bankruptcy Court further found that "there is not evidence that any of the problems [counsel] faced on April 22 and 23 were technical failures."[70] The fact that counsel misinterpreted this instruction does mean that a technical error existed in the CM/ECF system.[71]

Next, SBSU argues that the Bankruptcy Court's finding that SBSU's counsel did not enter a demand without a dollar sign are clearly erroneous.[72] But SBSU misrepresents the Bankruptcy Court's findings. The Bankruptcy Court found that counsel "never testified that he had removed the dollar sign from the demand field during *these attempts*," referring to attempts made before 11:45 PM.[73] The Bankruptcy Court immediately then adds: "The time was then about 11:45 p.m. [Counsel] kept trying, going through 'many, many permutations,' some with dollar signs and some without, some with commas and some without."[74] SBSU's claim that the Bankruptcy Court found that counsel never attempted to enter the demand amount without a

---

[69] R. at 771.

[70] *Id.* at 789. It may be the case that counsel's misinterpretation of the demand field cost him a few minutes in filing, but there is insufficient record evidence that could cause this court to conclude that it caused him to file late. The Bankruptcy Court found that counsel logged on to CM/ECF at 11:40 PM and that he did not attempt to remove the dollar sign from the input until at least 11:45 PM. *Id.* at 771. Had counsel interpreted the demand field correctly it might have saved him a few minutes, but the complaint was filed 16 minutes late.

[71] In Argument IX of the appellate brief, SBSU disputes the Bankruptcy Court's conclusion that SBSU's counsel was unfamiliar with the Bankruptcy filing system and requests that this court take judicial notice of five bankruptcy proceedings in which counsel was involved. ECF No. 21 at 54. Resolution of this factual dispute is unnecessary. But the court notes that the inference SBSU seeks—that its counsel was familiar with the filing system—makes its argument about filing instruction ambiguities more difficult, not less.

   In Argument VI.D, SBSU also argues that "the evidence was conclusive that there is not a current manual for the [CM/ECF] System. *Id.* at 45. Whether or not there was a current manual for the system is wholly irrelevant to the question of whether the CM/ECF system was malfunctioning.

[72] *Id.* at 42.

[73] R. at 771 (emphasis added).

[74] R. at 771–72.

dollar sign is entirely incorrect.[75] Furthermore, the Bankruptcy Court's determination that

counsel did not attempt to use a dollar sign before 11:45 PM and then tried entering many

permutations after 11:45 PM was not clearly erroneous—there is no evidence that counsel

attempted to remove the dollar sign before 11:45 PM.

Next, SBSU contends that there was a technical error in the system because the browser's

"back" button did not function properly.[76] Clicking the "back" button while in the filing process

does not clear the metadata in the CM/ECF system and prevents the user from properly filing.[77]

Only if the user logs out of CM/ECF or returns to the initial screen does the browser's cache

clear and allow the user to begin the filing process anew without error.[78] SBSU contends that this

amounts to a defect in the CM/ECF system.[79] The Bankruptcy Court found that a court

administrator recommended that counsel "clear [his] cache and start over if [he] encounter[ed]

those types of problems" and that he "never told [counsel] that the problems were due to

malfunctions with the CM/ECF software."[80] This supports the Bankruptcy Court's factual

determination that there was no malfunction with the CM/ECF system.

---

[75] The court finds counsel's mischaracterization of the Bankruptcy Court's finding disturbing. As noted above, SBSU's counsel cited one sentence from the Bankruptcy Court's opinion on this issue and left out the two sentences that immediately follow. The two sentences he excluded undercut his position. When this was pointed out by Beal's counsel in his brief (ECF No. 22 at 19–20), SBSU's counsel continued to ignore the sentences in the opinion which rendered the argument baseless, instead doubling down on the meritless claim that the "bankruptcy court found the Bank's Counsel never later attempted to enter the demand amount without a $ sign." (ECF No. 25 at 18–19). Counsel must be much more careful in the future to make accurate and complete representations about the record.
[76] ECF No. 21 at 43.
[77] *Id.* at 15.
[78] *Id.*
[79] *Id.* at 43.
[80] R. at 781 n. 51. Even if this statement conflicts with that of SBSU's counsel, the Bankruptcy Court weighed the credibility of the testimony below and found that counsel's testimony was "marked by notable contradictions, imprecisions, and elisions in important areas." *Id.* at 782. This determination is best made by the trial court and this court will accept it on appellate review.

Finally, SBSU contends that the fact that the CM/ECF system would not advance when the "Pay Next $350" button was clicked indicates that the system was malfunctioning.[81] It argues that if a filer cannot get past the Next Pay button then a filing cannot be completed.[82] The Bankruptcy Court held that SBSU's counsel's testimony was not credible with regards to what occurred when counsel attempted to pay the filing fee.[83] The court noted that no visual evidence was presented as to what difficulties counsel might have encountered in this stage of the filing process and that testimony from court employees indicates that at some point counsel did advance beyond the Next Pay screen.[84] The Bankruptcy Court's factual finding that there was no malfunction with the Next Pay button was supported by evidence, based on its determination of the credibility of the witnesses, and not in clear error. Thus, this court finds no reason to overturn the factual finding. Furthermore, whether or not counsel was able to pay the $350 filing fee or whether or not the Pay.Gov window opened has no effect on the timeliness of the complaint, as the filing fee can only be paid after filing is completed.[85] The Bankruptcy Court's factual finding that there was no CM/ECF system malfunction was not clearly erroneous.

### C. The Bankruptcy Court did not err in refusing to grant SBSU an extension of time to file the complaint.

The court now turns to the Bankruptcy Court's ultimate legal determination not to grant an extension to file the complaint and to instead grant Beal's motion to dismiss. The court

---

[81] ECF No. 21 at 48.
[82] *Id.* at 49.
[83] R. at 782.
[84] *Id.*
[85] R. at 773 ("it is always the case in CM/ECF that if a fee must be charged for filing a document, it will only be charged after the Notice of Electronic Filing (NEF) is finished, which indicates that the filing process has been completed."). The court notes that "CM/ECF will open a window prompting the user to pay the fee now or defer payment until the end of the day, when the filer can pay for all fees incurred during the day. If the filer chooses to pay now, CM/ECF will direct the filer to an external website at Pay.gov." *Id.* at 773 n. 19. This further supports the factual determination that whether counsel could pay the filing fee had no effect on the timeliness of the complaint.

reviews these determinations *de novo*. There are two legal avenues through which SBSU seeks to admit the untimely filed complaint. First, in Arguments VI, VII, and XII, SBSU contends that the lower court erred in refusing to apply Bankruptcy Rule 9006(a)(3) through Local Rule 5005-2(g) to grant an extension because of a technical failure of the CM/ECF system.[86] Second, in Argument VIII, SBSU argues that the lower court erred by refusing to use its equitable power under 11 U.S.C. § 105(a) to fashion a remedy when the court's actions caused a party to miss a deadline.[87] The court addresses these arguments in turn.

Federal Rule of Bankruptcy Procedure 9006(a)(3) extends the filing deadlines in cases where the court is inaccessible.[88] The advisory committee comments to the 2009 amendment to the rules note that "the concept of [inaccessibility] will continue to develop through caselaw" and that "many local provisions address inaccessibility for purposes of electronic filing."[89] The District of Utah Bankruptcy Court's local rule addressing inaccessibility for the purposes of electronic filing states that "[a]n ECF Filer or other party whose filing is made untimely as the result of a technical failure by the court may seek appropriate relief from the court."[90] The Bankruptcy Court found that application of this rule was inappropriate because there was no technical failure and the late filing was caused by user error.[91] Nonetheless, SBSU contends that there were multiple defects in the CM/ECF filing process. As explained above, this court affirms

---

[86] ECF No. 21, at 49. *See also* Fed. R. Bank. P. 9006(a)(3) (Unless the court orders otherwise, if the clerk's office is inaccessible . . . on the last day for filing under Rule 9006(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday. . . ."); Bank. D. Ut. LBR 5005-2(g) ("An ECF Filer or other party whose filing is made untimely as the result of a technical failure by the court may seek appropriate relief from the court.").

[87] ECF No. 21, at 51. Section 105 provides that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11 of the U.S.C.]." 11 U.S.C. § 105(a).

[88] Fed. R. Bank. P. 9006(a)(3).

[89] Advisory Committee Notes to 2009 Amendments, Rule 9006, Subdivision (a)(3).

[90] Bank. D. Ut. LBR 5005-2(g).

[91] R. at 788.

the Bankruptcy Court's factual findings that it was user error, not system malfunction, that

caused the late filing.

Given that the late finding was the result of user error, this court will not reverse the

Bankruptcy Court's finding that relief under Local Rule 5005-2(g) would be inappropriate here.

Certainly, Rule 5005-2(g) or analogous local rules provide an avenue for relief when late filing

was caused by a technical failure outside of the filer's control.[92] But when the late filing is due to

the fault, neglect, or oversight of the filing party, the court is not obligated to extend the

deadline.[93] Counsel, running out of time to file a complaint, made errors during the CM/ECF

filing process that prevented him from meeting the deadline. The Bankruptcy Court did not err in

concluding that the difficulties that SBSU's counsel faced were not caused by technical failures

of the CM/ECF system, and thus relief is unavailable under Local Rule 5005-2(g).[94]

Furthermore, the courthouse is not rendered "inaccessible" if user error, not technical failure,

causes an untimely filing.[95] For that reason, relief under Bankruptcy Rule 9006(a)(3) is also

---

[92] *See In re Schrag*, 464 B.R. 909, 918 (D. Or. 2011) (holding that relief under an analogous local rule was appropriate when there was an undisclosed technical error with the CM/ECF system that caused incompatibility with certain browsers). *Cf. In re Gibrick*, 561 B.R. 470, 476 (Bank. N.D. Ill. 2016) (holding that motion to dismiss was not warranted where it was conceivable that late filing was the result of a CM/ECF failure but noting that "the filing deadline is not extended, if the filer's own computer or connectivity problems are to blame.").

[93] *See, e.g.*, *In re Sands*, 328 B.R.614, 619 (Bank. N.D.N.Y. 2005) (holding that dismissal was warranted when counsel logged into the CM/ECF system 11 minutes before a deadline and a slow internet connection prevented them from timely filing); *In re Sizemore*, 341, B.R. 658, 660 (Bank. N.D. Ind. 2006) (holding that dismissal was warranted when counsel experienced computer problems while the CM/ECF system was functioning properly); *In re Wright*, No. CC-09-1388-DuMkJa, 2010 WL 6259968, at *2, 5 (B.A.P. 9th Cir. 2010) (holding that dismissal was warranted when counsel logged in 10 minutes before deadline and attempted to file complaint in PACER rather than CM/ECF); *In re Schwartz*, No. 5:09-cv-05831-EJD, 2012 WL 4344544, at *5–6 (N.D. Cal. 2012) (holding that dismissal was warranted where late filing was the result of counsel mistakenly relying on instructions on the district court's website instead of that of the bankruptcy court); *Nelroy Drugs, Inc. v. Rochester Drug Coop., Inc.*, No. 20-cv-06946-FPG, 2021 WL 1534730, at *4 (W.D.N.Y. 2021) (holding that dismissal of a motion to reconsider was warranted where the bankruptcy court sent out multiple notices of an upcoming CM/ECF system outage and appellants neither planned to file before the outage nor proactively sought an extension).

[94] R. at 789.

[95] *E.g.*, *Sizemore*, 341 B.R. at 660.

unavailable. The Bankruptcy Court did not err in denying the motion for an extension under these two rules.

In Argument XI, SBSU contends that the District of Oregon case *In re Schrag* is similar to this case and supports reversal.[96] In *Schrag*, the district court extended relief under a local rule where there was an undisclosed technical error in the e-filing system that caused incompatibility with certain browsers.[97] *Schrag* is not applicable here. In *Schrag* the court explicitly held that the "filing was made untimely by a court-caused technical problem,"[98] whereas in this case the late filing was due to user error, not the court or the filing system. And, of course, *Schrag* is from another district and was applying another district's local rule.

SBSU's Argument VII is that the Bankruptcy Court erred in refusing to exercise its equitable powers under 11 U.S.C. § 105(a) to extend the filing deadline.[99] The statute gives the court authority to "issue any order, process, or judgment necessary or appropriate to carry out the provisions of this title,"[100] which includers the power to correct the court's own mistakes and "allow an out-of-time filing when the creditor relies upon a bankruptcy court notice setting an incorrect deadline.[101] SBSU relies on *Themy* to argue that an analogous factual situation arises here—that "attorneys are without power to file a document if the System is not functioning properly" and that "the Bank's Counsel attempted numerous times to file the complaint timely but the System did not function properly.[102] SBSU's argument for equitable relief, however, is

---

[96] ECF No. 21, at 55.
[97] *In re Schrag*, 464 B.R. 909, 918 (D. Or. 2011).
[98] *Id.* at 918.
[99] ECF No. 21, at 51.
[100] 11 U.S.C. § 105(a).
[101] *In re Themy*, 6 F.3d 688, 690 (10th Cir. 1993).
[102] ECF No. 21, at 52.

entirely predicated on the fact that it would be unfair not to extend the filing deadline because the CM/ECF system was malfunctioning. As discussed earlier, the Bankruptcy Court did not err in finding that user error caused the complaint to be untimely filed. Therefore, *Themy* is not applicable here because the late filing was not the result of an error by the court—there is no mistake by the court that needs correcting. Thus, SBSU's argument for equitable relief under 11 U.S.C. § 105(a) fails.[103]

The court is sympathetic to the challenges counsel for SBSU experienced in attempting to file. Attempting to file so close to the deadline left little margin for error. And given that SBSU's successful filing occurred very shortly after the deadline, the result seems harsh. But for the foregoing reasons, the Bankruptcy Court did not err in holding that user error, not system malfunction, caused the late filing and thus did not err in denying relief under Local Rule 5005-2(g) or 11 U.S.C. § 105(a).

## ORDER

In conclusion, SBSU did not timely file its complaint. The Bankruptcy Court did not err in denying the Bank's motion to extend the deadline and granting Beal's motion to dismiss. The Bankruptcy Court's decision is AFFIRMED.

Signed September 16, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[103] SBSU also contends, in Argument X, that the Bankruptcy Court was mistaken in finding that the 16-minute filing delay caused Beal great prejudice. *Id.* at 55. Prejudice is irrelevant because, as explained above, SBSU is not entitled to equitable relief regardless of what prejudice Beal did or did not suffer.

# Exhibit B

**This order is SIGNED.**

**Dated: March 31, 2020**





R. KIMBALL MOSIER
U.S. Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALLEN BEAL,<br><br>         Debtor. | Bankruptcy Case No. 19-20276<br>Chapter 7 |
| STATE BANK OF SOUTHERN UTAH,<br><br>         Plaintiff,<br><br>v.<br><br>ALLEN BEAL,<br><br>         Defendant. | Hon. R. Kimball Mosier<br><br><br>Adversary Proceeding No. 19-2043 |

---

**ORDER AND JUDGMENT DENYING PLAINTIFF'S MOTION TO EXTEND TIME,
GRANTING DEFENDANT'S MOTION TO DISMISS,
AND DISMISSING ADVERSARY PROCEEDING**

---

Plaintiff State Bank of Southern Utah filed a Verified Motion for Extension of Time for

Filing Adversary Proceeding for Non-Dischargeability and Denial of Discharge Pursuant to 11

U.S.C. §§ 523 and 727 (Motion to Extend Time), seeking relief for commencing this adversary

proceeding after the deadlines established by Fed. R. Bankr. P. 4004(a) and 4007(c). Defendant

Allen Beal opposed the Motion to Extend Time and filed his Motion to Dismiss Adversary

SBSU000637

Proceeding on the basis that the Plaintiff's complaint was untimely filed under Fed. R. Bankr. P.

4004(a) and 4007(c).

     The Court conducted an evidentiary hearing on both motions. After thoroughly reviewing

the evidence and assessing the credibility of witnesses; and having read the motions,

memoranda, and briefs; and having heard the arguments of counsel and conducted its own

independent research of applicable law, the Court issued its Memorandum Decision of even date.

For the reasons set forth in the Memorandum Decision, which the Court incorporates herein by

reference, the Court hereby **ORDERS:**

1. The Plaintiff's Motion to Extend Time is DENIED.

2. The Defendant's Motion to Dismiss Adversary Proceeding is GRANTED.

3. The above-captioned adversary proceeding is dismissed.

                       END OF DOCUMENT

SBSU000638

_____oooOooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **ORDER AND JUDGMENT DENYING PLAINTIFF'S MOTION TO EXTEND TIME, GRANTING DEFENDANT'S MOTION TO DISMISS, AND DISMISSING ADVERSARY PROCEEDING** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Steven W. Call | scall@rqn.com, docket@rqn.com, lconterio@rqn.com |
| Justin Michael Kuettel | jkuettel@rqn.com, lbonnell@rqn.com |
| William P. Morrison | willmorrison01@gmail.com, G23388@notify.cincompass.com |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.

3

SBSU000639

# Exhibit C

**This order is SIGNED.**

**Dated: March 31, 2020**





**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALLEN BEAL,<br><br>          Debtor. | Bankruptcy Case No. 19-20276<br>Chapter 7 |
| STATE BANK OF SOUTHERN UTAH,<br><br>        Plaintiff,<br><br>v.<br><br>ALLEN BEAL,<br><br>        Defendant. | Hon. R. Kimball Mosier<br><br><br>Adversary Proceeding No. 19-2043 |

---

### MEMORANDUM DECISION

Twenty minutes before a midnight deadline, counsel for Plaintiff State Bank of Southern

Utah (SBSU) logged in to CM/ECF, the Court's case management and electronic filing system,[1]

to file a complaint against Defendant Allen Beal. Things did not go as smoothly as anticipated,

and by the time he filed the complaint, the clock had already struck twelve. SBSU has laid the

blame for this tardy filing on the electronic filing system, arguing that it was malfunctioning at

---

[1] CM/ECF is an acronym for Case Management/Electronic Case Files.

SBSU000608

the time counsel sought to file the complaint. SBSU subsequently filed a Verified Motion for

Extension of Time for Filing Adversary Proceeding for Non-Dischargeability and Denial of

Discharge Pursuant to 11 U.S.C. §§ 523 and 727 (Motion to Extend Time) on that basis.[2] In

response, Beal filed a motion to dismiss this adversary proceeding as untimely filed.[3]

The Court conducted an evidentiary hearing on those motions. After thoroughly

reviewing the evidence and assessing the credibility of witnesses; and having read the motions,

memoranda, and briefs; and having heard the arguments of counsel and conducted its own

independent research of applicable law, the Court issues the following Memorandum Decision

denying SBSU's motion and granting Beal's motion.[4]

# I. JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to

28 U.S.C. § 1334 and § 157(b)(1). SBSU's complaint seeks to except a debt from Beal's

discharge and to deny that discharge entirely, making this a core proceeding within the definition

of 28 U.S.C. § 157(b)(2)(I) and (J), and the Court may enter a final order. Venue is appropriate

under 28 U.S.C. § 1409.

---

[2] SBSU filed duplicate motions in this adversary proceeding and the main case. This decision covers both
motions and related filings, but for simplicity's sake only refers to those in the adversary proceeding.
[3] Beal had also filed a motion to strike certain facts from the Motion to Extend Time on the basis that they
were hearsay or lacked foundation. Because the Court resolved the Motion to Extend Time through an
evidentiary hearing, it is not necessary to consider the motion to strike.
[4] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to
Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the
findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any
conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be
equally binding as both.

SBSU000609

## II.  FINDINGS OF FACT

Beal filed his chapter 7 case, out of which this adversary proceeding arises, on January 15, 2019. His meeting of creditors under 11 U.S.C. § 341(a)[5] was scheduled for February 20, 2019, causing the 60-day deadlines to file a complaint objecting to Beal's discharge under Rule 4004(a) and to except debts from his discharge under Rule 4007(c) to fall on April 22, 2019.

Steven Call made his appearance on behalf of SBSU on February 8. After attending Beal's § 341 meeting, he filed a motion on April 5 requesting authorization to conduct a Rule 2004 exam of Beal, which the Court granted that same day. Call then issued a subpoena duces tecum and ad testificandum to Beal, requiring the production of certain documents and scheduling the 2004 exam for April 22 at 9:30 a.m.[6] Although there were some negotiations to start the exam later in the day or even move it to a different date, they were unsuccessful.[7] The parties held the 2004 exam as scheduled and concluded at approximately 3:00 p.m., which left Call with about nine hours to file the complaint.

Prior to taking Beal's 2004 exam, Call and Justin Kuettel, an attorney working with Call on the case, had begun drafting an adversary complaint against Beal. After the conclusion of the 2004 exam Call revised the complaint. Metadata on the complaint show that Call began working on it at 4:21 p.m. and that he concluded his revisions at 11:24 p.m.[8] Call then created PDF files of ten exhibits he intended to attach to the complaint. He finished that task at 11:36 p.m.,[9] and

---

[5] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.
[6] Docket. No. 22.
[7] William Morrison, Beal's counsel, had requested that the exam start at 11:00 a.m. In an email responding to Morrison's request, Call stated: "I cannot grant a later start on April 22nd because, as you know, it is the bar date for the filing of the Bank's complaint. Thus, I would be forced to work late if the examination runs late." Ex. B, at 4. In a prior email to Morrison, Call had indicated that he believed the exam could take "most of the day." Id. at 2.
[8] Ex. 1.
[9] Ex. 2. Of the ten PDF files, one had been created on April 5. Call created the remaining nine between 11:29 p.m. and 11:36 p.m. on April 22. Id.

SBSU000610

logged in to CM/ECF at 11:40 p.m.[10] His successful login shows that CM/ECF was functioning

properly at that time.

Once in CM/ECF, Call proceeded through the steps necessary to file a complaint until he

reached a data field that requires the filer to input the amount of damages requested. Next to the

field is the following text: "Demand ($000)," which Call interpreted to require that he put in the

amount of damages with a dollar sign. That interpretation was incorrect; the demand field

requires that the filer enter an integer without a dollar sign, comma, or decimal point. The

"($000)" notation signifies not that a dollar sign should be used, but that the amount of damages

should be entered in thousands of dollars. If a filer inserts a dollar sign, comma, or decimal point

in the demand field, CM/ECF will produce an error message that reads, "You have to enter a

valid integer number." The filer will not be able to proceed to the next screen until the filer

corrects the error by entering a valid integer number.

When Call first attempted to enter the amount of damages, he used a dollar sign and a

comma.[11] He tried to advance to the next screen, but the CM/ECF program prohibited him—as it

was designed to do—and gave him an error message that he recalled as "integer missing."[12] This

demonstrates again that the CM/ECF system was functioning properly at that time. Call then

entered the amount without a comma, but received the same message. He tried entering "random

numbers," but to no avail. Crucially, Call never testified that he had removed the dollar sign

from the demand field during these attempts. The time was then about 11:45 p.m. Call kept

---

[10] Ex. 18.
[11] Hearing Transcript for Oct. 23, 2019, at 16:6-17. On cross-examination Call denied using a comma, but the Court does not find that denial credible. Call's testimony on that point on direct was lucid and carefully considered, suggesting that it was more reliable and deserving of greater weight than his denial, which was simply a terse revision of what he had said earlier. *See id.* at 51:1-9. But if that were not enough, Call plainly testified that he removed a comma before his second attempt, meaning that he had used one on the first try.
[12] *Id.* at 16:12-13.

4

SBSU000611

trying, going through "many, many permutations," some with dollar signs and some without, some with commas and some without. Each time, Call received the same error message. After Call employed "different numbers," CM/ECF "eventually advanced" to the next page.[13]

Call successfully uploaded the complaint through CM/ECF,[14] proceeded past at least one more page,[15] then arrived at a page titled Open Adversary Case.[16] Below that title is a notation that a $350 fee will be assessed for filing a complaint and, beneath that, are two buttons, one labeled "Next," the other "Clear."[17] At the time, Call perceived the title of this page as stating that the fee had to be paid before the Court would open an adversary proceeding. This, too, was a

---

[13] Call testified that he had tried entering no number in the demand field, but CM/ECF would not advance to the next screen. *Id.* at 16:20-21. At least two Court employees testified that CM/ECF will advance to the next screen if the demand field is left blank. At first glance, these pieces of testimony stand in apparent contradiction to each other, and the Court finds it necessary to resolve the conflict.

This much is clear: Call was unfamiliar with the correct procedure for filling in the demand field. He mistakenly believed that he had to use a dollar sign when entering the amount and did so on his first attempt, along with a comma. That he received the "You have to enter a valid integer number" error message when he did so, far from showing a malfunction, instead demonstrates that CM/ECF was working properly at that time—the system was operating as it was designed. Because Call continued to receive the same error message after trying his various permutations, the Court finds that this is conclusive proof that he continued to use a dollar sign, comma, or some other prohibited punctuation mark or symbol. It would be too curious a coincidence if the CM/ECF system, which had been functioning correctly up to that point, suddenly stopped working and, just by chance, mistakenly and repeatedly issued the same error message to Call that he had previously triggered moments before by using dollar signs and commas. The only plausible explanation for the CM/ECF system producing the "You have to enter a valid integer number" error message is that Call, feverishly trying to get past the demand field, continued entering prohibited symbols and punctuation marks.

Therefore, to the extent that Call's testimony can be interpreted as asserting that he left the demand field blank but the CM/ECF system would not advance to the next screen, the Court finds that testimony not credible. Other, far more likely, explanations exist. For example, Call could have entered only a dollar sign—without numbers—in the demand field. That would be consistent with entering "no number" but failing to advance to the next screen. It is also possible that the time Call advanced to the next screen was the time when he left the field blank. But the explanation that finds the least support in the facts or in logic is that Call left the demand field blank and the CM/ECF system did not advance to the next screen. The Court therefore lends no credence to this explanation and finds no conflict between the testimony of Call and that of the Court employees.

[14] *See* Ex. 3, at Bates number HG000018. Exhibit 3 is series of screen shots captured by Call of the pages a filer goes through in CM/ECF to complete the process of filing a complaint.

[15] *See id.*, at Bates number HG000019.

[16] *See id.*, at Bates number HG000020.

[17] The $350 fee is part of the Bankruptcy Court Miscellaneous Fee Schedule, prescribed by the Judicial Conference of the United States pursuant to its authority under 28 U.S.C. § 1930(b).

5

SBSU000612

misinterpretation. The title of the page means no such thing; the Court will not refuse to open an

adversary proceeding for failure to pay the $350 fee.[18] In fact, it is always the case in CM/ECF

that if a fee must be charged for filing a document, it will only be charged after the Notice of

Electronic Filing (NEF) is finished, which indicates that the filing process has been completed.[19]

Importantly, the window to pay the filing fee does not appear until several pages after the Open

Adversary Case page.

Despite that, Call testified that he attempted to pay the fee, using a credit card from his

firm, at this stage of the filing process. But he did not explain clearly how he tried to pay a fee on

a page that is not meant to accept payment. He suggested that clicking the "Next" button should

have brought up a window where he could pay the fee, but when he did so, no window appeared.

Clicking the "Next" button, however, does not create a new window at this stage of the filing

process. Call has also suggested that he tried clicking the "Next" button, but the page would not

advance. He testified that he made multiple attempts to pay the fee, but because the fee cannot be

paid from the Open Adversary Case page, the Court is unsure what he was doing. Critically,

Exhibit 3 does not include any screen shots of the pages that came after the Open Adversary

Case page.[20] Whatever Call was doing, CM/ECF eventually gave him an error message that he

remembered as "Case opening failed. Writing answer record." Gary Gfeller, the Court's Chief

---

[18] Call admitted on cross-examination that he now understands that is the case. The Court also notes that the prior three pages in Ex. 3 also have the title "Open Adversary Case," including the page that has the demand field. *See* Ex. 3, at Bates numbers HG000017-19. Due to the relative importance of the page at Bates number HG000020 in this decision, the Court refers to that page alone as the Open Adversary Case page to distinguish it from the other pages.
[19] A filer need not pay the fee at that time. CM/ECF will open a window prompting the user to pay the fee now or defer payment until the end of the day, when the filer can pay for all fees incurred during that day. If the filer chooses to pay now, CM/ECF will direct the filer to an external website at Pay.gov.
[20] Nor does Ex. 3 purport to be a complete sequence of the screens in the process to file a complaint. There are admittedly screens missing from the sequence. What's more, the screen shots were not created contemporaneously with Call's actions on April 22 and 23, but were created some time afterward. *See* Hearing Transcript for Oct. 23, 2019, at 54:4-12.

SBSU000613

Deputy Clerk,[21] testified that he was not familiar with this message but said that it did not make much sense to him because it appears to be a contradiction in terms. In CM/ECF lingo, "writing a record" requires an open case. But if an error message said that the case opening had failed, it would be impossible to write a record.[22] The parties offered no additional evidence to elucidate the meaning of this cryptic error message.

Pressed for time and concerned that he would not be able to file the complaint without paying the fee, Call hit the back button on his browser three or four times, eventually returning to the demand page, where he was again prompted to enter the amount of damages. Call was able to advance past that page by entering "random numbers" in the demand field. Call then arrived back at the Open Adversary Case page, where, according to his testimony, he encountered the same difficulty in getting the fee paid. He telephoned Kuettel; Carrie Hurst, his paralegal; and Eliza Tito, his secretary, to seek their assistance. None picked up.[23]

At this point it appears that Call conceded that he would not be able to file the complaint before midnight, so he emailed a copy of it to Morrison. Call testified that he attempted to do so at about 11:58 p.m., but he ran into problems. He received what he called a "strange message" regarding whether the message had been sent,[24] but there is no mystery on this point: Call simply

---

[21] Gfeller has worked in the U.S. Courts system for twenty-seven years, primarily in the bankruptcy courts. He has been a Clerk of Court and, for about fifteen years, an IT Manager with primary responsibility for the CM/ECF system and its predecessor. The Court found his testimony particularly credible on issues relating to CM/ECF.

[22] Hearing Transcript for Oct. 24, 2019, at 177:2-9, 179:24-180:6.

[23] Janene Tanner, the Court's CM/ECF Administrator, runs a CM/ECF "Help Desk" that attorneys can call when they are experiencing filing problems. The Help Desk is quite conspicuous to filers: Five of the screen shots that make up Exhibit 3, including the page with the demand field and the Open Adversary Case page, show the Help Desk's phone number and hours of operation at the top of the page. Those hours are weekdays from 8:00 a.m. to 4:30 p.m., Ex. 3, at Bates numbers HG000014, 17-20, though in practice that often extends to 5:00 p.m. When Call ran into difficulties on April 22, the Help Desk had long since closed for the day.

Tanner commonly recommends that attorneys clear their browser's cache to resolve filing problems. There is no evidence that Call attempted to clear his browser's cache during the filing process.

[24] Hearing Transcript for Oct. 23, 2019, at 20:19-24.

SBSU000614

sent the first email to an incorrect address.[25] The second one had Morrison's correct address but

was not sent until 12:02 a.m.[26] Call then sent the ten exhibits to Morrison in two batches of five

at 12:08 and 12:09 a.m.[27] The email attaching the first batch of exhibits contained a message in

the body informing Morrison that Call had been "trying to file the Bank's complaint for 25

minutes but there were problems with the software."[28]

Call returned to CM/ECF in a renewed attempt to file the complaint. At the demand field

he testified that he tried to enter three numbers: 2000, 200, and 200000, all without a dollar sign.

According to Call, the first two numbers would not work, but CM/ECF accepted the third and

advanced to the next screen.[29] SBSU offered Exhibit 3 to support this testimony. On the page

that includes the demand field[30] there is a box dropping down from that field in which are listed

three numbers: 2000, 200, and 200000. Their presence indicates that Call's web browser had

cached them and subsequently recalled them when Call returned to the field at the time he

created the screen shot. While this would appear to support Call's testimony, it reveals

inconsistencies in the testimony instead. As Gfeller's unrefuted testimony showed, a browser

will only cache a number entered in the demand field if CM/ECF can advance to the next screen,

which means that the number was a valid integer. Therefore, the very existence of the cached

2000 and 200 numbers shows that CM/ECF did advance to the next screen when Call entered

them. In turn, that proves that CM/ECF was functioning correctly at that time. What's more,

Call's assertion that CM/ECF did not accept 2000 or 200 is contradicted by an email he wrote to

Morrison on the evening of April 23. In the course of explaining the problems he encountered in

---

[25] Ex. 4.
[26] Ex. 5.
[27] Exs. 6 & 7.
[28] Ex. 6.
[29] Hearing Transcript for Oct. 23, 2019, at 24:4-9.
[30] Ex. 3, at Bates number HG000017.

SBSU000615

filing the complaint, Call made this statement: "After a significant amount of time and numerous attempts I inserted *an inaccurate number of 2000 and then it moved to the next window.*"[31] The Court therefore finds Call's testimony that CM/ECF did not accept the 2000 and 200 figures is not credible.

While Call advanced beyond that screen using all three numbers, the time he did so using the 200000 figure appears to be the one that led to the filing of the complaint, which occurred at 12:16 a.m. on April 23. The docket sheet for this adversary proceeding as of 9:19 a.m. that morning shows that the demand amount was initially $200,000,000,[32] which is consistent with Call entering 200000 into the demand field. Call then encountered the same problems with payment as he had before but was able to file the complaint without paying the $350 fee. He left a message with Hurst to contact the Court first thing in the morning regarding payment of the fee. She did so and paid the fee at 8:59 a.m.[33]

The Court requires that attorneys admitted to its bar register as ECF Filers.[34] In order to become an ECF Filer, an attorney must receive training on the CM/ECF program from Court staff.[35] Call received his training "many years ago" at approximately the time when the Court

---

[31] Ex. 8, at Bates number HG000025 (emphasis added). The Court also notes that this email is consistent with SBSU's Motion to Extend Time, which Call verified under oath as to the factual statements therein. In the relevant portion of the motion, Call stated that he had "inserted the random numbers of 200 or 2000 [into the demand field] and the system accepted the number and then advanced to the next window." Docket No. 6, ¶ 13. All references to "Docket No." are to documents filed in this adversary proceeding unless otherwise indicated.
[32] Ex. 17.
[33] *See* Exs. 14 & 10.
[34] Bankr. D. Ut. LBR 5005-2(b). An ECF Filer is defined as a "person who is required to or has qualified to file papers using the courts [sic] Electronic Case Filing system." Bankr. D. Ut. LBR 1001-1(d).
[35] *See* Bankr. D. Ut. LBR 5005-2(b)(2) ("Once registered and *training is complete*, the ECF Filer will receive notification of a user log-in and password.") (emphasis added). The Court's Electronic Case Filing (ECF) Registration Checklist, which prospective ECF Filers are to complete "along with [the] ECF registration form to report to the Utah Bankruptcy Court's training department when ECF training was provided," similarly states that "ECF Filers in the District of Utah must meet our training requirements prior to obtaining an ECF login and password." United States Bankruptcy Court District of Utah, *Electronic Case Filing (ECF) Registration Checklist,*

SBSU000616

began to accept electronic filings.[36] The Court first began to accept electronic filings in 2002.[37] Call testified that he had received some supplemental training after that, but he could not identify on what occasions nor his most recent training session. What's more, he could not recall whether he had been instructed on the use of dollar signs, commas, and decimal points in the demand field.[38] The lack of specificity about past training and the inability to remember whether he had been taught certain CM/ECF rules leads the Court to infer that at the time Call attempted to file the complaint at issue, he had not received a CM/ECF training for a substantial number of years.[39] Skills learned in training may not erode with time, however, if the attorney uses them frequently enough. But the evidence showed that Call had not kept his CM/ECF skills sharp by honing them through regular practice, at least as regards filing adversary complaints. As of April 22, 2019, Call had only attempted to file one complaint in this Court during all of 2018 and 2019, and that complaint was the one commencing this adversary proceeding.[40]

The Court's case administrators review docket entries in, and perform quality control on, cases and adversary proceedings assigned to them. They are trained to catch certain docket entry

---

https://www.utb.uscourts.gov/sites/default/files/consent_supplement.pdf. The document also asks whether the prospective ECF Filer has "attended an ECF training class." If not, the person is directed to "contact the training department to schedule training." *Id.* While not admitted as an exhibit, the Court takes judicial notice of the checklist. *See Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000). ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *cf. Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of agency rules and regulations." (citing *Roemer v. Board of Pub. Works of Md.*, 426 U.S. 736, 742 n.4 (1976))).

[36] Hearing Transcript for Oct. 23, 2019, at 51:10-13.

[37] *See* United States Bankruptcy Court for the District of Utah, *Administrative Order No. 1: Implementation of Electronic Filing Procedures*, https://www.utb.uscourts.gov/sites/default/files/ecf_adminord1a.pdf. The Court also takes judicial notice of this document for the reasons stated in footnote 36.

[38] The Court trains attorneys to use only numbers when entering an amount in the demand field.

[39] The Court also offers CM/ECF practical exercises for attorneys who cannot attend trainings, and one such exercise involves going through the steps to file an adversary proceeding. Hearing Transcript for Oct. 24, 2019 at 116:6-13. There was no evidence that Call requested or performed any such exercises.

[40] Hearing Transcript for Oct. 23, 2019, at 50:10-23.

SBSU000617

errors and, with respect to standard errors, correct them in a consistent way. Common errors include a filer linking the filed document to the wrong document on the docket or the filer using the wrong event code for the filed document. Fixing errors is a common occurrence, and a case administrator may make over twenty corrections per day.

Gloria Igo, a Senior Clerk and Case Administrator who has worked at the Court for twenty-six years, was assigned to this adversary proceeding and reviewed it on the morning of April 23. She examined the complaint and discovered that the damages requested therein, totaling $168,467.69, did not match the $200,000,000 demand amount on the docket.[41] She corrected the demand amount by changing it to $168,000.[42] Igo also found that the complaint alleged a cause of action under § 727, which Call had omitted in the filing process, so she added it.[43] Call had also failed to select Morrison as Beal's attorney of record, and Igo corrected that by adding his name to the adversary proceeding.[44] These were all standard errors and standard corrections, which were reflected on the docket.

SBSU contended, though it produced no evidence to this effect, that Call had filed the complaint three times: twice on April 22 and once on April 23. SBSU believes that the April 22 filings were somehow not captured by CM/ECF or later effaced. Regarding the allegation of effacement, SBSU attempted to suggest that Igo's modifications to the adversary proceeding eliminated any reference to the April 22 filings. This speculation found no support in the evidence. In fact, it was established that case administrators cannot change the text of filed documents nor their filed date. If Call had filed the complaint on April 22, CM/ECF would have said so. Igo's standard corrections of Call's errors did not efface an April 22 filing.

---

[41] *See* Ex. 17 (listing the initial demand amount).
[42] Ex. 16, at entries made on 04/23/2019 09:25:15.
[43] *Id.*
[44] *Id.* at entry made on 04/23/2019 09:30:32.

SBSU000618

In further support of its contention that Call had filed the complaint on April 22, SBSU introduced Exhibit 11, a case report generated by CM/ECF.[45] This case report lists the current adversary proceeding and, in the column labeled "Dates," lists two relevant pieces of information: a "filed" date of April 23, 2019, and an "entered" date of April 22, 2019. The distinction between the meaning of filed and entered is best illustrated by non-electronic or "over the counter" filings received by the clerk's office. If a party files a document shortly before the Court closes, the party will receive a stamp indicating that it was filed on that date. But the Court staff may not actually process the document and enter it into the CM/ECF system until the following business day. In this way, such a document would have a filed date one day earlier than its entered date.

Electronically filed documents are different, however. The CM/ECF system is designed so that the filed and entered dates for such documents match.[46] SBSU believes that because Exhibit 11 shows an entered date of April 22 for this adversary proceeding, that unambiguously indicates that the complaint was entered on that date. The Court disagrees because Gfeller's testimony offered a clear explanation for the discrepancy between the entered and filed dates. He noted that the entered date indicates when CM/ECF creates a context file, which captures information at the time a filer starts a transaction in the program. When the filer completes the transaction, the context file distributes that information to relevant places in the database. Gfeller further stated that a filing process commenced before midnight but completed afterward will often generate the anomaly of an entered date preceding the filed date.[47] While this is an error, it is not an error that affected Call's ability to file the complaint. Most importantly, the entered date

---

[45] Case reports list certain cases based on defined search criteria, such as cases filed within a particular date range.
[46] In any event, an entered date should not precede a filed date.
[47] Hearing Transcript for Oct. 24, 2019, at 148:20-151:3.

SBSU000619

of April 22 does not mean that Call entered or filed the complaint on that date. He simply began

the filing process before midnight but did not finish until the next morning.

SBSU also introduced Exhibit 14 in support of its contention that Call filed the complaint

on April 22. Exhibit 14 is a transaction log generated by CM/ECF, which catalogues certain

actions that take place in the CM/ECF system. The entry of relevance to this case is the third on

the page, which states: "This is a temporary log entry to handle timing issues with docketing the

same event many times."[48] SBSU argues that this corroborates Call's testimony that he made

multiple attempts to file the complaint. But this is simply unsupported conjecture. SBSU failed to

elicit testimony supporting its belief as to what Ex. 14 proved. The clearest explanation for this

log entry came from Gfeller, who testified that it is caused by a filer reaching the NEF screen at

the end of the filing transaction then hitting the back button a few times.[49] While the NEF

determines when a document is filed with the Court, there is no indication that Call received an

NEF on April 22 or that CM/ECF failed to issue one to Call.

The Court finds that SBSU's contention that Call filed the complaint on April 22 has no

support in the evidence. There was nothing unusual about Igo's modifications, and they did not

relate in any way to the date the adversary proceeding was filed. Moreover, SBSU's arguments

regarding Exhibits 11 and 14 simply reflected their interpretation of the case report and the

transaction log. Crucially, SBSU was unable to elicit testimony regarding those documents that

would show that Call filed the complaint on April 22. SBSU's arguments on the meaning of

those documents was mere speculation.

As a final finding of fact, the Court will address Call's credibility as a general matter

because SBSU relies substantially on Call's testimony that there was a problem with the

---

[48] Ex. 14.
[49] Hearing Transcript for Oct. 24, 2019, at 151:23-153:10.

SBSU000620

CM/ECF system to prove its case. SBSU contends that Call was the only person who testified as to what actions he took on April 22 and 23 and that there is not comparable evidence on that point. Moreover, SBSU asserts that Call's testimony has not been discredited, so it should be given particular weight and credibility. SBSU also emphasized that many of the facts Call testified to, including the times when he finished preparing the exhibits, logged in to CM/ECF, and emailed Morrison, are clearly corroborated by the evidence. Since he testified truthfully on those matters, SBSU implies that Call should be believed on the more contentious issues of fact, where corroborating evidence is lacking or, at best, equivocal.

The Court disagrees. In the first place, there are instances where Call's testimony was inconsistent with or not supported by the evidence. In addition to the examples noted above, a prominent example can be found in the email Call wrote to Morrison on the evening of April 23. Call informed Morrison that he had "discussed the matter with the Court's IP department and was told that the problems and error messages that [he] received reflect that the software was not operating correctly."[50] During his testimony, Call asserted that Russell Jones, the Court's UNIX System Administrator, had made that statement to him, but Jones denied it during his own testimony.[51] The Court does not mean to suggest that Call fabricated facts outright. But Call had plainly already blamed CM/ECF for the filing difficulties before he spoke with Jones,[52] and the most plausible explanation is that Call's confirmation bias changed what Jones said into what Call wanted to hear.

---

[50] Ex. 8, at Bates number HG000025.
[51] Hearing Transcript for Oct. 24, 2019, at 133:13-17. Jones testified that Call reported that he had had trouble filing the complaint and had received certain error messages. Jones responded by stating that he commonly recommends that filers clear their cache or start over when they encounter those types of problems. *Id.* at 132:9-133:7. He never told Call that the problems were due to malfunctions with the CM/ECF software.
[52] *See* Ex. 6 (stating in a 12:08 a.m. email to Morrison that "there were problems with the software").

SBSU000621

Moreover, Call's testimony was marked by notable contradictions, imprecisions, and elisions in important areas. A minor, though illustrative, example concerns his characterization of the message he received when he first tried to email the complaint to Morrison as "strange." In the context of this dispute, a "strange message" is a loaded term, carrying with it the connotation that something beyond Call's ken had gone wrong with his computer. Rather than indicating that some unknown computer process had malfunctioned, however, this message merely illustrates that Call was rushed and made a mistake.

The most prominent example occurred when he attempted to explain the trouble he had in paying the $350 fee. His initial testimony suggested that he attempted to pay the fee on the Open Adversary Case page but could not. This makes little sense because a filer does not pay a fee at that point in the filing process. Call then testified that CM/ECF would not advance when he hit the "Next" button, but Gfeller's testimony on Exhibit 14 shows that Call did get past that screen at some point, at which time he seems to have hit the back button on his browser multiple times. The lack of screen shots of the pages beyond the Open Adversary Case page substantially hamstrings the Court's ability to discern with detail what happened when Call tried to pay the fee. Call asserted that a CM/ECF malfunction caused the problems he experienced at that point the filing process. But it is simply not possible to draw that conclusion based on the evidence.

SBSU000622

## III.  CONCLUSIONS OF LAW

*"Courts used to say that a single day's delay can cost a litigant valuable rights. With e-filing, one hour's or even a minute's delay can cost a litigant valuable rights. A prudent litigant or lawyer must allow time for difficulties on the filer's end."*[53]

### A. SBSU's Motion to Extend Time

Although SBSU's Motion to Extend Time initially asked for an extension of the deadlines under Rules 4004(a) and 4007(c), at the evidentiary hearing SBSU pursued a position not taken in that motion—i.e., that it filed the complaint timely on April 22. While the Motion to Extend Time is premised on the argument that a CM/ECF malfunction prohibited SBSU's counsel from timely filing the complaint, the contention that SBSU filed the complaint on April 22 is based on a different type of error, asserting that CM/ECF failed to properly register or document the initial filing of the complaint. The Court assigns SBSU, as the movant, the burden to prove that the CM/ECF system malfunctioned in the way it alleges. SBSU must make that showing by a preponderance of the evidence, the standard commonly applicable in civil actions.[54]

The Court concludes that SBSU failed to carry its burden. It is undisputed that April 22 was the deadline for SBSU to file its complaint against Beal and, since SBSU's counsel is an ECF Filer, SBSU had until midnight Mountain Daylight Time to file it.[55] The evidence plainly shows, however, that SBSU filed its complaint at 12:16 a.m. on April 23. None of SBSU's exhibits, including the case report or the transaction log, show that there was an earlier filing that

---

[53] *Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 665 (7th Cir. 2012) (citation omitted).

[54] *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'" (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–390 (1983))).

[55] *See* Fed. R. Bankr. P. 9006(a)(4)(A) ("[T]he last day ends: for electronic filing, at midnight in the court's time zone.").

SBSU000623

CM/ECF failed to recognize or record. The Court concludes that SBSU did not file its complaint

until April 23.

The Court will now turn to SBSU's arguments why, despite an untimely filing, the

deadlines to file its complaint should be extended. SBSU makes four principal contentions. First,

under Rule 9006(b)(1), it can show that its failure to timely file the complaint was the result of

excusable neglect. Second, the CM/ECF malfunction made the clerk's office inaccessible within

the meaning of Rule 9006(a)(3). Third, Local Rule 5005-2(g) permits relief to filers who

experience a technical failure of the CM/ECF system. Fourth, the Court should exercise its

equitable powers under § 105(a) to grant relief. The Court will address these arguments in turn.

### 1. Excusable Neglect and Fed. R. Bankr. P. 4004 and 4007[56]

Rules 4004(a) and 4007(c) require that complaints objecting to a debtor's discharge under

§ 727(a) or to the discharge of particular debts under § 523(a), respectively, be filed within sixty

days after the date first set for the § 341 meeting. The Tenth Circuit has "strictly construed" these

deadlines,[57] and extending them is available only in limited and well-defined circumstances.

While Rule 9006(b)(1) generally permits extension of lapsed deadlines under the Federal Rules

of Bankruptcy Procedure "on motion made after the expiration of the specified period . . . where

the failure to act was the result of excusable neglect," Rule 9006(b)(3) expressly precludes its

application to the deadlines in Rules 4004(a) and 4007(c). Instead, the Court can only extend

those deadlines "to the extent and under the conditions stated" in Rules 4004(a) and 4007(c).[58]

Neither of those rules allows for extension on the basis of excusable neglect.[59] SBSU's request to

---

[56] SBSU appears to have abandoned this ground for relief in its reply. *See* Docket No. 15. The Court addresses it on the merits for the sake of clarity.
[57] *Themy v. Yu (In re Themy)*, 6 F.3d 688, 689 (10th Cir. 1993).
[58] Fed. R. Bankr. P. 9006(b)(1), (b)(3).
[59] *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Tatum (In re Tatum)*, 60 B.R. 335, 337 (Bankr. D. Colo. 1986) ("[T]he operation of [Rules 4004(a), 4007(c), 9006(b)(1), and 9006(b)(3)] eliminates the

SBSU000624

Case 19-02043   Doc 28   Filed 03/31/21   Entered 03/31/20 16:39:02   Desc Main

extend the deadline for this reason is therefore unavailing. As a consequence, the Court need not reach the issue of whether the circumstances surrounding SBSU's failure to act constitute excusable neglect.

Moreover, SBSU cannot extend the applicable deadlines under the conditions stated in those rules.[60] Rule 4004(b) provides for extension of the Rule 4004(a) 60-day deadline either by motion before the expiration of the deadline, or by motion after the expiration and before the debtor receives a discharge if "(A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727 of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection."[61] Here, the Rule 4004(a) deadline expired on April 22, 2019, and SBSU filed its Motion to Extend Time on May 10, so SBSU cannot comply with Rule 4004(b)(1). Nor can it satisfy the requirements of Rule 4004(b)(2). Although at the time SBSU filed its motion Beal had not yet received his discharge, it is plain that SBSU knew the facts that form the basis of its § 727 claim against Beal "in time to permit an objection" to his discharge. The reason is simple—Call attempted to file the complaint containing SBSU's § 727 claim prior to the expiration of the Rule 4004(a) deadline. Because Rule 4004(b) is unavailing to SBSU, the Court will deny its request to extend the Rule 4004(a) deadline.

---

concept of 'excusable neglect' as a basis for expanding the time to object." (citations omitted)); *see also In re Duncan*, 125 B.R. 247, 253 (Bankr. W.D. Mo. 1991) ("For purposes of obtaining an extension of time to file a complaint objecting to discharge under § 727 or dischargeability under § 523 after the 60[-]day period in Rules 4004(a) and 4007[(c)] have run, the standard of excusable neglect no longer applies.").

[60] Although SBSU did not seek relief under Rules 4004 and 4007 in the Motion to Extend Time, it raised that legal argument at the evidentiary hearing, so the Court addresses it.

[61] Fed. R. Bankr. P. 4004(b).

SBSU000625

In contrast to Rule 4004, Rule 4007(c) only allows for an extension of the 60-day deadline upon motion made prior to the expiration of the time period.[62] The Rule 4007(c) deadline expired on April 22, 2019, and SBSU filed its Motion to Extend Time on May 10. Because it was untimely, the Court will also deny SBSU's request to extend the Rule 4007(c) deadline.

### 2. Fed. R. Bankr. P. 9006(a)(3)

SBSU also seeks relief under Fed. R. Bankr. P. 9006(a)(3), which provides in relevant part: "Unless the court orders otherwise, if the clerk's office is inaccessible . . . then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Traditionally, Rule 9006(a)(3) and its word-for-word analogue, Rule 6(a)(3), were limited "to situations in which the courthouse is physically inaccessible."[63] Inaccessibility referred to "weather or other conditions" that would cause a court to close.[64] For example, when the U.S. Bankruptcy Court in Chicago flooded on April 13, 1992, the court closed and extended the deadlines that fell on that day to the following day.[65]

The definition of inaccessibility broadened with the advent of electronic filing. Rule 9006(a)(3) was amended to recognize that inaccessibility can encompass malfunctions of a court's electronic filing system:

> The text of the rule no longer refers to "weather or other conditions" as the reason for the inaccessibility of the clerk's office. The reference to "weather" was deleted from the text to underscore that inaccessibility can occur for reasons unrelated to weather, such as an outage of the electronic filing system.[66]

---

[62] Fed. R. Bankr. P. 4007(c).

[63] *In re Buckskin Realty Inc.*, 525 B.R. 4, 11 (Bankr. E.D.N.Y. 2015) (collecting cases).

[64] Fed. R. Bankr. P. 9006 advisory committee's note to 2009 amendment; *see also Hotel Syracuse, Inc. v. City of Syracuse Indus. Dev. Agency (In re Hotel Syracuse, Inc.)*, 154 B.R. 13, 18 (N.D.N.Y. 1993) ("In cases where the courts have chosen to extend a filing deadline because of inclement weather, they have done so only when weather has caused the clerk's office to close.") (citation omitted).

[65] *Lewis v. Richards (In re Richards)*, 148 B.R. 548, 549-50 (Bankr. N.D. Ill. 1993).

[66] Fed. R. Bankr. P. 9006 advisory committee's note to 2009 amendment.

SBSU000626

The advisory committee note recognizes that Rule 9006(a)(3) does not define inaccessibility, leaving it to the courts to develop the concept through case law.[67] The note also acknowledges that "many local provisions address inaccessibility for purposes of electronic filing."[68] This Court has enacted such a provision—Local Rule 5005-2(g)—which deals with technical failures and is "essentially a more specific derivation of Rule 9006(a)(3)."[69] Since Local Rule 5005-2(g) is specifically crafted to address the issue raised by SBSU and since satisfaction of its requirements will necessarily constitute inaccessibility under Rule 9006(a)(3), the Court will address SBSU's argument in the context of the more specific provision.

### 3. Local Rule 5005-2(g)

SBSU contends that it should receive relief under Local Rule 5005-2(g) because its counsel encountered a technical failure when, as he phrased it in closing argument, "he could not get the software to work properly."[70] Local Rule 5005-2(g) provides that "[a]n ECF Filer or other party whose filing is made untimely as the result of a technical failure *by the court* may seek appropriate relief from the court."[71] This rule requires a party seeking relief to establish three elements: (1) the existence of a technical failure, (2) the failure was committed by the Court, and (3) the failure caused the party's untimely filing. "[F]or a party to obtain relief pursuant to [this rule], it must establish that, but for the court-caused technical problem, it would

---

[67] *Id.*
[68] *Id.* (citing D. Kan. LBR 5005.1, Appendix 1-01(XI)).
[69] *Tiffany & O'Shea, LLC v. Schrag (In re Schrag)*, 464 B.R. 909, 917 (D. Or. 2011) (construing a substantially similar provision in the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Oregon). As a specific derivation of Rule 9006(a)(3), Local Rule 5005-2(g) is consistent with, but not duplicative of, Rule 9006(a)(3), thereby complying with Rule 9029(a)(1). Fed. R. Bankr. P. 9029(a)(1).
[70] Hearing Transcript for Oct. 24, 2019, at 196:22.
[71] Bankr. D. Ut. LBR 5005-2(g) (emphasis added).

SBSU000627

have completed the filing on time."[72] SBSU must show these elements by a preponderance of the evidence.

SBSU has not carried its burden with respect to any of the elements. First, there is no evidence of a technical failure.[73] While the Local Rules do not define the term, it can be described as a malfunction of hardware, software, or similar item of technology.[74] It does not encompass what could be termed non-technical forms of user error, such as a lack of familiarity with CM/ECF that causes a filer to make missteps in the filing process or simply to progress through it more slowly than anticipated.

The evidence showed that CM/ECF was functioning properly, and Call reported no problems with his computer, browser, or Internet connection. One of the chief problems for SBSU regarding the allegation of a technical failure is that, even under the version of the facts most favorable to SBSU, there were interstitial periods when CM/ECF was working properly. Call logged in normally and reported no problems until he reached the page with the demand field. When he used a dollar sign and comma on his first attempted to enter the demand amount, CM/ECF functioned correctly and displayed the "You have to enter a valid integer number" error message. SBSU's version of events has it that CM/ECF malfunctioned immediately thereafter. The Court disagrees. The evidence showed that the most likely explanation for Call's inability to

---

[72] *Schrag*, 464 B.R. at 916.

[73] This necessarily means that the second and third elements cannot be satisfied.

[74] By itself, the term technical failure plainly encompasses failures by filers and by the Court. But the second element of Local Rule 5005-2(g), requiring that the failure be committed by the Court, precludes relief under that rule where the failure was caused by the filer. This is necessary to make Local Rule 5005-2(g) consistent with Rule 9006(a)(3). Case law interpreting inaccessibility states that "[p]roblems occurring in counsel's office, such as a poor Internet connection or a hardware problem, will not excuse a [party's] untimely filing. It is incumbent on [that party] to show that the clerk's office was subject to a CM/ECF failure." *In re Sands*, 328 B.R. 614, 619 (Bankr. N.D.N.Y. 2005); *see also Golden v. Gibrick (In re Gibrick)*, 561 B.R. 470, 476 (Bankr. N.D. Ill. 2016) ("[T]he clerk's office is not inaccessible, and the filing deadline is not extended, if the filer's own computer or connectivity problems are to blame.") (citations omitted).

SBSU000628

advance beyond the demand field page was that he was entering dollar signs, commas, or other prohibited symbols and punctuation marks that would cause CM/ECF to issue an error message. In other words, CM/ECF worked correctly.

What's more, Call testified that he was able to upload his complaint to CM/ECF and, though it is not a complete series of screens in the process to file a complaint, Exhibit 3 shows that he proceeded through at least one more screen before reaching the Open Adversary Case page. This again evinces that CM/ECF was running as it was supposed to. SBSU introduced no evidence that a CM/ECF malfunction would manifest itself in such rapid toggling between periods of functionality and error. It would be an odd coincidence indeed for CM/ECF to run uneventfully when Call was performing the tasks that he could accomplish with little trouble, only to malfunction precisely at the time when he had to undertake the filing functions that gave him difficulties. Rather than concluding that CM/ECF conked out intermittently during just those times, but resumed normal operation afterwards, the far more likely explanation is that the supposed technical failures of CM/ECF were in fact user errors committed by Call.

There is no evidence that any of the problems Call faced on April 22 and 23 were technical failures. For that reason, the Court concludes there is no basis to grant relief under Local Rule 5005-2(g). As a result, the clerk's office was accessible within the meaning of Rule 9006(a)(3), and the Court will deny relief under that rule as well.

### 4. Section 105(a)

SBSU has also argued that the Court may use its equitable powers under § 105(a) to extend the deadline where the Court's actions have caused a party's failure to miss a deadline. In support of that argument, SBSU cites to *Themy*. In that case, the bankruptcy court sent out a notice advising creditors of the date on which a debtor's continued § 341 meeting would be

SBSU000629

conducted. As part of that notice, the Court extended the deadlines under Rules 4004(a) and 4007(c) even though no party had requested such an extension. When a creditor filed a §§ 523 and 727 complaint against the debtor one day before the extended deadline, the debtor moved to dismiss it as untimely. "The bankruptcy court denied the motion to dismiss, holding that a creditor is entitled to rely on information sent out by the clerk's office even though it is contrary to the rules when it leads him to defer action otherwise required."[75] The district court and Tenth Circuit affirmed. The Tenth Circuit held that "[a] court has the inherent equitable power to correct its own mistakes," which includes "allow[ing] an out-of-time filing when [a] creditor relies upon a bankruptcy court notice setting an incorrect deadline."[76]

It goes without saying that the facts of *Themy* are quite different from the ones in this case. Here, the Court did not "affirmatively mislead[] [a] creditor as to a deadline."[77] Nor did the Court make a mistake that required correcting. To the extent that SBSU argues that the alleged CM/ECF malfunction constitutes such a mistake, the Court disagrees. There was no CM/ECF malfunction in this case. As a general matter, however, it is unnecessary to resort to § 105(a) to resolve CM/ECF malfunctions when parties have resort to Rule 9006(a)(3) and Local Rule 5005-2(g). Since SBSU has not prevailed under those rules, the Court will not effectively relax their standards by granting relief under § 105(a) on the basis of an alleged mistake.

SBSU advances three additional arguments that invoke the Court's equitable powers under § 105(a): (1) Beal would suffer no prejudice if the filing deadlines were extended, (2) SBSU's counsel was diligent in attempting to file the complaint, and (3) the CM/ECF program is difficult to navigate and not user-friendly. As an initial matter, the Court will decline to hear any

---

[75] *Themy*, 6 F.3d at 689.
[76] *Id.* at 689-90.
[77] *Id.* at 690.

23

SBSU000630

of these arguments because they represent a patent end-run around the prohibition against

excusable neglect in this context. Each of these arguments invokes one or more of the factors

used in determining whether excusable neglect exists. Those factors include: "[1] the danger of

prejudice to the opposing party, [2] the length of the delay and its potential impact on judicial

proceedings, [3] the reason for the delay, including whether it was within the reasonable control

of the movant, and [4] whether the movant acted in good faith."[78] In addition, "fault in the delay

remains a very important factor—perhaps the most important single factor—in determining

whether neglect is excusable."[79]

By accepting any of these arguments, the Court necessarily makes, under the guise of

§ 105(a), the very conclusion that Rule 9006(b)(3) precludes it from reaching. The Court will not

contravene the express text of a federal bankruptcy rule. Moreover, the Court does not believe

that any of these arguments are compelling, and it will also address them in turn and deny them

on the merits.

### a. Prejudice to Beal

SBSU's argument that Beal would suffer no prejudice by extending the filing deadlines

focuses on the relatively short length of time by which it missed the deadline. Its reply notes that

a "17[-]minute delay in filing caused no prejudice to [Beal]."[80] The Court disagrees. Beal has

already suffered prejudice as a result of SBSU's delay in filing. His discharge has been delayed,

and he has had to incur attorney's fees in this dispute. But the more substantial prejudice to Beal

would occur if the Court extended the strictly-construed filing deadlines. The discharge of Beal's

---

[78] *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'Ship*, 507 U.S. 380, 395 (1993)).

[79] *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)).

[80] Docket No. 15, at 14.

SBSU000631

debt to SBSU, and indeed his entire discharge, would be in jeopardy on the basis of an untimely-filed complaint. The Court concludes that extending the deadlines would greatly prejudice Beal.

### b. Diligence of SBSU's Counsel

SBSU has argued that the diligence of its counsel justifies an extension of the filing deadlines. It notes that Call worked on the complaint during the afternoon and into the evening of April 22, that he had it and the exhibits ready to file, and that he logged in with twenty minutes to accomplish the task. SBSU also notes that when Call ran into filing difficulties, he emailed the complaint and exhibits to Morrison, then contacted the Court when it opened in the morning. The Court has no disagreement with those facts. The Court also recognizes that circumstances occasionally force attorneys up against a looming deadline. But these facts would be insufficient to extend the deadlines under Rules 4004(a) and 4007(c).

### c. The User-Friendliness of the CM/ECF System

SBSU has also argued that it should receive relief essentially because the CM/ECF system is misleading, confusing, and not user-friendly. In particular, SBSU contends that the "normal course of interpretation on Internet use would typically" view the ($000) notation next to the demand field as requiring that a filer insert "$000" within that field. In the first place, SBSU offered no evidence on what the "normal course of interpretation on Internet use" means and whether it is an actual standard. Moreover, even if it had offered such evidence, SBSU has provided no authority on why it should apply to an electronic filing program promulgated by the federal government that has its own rules regarding how filers must use it.

To be clear, this is not an argument that CM/ECF malfunctioned, but rather, even if it worked properly, that SBSU should still receive relief from the deadlines under Rules 4004(a)

25

SBSU000632

and 4007(c) because CM/ECF is perplexing for someone who is not familiar with navigating it.[81] In particular, SBSU stated that it is "overwhelming" and "an effort to keep up with technology these days." The Court might be more inclined to entertain such an argument if it did not offer regular CM/ECF training, a practical exercise on filing a complaint, and a CM/ECF Help Desk during normal Court hours. Call failed to maintain his CM/ECF skills through training or regular use, then put those skills to a trial by fire in attempting to file a complaint with twenty minutes to spare at a time when he had neither the assistance of the Court nor his own staff.

The Court will not grant relief based on this argument. The CM/ECF system may be confusing in some respects, but that is why courts around the country offer training. The Court will not accept counsel's unfamiliarity with the CM/ECF system as an excuse to vitiate the strictly-construed deadlines of Rules 4004(a) and 4007(c).

## B. Beal's Motion to Dismiss

As the Supreme Court has stated Rules 4004(a) and 4007(c) are claim-processing rules, and SBSU's failure to meet the deadlines contained in them does not affect the Court's jurisdiction over its claims.[82] But those rules do provide "an affirmative defense to a complaint filed outside" their time limits.[83] Here, Beal has asserted that affirmative defense under Rule 12(b)(6) in his motion to dismiss.[84] While affirmative defenses are generally "not argued on a motion to dismiss, there are exceptions."[85] One commonly cited exception is the defense of statute of limitations, whose elements—principally relevant dates—may be admitted in a

---

[81] SBSU also bemoaned the lack of a notice in the CM/ECF system alerting users to try clearing their browser's cache if they encounter difficulty filing.
[82] *Kontrick v. Ryan*, 540 U.S. 443, 453-54 (2004) (addressing Rule 4004).
[83] *Id.* at 456.
[84] The Defendant's assertions in that motion that the untimeliness of SBSU's complaint deprives this Court of jurisdiction to consider it are incorrect in light of *Kontrick*.
[85] *Vigil v. Doe*, 405 F. Supp. 3d 1058, 1067 (D.N.M. 2019) (citing Fed. R. Civ. P. 8(c)).

26

SBSU000633

complaint.[86] And the Tenth Circuit has endorsed "Rule 12(b)(6) [as] a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense."[87]

In this case, the parties agreed that SBSU's Motion to Extend Time and Beal's motion to dismiss are opposite sides of the same coin and that the Court could consolidate the motions for purposes of the evidentiary hearing. Having concluded that SBSU filed its complaint out of time and that the tardy filing was not the result of a technical failure or anything that could be described as rendering the clerk's office inaccessible, the only thing left is to grant Beal's motion to dismiss.

## IV. CONCLUSION

This is a regrettable state of affairs. At the eleventh hour and harried by an imminent deadline, SBSU's counsel made a desperate and frantic attempt to file the complaint by navigating a filing system whose finer points became stumbling blocks, which caused him to narrowly miss the deadline. In the end, he simply failed to "allow time for difficulties" in filing.[88]

While the consequences for missing a filing deadline can be harsh, the Tenth Circuit has stood by them in analogous contexts.[89] Courts must enforce the language of the applicable rule

---

[86] *E.g., Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations [in the complaint] show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense." (citing Fed. R. Civ. P. 8(c))); *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) ("A statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." (citation and internal quotation marks omitted)).

[87] *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n.3 (10th Cir. 1999) (citations omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

[88] *Justice*, 682 F.3d at 665 (citation omitted).

[89] *See Jones v. Arross*, 9 F.3d 79, 81 (10th Cir. 1993) (holding, despite the "seeming harshness of [the] result," that Rule 9006(b)(3) denies the "excusable neglect exception" to a creditor who attempted to file a late proof of claim after the bar date had run).

SBSU000634

or statute, despite a harsh result.[90] SBSU's complaint was tardily filed, and the Court finds no basis to extend the time to file it under any of the theories proposed by SBSU. The Court will therefore deny SBSU's Motion to Extend and grant Beal's motion to dismiss.

_____END OF DOCUMENT_____

---

[90] *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, ----, 135 S.Ct. 2158, 2169 (2015) ("'Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding,' and that is no less true in bankruptcy than it is elsewhere." (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 538, (2004))).

SBSU000635

_____oooOooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Steven W. Call            scall@rqn.com, docket@rqn.com,lconterio@rqn.com
Justin Michael Kuettel    jkuettel@rqn.com, lbonnell@rqn.com
William P. Morrison       willmorrison01@gmail.com, G23388@notify.cincompass.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.

SBSU000636